1  STROOCK & STROOCK & LAVAN LLP
   MICHAEL F. PERLIS (State Bar No. 095992)
2  EMAIL: MPERLIS@STROOCK.COM
   ALLAN S. COHEN (State Bar No. 115532)
3  EMAIL: ACOHEN@STROOCK.COM
   2029 Century Park East
4  Los Angeles, CA  90067-3086
   Telephone:  310-556-5800
5  Facsimile:  310-556-5959

6

7  Attorneys for Defendant
   FEDERAL INSURANCE COMPANY

8              UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA

10

11 CALIFORNIA CASUALTY           )  Case No.
   INSURANCE COMPANY,            )
12                               )
                                 )  NOTICE OF REMOVAL OF
13          Plaintiffs,          )  ACTION UNDER 28 U.S.C.
                                 )  SECTION 1441(b)
14     vs.                       )
                                 )
15                               )
   FEDERAL INSURANCE COMPANY,    )
16 DOES 1-10, ROES 1-10, AND MOES 1-)
                                 )
17 10, inclusive                 )
                                 )
18          Defendants.          )
                                 )
19 ──────────────────────────────)

20      TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

21 NORTHERN DISTRICT OF CALIFORNIA:

22      PLEASE TAKE NOTICE that Defendant Federal Insurance Company

23 ("Federal") hereby removes to this Court the State Court action described below:

24      1.     On April 30, 2008 an action was commenced in the Superior Court of

25 the State of California in and for the County of San Mateo entitled *California*

26 *Casualty Insurance Company v. Federal Insurance Company, Does 1-10, Roes 1-10*

27 *and Moes 1-10, inclusive*, as Case No. CIV4172452. A copy of the Summons and

28 Complaint is attached hereto as Exhibit "A".

LA 51052322

2.     The date upon which Defendant Federal received a copy of said Summons and  Complaint was May 6, 2008 when Defendant Federal was served with the Summons and Complaint from the State Court action.

## JURISDICTION

3.     This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. Section 1332, and is one which may be removed to this Court by Defendant Federal pursuant to the provisions of 28 U.S.C. Section 1441(b) in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000.00 exclusive of interest and costs because Plaintiff alleges damages in excess of $2,000,000.00.  See, Exhibit "A" at paragraph 16 of the Complaint and paragraph 2 of the Prayer for Relief.

4.     Complete diversity of citizenship exists in that:  Plaintiff California Casualty Insurance Company is a corporation incorporated under the laws of the State of California and having its principal place of business in the State of California.  Defendant Federal is a corporation incorporated under the laws of the State of Indiana and having its principal place of business in the State of New Jersey.

5.     Defendants Does 1-10, Roes 1-10 and Moes 1-10 are all fictitiously named defendants whose citizenship, for purposes of removal, is disregarded.  28 U.S.C. Section 1441(a).

## INTRADISTRICT ASSIGNMENT

6.     This division of the United States District Court for the Northern District of California is the proper Court in which to remove the State Court action as this Court has jurisdiction over cases arising in the County of San Mateo, California. *Local Rule,* 3-2(d) for the Northern District of California.

LA 51052327

1        WHEREFORE, Federal Insurance Company hereby gives notice that the

2    above-referenced action is removed in its entirety from the Superior Court of the

3    State of California for the County of San Mateo to the United States District Court

4    for the Northern District of California.

5

6    Dated:  May 28, 2008           STROOCK & STROOCK & LAVAN LLP

7                                    MICHAEL F. PERLIS
                                ALLAN S. COHEN

8

9                                    By: _____
                                    Michael F. Perlis

10

11                                   Attorneys for Defendant
                                FEDERAL INSURANCE COMPANY

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA 51052327

**SU~~M~~MONS**
*(CITACION JUDICIAL)*

SUM-100

NOTICE TO DEFENDANT:
*(AVISO AL DEMANDADO):*
FEDERAL INSURANCE COMPANY, DOES 1-10, ROES 1-10, AND
MOES 1-10, INCLUSIVE

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**FILED**
SAN MATEO COUNTY

APR 3 0 2008

Clerk of the Superior Court
By _____
DEPUTY CLERK

YOU ARE BEING SUED BY PLAINTIFF:
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CALIFORNIA CASUALTY INSURANCE COMPANY

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you.   Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.   If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.   Una carta o una llamada telefónica no lo protegen.   Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta.   Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*
   *Hay otros requisitos legales.   Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.   Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.   Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: | CASE NUMBER: |
|---|---|
| *(El nombre y dirección de la corte es:)* | *(Número del Caso):* **CV 4 7 2 4 5 2** |
| SAN MATEO SUPERIOR COURT | |
| 400 COUNTY CENTER | |
| 400 COUNTY CENTER | |
| REDWOOD CITY, CALIFORNIA 94063 | |
| MAIN COURTHOUSE | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David C. Werner, [SBN: 67993]
Bryan E. Quilo, [SBN: 213708]          949-460-9280     949-460-9286
Law Offices of David C. Werner
Laguna Hills, CA 92653

| DATE: | APR 3 0 2008 | JOHN C. FITTON | Clerk, by | | Deputy |
|---|---|---|---|---|---|
| *(Fecha)* | | | *(Secretario)* | | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1.  ☐ as an individual defendant.
2.  ☐ as the person sued under the fictitious name of *(specify):*

3.  ☐ on behalf of *(specify):*

under:  ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
        ☐ other *(specify):*
4.  ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

Page 1 of 1

Exhibit A-4

1   **LAW OFFICES OF DAVID C. WERNER**
    David C. Werner [SBN: 67993]
2   Bryan Quilo [SBN: 213708]
    23422 Mill Creek Drive, Suite 110
3   Laguna Hills, California 92653
4   Telephone: (949) 460-9280
    Facsimile: (949) 460-9286
5

6   Attorneys for Plaintiff: CALIFORNIA CASUALTY
    INSURANCE COMPANY
7

**FILED**
SAN MATEO COUNTY

APR 30 2008

Clerk of the Superior Court
By _____
DEPUTY CLERK

8

9            SUPERIOR COURT OF CALIFORNIA

10              COUNTY OF SAN MATEO

11   CALIFORNIA CASUALTY
    INSURANCE COMPANY
12                            )
13              Plaintiffs,
    v.
14
    FEDERAL INSURANCE COMPANY,
15   DOES 1-10, ROES 1-10, AND MOES 1-
    10, inclusive
16
17            Defendants.
18

CASE NO: **CIV 4 7 8 4 5 2**

HONORABLE:

DEPT:

Complaint Filed:

19

20                          **I**
       **IDENTIFICATION OF PARTIES AND CONTRACTS**

21     1.     The true names and capacities of Does 1-10, Roes 1-10 and Moes 1-10 are unknown to
this plaintiff and plaintiff therefore sues said Does, Roes and Moes by this fictitious designation.
22
Wherever the term "Federal Insurance Company" or defendant is used herein, it is meant to include
23
each of these fictitiously named defendants. The true names and capacities of said Does, Roes and
24
Moes will be set forth when the same are known and leave of court will be sought as necessary to set
25
forth the true names and capacities when ascertained.
26   ///

27   ///

28
Law Offices
Of
David C. Werner

Exhibit A-5

2.     Federal Insurance Company (hereinafter "Federal") is an insurance company that conducts insurance business in the State of California. At all times pertinent herein, Federal Insurance entered into an insurance contract (which is hereinafter set forth as **Exhibit "A"**) providing certain coverages to California Casualty Insurance Company. California Casualty Insurance Company is informed and believes that Federal Insurance does business throughout the State of California and is subject to the jurisdiction of this Court. Specifically, the aforementioned contract (**Exhibit "A"**) was entered into between Federal Insurance and California Casualty Insurance Company at California Casualty Insurance Company's home office in San Mateo, California.

3.     California Casualty Insurance Company (hereinafter "California Casualty") is an insurance company conducting insurance business and providing insurance services in the State of California with a home office in San Mateo, California. At all times relevant herein, the Federal policy, **Exhibit "A"**, was entered into between Federal and California Casualty at the California Casualty home office in San Mateo, California. As set forth hereinafter, California Casualty provides personal lines of insurance including homeowner's coverage. The subject of this lawsuit involves California Casualty's homeowners policy number 204 1155871, (Attached hereto as **Exhibit "B"**) issued to insureds Mr. & Mrs. Harold, providing insurance coverage to their residence.

4.     At all times relevant herein and specifically beginning in September of 2001, Federal Insurance Company issued to California Casualty a policy of insurance providing California Casualty with coverage as specified in the policy. The policy is attached hereto, and marked **Exhibit "A"**, and incorporated herein by this reference. **Exhibit "A"** not only contains the contract of insurance, but also the several endorsements that are applicable to the matters set forth herein. The policy was issued in September of 2001. At all relevant times herein said policy, as set forth in **Exhibit "A"**, was entered into between California Casualty and Federal at the home office of California Casualty, which is in San Mateo, California.

Law Offices
Of
David C. Werner

2

Exhibit A-6

## II
## ALLEGATIONS OF FACT, COMMENTS TO ALL CAUSES OF ACTION

5.     On or about the month of November in the year 2000, Mr. & Mrs. James Harold were insured under a policy of homeowners insurance, policy number 204 1155871, issued by California Casualty.  Said policy is set forth in **Exhibit "B"** and is incorporated herein by this reference.  On or about said date, the Harolds reported a claim under the aforementioned policy.  The claim alleged, amongst other matters, that a water leak had occurred in one of the pipes servicing the Harolds' home. The water leak had caused damage to the home and had resulted in the need for the filing of a claim by the Harolds under California Casualty's homeowner's policy, (**Exhibit "B"** to this action).

6.     California Casualty accepted and acknowledged the claim of the Harolds and undertook to perform certain "insurance services" (as that term is defined in **Exhibit "A"**) and adjustment services for the handling of the claim. Specifically, California Casualty assigned adjusters, as well as experts, and later attorneys, to investigate the cause and nature of the claim as well as to assist the Harolds in adjusting the claim and to provide insurance benefits under California Casualty's homeowner's policy to the Harolds.

7.     During the course of the adjustment of the loss, during the course of providing "Insurance Services" as that term is used in **Exhibit "A"**, both the Harolds and California Casualty Insurance Company discovered that extensive water damage had been done to the Harolds' property, and in addition, that mold had developed in the home.  California Casualty Insurance Company proceeded to retain necessary experts, as did the Harolds, in an attempt to remediate the water damage as well as the mold in the home.  Although extensive efforts were undertaken, the parties continued to have difficulties in remediating the loss during the years 2000, and 2001 into 2002.

///

Law Offices
Of
David C. Werner

Exhibit A-7

1   Thereafter, in the year 2002, while the Federal policy, (**Exhibit "A"**), was in full force and

2   effect, the Harolds retained counsel to represent them with regard to their claim for damages, breach

3   of contract, bad faith breach of contract, and other related and associated torts which they claimed to

4   have against California Casualty Insurance Company. The retention of said law firm, as well as the

5   claim for damages as a result of the handling of the claim by California Casualty Insurance Company,

6   arose from California Casualty's alleged mishandling of its "insurance services" to the Harolds. A

7   claim was made against California Casualty Insurance Company for damages beyond the limits of

8   coverage provided by the California Casualty Insurance Company policy, **Exhibit "B"**. Such claim

9   was made within the reporting period and within the policy period of the Federal policy, and certainly

10  prior to July 2002.

11  Attached hereto and incorporated herein by this reference is the trial brief of the Harolds'

12  attorneys. Said trial brief is incorporated herein by this reference, as **Exhibit "C"**, for the allegations

13  it makes and the assertions it makes with regard to the identification of the claim being made against

14  California Casualty.

15  8.   A lawsuit was filed by the Harolds against California Casualty. A true and correct

16  copy of which is attached hereto as **Exhibit "D"** and incorporated herein by this reference.

17  California Casualty retained the law firm of Hayes, Davis, Ellingson, McLay & Scott, LLP to

18  represent its interest and to defend the complaint against California Casualty.

19  California Casualty incurred necessary attorneys' fees, court costs, investigative cost, expert

20  fees, and other associated cost with regard to the defense of said action. Said attorneys' fees and costs

21  are fully covered under the Federal policy, (**Exhibit "A"**).

22  9.   The case of *Harold v. California Casualty* went to trial in the Sacramento Superior

23  Court on or about February 21, 2006. Although a jury verdict was rendered, the parties proceeded to

24  mediation. At the time of the mediation, the matter settled. At the time of the mediation the verdict

Law Offices
Of
David C. Werner

Exhibit A-8

1    was not yet reduced to a judgment, and in fact, no judgment was entered. The parties settled the

2    entire action. At the time of the settlement, the demands and claims of the Harolds were extensive

3    and went beyond the allegations found in the trial. In addition to a claim that there had been damages

4    to the Harolds' home (which exceeded California Casualty's policy limits,) there was an allegation of

5    a breach of good faith and fair dealing; fraud based on concealment; failure to hire a proper contractor

6

7    with a specific risk of harm; nuisance; and attorneys fees under the case of *Brandt v. Superior Court*

8    in the amount of $343,875.43. In addition, there were statutory costs which were demanded in the

9    amount of $75,000.00, and an additional $50,000.00 in cost associated with the trial of the case by the

10    Harolds. The Harolds' full and complete demand at the time of the mediation was $3,023,658.80. In

11    addition, the Harolds were seeking in the mediation, and as a part of their claim, to obtain punitive

12    damages against California Casualty with an exposure claimed to be 10 million dollars.

13

14        California Casualty informed Federal Insurance of these matters, and indeed a representative

15    from Federal Insurance attended the mediation and gave specific permission to resolve the case up to

16    an amount that exceeded the actual settlement amount. The matter settled for 2.5 million dollars.

17        At the point in time that the matter settled, California Casualty paid settlement amount to settle

18    all claims of the Harolds. Said payment was undifferentiated between any particular cause of action

19

20    or claim. The settlement was for any and all claims in excess of the amount already paid to the

21    Harolds under the policy, including general and economic damages, as well as for any claim for bad

22    faith, attorney fees, and costs incurred by the Harolds in the handling of the their claim.

23

24        California Casualty's payment was, therefore, as the result of its provision of "insurance

25    services" as that term in defined and used in the Federal policy, which is attached hereto marked as

26    **Exhibit "A"**, and incorporated herein by this reference.

27        10.    As a part of the Federal coverage, California Casualty is entitled to receive

28    reimbursement for the full amount of all monies expended by California Casualty in the defense of the

Law Offices
Of
David C. Werner

5
COMPLAINT

Exhibit A-9

1    action, including attorneys' fees, as well as the court costs and any other associated costs, such as

2    expert witness costs.  California Casualty has expended in excess of 1.5 million dollars for these

3    items.  The full and complete amount will be set forth at time of trial.

4

5        The full and complete damages that California Casualty therefore seeks by this action is the

6    amount paid in settlement and the 1.5 million dollars plus that was expended by way of costs, attorney

7    fees, and other miscellaneous items associated with the defense of the action.

8

## III
## FIRST CAUSE OF ACTION:
## BREACH OF CONTRACT

9

10   11.    California Casualty incorporates by references fully set forth herein 1 through 10.

11

12   12.    California Casualty at all times relevant herein was fully insured by the Federal policy

13   for wrongful acts as that term is defined in the Federal policy, **Exhibit "A"**.  The policy required that

14   a claim be made during the policy period, and that the claim be based upon a wrongful act that is

15   identified in the policy. Both such conditions were/are satisfied.

16

17       As set forth in the factual allegations herein, California Casualty did in fact receive a claim for

18   "wrongful acts" (as that term is defined in the Federal policy) from the Harolds regarding handling of

19   their claim by California Casualty Insurance Company under their California Casualty's homeowners

20   insurance policy number 204 1155871, attached hereto and marked (**Exhibit "B"**) above.

21       California Casualty reported the claim (as that term is defined in the Federal policy) to Federal

22   in a timely fashion.  The claim did occur during the Federal policy period and California Casualty did

23   provide a timely notice to Federal.

24

25   13.    California Casualty fully and completely cooperated with Federal, providing them with

26   whatever information they desired.  California Casualty provided not only notice of the claim but full

27   access to California Casualty's file.  Communications ensued between California Casualty and

28   Federal's designated representative throughout the pendency of the claim.

Law Offices
Of
David C. Werner

14.     California Casualty has performed all conditions precedent on its part that it is required to perform in order to perfect the claim under the policy. California Casualty has in fact performed all such conditions precedent, and there is no excuse or basis in reason for Federal to withhold benefits due under its policy.

15.     Federal Insurance has breached its policy with California Casualty. Specifically, California Casualty, in settling the claim of the Harolds, has fully complied with all of the terms and conditions of the Federal policy to properly present a claim. In addition, California Casualty has submitted to Federal a full and complete itemized list of all expenses, attorneys' fees, and other associated cost for which it is making claim. The amount submitted is in excess of 1.5 Million dollars. The true and correct amount as well as the total amount will be set forth at time of trial in this action.

Despite the fact that California Casualty has fully complied with all of the provisions and terms of the policy, Federal has refused to honor its obligations under the contract and has breached the contract by refusing to pay any sums that are due to California Casualty under the terms and conditions of the policy.

16.     Wherefore, after considering the deductible, there is presently now due and owing a sum in excess of 2 Million dollars. California Casualty is damaged in that amount in that it is being denied the benefits of the policy, and is being denied what is rightfully due under the policy due to the breach of contract by Federal.

17.     In addition to the amount due under the policy, California Casualty also submits that the amount due is a sum certain, and therefore requests interest at the legal rate 10% and/or as the court deems just and proper at the time of this action. California Casualty alleges that interest began at the date of the settlement, which was July 2006. There is now due and payable from Federal interest in excess of $440,000.00, which is increasing on a daily basis.

Law Offices
Of
David C. Werner

COMPLAINT

Exhibit A-11

**IV**
**SECOND CAUSE OF ACTION:**
**BAD FAITH BREACH OF CONTRACT**

18.    California Casualty incorporates by references fully set forth herein 1 through 17.

19.    In every contract of insurance there is an implied duty of good faith and fair dealing. The duty of good faith and fair dealing requires that Federal not withhold unreasonably any sums that are due and owing to California Casualty.  In addition, Federal has a duty to California Casualty to give California Casualty's interest equal consideration as it gives to its own interest, and has a duty to make a proper investigation to determine any valid basis that will support California Casualty's claim. Federal also has a duty to investigate the claim of California Casualty fully and completely and is duty bound not to deny the claim for improper reasons or unreasonably.

20.    California Casualty submitted its claim to Federal in June of 2002.  Federal responded to California Casualty by citing to California Casualty provisions of the Federal policy that did not exist.  Federal submitted to California Casualty its analysis of California Casualty's claim based upon provisions that had been removed from the policy and were no longer a part of the policy.  Following this initial denial, California Casualty requested reconsideration, and Federal determined that its initial denial was improper and based upon improper policy language.

California Casualty kept Federal informed at all times and indeed Federal attended several settlement conferences and the mediations in which the Harolds' claim was eventually settled, and therefore was fully aware of the nature and extent of the claim.

Despite the fact that California Casualty provided full and complete information to Federal, Federal has chosen to deny California Casualty's claim on a frivolous basis unsupported in law, reason, logic, or the facts of the case.  Federal Insurance, for example, has decided to deny California Casualty's claim for benefits under the policy on the basis of the jury verdict that was rendered in the

Law Offices
Of
David C. Werner

8
COMPLAINT

1    case of *Harold v. California Casualty*, even though no judgment resulted and the parties to that action

2    settled. Federal also chooses to ignore the entire claim of the Harolds which included Brandt fees,

3    costs, and punitive damages. Federal unreasonably, frivolously and without any basis in reason or

4    logic, refuses to properly interpret its own policy and refuses to interpret the language of said policy

5    in a proper and reasonable fashion as is required by the duty of good faith and fair dealing.

6

7    21.    As a result of its unreasonable behavior and its unreasonable refusal to acknowledge its

8    own policy terms, Federal has in fact denied the existence of its own coverage and denied the

9    existence of its own contract, acting in bad faith to deny California Casualty its rights under the

10   policy. In addition, Federal has attempted to resolve the claim of California Casualty by offering the

11   sum of $300,000.00 to resolve the claim, arguing that California Casualty is not entitled to the

12   benefits due under the policy, and seeing the claim of California Casualty as a game of negotiations as

13   opposed to the claim of an insured under the policy with rights and duties owing to the insured by the

14

15   carrier.

16   22.    As a result of Federal's unreasonable and frivolous interpretation of its own policy, its

17   denial of the existence of the coverages that it provided, its refusal to properly investigate the claim,

18   its refusal to honor its duty to California Casualty to fully and completely investigate and honor the

19   rights of California Casualty, and due to its failure to give equal consideration to the interest of

20   California Casualty and to resolve this matter in a fashion that a reasonable carrier would act,

21   California Casualty has been damaged by the breach of the implied covenant of good faith and fair

22   dealing. The damages include the fact that California Casualty has been forced to retain counsel to

23

24   represent it in seeking recovery of the benefits due. California Casualty has incurred attorney fees as

25   a result of the bad faith of Federal, and is therefore seeking recovery of attorney fees that it is

26   incurring and will incur, together with all costs associated with the prosecution of this action. It is the

27

28   allegation of California Casualty that the attorney fees are necessary to obtain the benefits due under

Law Offices
Of
David G. Werner

Exhibit A-13

the policy, which are being denied in bad faith.

**WHEREFORE**, California Casualty prays as follows:

1.  That the court declare the rights, duties, and obligations of the parties under the terms of the contract, and specifically the rights of California Casualty to receive benefits due.

2.  For judgment against Federal for breach of contract in the amount to be shown at the time of trial, but not less than 2 Million dollars. That California Casualty be awarded the amounts that are due to it under the Federal policy as a result of the claim of the Harolds', including all moneys (subject to the Federal Policy's deductible) expended in settlement of the case, together with the attorneys fees and associated costs incurred by California Casualty in defending itself, which is a sum that is in excess of 1.5 Million dollars.

3.  That California Casualty be awarded interest on the amount that is due to California Casualty under the terms of the Federal policy; (said interest being in excess of $440,000.00 at the time of the filing of this complaint.)

4.  For attorneys fees based upon the bad faith denial by Federal and the need of California Casualty to retain counsel to pursue and seek recovery of what is due and owing to it under the terms of the Federal policy.

///
///
///
///

Law Offices
Of
David C. Werner

Exhibit A-14

5.    California Casualty finally prays for such other and further relief as the court

deems just and proper in the premises.

DATED: April 29, 2008

LAW OFFICES OF DAVID C. WERNER

By: _____
DAVID C. WERNER
BRYAN QUILO
Attorneys for Plaintiff:
CALIFORNIA CASUALTY INSURANCE
COMPANY

Law Offices
Of
David C. Werner

11

COMPLAINT

Exhibit A-15

AUG-12-2005 06:35 FROM:                                    TO                 h tFAX              P.2

**ITEM 7.**  Extended Reporting Period:

  (A) Additional Premium:  75% of annual premium
  (B) Additional Period:    365 days

**ITEM 8.**  Pending or Prior Date:

  Insuring Clause 1.    **Insurance Services** Professional Liability:  September 1, 2001

  Insuring Clause 2.    **Financial Services** Professional Liability:  September 1, 2001

**ITEM 9.**  Endorsement(s) Effective at Inception:  1 - 3.

**IN WITNESS WHEREOF, THE COMPANY** issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

*Henry A Aubih*
Secretary

September 26, 2001
Date

*Henry R Offene*
President

*Robert Hamburger*
Authorized Representative

Exhibit A-16

**CHUBB** URGENT

To: Jeff Gunchick
Claims   213-833-52
From: Anne Matson SFD/DF

Effective date of
this Endorsement:   September 1, 2001

**FEDERAL INSURANCE COMPANY**

Endorsement No:   5

To be attached to and form part of
Policy Number:   70427262

Issued to:   CALIFORNIA CASUALTY MANAGEMENT COMPANY AND

CALIFORNIA CASUALTY INSURANCE COMPANY

---

**AMENDED DECLARATIONS - PARENT ORGANIZATION ENDORSEMENT**

It is agreed that ITEM 1. of the Declarations, Parent Organization, is deleted in its entirety and replaced
with the following:

ITEM 1.   **Parent Organization**         (Name and Address):

California Casualty Management Company and
California Casualty Insurance Company
1900 Alameda de las Pulgas
San Mateo, CA 94402

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:                                           By _Robert Hamburger_
                                                     Authorized Representative

RECEIVED
2003 MAY 14 P 2: 14
WZO SPECIALTY CLAIMS

ICPL Policy
Form 17-02-1636 (Ed. 10-98)

Exhibit A-17

Effective date of
this Endorsement: 9/1/01

**FEDERAL INSURANCE COMPANY**

Endorsement No:   5

To be attached to and form part of
Policy Number:    70427262

Issued to:  CALIFORNIA CASUALTY MANAGEMENT CO.

IT IS UNDERSTOOD AND AGREED THAT ENDORSEMENT #1 FORM 17-02-2539 (ED. 06-01)
ADDITIONAL INSURED ORGANIZATION ENDORSEMENT IS HEREBY DELETED AND NO LONGER
FORMS PART OF THE POLICY.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: April 11, 2003                             By _____
                                                        Authorized Representative

AUG-12-2003 06:35 FROM:                                      TO:Bi9htFAX        P.8

 06/20/02   11:00

  05/11/02 12:39 PM   Subject: ICPL 7042-82-72 - California Casualty

I'm embarassed to admit that the portion of this e-mail below the * * *'s
has been in my 'draft' folder since last September! I guess it kind of got
swept aside in all the excitement a few weeks later re cancelling/not
cancelling your policy and I never completed my full review of your policy
form.

As I'm now preparing the renewal application, I have just noticed a major
problem with the captioned, as issued: the insurance companies aren't
covered! California Casualty Management Co. is named as the "Parent
Organization" and then is also listed in Endorsement #1, "Additional Insured
Organization Endorsement." The Additional Insured Organization Endorsement
should, instead, list the following entries:

California Casualty Indemnity Exchange
California Casualty Insurance Company
California Casualty & Fire Insurance Company
California Casualty General Insurance Company
California Casualty Compensation Insurance Company

OK Anne Mar
eff 9/1/d

I trust that issuance of this correction along with the items below will not
be a problem, however, as always, please contact me if you wish to discuss.

Lyn Martin
(650) 572-4447

    *    *    *    *

The wording about lawyering "for" policyholders is the language that needs
to be changed in Paragraph 3 of the Employed Lawyers endorsement - - the
exclusion -- not in the definition of Insured person. (However, I now
notice that the definition requires that the employed lawyer be full-time
and salaried. We may from time-to-time employ lawyers on a part-time basis,
so the definition also needs to be amended.)

We need to talk to Paul on this

A. We believe that the Employed Lawyers' endorsement needs to include the
following:

1. It is agreed that Section 26, Definitions, is amended by adding the
following:

Employed Lawyer means any person admitted to practice law who is, was or
becomes an employee of an Insured Organization (eliminate requirement that
they be salaried and full-time).

2. The definition of Insured is amended to include any Employed Lawyer.

3. Section 4, Exclusions, is amended by adding the following:

based upon , arising from, or in consequence of any Employed Laywer's
service as a director, officer, trustee, member of any entity, or lawyer for
anyone other than the Insured Organization or an insured under a policy of
insurance issued by the Insured Organization, even if directed or requested
by the Insured Organization to serve such other entity or client. (bolded
language added)

OK

B. In order to attempt to be as broad as the prior policy (which Chubb
committed to doing), Chubb's definition of Insurance Services needs to be
amended to read as follows:

Insurance Services means only those services rendered or required to be

OK 7/11/d

Exhibit A-19




CHUBB

Effective date of
this Endorsement: September 1, 2001

FEDERAL INSURANCE COMPANY

Endorsement No:   1

To be attached to and form part of
Policy Number:   70427262

Issued to:  CALIFORNIA CASUALTY MANAGEMENT CO.

---

### ADDITIONAL INSURED ORGANIZATION ENDORSEMENT

It is agreed that:

1.   The Insured Organization shall include the following:

California Casualty Management Co.

2.   With respect to the Insured Organizations listed in 1. above, the Company shall not be liable to make any payment for Loss in connection with any Claim based upon, arising out of, relating to, in consequence of, or in any way involving:

a.   any litigation, arbitration, claims, demands, causes of action, equitable, legal or quasi-legal proceedings, decrees or judgments (collectively referred to as litigation) occurring prior to or pending as of September 1, 2001, of which the Insured has received notice or otherwise had knowledge as of such date; or

b.   any subsequent litigation arising from, or based on substantially the same matters alleged in the litigation included in a. above; or

c.   any Wrongful Act which gave rise to the prior or pending litigation included in a. above.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: September 26, 2001                    By _Robert Hamburger_
                                               Authorized Representative

RECEIVED 2002 JUN 20 P 1:45
C&/SP SPECIALTY CLAIMS

Post-It® Fax Note   7671   Date 6/20/02  pages ▶ 3
To Jeff Gunchick          From Anne Maher
Co./Dept. Claims          Co. CB/SFO/DFI
Phone #                   Phone # 415-954-0404
Fax # 213-833-5200        Fax #

ICPL Policy
Form 17-02-2539 (Ed. 6-01)

Exhibit A-20

AUG-12-2003 06:36 FROM:                                         ght FAX                    P.10/27

**Chubb Group of Insurance Companies**

15 Mountain View Road, Warren, New Jersey 07059

**DECLARATIONS
INSURANCE COMPANY
PROFESSIONAL LIABILITY POLICY**

**ITEM 1.**   Parent Organization (Name and Address):

CALIFORNIA CASUALTY MANAGEMENT CO.

1900 Alameda De Las Pulgas
San Mateo, CAL 94402

Policy Number: 70427262 (DFI)

**FEDERAL INSURANCE COMPANY**

Incorporated under the laws of Indiana,
a stock insurance company, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN 46204-1927

---

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE COMPANY TO DEFEND THOSE INSURED UNDER THE POLICY. PLEASE READ CAREFULLY.**

**ITEM 2.**   Limits of Liability:

| | | | |
|---|---|---|---|
| (A) | Each Loss | $ | 5,000,000 |
| (B) | Aggregate Limit of Liability Each Policy Period | $ | 5,000,000 |

**NOTE:**   **THE LIMITS OF LIABILITY AND ANY DEDUCTIBLE AMOUNTS ARE REDUCED OR EXHAUSTED BY DEFENSE COSTS.**

**ITEM 3.**   Coverage Applicable:

Unless "Covered" is inserted opposite a specified Insuring Clause, such Insuring Clause and any other reference thereto in this Policy shall be deemed to be deleted in their entirety.

| | | |
|---|---|---|
| Insuring Clause 1. | **Insurance Services** Professional Liability: | Covered |
| Insuring Clause 2. | **Financial Services** Professional Liability: | Covered |

**ITEM 4.**   Coinsurance Percent: 0%

**ITEM 5.**   Deductible Amount:

| | | | |
|---|---|---|---|
| Insuring Clause 1. | **Insurance Services** Professional Liability | $ | 2,000,000 |
| Insuring Clause 2. | **Financial Services** Professional Liability | $ | 2,000,000 |

**ITEM 6.**   Policy Period:   from: 12:01 a.m. on September 1, 2001
                                to: 12:01 a.m. on July 1, 2002
                                Local time at the address shown in ITEM 1.



   Exhibit A-21

HUG-12-2008 06:37 FROM:                                    9h tFAX                        P.11/27

In consideration of payment of the premium and subject to the Declarations, limitations, conditions, provisions and other terms of this Policy, the Company agrees as follows:

### Insuring Clause 1

**Insurance Services Professional Liability**

1. To pay on behalf of the **Insureds** for **Loss** which the **Insureds** shall become legally obligated to pay as a result of any **Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Reporting Period**, arising out of any **Wrongful Act** committed by the **Insureds** or any person for whose acts the **Insureds** are legally liable during or prior to the **Policy Period** while performing **Insurance Services** including the alleged failure to perform **Insurance Services**.

### Insuring Clause 2

**Financial Services Professional Liability**

2. To pay on behalf of the **Insureds** for **Loss** which the **Insureds** shall become legally obligated to pay as a result of any **Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Reporting Period**, arising out of any **Wrongful Act** committed by the **Insureds** or any person for whose acts the **Insureds** are legally liable during or prior to the **Policy Period** while performing **Financial Services** including the alleged failure to perform **Financial Services**.

### Extended Reporting Period

3. If this Policy is terminated or nonrenewed for any reason other than for nonpayment of premium, the **Parent Organization**, on behalf of the **Insureds** shall have the right, upon payment of the additional premium set forth in **ITEM 7.(A)** of the Declarations for this Policy, to an extension of the coverage granted by this Policy for the period set forth in **ITEM 7.(B)** of the Declarations for this Policy (**Extended Reporting Period**) following the effective date of termination or nonrenewal with respect to any **Claim** or **Claims** made during the **Extended Reporting Period**, but only for any **Wrongful Act** occurring prior to the effective date of termination or nonrenewal. This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due, is received by the Company within thirty (30) days following the effective date of termination or nonrenewal. Any **Claim** made during the **Extended Reporting Period** shall be deemed to have been made during the immediately preceding **Policy Period**.

   If the **Extended Reporting Period** is purchased, the entire premium noted in **ITEM 7.(A)** of the Declarations shall be deemed fully earned at the inception of the **Extended Reporting Period**.

### Exclusions

**Exclusions Applicable to Insuring Clauses 1 and 2**

4. The Company shall not be liable to make any payment for **Loss** in connection with any **Claim** made against the **Insureds**:

   a. based upon, arising from, or in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any **Insureds** prior to the Pending or Prior Date set forth in **ITEM 8.** of the Declarations, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

Exhibit A-22

## Exclusions

*Exclusions Applicable to
Insuring Clauses 1 and 2
(continued)*

b.  based upon, arising from, or in consequence of deliberate conflicts of
interest, any dishonest, deliberately criminal or deliberately fraudulent act
or omission, gaining any profit or advantage to which one is not legally
entitled, or deliberate non-compliance with any statute or related
regulation on the part of the Insureds or any person for whose actions the
Insureds are legally liable; provided, however, that this Exclusion shall
not apply unless it is established in fact that such Claim was brought about
or contributed to by any deliberate conflicts of interest, dishonest or
deliberately criminal or deliberately fraudulent act or omission, gaining any
profit or advantage to which one is not legally entitled or deliberate non-
compliance with any statute or related regulation on the part of the
Insureds or any person for whose actions the Insureds are legally liable
and provided this Exclusion shall not apply to a Claim for both fraud and
bad faith in the handling and adjusting of claims;

c.  based upon, arising from, or in consequence of:

    i.  any Wrongful Act or any fact, circumstance or situation that has
    been the subject of notice under any policy of insurance in effect
    prior to the inception date of this Policy; or

    ii. any other Wrongful Act, whenever occurring, which together with a
    Wrongful Act that has been the subject of such notice would
    constitute Interrelated Wrongful Acts;

d.  based upon, arising from, or in consequence of:

    i.  the insolvency, conservatorship, receivership, bankruptcy or
    liquidation of any banking firm; investment company; investment
    banker; broker or dealer in securities or commodities; insurance or
    reinsurance company; insurance or reinsurance agent, broker or
    intermediary; joint underwriting association; or other such
    organizations of a similar nature, or the failure to pay or suspension
    of payment by such entities in connection with Financial Services;
    or

    ii. the Financial Impairment of any Insured;

e.  based upon, arising from, or in consequence of any pension, profit sharing,
health and welfare or other employee benefit plan or trust, including but
not limited to any violation of the Employee Retirement Income Security
Act of 1974, amendments thereto or similar provisions of any federal, state
or local statutory law or common law, sponsored or established by the
Insured Organization for the Insured Individuals;

f.  for defamation, discrimination, libel, slander, wrongful termination of
employment, disparagement, sexual harassment, violation of rights of
privacy, wrongful eviction or other violation of the rights of private
occupancy, wrongful entry, false arrest, false imprisonment, malicious
prosecution, assault, battery or damage to or destruction of any tangible
property including loss of its use;

g.  for bodily injury, mental or emotional distress, sickness, disease, or death
of any person; provided, however, this Exclusion shall not apply to a
Claim based solely on the Insured's failure to provide Insurance
Services;

h.  based upon, arising from, or in consequence of:

    i.  the actual, alleged or threatened discharge, release, escape,
    dispersal or disposal of Pollutants into or on real or personal
    property, buildings, water, land or atmosphere;

P. 13/27

## Exclusions

*Exclusions Applicable to*
*Insuring Clauses 1 and 2*
*(continued)*

    ii.    any direction or request that the **Insureds** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so; including but not limited to any **Claim** for any financial **Loss** to the **Insureds**, its security holders, its creditors or others based upon, arising from, or in consequence of the matters described in i. or ii. of this Exclusion; or

    iii.    the **Insured's** failure to provide **Insurance Services** or **Financial Services** to a customer relating to any of the matters described in i. or ii. of this Exclusion;

i.    by, on behalf of, or at the behest of any **Insureds** against any other **Insureds**, or by, on behalf of, or at the behest of any business enterprise which is operated, managed or owned, directly or indirectly, in whole or in part by any **Insured**, provided, however, this Exclusion shall not apply:

    i.    where the claimant is an **Insured Individual** and was allegedly provided with or entitled to be provided with **Insurance Services** or **Financial Services** and is bringing such **Claim** solely in his capacity as a customer of the **Insured Organization**, and where such **Claim** is brought without the solicitation, assistance or participation of any other **Insureds**; or

    ii.    to a **Claim** brought or maintained by an **Insured Individual** for contribution or indemnity, if the **Claim** directly results from another **Claim** covered under this **Policy**;

j.    by, on behalf of, or at the behest of any person or concern (including but not limited to any shareholder, bondholder, policyholder or debentureholder), their estate, heirs, legal representatives or assigns, with a legal or equitable interest in any stock, bond, debenture, or other form of security of the **Insureds**, or any other ownership interest, when such **Claim** is based upon, arises out of, or pertains to any interest in said security, provided, however, that this Exclusion shall not apply where the claimant is an **Insured Individual** and was provided with or was entitled to be provided with **Insurance Services** or **Financial Services** and is bringing such **Claim** solely in his capacity as a customer of the **Insured Organization**, and where such **Claim** is brought without the solicitation, assistance or participation of any other **Insureds**;

k.    based upon, arising from, or in consequence of the underwriting of insurance, including any decisions involving the classification, selection, or renewal of risks as well as the rates and premiums charged to insure or reinsure risks;

l.    for any express representations, warranties or guarantees, estimates of construction costs, or costs exceeding estimates made in connection with **Insurance Services** or **Financial Services**;

m.    based upon, arising from, or in consequence of any **Insured's** service as a director, officer, trustee, employee, participant or member of any entity, pool or association other than the **Insured Organization**, even if directed or requested to serve such other entity;

Exhibit A-24

## Exclusions

*Exclusions Applicable to Insuring Clauses 1 and 2 (continued)*

n. based upon, arising from, or in consequence of the adequacy or inadequacy of any claim reserves of the Insured Organization or of any entity to which the Insureds provide Insurance Services or Financial Services;

o. by, on behalf of, or at the behest of, any reinsurer of any contract, risk or program of the Insureds, provided, however, this Exclusion shall not apply to any Claim brought by a reinsurer while in the capacity of a customer or prospective customer of the Insured Organization, and where such Claim is brought without the solicitation, assistance or participation of any other Insureds;

p. for any amounts which constitute benefits, coverage or amounts due or allegedly due, including any amount which constitutes interest thereon, from the Insureds as:

   i. an insurer or reinsurer under any policy or contract or treaty of insurance, reinsurance, suretyship, annuity or endowment; or

   ii. an administrator under any employee welfare benefit plan;

q. based upon, arising from, or in consequence of the purchase, sale, participation, grant, commitment, restructure, termination, transfer, repossession or foreclosure of any loan, lease, mortgage or extension of credit, or any failure to do any of the foregoing, or the rendering of advice in connection with any loan, lease, mortgage or extension of credit;

r. for any of the following activities:

   i. the underwriting, securitizing, syndicating, promoting, or market making (as defined in Section 3(A)(38) of the Securities Exchange Act of 1934 as amended) of any debt or equity security or other evidence of indebted-ness, or any loan or other extension of credit, or any other similar invest-ment banking activity;

   ii. the rendering of advice or recommendations regarding any actual, at-tempted or threatened merger, acquisition, divestiture, tender offer, proxy contest, leveraged buy-out, going private transaction, insolvency pro-ceeding, reorganization, capital restructuring, recapitalization, spin-offs, primary or secondary offerings of debt or equity securities or other evidence of indebtedness, dissolution or sale of all or substantially all of the assets or stock of a business entity or any effort to raise or furnish capital or financing for any enterprise or entity;

   iii. the rendering of a fairness opinion regarding the valuation of any assets or business entity not held by the Insureds as trustee; or

   iv. any acquisition or sale of securities by the Insureds for their own account,

   or any disclosure requirements in connection with any of the foregoing; or

s. based upon, arising from, or in consequence of the liability of a party, other than the Insureds, assumed by the Insureds pursuant to contract, except liability for Loss that the Insureds would have had in the absence of such contract.

AUG 12 2005 20:58 FROM:                                    ehtFAX            P.15/27

**Severability of**
**Exclusions**

5.  The Wrongful Act of any Insured Individual shall not be imputed to any other Insured Individual for the purposes of determining the applicability of the Exclusions in Section 4.

**Aggregate Limit of**
**Liability, Coinsurance**
**Percents and**
**Deductible Amounts**

6.  All Loss arising out of the same Wrongful Act and all Interrelated Wrongful Acts of the Insureds shall be deemed one Loss, and such Loss shall be deemed to have originated in the earliest Policy Period in which a Claim is first made against the Insureds alleging any such Wrongful Act or Interrelated Wrongful Acts.

The Company's maximum liability for each Loss, whether covered under Insuring Clause 1 or Insuring Clause 2 or both, shall be the Limit of Liability for each Loss set forth in ITEM 2.(A) of the Declarations. The Company's maximum aggregate liability for all Loss on account of all Claims first made during the same Policy Period, whether covered under Insuring Clause 1 or Insuring Clause 2 or both, shall be the Aggregate Limit of Liability for each Policy Period set forth in ITEM 2.(B) of the Declarations.

The Company's liability under Insuring Clause 1 or Insuring Clause 2 or both shall apply only to that part of each Loss which is excess of the applicable Deductible Amount set forth in ITEM 5. of the Declarations and such Deductible Amount shall be borne by the Insureds uninsured.

If a single Loss is covered in part under Insuring Clause 1 and in part under Insuring Clause 2, the maximum Deductible Amount applicable to the Loss shall be the larger of the two Deductible Amounts in ITEM 5.of the Declarations.

With respect to all Loss (excess of the Deductible Amount) originating in any one Policy Period, the Insureds shall bear uninsured that percent of all such Loss specified as the Coinsurance Percent in ITEM 4. of the Declarations, and the Company's liability hereunder shall apply only to the remaining percent of all such Loss.

In the event that more than one of the Insureds is included in the same Claim, the total amount of the available Aggregate Limit of Liability shall be apportioned in proportion to their respective Loss.

The Limit of Liability available during the Extended Reporting Period, if exercised, shall be the remaining portion, if any, of the Aggregate Limit of Liability provided by the immediately preceding Policy Period.

**Defense and**
**Settlement**

7.  Subject to this Section, it shall be the duty of the Insureds and not the duty of the Company to defend Claims made against the Insureds.

The Insured shall have the sole obligation under this Policy to retain defense counsel, which shall be subject to the approval of the Company.

The Insured agrees not to settle any Claim, incur any Defense Costs or otherwise assume any contractual obligation or admit any liability with respect to any Claim without the Company's written consent, which shall not be unreasonably withheld. The Company shall not be liable for any settlement, Defense Costs, assumed obligation or admission of liability to which it has not consented.

| | |
|---|---|
| **Defense and Settlement** (continued) | The Company shall have the right and shall be given the opportunity to effectively associate with the Insureds in the investigation, defense and settlement, including but not limited to the negotiation of a settlement, of any Claim that appears reasonably likely to be covered in whole or in part by this Policy. |
| | The Insureds agree to provide the Company with all information, assistance and cooperation which the Company reasonably requests and agree that, in the event of a Claim, the Insureds will do nothing that may prejudice the Company's position or its potential or actual rights of recovery. |
| | **Defense Costs are part of and not in addition to the Limits of Liability set forth in ITEM 2. of the Declarations for this Policy, and the payment by the Company of Defense Costs reduces such Limits of Liability.** |

| | | |
|---|---|---|
| **Reporting and Notice** | 8. | The Insureds shall, as a condition precedent to exercising their rights under this Policy, give to the Company written notice as soon as practicable, but in no event later than ninety (90) days after the termination of the Policy Period, of any Claim made against the Insureds for a Wrongful Act. |
| | | If any Insured becomes aware of circumstances which could give rise to a Claim and gives written notice of such circumstances to the Company during the Policy Period, then any Claims subsequently arising from such circumstances shall be considered to have been made during the Policy Period in which the circumstances were first reported to the Company. |
| | | The Insureds shall, as a condition precedent to exercising their rights under this Policy, give to the Company such information and cooperation as it may reasonably require, including but not limited to a description of the Claim or circumstances, the nature of the alleged Wrongful Act, the nature of the alleged or potential damage, the names of actual or potential claimants, and the manner in which the Insureds first became aware of the Claim or circumstances. |

| | | |
|---|---|---|
| **Notice** | 9. | Notice to the Company under this Policy shall be given in writing addressed to: |

Notice of Claim:

Home Office Claims Department
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, N.J. 07059

All Other Notices:

Department of Financial Institutions
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, N.J. 07059

Such notice shall be effective on the date of receipt by the Company at such address.

| | | |
|---|---|---|
| **Estates and Legal Representatives** | 10. | Coverage shall extend to Claims for the Wrongful Acts of Insured Individuals made against the estates, heirs, legal representatives or assigns of Insured Individuals who are deceased or against the legal representatives or assigns of Insured Individuals who are incompetent, insolvent or bankrupt. |

Exhibit A-27

HUG 12 2003 06:35 FROM:                                        9h tFAX                    P. 17/27

**Spousal Liability**    11.  If a Claim against an Insured Person includes a claim against the lawful spouse of such Insured Person solely by reason of such spouse's status as a spouse or such spouse's ownership interest in property which the claimant seeks as recovery for an alleged Wrongful Act of such Insured Person, all loss which the spouse becomes legally obligated to pay on account of such Claim shall be treated as Loss which the Insured Person becomes legally obligated to pay on account of the Claim made against such Insured Person. All limitations, conditions, provisions and other terms of coverage applicable to the Insured Person's Loss shall also be applicable to the spousal loss. However, coverage shall not apply to the extent any claim alleges any Wrongful Act by the Insured Person's spouse.

**Other Insurance**    12.  If any Loss arising from any Claim made against any Insured is insured under any other valid policy(ies), prior or current, then this Policy shall cover such Loss, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such Loss is in excess of the amount of payment from such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided on this Policy. This Policy is primary of any reinsurance purchased by the Insured and the Company will not assert subrogation rights against the Insureds' reinsurers.

## Changes in Exposure

**Acquisition or Creation of Another Organization**    13.  If the Insured Organization, after the inception date of this Policy:

    a.  acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a Subsidiary; or

    b.  acquires any organization by merger into or consolidation with the Insured Organization,

coverage shall apply to such organization under this Policy but only with respect to Wrongful Acts occurring after such acquisition or creation unless the Company agrees, after presentation of a complete application and all appropriate information, to provide coverage by endorsement for Wrongful Acts occurring prior to such acquisition or creation.

If the fair value of the assets of the acquired or created organization exceeds 10% of the total assets of the Insured Organization as reflected in the Parent Organization's most recent audited consolidated financial statements, or the value of the fiduciary assets under management by the acquired or created organization exceeds 10% of the total fiduciary assets under management of the Insured Organization as reflected in the Parent Organization's most recent audited consolidated financial statements, the Parent Organization shall give written notice of such acquisition or creation to the Company as soon as practicable together with such information as the Company may require and shall pay any reasonable additional premium required by the Company.

HUG-12-2008 06:59 FROM:                                     RightFAX                    P.18/27

## Changes in Exposure
(continued)

**Acquisition of Parent Organization By Another Organization**

14.  If:

    a.  the **Parent Organization** merges into or consolidates with another organization; or

    b.  another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organizations(s) or person(s) of more than 50% of the outstanding securities representing the present right to vote for the election of directors of the **Parent Organization**; or

    c.  the **Insured Organization** completely ceases to actively engage in its primary business ("cessation"); or

    d.  **Financial Impairment** of the **Insured Organization** occurs,

coverage under this Policy shall continue until termination of this Policy, but only with respect to **Claims** for **Wrongful Acts** occurring by the **Insureds** prior to such merger, consolidation, acquisition, cessation or **Financial Impairment**. The **Parent Organization** shall give written notice of such merger, consolidation, acquisition, cessation or **Financial Impairment** to the Company as soon as practicable and shall provide such information as the Company may require. The full premium, including any installments due for the **Policy Period** shall be deemed fully earned immediately as of the effective date of any event outlined in a. through d. above.

**Cessation of Subsidiaries**

15.  In the event an organization ceases to be a **Subsidiary** before or after the inception date of the Policy, coverage with respect to such **Subsidiary** and its **Insured Individuals** shall continue until termination of this Policy but only with respect to **Claims** for **Wrongful Acts** occurring prior to the date such organization ceased to be a **Subsidiary**.

**Representations and Application Form**

16.  It is agreed by the **Insureds** that the particulars and statements contained in the **Application Form** and the attachments and materials submitted with the **Application Form** (which shall be retained on file by the Company and shall be deemed attached hereto, as if physically attached hereto) are true and are the basis of the Policy and are to be considered as incorporated in and constituting a part of this Policy. It is further agreed by the **Insureds** that such particulars and statements are material to the decision to issue this Policy and that the Policy is issued in reliance upon the truth of such particulars and statements.

**Investigation and Settlement**

17.  The Company may make any investigation it deems necessary and may make any settlement of a **Claim** it deems expedient with the written consent of the **Parent Organization**, on behalf of the **Insureds**, which consent shall not be unreasonably withheld.



**Subrogation**

18.  In the event of any payment under this Policy, the Company shall be subrogated, to the extent of such payment, to all the **Insureds'** rights of recovery, and the **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit in the name of the **Insureds**.

Exhibit A-29

**Action Against the Company**

19. No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or organization shall have any right under this Policy to join the Company as a party to any action against the Insureds to determine the Insureds' liability nor shall the Company be impleaded by the Insureds or their legal representatives.

**Bankruptcy or Insolvency**

20. Bankruptcy or insolvency of an Insured or the estate of an Insured Individual shall not relieve the Company of its obligations nor deprive the Company of its rights under this Policy.

**Authorization Clause**

21. By acceptance of this Policy, the Parent Organization agrees to act on behalf of all Insureds with respect to the giving and receiving of notice of Claim or termination, the payment of premiums and the receiving of any return premiums that may become due under this Policy, the negotiation, agreement to and acceptance of endorsements, and the giving or receiving of any notice provided for in this Policy, and the Insureds agree that the Parent Organization shall act on their behalf.

**Alteration or Assignment**

22. No change in, modification of, or assignment of interest under this Policy shall be effective except when made by a written endorsement to this Policy which is signed by a duly authorized representative of the Company.

**Termination of Policy**

23. This Policy shall terminate at the earliest of the following times:

a. ten (10) days after receipt by the Parent Organization of written notice from the Company of termination resulting from non-payment of premium;

b. upon receipt by the Company of written notice of termination from the Parent Organization;

c. upon expiration of the Policy Period as set forth in ITEM 6. of the Declarations of this Policy;

d. sixty (60) days after receipt by the Parent Organization of the Company's notice of nonrenewal. Such notice shall be in conformance with applicable state laws and regulations; or

e. at such other time as may be agreed upon by the Company and the Parent Organization.

The Company shall refund the pro rata unearned premium if the Policy is terminated.

**Valuation and Foreign Currency**

24. All premiums, limits, deductibles, Loss and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of Loss under this Policy is stated in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in The Wall Street Journal on the date the final judgment is entered, the amount of the settlement is agreed upon or the other element of Loss is due, respectively.

AUG-12-2003 06:40 FROM:                              Th gh tFAX              P.20/27

**Territory**          25.   Coverage shall extend to Claims anywhere in the world.

**Definitions**        26.   When used in the Policy:

Claim means:

a.   a written demand for monetary damages;

b.   a civil proceeding commenced by the service of a complaint or similar pleading;

c.   a criminal proceeding commenced by the return of an indictment; or

d.   a formal administrative or regulatory proceeding brought by or on behalf of policyholders or customers commenced by the filing of a notice of charges, formal investigative order or similar document,

brought by or on behalf of a customer of the Insured against any Insured for a Wrongful Act or Interrelated Wrongful Act, including any appeal therefrom.

A Claim shall be deemed to have been made against the Insureds on the date any Insured first received written demand for monetary damages, the date that the judicial or administrative proceeding is served upon any Insured in any state, provincial or federal court or administrative agency, or the date any Insured first received written notice regarding the filing of a notice of charges, formal investigative order or similar document from a state, provincial or federal regulatory agency.

Defense Costs means that part of Loss consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers of employees of the Insured Organization) incurred in defending or investigating Claims and the premium for appeal, attachment or similar bonds.

Financial Impairment means the status of the Insured Organization resulting from:

a.   the appointment by any state, provincial or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the Insured Organization; or

b.   the Insured Organization becoming a debtor in possession.

Financial Services means only those services performed or required to be performed by or on behalf of the Insureds for or on behalf of a customer of the Insureds, pursuant to an agreement between such customer and the Insureds for a fee, commission or other monetary consideration or other remuneration which inures to the benefit of the Insureds, provided, however, that Financial Services shall not include:

a.   managed care; medical or health care services; real estate appraisal, development or management services; architectural or construction management services; the practice of law or the rendering of legal services;

b.   services performed by any entity of which the Insureds shall have acquired ownership or control as security for a loan or other extension of credit; or

c.   services included in the definition of Insurance Services.



Exhibit A-31

**Definitions**
(continued)

**Insurance Services** means only those services rendered or required to be rendered by or on behalf of the **Insureds** solely in the conduct of the **Insureds'** claims handling and adjusting; insurance risk management; safety engineering, inspection and loss control operations; personal injury rehabilitation operations; salvage operations; recovery subrogation services; premium financing operations; actuarial consulting services; or insurance pool management; provided, however, that **Insurance Services** shall not include:

a.    managed care; medical or health care services; real estate appraisal, development or management services; architectural or construction management services; the practice of law or the rendering of legal services;

b.    services performed by any entity of which the **Insureds** shall have acquired ownership or control as security for a loan or other extension of credit; or

c.    services included in the definition of **Financial Services**.

**Insured(s)** means the **Insured Organization** and the **Insured Individuals**, or any one of them.

**Insured Individuals** means any past, present or future director, officer, trustee, (in the United States of America, or any equivalent executive position under applicable law in any country other than the United States of America) or employee of the **Insured Organization** in his/her capacity as such.

**Insured Organization** means the **Parent Organization** and any **Subsidiary**.

**Interrelated Wrongful Acts** means all causally connected **Wrongful Acts**.

**Loss** means the total amount which the **Insured** becomes legally obligated to pay as a result of each **Claim** or for all **Claims** in each **Policy Period** and the **Extended Reporting** period, if exercised, made against the **Insureds** for **Wrongful Acts** for which coverage applies, including, but not limited to, compensatory damages, punitive or exemplary damages multiplied damages, judgments, settlements, costs and **Defense Costs**.

For the purpose of resolving any dispute between the **Company** and the **Insured** regarding whether the punitive or exemplary damages or the multiplied portion of any multiplied damage award specified above are insurable under this Policy, the law of the jurisdiction most favorable to the insurability of those damages shall control, provided that such jurisdiction is where:

a.    those damages were awarded or imposed;

b.    any **Wrongful Act** occurred for which such damages were awarded or imposed;

c.    any **Insured Organization** is incorporated or has its principal place of business; or

d.    the **Company** is incorporated or has its principal place of business.

**Loss** does not include:

a.    regular or overtime wages, salaries or fees of the directors, officers or employees of the **Insured Organization**;

Exhibit A-32

**Definitions**
(continued)

b.   loss of the actual money, securities, property or other items of value in the custody or control of the **Insureds**; or diminution in value or damages resulting from the diminution in value of money, securities, property or any other items of value unless caused by a **Wrongful Act** of the **Insureds** in the execution or implementation of investment advice or investment decisions;

c.   fines or penalties imposed by law or any other matters or sanctions which may be deemed uninsurable under the law pursuant to which this **Policy** shall be interpreted;

d.   any amounts which constitute premiums; fees and charges; return or refund of premiums; commissions or taxes; or loss arising out of any commingling of funds; or

e.   principal, interest, or other moneys either paid, accrued or due as the result of any loan, lease or extension of credit.

**Parent Organization** means the entity that is named in ITEM 1. of the Declarations, as legally constituted at the inception date of this **Policy**.

**Policy Period** means the period of time specified in ITEM 6. of the Declarations, subject to prior termination in accordance with Section 23. Regardless of whether this period is less than, equal to or greater than one year, the Limits of Liability specified in ITEM 2. of the Declarations shall be the Company's maximum limit of liability under this **Policy** for the entire period.

**Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or a state, county, municipality or locality counterpart thereof. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

**Subsidiary**, means any organization that, at the inception date of this **Policy**, is named in the Application Form and of which more than 50% of the outstanding securities or voting rights representing the present right to vote for election of directors is owned or controlled by the **Parent Organization** either directly or through one or more of its **Subsidiaries** or any entity of which more than 50% of the outstanding securities or voting rights representing the right to vote for election of directors was owned or controlled by the **Parent Organization** either directly or through one or more of its **Subsidiaries** prior to the inception date of this **Policy**.

**Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted, or allegedly committed or attempted, by the **Insureds** or any person for whose acts the **Insureds** are legally liable, which arises solely from the **Insureds** or any person for whose acts the **Insureds** are legally liable, performing **Insurance Services** or **Financial Services** including al- leged failure to perform **Insurance Services** or **Financial Services**.

For the purposes of these definitions, the singular includes the plural and the plural includes the singular, unless otherwise indicated.

Exhibit A-33

HUG-12-2003 08:41 FROM:                                    RightFAX                      P.23/27

Effective date of
this Endorsement: September 1, 2001                **FEDERAL INSURANCE COMPANY**

                                                   Endorsement No:   2

                                                   To be attached to and form part of
                                                   Policy Number:    70427262

Issued to:  CALIFORNIA CASUALTY MANAGEMENT CO.

---

#### EMPLOYED LAWYERS PROFESSIONAL LIABILITY EXTENSION ENDORSEMENT

| NOTICE: | THIS POLICY FORM AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. |
|---|---|

1.  It is agreed that Section 26., Definitions, is amended by adding the following:

    **Employed Lawyer** means any person admitted to practice law who is, was or becomes a full-time, salaried employee of an **Insured Organization.**

2.  The definition of **Insured** is amended to include any **Employed Lawyer.**

3.  Section 4., Exclusions, is amended by adding the following:

    T.    based upon, arising from, or in consequence of any **Employed Lawyer's** service as a director, officer, trustee, member of any entity, or lawyer for anyone other than the **Insured Organization**, even if directed or requested to serve such other entity or client.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: September 26, 2001                       By _Robert Hamburger_____
                                                          Authorized Representative

ICPL Policy
Form 17-02-2585 (Ed. 1-01)
2-14179 (NYFTZ)

                                                                        Exhibit A-34

Effective date of
this Endorsement: September 1, 2001

**FEDERAL INSURANCE COMPANY**

Endorsement No:   3

To be attached to and form part of
Policy Number:     70427262

Issued to:  CALIFORNIA CASUALTY MANAGEMENT CO.

---

### PREMIUM ENDORSEMENT

It is agreed that:

1.    The premium for this Policy for the period September 1, 2001 to July 1, 2002 is:

Premium: ($ 249,000)

2.    This premium is subject to change during the period in 1. above if amendments are added to this
Policy at the request of the Parent Organization.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: September 26, 2001

By_____
                Authorized Representative

ICPL Policy
Form 17-02-2557 (Ed. 1-01)

Exhibit A-35

HUG-12-2005 06:42 FROM:    T   gh tFAX    P.25/27

# Notice To Our Producers
## California Insurance Guarantee Association Assessments

The California Insurance Guarantee Association assesses insurers for funds to cover the claim liabilities of insolvent insurers.   The Guarantee Law requires insurers to recoup the assessments paid to the association through a surcharge on premiums for insurance policies to which the law applies.

Policies effective January 1, 1995, and all corresponding transactions may reflect this surcharge.  On return premiums and cancellations, the surcharge will be returned only if previously collected.   The charge will be shown as a separate item on both policies and bills.  It will be identified as "CIGA Surcharge".   If applicable, this surcharge must be paid with the first premium installment.   PLEASE NOTE: By law the surcharge is not considered premium, therefore, no commission is payable on this item.

If you have any questions or require additional information about the surcharge, please contact your local underwriter.

Form 99-10-0214 (Ed.4-95)

Exhibit A-36

**California Casualty**

NEW204 115587104    FILE COPY                                          0006
FRCO 3
*****
                                              HOMEOWNER POLICY
              RENEWAL DECLARATION * * EFFECTIVE 09/05/00

| Policy Number | Policy Period 12:01 AM standard time at the insured location as stated herein Effective · Expiration | Coverage is Provided By | Agency |
|---|---|---|---|
| 204 1155871 | 09/05/00 / 09/05/01 | CA CASUALTY INSURANCE CO | 150290000 |

| Addressee | Named Insured |
|---|---|
| HAROLD, N.JAMES & D.LEE<br>1160 GLEN AULIN CT<br>CARMICHAEL, CA  95608 | HAROLD, N.JAMES & D.LEE<br>1160 GLEN AULIN CT<br>CARMICHAEL, CA          95608 |

THE PREMISES COVERED BY THIS POLICY IS LOCATED
    1160 GLEN AULIN CT CARMICHAEL, CA 95608.

RATING INFORMATION— AUTOMATIC VALUE UP AT RENEWAL, FRAME, PRIMARY RESIDENCE,
    PROTECTION CLASS 3, TERRITORY 55, $250 SECTION I LOSS DEDUCTIBLE, 1 FAMILY,
    PREMIUM GROUP 322, OUTSIDE CITY LIMITS.

COVERAGE AT THE ABOVE DESCRIBED LOCATION IS PROVIDED ONLY WHERE A LIMIT OF
LIABILITY IS SHOWN OR A PREMIUM IS STATED

| SECTION I COVERAGE | LIMIT OF LIABILITY | PREMIUMS |
|---|---|---|
| A. DWELLING | $325,000 | $1,584.00 |
| B. OTHER STRUCTURES | $32,500 | |
| C. PERSONAL PROPERTY | $243,750 | INCLUDED |
| D. LOSS OF USE | $65,000 | |
| SECTION II COVERAGE | | |
| E. PERSONAL LIABILITY | $500,000 EACH OCCURRENCE | |
| F. MEDICAL PAY. TO OTHERS - | $2,000 EACH PERSON | $40.00 |
| TOTAL BASIC PREMIUM | | $1,584.00 |

ADDITIONAL PREMIUMS
  H070 LIABILITY EXTENDED TO PROPERTY DESCRIBED HEREIN                        $10.00
  H0314 DWELLING REPLACEMENT COST                                             $1.00
  H061 PERSONAL ARTICLES FLOATER                                             $50.00
          TOTAL ADDITIONAL PREMIUMS - - - - - - - - - -                      $61.00
          SUB-TOTAL ANNUAL PREMIUM - - - - - - - - - -                    $1,645.00
POLICY PERIOD 12:01 AM    STANDARD TIME AT THE RESIDENCE PREMISES.

    MORTGAGEE #0392319800
       SUMITOMO BANK OF CALIFORNIA
       320 CALIFORNIA STREET 7TH FL.
       SAN FRANCISO, CA          94104

                    CONTINUED ON NEXT PAGE

                    * FOR POLICY SERVICE/CLAIMS CONTACT *

                    FOR SERVICE, CALL 800-800-9410
                    FOR CLAIMS, CALL 800-800-9410

UP-1144 (8/94) Billing information will be mailed under Separate Cover

                                              Exhibit A-37

I, _Danny Kleha, underwriting analyst_
   (Name)         (Title)

certify under penalty of perjury that this is a true and correct duplicate of the original _DEC PAGE_ as it existed on the date of certification shown below. This is issued as a duplicate and does not constitute additional or contributing insurance.

Policy # 204 1155 871 Date of Cert. 6/28/02

Signature _Danny Kleha_ Date 6/28/02

San Mateo, California

California Casualty

*NEW204 115587104    FILE COPY
FRCO                                                                    0006

HOMEOWNER POLICY
RENEWAL DECLARATION * * EFFECTIVE 09/05/00

| Policy Number | Policy Period 12:01 A.M. standard Time at the Insured location as stated herein<br>Effective    Expiration | Coverage is Provided By | Agency |
|---|---|---|---|
| 204 1155871 | 09/05/00    09/05/01 | CA CASUALTY INSURANCE CO | 150290000 |

| Addressee | Named Insured |
|---|---|
| | HAROLD N JAMES & D LEE<br>1160 GLEN AULIN CT<br>CARMICHAEL CA                    95608 |

FORMS AND ENDORSEMENTS - UP-426 05/95, HO300CA 05/95, HO996 06/84, HO-966 05/95,
  HO-290 05/95, HO-216 07/82, HO-70 07/90, HO-90 07/84, HO-314 05/95,
  HO-61 04/88, HO-322 07/90.

THIS POLICY DOES NOT INCLUDE BUILDING CODE UPGRADE COVERAGE.

THIS POLICY DOES NOT PROVIDE EARTHQUAKE COVERAGE

07/12/00
DATE

DESCRIPTION OF ADDITIONAL COVERAGES

NON-SMOKER DISCOUNT

LIABILITY EXTENDED TO PREMISES AS LISTED BELOW
  NUMBER OF FAMILIES IS 1. MEDICAL PAYMENTS DO NOT APPLY. TERRITORY IS 03.
  1836 BEVERLY WAY, SACRAMENTO, CA 95818

WORKERS' COMPENSATION
  COVERAGE FOR OCCASIONAL SERVANT.

PREMISES ALARM OR FIRE PROTECTION SYSTEM DISCOUNT
  COVERAGE APPLIES. TYPE 2 PROTECTIVE DEVICES.
  SMOKE ALARM & BURGLAR ALARM

CONTINUED ON NEXT PAGE

Exhibit A-39

California Casualty

*NEW204 115587104 FILE COPY 0006

FRCO

HOMEOWNER POLICY

RENEWAL DECLARATION * * EFFECTIVE 09/05/00

| Policy Number | Policy Period 12:01 A.M. standard Time at the Insured location as stated herein. Effective | Expiration | Coverage is Provided By | Agency |
| --- | --- | --- | --- | --- |
| 204 1155871 | 09/05/00 | 09/05/01 | CA CASUALTY INSURANCE CO | 150290000 |

| Addressee | Named Insured |
| --- | --- |
| | HAROLD, N. JAMES & D. LEE<br>1160 GLEN AULIN CT<br>CARMICHAEL, CA 95608 |

DESCRIPTION OF ADDITIONAL COVERAGES

PERSONAL PROPERTY REPLACEMENT COST

DWELLING REPLACEMENT COST

FURS-SCHEDULED COVERAGE-DESCRIPTION ON FILE
AMOUNT OF LIABILITY IS $ 12500, TERRITORY IS 03.
SEE SCHEDULE

(Name) (Title)
certify under penalty of perjury that this is a true and correct duplicate of the original as it existed on the date of certification shown below. This is issued as a duplicate and does not constitute additional or contributing insurance.
Policy # ______ Date of Cert. ______
Signature ______ Date ______
San Mateo, California

---S T A T E M E N T O F A C C O U N T--- 2041155871 0403
HAROLD, N. JAMES & D. LEE

TOTAL AMOUNT.................. $1,645.00

THANK YOU FOR LETTING US SERVE YOU

UP-1144 (8/94) Billing information will be mailed under Separate Cover

Exhibit A-40

I, _Danny Kiehn_, underwriting analyst
   (Name)                    (Title)

certify under penalty of perjury that this is
a true and correct duplicate of the original
_Homeowners Policy_ as it existed on the date of
certification shown below. This is issued as
a duplicate and does not constitute additional
or contributing insurance.

Policy # 204 115587 | Date of Cert. 6/28/02

Signature _____ Date 6/28/02

San Mateo, California

**Exhibit A-41**

YOUR PLAIN LANGUAGE

HOMEOWNERS
POLICY

UP-426 (5/95)

HOMEOWNERS POLICY

California Casualty Insurance Co.
California Casualty Indemnity Exchange
California Casualty & Fire Insurance Company

**HOME OFFICES: SAN MATEO, CALIFORNIA**

**YOUR HOMEOWNERS POLICY
QUICK REFERENCE**

DECLARATIONS PAGE

Your Name
Location of Your Residence
Coverages Applicable to Your Policy
Amounts of Insurance in Your Policy
Your Deductible

Beginning
On Page

AGREEMENT ...................................1

DEFINITIONS ...................................1

SECTION I
YOUR
PROPERTY

LOSS DEDUCTIBLE .......................3

COVERAGES ....................................3
    Coverage A - Dwelling ...................3
    Coverage B - Other Structures ......4
    Coverage C - Personal Property ...4
    Coverage D - Loss of Use .............6
ADDITIONAL COVERAGES ...........7
    Debris Removal .............................7
    Reasonable Repairs .....................8
    Trees, Shrubs and Plants .............8
    Fire Department Service Charge ...8
    Property Removed .........................9
    Credit Card, Fund Transfer Card ...9
    Collapse ........................................10
    Lost Luggage ................................11
    Loss Assessment..........................11
    Glass or Safety Glazing Material .11

PERILS INSURED AGAINST......... 12
    Coverage A - Dwelling ................12
    Coverage B - Other Structures ....12
    Coverage C - Personal Property .13

UP-426 (5/95)

Exhibit A-43

EXCLUSIONS ....... ..................16

CONDITIONS .........................19
    Insurable Interest ......................19
    Duties After Loss .........................19
    Loss Settlement ..........................20
    Loss to a Pair or Set....................22
    Glass Replacement ................... 22
    Appraisal .....................................22
    Other Insurance ...........................23
    Suit Against Us ...........................23
    Our Option ................................. 23
    Loss Payment ..............................23
    Abandonment of Property ...........23
    Mortgage Clause.........................23
    No Benefit to Bailee.................... 24
    Nuclear Hazard Clause................24
    Volcanic Eruption Period .............25

SECTION II     COVERAGES .................................25
YOUR              Coverage E - Personal Liability ...25
LIABILITY          Coverage F - Medical Payments  25

                  EXCLUSIONS ..............................26

                  ADDITIONAL COVERAGES ...........31
                      Claim Expenses ...........................31
                      First Aid Expenses.......................31
                      Damage to Property of Others.....32
                      Loss Assessment.........................32

                  CONDITIONS ................................33
                      Limit of Liability ...........................33
                      Severability of Insurance .............33
                      Duties After Loss .........................33
                      Duties of an Injured Person ........34
                      Payment of Claim .......................34
                      Suit Against Us ...........................34
                      Bankruptcy of an Insured.............35
                      Other Insurance ...........................35

SECTION I      CONDITIONS ................................35
and                 Policy Period ...............................35
SECTION II     Concealment or Fraud .................35
                      Liberalization Clause....................35
                      Waiver or Change of Policy .........35
                      Cancellation ................................36
                      Non-Renewal ...............................37
                      Assignment. ...............................37
                      Subrogation ................................37

    Death ..........................................37
    Conformity to Statute .................37

PARTICIPATING AND RECIPROCAL
PROVISIONS ................................38

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Copyright, Insurance Services Office, Inc., 1989, 1990, 1994

UP-426 (5/95)

UP-426 (5/95)

Exhibit A-44

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **"Bodily injury"** means bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom.

2. **"Business"** means any full-time or part-time trade, profession, occupation or activity, engaged in for monetary or other compensation. This definition includes the providing of home day care services to a person other than an insured. Mutual exchange of home day care services or the providing of home day care services by an **insured** to a relative of an **insured** is not considered a **business**.

3. **"Insured"** means you and the following residents of your household:

   a. Your relatives;

   b. Any other person under the age of 21 who is in the care of any person named above.

   Under Section II, **"insured"** also means:

   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. A person or organization using or having custody of these animals or watercraft in the course of any **business** or without permission of the owner is not an **insured**;

   d. With respect to any vehicle to which this policy applies:

      (1) ...n ...rson while engaged in your employment or the employment of any person included in 3.a or 3.b.; or

      (2) Any other person using the vehicle on an **insured location** with your permission.

4. **"Insured location"** means:

   a. The **residence premises**;

   b. The part of any other premises, other structures and grounds used by you as a residence and:

      (1) Which is shown in the Declarations; or

      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with the premises included in 4.a. or 4.b. above;

   d. Any part of a premises not owned by an **insured** and where an **insured** is temporarily residing;

   e. Vacant land, other than farm land, owned by or rented to an **insured**;

   f. Land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

   g. Individual or family cemetery plots or burial vaults of an **insured**;

   h. Any part of a premises occasionally rented to an **insured** for other than **business** purposes.

5. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. **Bodily injury**; or

   b. **Property damage**.

6. **"Property damage"** means physical injury to or destruction of tangible property, including loss of use of this property.

7. "Residence employee" means an employee of an

Exhibit A-45

insured who performs du____ connection with the maintenance or use of the re_____ ence premises, including household or domestic services, or who performs duties elsewhere of a similar nature not in connection with the **business** of an **insured**.

8. "Residence premises" means:

a. The one or two family dwelling, other structures, and grounds; or

b. That part of any other building:

where you reside and which is shown as the "**residence premises**" in the Declarations.

---

### SECTION I - LOSS DEDUCTIBLE

---

In case of loss under Section I of this policy, we cover only that part of the loss over the deductible stated in the Declarations. The deductible does not apply to Coverage D - Loss of Use.

---

### SECTION I - COVERAGES

---

### COVERAGE A - Dwelling

We cover:

1. The dwelling on the **residence premises** shown in the Declarations used principally as a private residence, including structures attached to the dwelling;

2. Materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**; and

3. Wall-to-wall carpeting fastened to the dwelling.

This coverage does not apply to land, including land on which the dwelling is located.

### COVERAGE B - Other Structures

We cover other structures on the **residence premises**, separated from the dwelling by clear space. This coverage includes:

1. Structures connected to the dwelling by only a fence, utility line, or similar connection;

2. Wall-to-wall carpeting fastened to the structure; and

3. Fences, driveways, and walks on the **residence premises**.

We do not cover other structures:

1. Used in whole or in part for **business** purposes; or

2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

This coverage does not apply to land, including land on which other structures are located.

### COVERAGE C - Personal Property

We cover personal property owned or used by an **insured** while it is anywhere in the world. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied by an **insured**. In addition, we will cover at your request, personal property owned by a guest or a **residence employee**, while the property is in any residence occupied by an **insured**.

Our limit of liability for personal property usually situated at an **insured's** residence, other than the **residence premises**, is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each following numbered category is the total limit for each loss for all property in that numbered category.

1. $200 on money, bank notes, bullion, gold other than

goldware, silver other than ⌐ ware, platinum, coins and medals.

2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps.

3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard motors.

4. $1000 on trailers not used with watercraft.

5. $1000 on grave markers.

6. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

7. $2500 for loss by theft of silverware and goldware.

   Silverware and goldware include:

   a. Platedware, flatware, holloware, tea sets, trays, trophies and the like;

   b. Other utilitarian items made of or including silver or gold.

8. $5000 for loss by theft of firearms.

9. $200 on property used at any time or in any manner for any **business** purpose except property subject to the Special Limit of Liability in 10. below.

10. $5,000 on computers and electronic data processing equipment, except that property used at any time or in any manner for the purpose of sales, repair, service, delivery or storage of computers or electronic data processing equipment is subject to the Special Limit of Liability in 9. above.

11. $10,000 on loss by theft of rugs, carpets, or other woven or knit floor coverings or wall hangings, subject to a limit of $2,500 on the theft of any one article.

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or any other insurance;

2. Animals, birds or fish;

3. Motor vehicles or all other motorized land con-

veyance ⌐ is includes:

   a. Equipment and accessories;

   b. Any device or instrument for the transmitting, recording, receiving or reproduction of sound or pictures which is operated by power from the electrical system of motor vehicles or other motorized land conveyances;

   c. Accessories or antennas; or tapes, wires, records, discs or other media for use with any device or instrument described in paragraph b. above.

   We do cover vehicles or conveyances not subject to motor vehicle registration which are:

   a. Used to service an **insured's** residence; or

   b. Designed for assisting the handicapped.

4. Aircraft and parts;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an **insured**;

6. Property contained in an apartment regularly rented or held for rental to others by an **insured**;

7. Property rented or held for rental to others while away from the **residence premises**;

8. (a) Books of account, drawings or other paper records; or

   (b) Electronic data processing tapes, wires, records, discs or other software media;

   containing information or data used at any time or in any manner for any **business** purpose. But, we do cover the cost of blank or unexposed records or media.

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

**COVERAGE D - Loss of Use**

The limit of liability for Coverage D is the total limit for all the following coverages.

1. If a loss covered under this        n makes that part of the **residence premises** where you reside uninhabitable, we cover:

    **Additional Living Expense**, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living;

    Payment shall be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the **residence premises** rented to others or held for rental by you uninhabitable, we cover:

    **Fair Rental Value**, meaning the fair rental value of that part of the **residence premises** rented to others or held for rental by you less any expenses that do not continue while the premises is uninhabitable.

    Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the **residence premises** as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense or Fair Rental Value loss as provided under 1. and 2. above for a period not exceeding two weeks during which use is prohibited.

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

---

## ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

    a. Debris of covered property if a Peril Insured Against causes the loss; or

    b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property

cont        in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense for the removal of fallen trees from the **residence premises** if:

    a. Coverage is not afforded under Additional Coverage 3. Trees, Shrubs and Other Plants for the peril causing the loss; or

    b. The tree is not covered by this policy;

provided the tree damages covered property and a Peril Insured Against under Coverage C causes the tree to fall. Our limit of liability for this coverage will not be more than $500 in the aggregate for any one loss.

2. **Reasonable Repairs.** We will pay the reasonable cost incurred by you for necessary repairs made solely to protect covered property from further damage provided coverage is first afforded for the peril that has caused the loss which is then apparent. We will not pay for repairs of damage caused by an excluded or non-covered peril. We will not pay for repairs made as a preventative measure prior to an actual loss by a covered peril. This coverage does not increase the limit of liability applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns on the **residence premises**, for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism or malicious mischief or Theft. The limit of liability for this coverage shall not exceed 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants and lawns nor more than $500 for any one tree, shrub or plant. We do not cover property grown for **business** purposes.

This coverage is additional insurance.

4. **Fire Department Service Charge** (Does not apply in Arizona). We will pay up to $250 for your liability assumed by contract or agreement for fire department

Exhibit A-48

charges incurred when the department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** Covered property while being removed from a premises endangered by a Peril Insured Against and for not more than 30 days while removed is covered for direct loss from any cause. This coverage does not change the limit of liability applying to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to $1000 for:

a. The legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards issued to or registered in an **insured's** name;

b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an **insured's** name;

c. Loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

d. Loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use by a resident of your household, a person who has been entrusted with the credit card or fund transfer card or any person if an **insured** has not complied with all terms and conditions under which the credit card or fund transfer card is issued.

We do not cover loss arising out of **business** pursuits or dishonesty of an **insured**.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

No deductible applies to this coverage.

Defense.

a. We may make any investigation and settle any claim or suit that we decide is appropriate.

Our obligation to defend any claim or suit ends when the amount we pay for the loss equals our limit of liability.

b. If a suit is brought against an **insured** for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c. We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

a. Perils Insured Against in Coverage C - Personal Property. These perils apply to covered building and personal property for loss insured by this Additional Coverage, 7. Collapse;

b. Hidden decay;

c. Hidden insect or vermin damage;

d. Weight of contents, equipment, animals or people;

e. Weight of rain which collects on a roof; or

f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b, c, d, e and f unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability

9    UP-426 (5/95)    10    UP-426 (5/95)

Exhibit A-49

applying to the damaged cov... ...roperty.

8. **Lost Luggage.** We cover lost luggage and personal property while in the care, custody or control of a commercial passenger carrier. We will pay up to $500 for any one incident subject to the policy deductible. A claim must be submitted to the commercial passenger carrier within 30 days of loss, and this coverage shall be excess over any insurance provided by the carrier. This extension of coverage does not apply to loss of money, checks or money orders.

9. **Loss Assessment.** We will pay up to $1000 for your share of any loss assessment charged during the policy period against all unit owners by a corporation or association of property owners. This only applies when the assessment is made as a result of each direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under Coverage C - Personal Property, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises.**

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

10. **Glass or Safety Glazing Material.**

We cover:

a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

This coverage does not include loss on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

Loss for damage to glass will be settled on the basis of replacement with safety glazing material when required by ordinance or law.

This coverage does not increase the limit of liability

that appl... ...he damaged property.

---

## SECTION I - PERILS INSURED AGAINST

---

## COVERAGE A - DWELLING and

## COVERAGE B - OTHER STRUCTURES

We insure for direct physical loss to the property described in Coverages A and B except damage caused by:

1. Collapse, other than as provided in Additional Coverage 7;

2. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

   a. Maintain heat in the building; or

   b. Shut off the water supply and drain the system and appliances of water;

3. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

   a. Fence, pavement, patio or swimming pool;

   b. Foundation, retaining wall or bulkhead;

   c. Pier, wharf or dock;

4. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied;

5. Vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

6. Continuous or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from with-

1  STROOCK & STROOCK & LAVAN LLP
   MICHAEL F. PERLIS (State Bar No. 095992)
2  EMAIL: MPERLIS@STROOCK.COM
   ALLAN S. COHEN (State Bar No. 115532)
3  EMAIL: ACOHEN@STROOCK.COM
   2029 Century Park East
4  Los Angeles, CA 90067-3086
   Telephone: 310-556-5800
5  Facsimile: 310-556-5959

6

7  Attorneys for Defendant
   FEDERAL INSURANCE COMPANY

8          UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA

10

11  CALIFORNIA CASUALTY                    Case No.
12  INSURANCE COMPANY,
                                           NOTICE OF REMOVAL OF
13          Plaintiffs,                    ACTION UNDER 28 U.S.C.
                                           SECTION 1441(b)
14      vs.

15  FEDERAL INSURANCE COMPANY,
16  DOES 1-10, ROES 1-10, AND MOES 1-
    10, inclusive
17
18          Defendants.
19

20      TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

21  NORTHERN DISTRICT OF CALIFORNIA:

22      PLEASE TAKE NOTICE that Defendant Federal Insurance Company

23  ("Federal") hereby removes to this Court the State Court action described below:

24      1.      On April 30, 2008 an action was commenced in the Superior Court of

25  the State of California in and for the County of San Mateo entitled *California*

26  *Casualty Insurance Company v. Federal Insurance Company, Does 1-10, Roes 1-10*

27  *and Moes 1-10, inclusive*, as Case No. CIV4172452. A copy of the Summons and

28  Complaint is attached hereto as Exhibit "A".

LA 51052322

2.    The date upon which Defendant Federal received a copy of said Summons and Complaint was May 6, 2008 when Defendant Federal was served with the Summons and Complaint from the State Court action.

## JURISDICTION

3.    This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. Section 1332, and is one which may be removed to this Court by Defendant Federal pursuant to the provisions of 28 U.S.C. Section 1441(b) in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000.00 exclusive of interest and costs because Plaintiff alleges damages in excess of $2,000,000.00. See, Exhibit "A" at paragraph 16 of the Complaint and paragraph 2 of the Prayer for Relief.

4.    Complete diversity of citizenship exists in that: Plaintiff California Casualty Insurance Company is a corporation incorporated under the laws of the State of California and having its principal place of business in the State of California. Defendant Federal is a corporation incorporated under the laws of the State of Indiana and having its principal place of business in the State of New Jersey.

5.    Defendants Does 1-10, Roes 1-10 and Moes 1-10 are all fictitiously named defendants whose citizenship, for purposes of removal, is disregarded. 28 U.S.C. Section 1441(a).

## INTRADISTRICT ASSIGNMENT

6.    This division of the United States District Court for the Northern District of California is the proper Court in which to remove the State Court action as this Court has jurisdiction over cases arising in the County of San Mateo, California. *Local Rule,* 3-2(d) for the Northern District of California.

LA 51052327

1    WHEREFORE, Federal Insurance Company hereby gives notice that the

2  above-referenced action is removed in its entirety from the Superior Court of the

3  State of California for the County of San Mateo to the United States District Court

4  for the Northern District of California.

5

6  Dated:  May 28, 2008                STROOCK & STROOCK & LAVAN LLP

7                                      MICHAEL F. PERLIS
                                       ALLAN S. COHEN
8

9                                      By: _____
                                           Michael F. Perlis
10

11                                     Attorneys for Defendant
                                       FEDERAL INSURANCE COMPANY

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA 51052327

SU⁻MONS
*(CITACION JUDICIAL)*

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
FEDERAL INSURANCE COMPANY, DOES 1-10, ROES 1-10, AND
MOES 1-10, INCLUSIVE

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**
SAN MATEO COUNTY

APR 3 0 2008

Clerk of the Superior Court
By _____
DEPUTY CLERK

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CALIFORNIA CASUALTY INSURANCE COMPANY

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: | CASE NUMBER: |
|---|---|
| *(El nombre y dirección de la corte es):* | *(Número del Caso)* |

CV 4 7 2 4 5 2

SAN MATEO SUPERIOR COURT
400 COUNTY CENTER
400 COUNTY CENTER
REDWOOD CITY, CALIFORNIA 94063
MAIN COURTHOUSE

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David C. Werner, [SBN: 67993]
Bryan E. Quilo, [SBN: 213708]
Law Offices of David C. Werner
Laguna Hills, CA 92653

949-460-9280   949-460-9286

| DATE: | | Clerk, by | | , Deputy |
|---|---|---|---|---|
| *(Fecha)* APR 3 0 2008 JOHN C. FITTON | | *(Secretario)* | | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

under: [ ] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
[ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)

**SUMMONS**



Code of Civil Procedure §§ 412.20, 465

Exhibit A-4

1   **LAW OFFICES OF DAVID C. WERNER**
    David C. Werner [SBN: 67993]
2   Bryan Quilo [SBN: 213708]
    23422 Mill Creek Drive, Suite 110
3   Laguna Hills, California 92653
    Telephone: (949) 460-9280
4   Facsimile: (949) 460-9286

5

6   Attorneys for Plaintiff: CALIFORNIA CASUALTY
    INSURANCE COMPANY

7

8

9                    SUPERIOR COURT OF CALIFORNIA

10                      COUNTY OF SAN MATEO

11  CALIFORNIA CASUALTY            )
    INSURANCE COMPANY              )   CASE NO: **CIV 4 7 8 4 5 2**
12                                 )
                       Plaintiffs, )   HONORABLE:
13        v.                       )
                                   )   DEPT:
14  FEDERAL INSURANCE COMPANY,     )
15  DOES 1-10, ROES 1-10, AND MOES 1- )
    10, inclusive                  )   Complaint Filed:
16                                 )
                                   )
17                    Defendants.  )
                                   )
18  _____)

19                                 I
20            **IDENTIFICATION OF PARTIES AND CONTRACTS**

21      1.      The true names and capacities of Does 1-10, Roes 1-10 and Moes 1-10 are unknown to
    this plaintiff and plaintiff therefore sues said Does, Roes and Moes by this fictitious designation.
22  Wherever the term "Federal Insurance Company" or defendant is used herein, it is meant to include
23  each of these fictitiously named defendants. The true names and capacities of said Does, Roes and
24  Moes will be set forth when the same are known and leave of court will be sought as necessary to set
25  forth the true names and capacities when ascertained.
26  ///
27  ///
28

Law Offices
Of
David C. Werner

                                   1
                              COMPLAINT

                                                        Exhibit A-5

**FILED**
SAN MATEO COUNTY

APR 3 0 2008

Clerk of the Superior Court
By _____
        DEPUTY CLERK

DCW1

2.      Federal Insurance Company (hereinafter "Federal") is an insurance company that conducts insurance business in the State of California. At all times pertinent herein, Federal Insurance entered into an insurance contract (which is hereinafter set forth as **Exhibit "A"**) providing certain coverages to California Casualty Insurance Company. California Casualty Insurance Company is informed and believes that Federal Insurance does business throughout the State of California and is subject to the jurisdiction of this Court. Specifically, the aforementioned contract (**Exhibit "A"**) was entered into between Federal Insurance and California Casualty Insurance Company at California Casualty Insurance Company's home office in San Mateo, California.

3.      California Casualty Insurance Company (hereinafter "California Casualty") is an insurance company conducting insurance business and providing insurance services in the State of California with a home office in San Mateo, California. At all times relevant herein, the Federal policy, **Exhibit "A"**, was entered into between Federal and California Casualty at the California Casualty home office in San Mateo, California. As set forth hereinafter, California Casualty provides personal lines of insurance including homeowner's coverage. The subject of this lawsuit involves California Casualty's homeowners policy number 204 1155871, (Attached hereto as **Exhibit "B"**) issued to insureds Mr. & Mrs. Harold, providing insurance coverage to their residence.

4.      At all times relevant herein and specifically beginning in September of 2001, Federal Insurance Company issued to California Casualty a policy of insurance providing California Casualty with coverage as specified in the policy. The policy is attached hereto, and marked **Exhibit "A"**, and incorporated herein by this reference. **Exhibit "A"** not only contains the contract of insurance, but also the several endorsements that are applicable to the matters set forth herein. The policy was issued in September of 2001. At all relevant times herein said policy, as set forth in **Exhibit "A"**, was entered into between California Casualty and Federal at the home office of California Casualty, which is in San Mateo, California.

Law Offices
Of
David C. Werner

2

Exhibit A-6

1

2                                    **II**

3      **ALLEGATIONS OF FACT, COMMENTS TO ALL CAUSES OF ACTION**

4          5.     On or about the month of November in the year 2000, Mr. & Mrs. James Harold were

5    insured under a policy of homeowners insurance, policy number 204 1155871, issued by California

6    Casualty.  Said policy is set forth in **Exhibit "B"** and is incorporated herein by this reference.  On or

7    about said date, the Harolds reported a claim under the aforementioned policy.  The claim alleged,

8    amongst other matters, that a water leak had occurred in one of the pipes servicing the Harolds' home.

9
     The water leak had caused damage to the home and had resulted in the need for the filing of a claim
10
     by the Harolds under California Casualty's homeowner's policy, (**Exhibit "B"** to this action).
11

12
           6.     California Casualty accepted and acknowledged the claim of the Harolds and
13
     undertook to perform certain "insurance services" (as that term is defined in **Exhibit "A"**) and
14
     adjustment services for the handling of the claim. Specifically, California Casualty assigned adjusters,
15
     as well as experts, and later attorneys, to investigate the cause and nature of the claim as well as to
16
     assist the Harolds in adjusting the claim and to provide insurance benefits under California Casualty's
17
     homeowner's policy to the Harolds.
18

19
           7.     During the course of the adjustment of the loss, during the course of providing
20
     "Insurance Services" as that term is used in **Exhibit "A"**, both the Harolds and California Casualty
21
     Insurance Company discovered that extensive water damage had been done to the Harolds' property,
22
     and in addition, that mold had developed in the home.  California Casualty Insurance Company
23
     proceeded to retain necessary experts, as did the Harolds, in an attempt to remediate the water damage
24
     as well as the mold in the home.  Although extensive efforts were undertaken, the parties continued to
25
     have difficulties in remediating the loss during the years 2000, and 2001 into 2002.
26

27

28   ///
Law Offices
Of
David C. Werner

                                         3
                              _____
                                   COMPLAINT

                                                              Exhibit A-7

1    Thereafter, in the year 2002, while the Federal policy, (**Exhibit "A"**), was in full force and
2    effect, the Harolds retained counsel to represent them with regard to their claim for damages, breach
3    of contract, bad faith breach of contract, and other related and associated torts  which they claimed to
4    have against California Casualty Insurance Company.  The retention of said law firm, as well as the
5    claim for damages as a result of the handling of the claim by California Casualty Insurance Company,
6    arose from California Casualty's alleged mishandling of its "insurance services" to the Harolds.  A
7    claim was made against California Casualty Insurance Company for damages beyond the limits of
8    coverage provided by the California Casualty Insurance Company policy, **Exhibit "B"**.  Such claim
9    was made within the reporting period and within the policy period of the Federal policy, and certainly
10   prior to July 2002.
11
12       Attached hereto and incorporated herein by this reference is the trial brief of the Harolds'
13   attorneys.  Said trial brief is incorporated herein by this reference, as **Exhibit "C"**, for the allegations
14   it makes and the assertions it makes with regard to the identification of the claim being made against
15   California Casualty.
16
17       8.    A lawsuit was filed by the Harolds against California Casualty.  A true and correct
18   copy of which is attached hereto as **Exhibit "D"** and incorporated herein by this reference.
19
20       California Casualty retained the law firm of Hayes, Davis, Ellingson, McLay & Scott, LLP to
21   represent its interest and to defend the complaint against California Casualty.
22
23       California Casualty incurred necessary attorneys' fees, court costs, investigative cost, expert
24   fees, and other associated cost with regard to the defense of said action.  Said attorneys' fees and costs
25   are fully covered under the Federal policy, (**Exhibit "A"**).
26
27       9.    The case of *Harold v. California Casualty* went to trial in the Sacramento Superior
28   Court on or about February 21, 2006.  Although a jury verdict was rendered, the parties proceeded to

mediation.  At the time of the mediation, the matter settled.  At the time of the mediation the verdict

4
COMPLAINT

Exhibit A-8

1  was not yet reduced to a judgment, and in fact, no judgment was entered. The parties settled the

2  entire action. At the time of the settlement, the demands and claims of the Harolds were extensive

3  and went beyond the allegations found in the trial. In addition to a claim that there had been damages

4  to the Harolds' home (which exceeded California Casualty's policy limits,) there was an allegation of

5  a breach of good faith and fair dealing; fraud based on concealment; failure to hire a proper contractor

6

7  with a specific risk of harm; nuisance; and attorneys fees under the case of *Brandt v. Superior Court*

8  in the amount of $343,875.43. In addition, there were statutory costs which were demanded in the

9  amount of $75,000.00, and an additional $50,000.00 in cost associated with the trial of the case by the

10  Harolds. The Harolds' full and complete demand at the time of the mediation was $3,023,658.80. In

11  addition, the Harolds were seeking in the mediation, and as a part of their claim, to obtain punitive

12  damages against California Casualty with an exposure claimed to be 10 million dollars.

13

14         California Casualty informed Federal Insurance of these matters, and indeed a representative

15  from Federal Insurance attended the mediation and gave specific permission to resolve the case up to

16  an amount that exceeded the actual settlement amount. The matter settled for 2.5 million dollars.

17         At the point in time that the matter settled, California Casualty paid settlement amount to settle

18  all claims of the Harolds. Said payment was undifferentiated between any particular cause of action

19

20  or claim. The settlement was for any and all claims in excess of the amount already paid to the

21  Harolds under the policy, including general and economic damages, as well as for any claim for bad

22  faith, attorney fees, and costs incurred by the Harolds in the handling of the their claim.

23         California Casualty's payment was, therefore, as the result of its provision of "insurance

24  services" as that term in defined and used in the Federal policy, which is attached hereto marked as

25  **Exhibit "A",** and incorporated herein by this reference.

26

27         10.    As a part of the Federal coverage, California Casualty is entitled to receive

28  reimbursement for the full amount of all monies expended by California Casualty in the defense of the

Law Offices
Of
David C. Werner

5
COMPLAINT

Exhibit A-9

1  action, including attorneys' fees, as well as the court costs and any other associated costs, such as

2  expert witness costs.  California Casualty has expended in excess of 1.5 million dollars for these

3  items.  The full and complete amount will be set forth at time of trial.

4

5      The full and complete damages that California Casualty therefore seeks by this action is the

6  amount paid in settlement and the 1.5 million dollars plus that was expended by way of costs, attorney

7  fees, and other miscellaneous items associated with the defense of the action.

8

9                                III
                    FIRST CAUSE OF ACTION:
                      BREACH OF CONTRACT

10

11      11.    California Casualty incorporates by references fully set forth herein 1 through 10.

12      12.    California Casualty at all times relevant herein was fully insured by the Federal policy

13  for wrongful acts as that term is defined in the Federal policy, **Exhibit "A"**.  The policy required that

14  a claim be made during the policy period, and that the claim be based upon a wrongful act that is

15  identified in the policy. Both such conditions were/are satisfied.

16

17      As set forth in the factual allegations herein, California Casualty did in fact receive a claim for

18  "wrongful acts" (as that term is defined in the Federal policy) from the Harolds regarding handling of

19  their claim by California Casualty Insurance Company under their California Casualty's homeowners

20  insurance policy number 204 1155871, attached hereto and marked (**Exhibit "B"**) above.

21      California Casualty reported the claim (as that term is defined in the Federal policy) to Federal

22  in a timely fashion.  The claim did occur during the Federal policy period and California Casualty did

23  provide a timely notice to Federal.

24

25      13.    California Casualty fully and completely cooperated with Federal, providing them with

26  whatever information they desired.  California Casualty provided not only notice of the claim but full

27  access to California Casualty's file.  Communications ensued between California Casualty and

28  Federal's designated representative throughout the pendency of the claim.

Law Offices
Of
David C. Werner

6
COMPLAINT

14.    California Casualty has performed all conditions precedent on its part that it is required to perform in order to perfect the claim under the policy. California Casualty has in fact performed all such conditions precedent, and there is no excuse or basis in reason for Federal to withhold benefits due under its policy.

15.    Federal Insurance has breached its policy with California Casualty. Specifically, California Casualty, in settling the claim of the Harolds, has fully complied with all of the terms and conditions of the Federal policy to properly present a claim. In addition, California Casualty has submitted to Federal a full and complete itemized list of all expenses, attorneys' fees, and other associated cost for which it is making claim. The amount submitted is in excess of 1.5 Million dollars. The true and correct amount as well as the total amount will be set forth at time of trial in this action.

Despite the fact that California Casualty has fully complied with all of the provisions and terms of the policy, Federal has refused to honor its obligations under the contract and has breached the contract by refusing to pay any sums that are due to California Casualty under the terms and conditions of the policy.

16.    Wherefore, after considering the deductible, there is presently now due and owing a sum in excess of 2 Million dollars. California Casualty is damaged in that amount in that it is being denied the benefits of the policy, and is being denied what is rightfully due under the policy due to the breach of contract by Federal.

17.    In addition to the amount due under the policy, California Casualty also submits that the amount due is a sum certain, and therefore requests interest at the legal rate 10% and/or as the court deems just and proper at the time of this action. California Casualty alleges that interest began at the date of the settlement, which was July 2006. There is now due and payable from Federal interest in excess of $440,000.00, which is increasing on a daily basis.

Law Offices
Of
David C. Werner

7

COMPLAINT

Exhibit A-11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices
Of
David C. Werner

## IV

### SECOND CAUSE OF ACTION:
### BAD FAITH BREACH OF CONTRACT

18.     California Casualty incorporates by references fully set forth herein 1 through 17.

19.     In every contract of insurance there is an implied duty of good faith and fair dealing. The duty of good faith and fair dealing requires that Federal not withhold unreasonably any sums that are due and owing to California Casualty.  In addition, Federal has a duty to California Casualty to give California Casualty's interest equal consideration as it gives to its own interest, and has a duty to make a proper investigation to determine any valid basis that will support California Casualty's claim. Federal also has a duty to investigate the claim of California Casualty fully and completely and is duty bound not to deny the claim for improper reasons or unreasonably.

20.     California Casualty submitted its claim to Federal in June of 2002.  Federal responded to California Casualty by citing to California Casualty provisions of the Federal policy that did not exist.  Federal submitted to California Casualty its analysis of California Casualty's claim based upon provisions that had been removed from the policy and were no longer a part of the policy.  Following this initial denial, California Casualty requested reconsideration, and Federal determined that its initial denial was improper and based upon improper policy language.

California Casualty kept Federal informed at all times and indeed Federal attended several settlement conferences and the mediations in which the Harolds' claim was eventually settled, and therefore was fully aware of the nature and extent of the claim.

Despite the fact that California Casualty provided full and complete information to Federal, Federal has chosen to deny California Casualty's claim on a frivolous basis unsupported in law, reason, logic, or the facts of the case.  Federal Insurance, for example, has decided to deny California Casualty's claim for benefits under the policy on the basis of the jury verdict that was rendered in the

1    case of *Harold v. California Casualty,* even though no judgment resulted and the parties to that action

2    settled. Federal also chooses to ignore the entire claim of the Harolds which included Brandt fees,

3    costs, and punitive damages. Federal unreasonably, frivolously and without any basis in reason or

4    logic, refuses to properly interpret its own policy and refuses to interpret the language of said policy

5    in a proper and reasonable fashion as is required by the duty of good faith and fair dealing.

6

7         21.    As a result of its unreasonable behavior and its unreasonable refusal to acknowledge its

8    own policy terms, Federal has in fact denied the existence of its own coverage and denied the

9    existence of its own contract, acting in bad faith to deny California Casualty its rights under the

10   policy. In addition, Federal has attempted to resolve the claim of California Casualty by offering the

11   sum of $300,000.00 to resolve the claim, arguing that California Casualty is not entitled to the

12

13   benefits due under the policy, and seeing the claim of California Casualty as a game of negotiations as

14   opposed to the claim of an insured under the policy with rights and duties owing to the insured by the

15   carrier.

16        22.    As a result of Federal's unreasonable and frivolous interpretation of its own policy, its

17   denial of the existence of the coverages that it provided, its refusal to properly investigate the claim,

18   its refusal to honor its duty to California Casualty to fully and completely investigate and honor the

19   rights of California Casualty, and due to its failure to give equal consideration to the interest of

20   California Casualty and to resolve this matter in a fashion that a reasonable carrier would act,

21   California Casualty has been damaged by the breach of the implied covenant of good faith and fair

22   dealing. The damages include the fact that California Casualty has been forced to retain counsel to

23   represent it in seeking recovery of the benefits due. California Casualty has incurred attorney fees as

24   a result of the bad faith of Federal, and is therefore seeking recovery of attorney fees that it is

25   incurring and will incur, together with all costs associated with the prosecution of this action. It is the

26

27

28   allegation of California Casualty that the attorney fees are necessary to obtain the benefits due under

Law Offices
Of
David C. Werner

COMPLAINT

Exhibit A-13

the policy, which are being denied in bad faith.

**WHEREFORE**, California Casualty prays as follows:

1.    That the court declare the rights, duties, and obligations of the parties under the terms of the contract, and specifically the rights of California Casualty to receive benefits due.

2.    For judgment against Federal for breach of contract in the amount to be shown at the time of trial, but not less than 2 Million dollars.  That California Casualty be awarded the amounts that are due to it under the Federal policy as a result of the claim of the Harolds', including all moneys (subject to the Federal Policy's deductible) expended in settlement of the case, together with the attorneys fees and associated costs incurred by California Casualty in defending itself, which is a sum that is in excess of 1.5 Million dollars.

3.    That California Casualty be awarded interest on the amount that is due to California Casualty under the terms of the Federal policy; (said interest being in excess of $440,000.00 at the time of the filing of this complaint.)

4.    For attorneys fees based upon the bad faith denial by Federal and the need of California Casualty to retain counsel to pursue and seek recovery of what is due and owing to it under the terms of the Federal policy.

///
///
///
///

Law Offices
Of
David C. Werner

Exhibit A-14

5.    California Casualty finally prays for such other and further relief as the court

deems just and proper in the premises.

DATED: April 29, 2008                    LAW OFFICES OF DAVID C. WERNER

By: _____
     DAVID C. WERNER
     BRYAN QUILO
     Attorneys for Plaintiff:
     CALIFORNIA CASUALTY INSURANCE
     COMPANY

11
COMPLAINT

Exhibit A-15

**ITEM 7.**  Extended Reporting Period:

      (A) Additional Premium:  75% of annual premium
      (B) Additional Period:     365 days

**ITEM 8.**  Pending or Prior Date:

      Insuring Clause 1.    **Insurance Services** Professional Liability:  September 1, 2001

      Insuring Clause 2.    **Financial Services** Professional Liability:  September 1, 2001

**ITEM 9.**  Endorsement(s) Effective at Inception:  1 - 3.

**IN WITNESS WHEREOF, THE COMPANY** issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

_Henry A Aulit_
Secretary

September 26, 2001
Date

_Henry R Offene_
President

_Robert Hamburger_
Authorized Representative

Exhibit A-16

05/14/2003 13:20 FAX                                              ☑001

*[handwritten:]* URGENT

*[handwritten:]* To: Jeff Gunchick
Claims    213-833-52...
From: Anne Matson  SFD/OF

Effective date of
this Endorsement:  September 1, 2001

**FEDERAL INSURANCE COMPANY**

Endorsement No:  5

To be attached to and form part of
Policy Number:    70427262

Issued to:  CALIFORNIA CASUALTY MANAGEMENT COMPANY AND

CALIFORNIA CASUALTY INSURANCE COMPANY

---

**AMENDED DECLARATIONS - PARENT ORGANIZATION ENDORSEMENT**

It is agreed that ITEM 1. of the Declarations, Parent Organization, is deleted in its entirety and replaced
with the following:

ITEM 1.   **Parent Organization**        (Name and Address):

California Casualty Management Company and
California Casualty Insurance Company
1900 Alameda de las Pulgas
San Mateo, CA  94402

*[vertical stamp:]* RECEIVED 2003 MAY 14 P 2:14 WZO SPECIALTY CLAIMS

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:                                      By *[signature:]* Robert Hamburger
                                              Authorized Representative

ICPL Policy
Form 17-02-1636 (Ed. 10-98)

Exhibit A-17

Effective date of
this Endorsement: 9/1/01

**FEDERAL INSURANCE COMPANY**

Endorsement No:   5

To be attached to and form part of
Policy Number:     70427262

Issued to:  CALIFORNIA CASUALTY MANAGEMENT CO.

IT IS UNDERSTOOD AND AGREED THAT ENDORSEMENT #1 FORM 17-02-2539 (ED. 06-01)
ADDITIONAL INSURED ORGANIZATION ENDORSEMENT IS HEREBY DELETED AND NO LONGER
FORMS PART OF THE POLICY.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: April 11, 2003                               By _____
                                                              Authorized Representative

Exhibit A-18

06/20/02    11:00

    05/11/02 12:39 PM    Subject: ICPL 7042-82-72 - California Casualty

I'm embarassed to admit that the portion of this e-mail below the * * *'s
has been in my 'draft' folder since last September!  I guess it kind of got
swept aside in all the excitement a few weeks later re cancelling/not
cancelling your policy and I never completed my full review of your policy
form.

As I'm now preparing the renewal application, I have just noticed a major
problem with the captioned, as issued:  the insurance companies aren't
covered!  California Casualty Management Co. is named as the "Parent
Organization" and then is also listed in Endorsement #1, "Additional Insured
Organization Endorsement."  The Additional Insured Organization Endorsement
should, instead, list the following entries:

California Casualty Indemnity Exchange
California Casualty Insurance Company
California Casualty & Fire Insurance Company
California Casualty General Insurance Company
California Casualty Compensation Insurance Company

OK Anne Mat
eff 9/1/d

I trust that issuance of this correction along with the items below will not
be a problem, however, as always, please contact me if you wish to discuss.

Lyn Martin
(650) 572-4447

    *    *    *    *

The wording about lawyering "for" policyholders is the language that needs
to be changed in Paragraph 3 of the Employed Lawyers endorsement -- the
exclusion -- not in the definition of Insured person.  (However, I now
notice that the definition requires that the employed lawyer be full-time
and salaried.  We may from time-to-time employ lawyers on a part-time basis,
so the definition also needs to be amended.)

We need to talk to Paul on this

A.) We believe that the Employed Lawyers' endorsement needs to include the
following:

1.  It is agreed that Section 26, Definitions, is amended by adding the
following:

Employed Lawyer means any person admitted to practice law who is, was or
becomes an employee of an Insured Organization  (eliminate requirement that
they be salaried and full-time).

2.  The definition of Insured is amended to include any Employed Lawyer.

3.  Section 4, Exclusions, is amended by adding the following:

    based upon , arising from, or in consequence of any Employed Laywer's
service as a director, officer, trustee, member of any entity, or lawyer for
anyone other than the Insured Organization or an insured under a policy of
insurance issued by the Insured Organization, even if directed or requested
by the Insured Organization to serve such other entity or client.  (bolded
language added)

OK

B.) In order to attempt to be as broad as the prior policy (which Chubb
committed to doing), Chubb's definition of Insurance Services needs to be
amended to read as follows:

Insurance Services means only those services rendered or required to be

OK.7/1/d

Exhibit A-19





CHUBB

Effective date of
this Endorsement: September 1, 2001

**FEDERAL INSURANCE COMPANY**

Endorsement No:   1

To be attached to and form part of
Policy Number:   70427262

Issued to:  CALIFORNIA CASUALTY MANAGEMENT CO.

---

## ADDITIONAL INSURED ORGANIZATION ENDORSEMENT

It is agreed that:

1.    The Insured Organization shall include the following:

California Casualty Management Co.

2.    With respect to the Insured Organizations listed in 1. above, the Company shall not be liable to
make any payment for Loss in connection with any Claim based upon, arising out of, relating to, in
consequence of, or in any way involving:

a.    any litigation, arbitration, claims, demands, causes of action, equitable, legal or quasi-legal
proceedings, decrees or judgments (collectively referred to as litigation) occurring prior to or
pending as of September 1, 2001, of which the Insured has received notice or otherwise had
knowledge as of such date; or

b.    any subsequent litigation arising from, or based on substantially the same matters alleged in
the litigation included in a. above; or

c.    any Wrongful Act which gave rise to the prior or pending litigation included in a. above.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: September 28, 2001

By _____
                   Authorized Representative

RECEIVED
2002 JUN 20  P :45
CB/SPO SPECIALTY CLAIMS

Post-It® Fax Note    7671    Date 6/20/02  pages▸ 2
To Jeff Gunchick    From Anne Matsov
Co./Dept. Claims    Co. CB/SFO/DFI
Phone #    Phone # 415-954-0404
Fax # 213-833-5200    Fax #

ICPL Policy
Form 17-02-2539 (Ed. 6-01)

Exhibit A-20

HUG-12-2003 06:36 FROM:                                                 ehtFAX                    P.10/27

**Chubb Group of Insurance Companies**

15 Mountain View Road, Warren, New Jersey 07059

## DECLARATIONS
## INSURANCE COMPANY
## PROFESSIONAL LIABILITY POLICY

**ITEM 1.** Parent Organization (Name and Address):

CALIFORNIA CASUALTY MANAGEMENT CO.

1900 Alameda De Las Pulgas
San Mateo, CAL 94402

Policy Number: 70427262 (DFI)

**FEDERAL INSURANCE COMPANY**

Incorporated under the laws of Indiana,
a stock insurance company, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN 46204-1927

---

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE COMPANY TO DEFEND THOSE INSURED UNDER THE POLICY. PLEASE READ CAREFULLY.**

**ITEM 2.** Limits of Liability:

|     |                                             |     |           |
| --- | ------------------------------------------- | --- | --------- |
| (A) | Each Loss                                   | $   | 5,000,000 |
| (B) | Aggregate Limit of Liability Each Policy Period | $ | 5,000,000 |

**NOTE:    THE LIMITS OF LIABILITY AND ANY DEDUCTIBLE AMOUNTS ARE REDUCED OR EXHAUSTED BY DEFENSE COSTS.**

**ITEM 3.** Coverage Applicable:

Unless "Covered" is inserted opposite a specified Insuring Clause, such Insuring Clause and any other reference thereto in this Policy shall be deemed to be deleted in their entirety.

| Insuring Clause 1. | **Insurance Services** Professional Liability: | Covered |
| --- | --- | --- |
| Insuring Clause 2. | **Financial Services** Professional Liability: | Covered |

**ITEM 4.** Coinsurance Percent: 0%

**ITEM 5.** Deductible Amount:

| Insuring Clause 1. | **Insurance Services** Professional Liability | $ | 2,000,000 |
| --- | --- | --- | --- |
| Insuring Clause 2. | **Financial Services** Professional Liability | $ | 2,000,000 |

**ITEM 6.    Policy Period:**   from: 12:01 a.m. on September 1, 2001
                    to: 12:01 a.m. on July 1, 2002
                    Local time at the address shown in ITEM 1.



---



Exhibit A-21

AUG-12-2005 06:37 FROM:                              9h tFAX                P.11/27

In consideration of payment of the premium and subject to the Declarations, limitations, conditions, provisions and other terms of this Policy, the Company agrees as follows:

## Insuring Clause 1

**Insurance Services Professional Liability**

1.  To pay on behalf of the Insureds for Loss which the Insureds shall become legally obligated to pay as a result of any Claim first made against the Insureds during the Policy Period or, if elected, the Extended Reporting Period, arising out of any Wrongful Act committed by the Insureds or any person for whose acts the Insureds are legally liable during or prior to the Policy Period while performing Insurance Services including the alleged failure to perform Insurance Services.

## Insuring Clause 2

**Financial Services Professional Liability**

2.  To pay on behalf of the Insureds for Loss which the Insureds shall become legally obligated to pay as a result of any Claim first made against the insureds during the Policy Period or, if elected, the Extended Reporting Period, arising out of any Wrongful Act committed by the Insureds or any person for whose acts the Insureds are legally liable during or prior to the Policy Period while performing Financial Services including the alleged failure to perform Financial Services.

## Extended Reporting Period

3.  If this Policy is terminated or nonrenewed for any reason other than for nonpayment of premium, the Parent Organization, on behalf of the Insureds shall have the right, upon payment of the additional premium set forth in ITEM 7.(A) of the Declarations for this Policy, to an extension of the coverage granted by this Policy for the period set forth in ITEM 7.(B) of the Declarations for this Policy (Extended Reporting Period) following the effective date of termination or nonrenewal with respect to any Claim or Claims made during the Extended Reporting Period, but only for any Wrongful Act occurring prior to the effective date of termination or nonrenewal. This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due, is received by the Company within thirty (30) days following the effective date of termination or nonrenewal. Any Claim made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding Policy Period.

    If the Extended Reporting Period is purchased, the entire premium noted in ITEM 7.(A) of the Declarations shall be deemed fully earned at the inception of the Extended Reporting Period.

## Exclusions

**Exclusions Applicable to Insuring Clauses 1 and 2**

4.  The Company shall not be liable to make any payment for Loss in connection with any Claim made against the Insureds: 

    a.  based upon, arising from, or in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any Insureds prior to the Pending or Prior Date set forth in ITEM 8. of the Declarations, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

Exhibit A-22

RightFAX                                                          P.12/27

---

### Exclusions

*Exclusions Applicable to Insuring Clauses 1 and 2 (continued)*

b.  based upon, arising from, or in consequence of deliberate conflicts of interest, any dishonest, deliberately criminal or deliberately fraudulent act or omission, gaining any profit or advantage to which one is not legally entitled, or deliberate non-compliance with any statute or related regulation on the part of the Insureds or any person for whose actions the Insureds are legally liable; provided, however, that this Exclusion shall not apply unless it is established in fact that such Claim was brought about or contributed to by any deliberate conflicts of interest, dishonest or deliberately criminal or deliberately fraudulent act or omission, gaining any profit or advantage to which one is not legally entitled or deliberate non-compliance with any statute or related regulation on the part of the Insureds or any person for whose actions the Insureds are legally liable and provided this Exclusion shall not apply to a Claim for both fraud and bad faith in the handling and adjusting of claims;

c.  based upon, arising from, or in consequence of:

   i.   any Wrongful Act or any fact, circumstance or situation that has been the subject of notice under any policy of Insurance in effect prior to the inception date of this Policy; or

   ii.   any other Wrongful Act, whenever occurring, which together with a Wrongful Act that has been the subject of such notice would constitute Interrelated Wrongful Acts;

d.  based upon, arising from, or in consequence of:

   i.   the insolvency, conservatorship, receivership, bankruptcy or liquidation of any banking firm; investment company; investment banker, broker or dealer in securities or commodities; insurance or reinsurance company; insurance or reinsurance agent, broker or intermediary; joint underwriting association; or other such organizations of a similar nature, or the failure to pay or suspension of payment by such entities in connection with Financial Services; or

   ii.   the Financial Impairment of any Insured;

e.  based upon, arising from, or in consequence of any pension, profit sharing, health and welfare or other employee benefit plan or trust, including but not limited to any violation of the Employee Retirement Income Security Act of 1974, amendments thereto or similar provisions of any federal, state or local statutory law or common law, sponsored or established by the Insured Organization for the Insured Individuals;

f.  for defamation, discrimination, libel, slander, wrongful termination of employment, disparagement, sexual harassment, violation of rights of privacy, wrongful eviction or other violation of the rights of private occupancy, wrongful entry, false arrest, false imprisonment, malicious prosecution, assault, battery or damage to or destruction of any tangible property including loss of its use;

g.  for bodily injury, mental or emotional distress, sickness, disease, or death of any person; provided, however, this Exclusion shall not apply to a Claim based solely on the Insured's failure to provide Insurance Services;

h.  based upon, arising from, or in consequence of:

   i.   the actual, alleged or threatened discharge, release, escape, dispersal or disposal of Pollutants into or on real or personal property, buildings, water, land or atmosphere;

Exhibit A-23

## Exclusions

*Exclusions Applicable to
Insuring Clauses 1 and 2
(continued)*

    ii.    any direction or request that the **Insureds** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so; including but not limited to any **Claim** for any financial **Loss** to the **Insureds**, its security holders, its creditors or others based upon, arising from, or in consequence of the matters described in i. or ii. of this Exclusion; or

    iii.    the **Insured's** failure to provide **Insurance Services** or **Financial Services** to a customer relating to any of the matters described in i. or ii. of this Exclusion;

i.    by, on behalf of, or at the behest of any **Insureds** against any other **Insureds**, or by, on behalf of, or at the behest of any business enterprise which is operated, managed or owned, directly or indirectly, in whole or in part by any **Insured**, provided, however, this Exclusion shall not apply:

    i.    where the claimant is an **Insured Individual** and was allegedly provided with or entitled to be provided with **Insurance Services** or **Financial Services** and is bringing such **Claim** solely in his capacity as a customer of the **Insured Organization**, and where such **Claim** is brought without the solicitation, assistance or participation of any other **Insureds**; or

    ii.    to a **Claim** brought or maintained by an **Insured Individual** for contribution or indemnity, if the **Claim** directly results from another **Claim** covered under this **Policy**;

j.    by, on behalf of, or at the behest of any person or concern (including but not limited to any shareholder, bondholder, policyholder or debentureholder), their estate, heirs, legal representatives or assigns, with a legal or equitable interest in any stock, bond, debenture, or other form of security of the **Insureds**, or any other ownership interest, when such **Claim** is based upon, arises out of, or pertains to any interest in said security, provided, however, that this Exclusion shall not apply where the claimant is an **Insured Individual** and was provided with or was entitled to be provided with **Insurance Services** or **Financial Services** and is bringing such **Claim** solely in his capacity as a customer of the **Insured Organization**, and where such **Claim** is brought without the solicitation, assistance or participation of any other **Insureds**;

k.    based upon, arising from, or in consequence of the underwriting of insurance, including any decisions involving the classification, selection, or renewal of risks as well as the rates and premiums charged to insure or reinsure risks;

l.    for any express representations, warranties or guarantees, estimates of construction costs, or costs exceeding estimates made in connection with **Insurance Services** or **Financial Services**;

m.    based upon, arising from, or in consequence of any **Insured's** service as a director, officer, trustee, employee, participant or member of any entity, pool or association other than the **Insured Organization**, even if directed or requested to serve such other entity;

Exhibit A-24

## Exclusions

**Exclusions Applicable to
Insuring Clauses 1 and 2
(continued)**

n.  based upon, arising from, or in consequence of the adequacy or inadequacy of any claim reserves of the Insured Organization or of any entity to which the Insureds provide **Insurance Services** or **Financial Services**;

o.  by, on behalf of, or at the behest of, any reinsurer of any contract, risk or program of the Insureds, provided, however, this Exclusion shall not apply to any **Claim** brought by a reinsurer while in the capacity of a customer or prospective customer of the Insured Organization, and where such **Claim** is brought without the solicitation, assistance or participation of any other Insureds;

p.  for any amounts which constitute benefits, coverage or amounts due or allegedly due, including any amount which constitutes interest thereon, from the Insureds as:

    i.  an insurer or reinsurer under any policy or contract of treaty of insurance, reinsurance, suretyship, annuity or endowment; or

    ii. an administrator under any employee welfare benefit plan;

q.  based upon, arising from, or in consequence of the purchase, sale, participation, grant, commitment, restructure, termination, transfer, repossession or foreclosure of any loan, lease, mortgage or extension of credit, or any failure to do any of the foregoing, or the rendering of advice in connection with any loan, lease, mortgage or extension of credit;

r.  for any of the following activities:

    i.  the underwriting, securitizing, syndicating, promoting, or market making (as defined in Section 3(A)(38) of the Securities Exchange Act of 1934 as amended) of any debt or equity security or other evidence of indebted-ness, or any loan or other extension of credit, or any other similar invest-ment banking activity;

    ii. the rendering of advice or recommendations regarding any actual, at-tempted or threatened merger, acquisition, divestiture, tender offer, proxy contest, leveraged buy-out, going private transaction, insolvency pro-ceeding, reorganization, capital restructuring, recapitalization, spin-offs, primary or secondary offerings of debt or equity securities or other evidence of indebtedness, dissolution or sale of all or substantially all of the assets or stock of a business entity or any effort to raise or furnish capital or financing for any enterprise or entity;

    iii. the rendering of a fairness opinion regarding the valuation of any assets or business entity not held by the Insureds as trustee; or

    iv. any acquisition or sale of securities by the Insureds for their own account,

    or any disclosure requirements in connection with any of the foregoing; or

s.  based upon, arising from, or in consequence of the liability of a party, other than the Insureds, assumed by the Insureds pursuant to contract, except liability for **Loss** that the Insureds would have had in the absence of such contract.

Exhibit A-25

AUG 12 2008 20:58 FROM:                                              ghtFAX                    P.15/27

**Severability of Exclusions**      5.    The Wrongful Act of any Insured Individual shall not be imputed to any other Insured Individual for the purposes of determining the applicability of the Exclusions in Section 4.

**Aggregate Limit of Liability, Coinsurance Percents and Deductible Amounts**      6.    All Loss arising out of the same Wrongful Act and all Interrelated Wrongful Acts of the Insureds shall be deemed one Loss, and such Loss shall be deemed to have originated in the earliest Policy Period in which a Claim is first made against the Insureds alleging any such Wrongful Act or Interrelated Wrongful Acts.

The Company's maximum liability for each Loss, whether covered under Insuring Clause 1 or Insuring Clause 2 or both, shall be the Limit of Liability for each Loss set forth in ITEM 2.(A) of the Declarations. The Company's maximum aggregate liability for all Loss on account of all Claims first made during the same Policy Period, whether covered under Insuring Clause 1 or Insuring Clause 2 or both, shall be the Aggregate Limit of Liability for each Policy Period set forth in ITEM 2.(B) of the Declarations.

The Company's liability under Insuring Clause 1 or Insuring Clause 2 or both shall apply only to that part of each Loss which is excess of the applicable Deductible Amount set forth in ITEM 5. of the Declarations and such Deductible Amount shall be borne by the Insureds uninsured.

If a single Loss is covered in part under Insuring Clause 1 and in part under Insuring Clause 2, the maximum Deductible Amount applicable to the Loss shall be the larger of the two Deductible Amounts in ITEM 5.of the Declarations.

With respect to all Loss (excess of the Deductible Amount) originating in any one Policy Period, the Insureds shall bear uninsured that percent of all such Loss specified as the Coinsurance Percent in ITEM 4. of the Declarations, and the Company's liability hereunder shall apply only to the remaining percent of all such Loss.

In the event that more than one of the Insureds is included in the same Claim, the total amount of the available Aggregate Limit of Liability shall be apportioned in proportion to their respective Loss.

The Limit of Liability available during the Extended Reporting Period, if exercised, shall be the remaining portion, if any, of the Aggregate Limit of Liability provided by the immediately preceding Policy Period.

**Defense and Settlement**      7.    Subject to this Section, it shall be the duty of the Insureds and not the duty of the Company to defend Claims made against the Insureds.

The Insured shall have the sole obligation under this Policy to retain defense counsel, which shall be subject to the approval of the Company.

The Insured agrees not to settle any Claim, incur any Defense Costs or otherwise assume any contractual obligation or admit any liability with respect to any Claim without the Company's written consent, which shall not be unreasonably withheld. The Company shall not be liable for any settlement, Defense Costs, assumed obligation or admission of liability to which it has not consented.

Form 17-02-1378 (Ed. 10-98)

                                                                              Page 5 of 12

                                                                         Exhibit A-26

| **Defense and Settlement** (continued) | | The Company shall have the right and shall be given the opportunity to effectively associate with the Insureds in the investigation, defense and settlement, including but not limited to the negotiation of a settlement, of any Claim that appears reasonably likely to be covered in whole or in part by this Policy. |
| | | The Insureds agree to provide the Company with all information, assistance and cooperation which the Company reasonably requests and agree that, in the event of a Claim, the Insureds will do nothing that may prejudice the Company's position or its potential or actual rights of recovery. |
| | | **Defense Costs** are part of and not in addition to the Limits of Liability set forth in ITEM 2. of the Declarations for this Policy, and the payment by the Company of Defense Costs reduces such Limits of Liability. |

| **Reporting and Notice** | 8. | The Insureds shall, as a condition precedent to exercising their rights under this Policy, give to the Company written notice as soon as practicable, but in no event later than ninety (90) days after the termination of the Policy Period, of any Claim made against the Insureds for a Wrongful Act. |
| | | If any Insured becomes aware of circumstances which could give rise to a Claim and gives written notice of such circumstances to the Company during the Policy Period, then any Claims subsequently arising from such circumstances shall be considered to have been made during the Policy Period in which the circumstances were first reported to the Company. |
| | | The Insureds shall, as a condition precedent to exercising their rights under this Policy, give to the Company such information and cooperation as it may reasonably require, including but not limited to a description of the Claim or circumstances, the nature of the alleged Wrongful Act, the nature of the alleged or potential damage, the names of actual or potential claimants, and the manner in which the Insureds first became aware of the Claim or circumstances. |

| **Notice** | 9. | Notice to the Company under this Policy shall be given in writing addressed to: |

<table>
<tr><td></td><td></td><td><u>Notice of Claim:</u></td><td><u>All Other Notices:</u></td></tr>
<tr><td></td><td></td><td>Home Office Claims Department<br>Chubb Group of Insurance Companies<br>15 Mountain View Road<br>Warren, N.J. 07059</td><td>Department of Financial Institutions<br>Chubb Group of Insurance Companies<br>15 Mountain View Road<br>Warren, N.J. 07059</td></tr>
</table>

| | | Such notice shall be effective on the date of receipt by the Company at such address. |

| **Estates and Legal Representatives** | 10. | Coverage shall extend to Claims for the Wrongful Acts of Insured Individuals made against the estates, heirs, legal representatives or assigns of Insured Individuals who are deceased or against the legal representatives or assigns of Insured Individuals who are incompetent, insolvent or bankrupt. |

Exhibit A-27

HUG 12-2005 06:55 FROM:                                              9h tFAX                P.17/27

**Spousal Liability**    11.  If a Claim against an Insured Person includes a claim against the lawful spouse of such Insured Person solely by reason of such spouse's status as a spouse or such spouse's ownership interest in property which the claimant seeks as recovery for an alleged Wrongful Act of such Insured Person, all loss which the spouse becomes legally obligated to pay on account of such Claim shall be treated as Loss which the Insured Person becomes legally obligated to pay on account of the Claim made against such Insured Person. All limitations, conditions, provisions and other terms of coverage applicable to the Insured Person's Loss shall also be applicable to the spousal loss. However, coverage shall not apply to the extent any claim alleges any Wrongful Act by the Insured Person's spouse.

**Other Insurance**    12.  If any Loss arising from any Claim made against any Insured is insured under any other valid policy(ies), prior or current, then this Policy shall cover such Loss, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such Loss is in excess of the amount of payment from such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided on this Policy. This Policy is primary of any reinsurance purchased by the Insured and the Company will not assert subrogation rights against the Insureds' reinsurers.

## Changes in Exposure

**Acquisition or Creation of Another Organization**    13.  If the Insured Organization, after the inception date of this Policy:

   a.  acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a Subsidiary; or

   b.  acquires any organization by merger into or consolidation with the Insured Organization,

   coverage shall apply to such organization under this Policy but only with respect to Wrongful Acts occurring after such acquisition or creation unless the Company agrees, after presentation of a complete application and all appropriate information, to provide coverage by endorsement for Wrongful Acts occurring prior to such acquisition or creation.

   If the fair value of the assets of the acquired or created organization exceeds 10% of the total assets of the Insured Organization as reflected in the Parent Organization's most recent audited consolidated financial statements, or the value of the fiduciary assets under management by the acquired or created organization exceeds 10% of the total fiduciary assets under management of the Insured Organization as reflected in the Parent Organization's most recent audited consolidated financial statements, the Parent Organization shall give written notice of such acquisition or creation to the Company as soon as practicable together with such information as the Company may require and shall pay any reasonable additional premium required by the Company.

Exhibit A-28

AUG-12-2008  06:59  FROM:                                              ght FAX              P. 18/27

**Changes in Exposure**
(continued)

| | | |
|---|---|---|

Acquisition of Parent
Organization By Another
Organization

14.  If:

    a.   the **Parent Organization** merges into or consolidates with another organization; or

    b.   another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organizations(s) or person(s) of more than 50% of the outstanding securities representing the present right to vote for the election of directors of the **Parent Organization**; or

    c.   the **Insured Organization** completely ceases to actively engage in its primary business ("cessation"); or

    d.   **Financial Impairment of the Insured Organization** occurs,

coverage under this Policy shall continue until termination of this Policy, but only with respect to Claims for Wrongful Acts occurring by the **Insureds** prior to such merger, consolidation, acquisition, cessation or **Financial Impairment**. The **Parent Organization** shall give written notice of such merger, consolidation, acquisition, cessation or **Financial Impairment** to the Company as soon as practicable and shall provide such information as the Company may require. The full premium, including any installments due for the **Policy Period** shall be deemed fully earned immediately as of the effective date of any event outlined in a. through d. above.

Cessation of Subsidiaries

15.  In the event an organization ceases to be a **Subsidiary** before or after the inception date of the Policy, coverage with respect to such **Subsidiary** and its **Insured Individuals** shall continue until termination of this Policy but only with respect to **Claims for Wrongful Acts** occurring prior to the date such organization ceased to be a **Subsidiary**.

**Representations and Application Form**

16.  It is agreed by the **Insureds** that the particulars and statements contained in the Application Form and the attachments and materials submitted with the Application Form (which shall be retained on file by the Company and shall be deemed attached hereto, as if physically attached hereto) are true and are the basis of the Policy and are to be considered as incorporated in and constituting a part of this Policy. It is further agreed by the **Insureds** that such particulars and statements are material to the decision to issue this Policy and that the Policy is issued in reliance upon the truth of such particulars and statements.

**Investigation and Settlement**

17.  The Company may make any investigation it deems necessary and may make any settlement of a **Claim** it deems expedient with the written consent of the **Parent Organization**, on behalf of the **Insureds**, which consent shall not be unreasonably withheld.



**Subrogation**

18.  In the event of any payment under this Policy, the Company shall be subrogated, to the extent of such payment, to all the **Insureds'** rights of recovery, and the **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit in the name of the **Insureds**.

Exhibit A-29

| **Action Against the Company** | 19. | No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or organization shall have any right under this Policy to join the Company as a party to any action against the Insureds to determine the Insureds' liability nor shall the Company be impleaded by the Insureds or their legal representatives. |

| **Bankruptcy or Insolvency** | 20. | Bankruptcy or insolvency of an Insured or the estate of an Insured Individual shall not relieve the Company of its obligations nor deprive the Company of its rights under this Policy. |

| **Authorization Clause** | 21. | By acceptance of this Policy, the Parent Organization agrees to act on behalf of all Insureds with respect to the giving and receiving of notice of Claim or termination, the payment of premiums and the receiving of any return premiums that may become due under this Policy, the negotiation, agreement to and acceptance of endorsements, and the giving or receiving of any notice provided for in this Policy, and the Insureds agree that the Parent Organization shall act on their behalf. |

| **Alteration or Assignment** | 22. | No change in, modification of, or assignment of interest under this Policy shall be effective except when made by a written endorsement to this Policy which is signed by a duly authorized representative of the Company. |

| **Termination of Policy** | 23. | This Policy shall terminate at the earliest of the following times: |

a. ten (10) days after receipt by the Parent Organization of written notice from the Company of termination resulting from non-payment of premium;

b. upon receipt by the Company of written notice of termination from the Parent Organization;

c. upon expiration of the Policy Period as set forth in ITEM 6. of the Declarations of this Policy;

d. sixty (60) days after receipt by the Parent Organization of the Company's notice of nonrenewal. Such notice shall be in conformance with applicable state laws and regulations; or

e. at such other time as may be agreed upon by the Company and the Parent Organization.

The Company shall refund the pro rata unearned premium if the Policy is terminated.

| **Valuation and Foreign Currency** | 24. | All premiums, limits, deductibles, Loss and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of Loss under this Policy is stated in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in The Wall Street Journal on the date the final judgment is entered, the amount of the settlement is agreed upon or the other element of Loss is due, respectively. |

| Territory | 25. | Coverage shall extend to Claims anywhere in the world. |

| Definitions | 26. | When used in the Policy: |

Claim means:

a.    a written demand for monetary damages;

b.    a civil proceeding commenced by the service of a complaint or similar pleading;

c.    a criminal proceeding commenced by the return of an indictment; or

d.    a formal administrative or regulatory proceeding brought by or on behalf of policyholders or customers commenced by the filing of a notice of charges, formal investigative order or similar document,

brought by or on behalf of a customer of the Insured against any Insured for a Wrongful Act or Interrelated Wrongful Act, including any appeal therefrom.

A Claim shall be deemed to have been made against the Insureds on the date any Insured first received written demand for monetary damages, the date that the judicial or administrative proceeding is served upon any Insured in any state, provincial or federal court or administrative agency, or the date any Insured first received written notice regarding the filing of a notice of charges, formal investigative order or similar document from a state, provincial or federal regulatory agency.

Defense Costs means that part of Loss consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers of employees of the Insured Organization) incurred in defending or investigating Claims and the premium for appeal, attachment or similar bonds.

Financial Impairment means the status of the Insured Organization resulting from:

a.    the appointment by any state, provincial or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the Insured Organization; or

b.    the Insured Organization becoming a debtor in possession.

Financial Services means only those services performed or required to be performed by or on behalf of the Insureds for or on behalf of a customer of the Insureds, pursuant to an agreement between such customer and the Insureds for a fee, commission or other monetary consideration or other remuneration which inures to the benefit of the Insureds, provided, however, that Financial Services shall not include:

a.    managed care; medical or health care services; real estate appraisal, development or management services; architectural or construction management services; the practice of law or the rendering of legal services;

b.    services performed by any entity of which the Insureds shall have acquired ownership or control as security for a loan or other extension of credit; or

c.    services included in the definition of Insurance Services.



Exhibit A-31

**Definitions**
(continued)

**Insurance Services** means only those services rendered or required to be rendered by or on behalf of the **Insureds** solely in the conduct of the **Insureds'** claims handling and adjusting; insurance risk management; safety engineering, inspection and loss control operations; personal injury rehabilitation operations; salvage operations; recovery subrogation services; premium financing operations; actuarial consulting services; or insurance pool management; provided, however, that **Insurance Services** shall not include:

a.   managed care; medical or health care services; real estate appraisal, development or management services; architectural or construction management services; the practice of law or the rendering of legal services;

b.   services performed by any entity of which the **Insureds** shall have acquired ownership or control as security for a loan or other extension of credit; or

c.   services included in the definition of **Financial Services**.

**Insured(s)** means the **Insured Organization** and the **Insured Individuals**, or any one of them.

**Insured Individuals** means any past, present or future director, officer, trustee, (in the United States of America, or any equivalent executive position under applicable law in any country other than the United States of America) or employee of the **Insured Organization** in his/her capacity as such.

**Insured Organization** means the **Parent Organization** and any **Subsidiary**.

**Interrelated Wrongful Acts** means all causally connected **Wrongful Acts**.

**Loss** means the total amount which the **Insured** becomes legally obligated to pay as a result of each **Claim** or for all **Claims** in each **Policy Period** and the **Extended Reporting** period, if exercised, made against the **Insureds** for **Wrongful Acts** for which coverage applies, including, but not limited to, compensatory damages, punitive or exemplary damages multiplied damages, judgments, settlements, costs and **Defense Costs**.

For the purpose of resolving any dispute between the **Company** and the **Insured** regarding whether the punitive or exemplary damages or the multiplied portion of any multiplied damage award specified above are insurable under this Policy, the law of the jurisdiction most favorable to the insurability of those damages shall control, provided that such jurisdiction is where:

a.   those damages were awarded or imposed;

b.   any **Wrongful Act** occurred for which such damages were awarded or imposed;

c.   any **Insured Organization** is incorporated or has its principal place of business; or

d.   the **Company** is incorporated or has its principal place of business.

**Loss** does not include:

a.   regular or overtime wages, salaries or fees of the directors, officers or employees of the **Insured Organization**;

Exhibit A-32

**Definitions**
(continued)

b.  loss of the actual money, securities, property or other items of value in the custody or control of the **Insureds**; or diminution in value or damages resulting from the diminution in value of money, securities, property or any other items of value unless caused by a **Wrongful Act** of the **Insureds** in the execution or implementation of investment advice or investment decisions;

c.  fines or penalties imposed by law or any other matters or sanctions which may be deemed uninsurable under the law pursuant to which this **Policy** shall be interpreted;

d.  any amounts which constitute premiums; fees and charges; return or refund of premiums; commissions or taxes; or loss arising out of any commingling of funds; or

e.  principal, interest, or other moneys either paid, accrued or due as the result of any loan, lease or extension of credit.

**Parent Organization** means the entity that is named in ITEM 1. of the Declarations, as legally constituted at the inception date of this **Policy**.

**Policy Period** means the period of time specified in ITEM 6. of the Declarations, subject to prior termination in accordance with Section 23. Regardless of whether this period is less than, equal to or greater than one year, the Limits of Liability specified in ITEM 2. of the Declarations shall be the Company's maximum limit of liability under this **Policy** for the entire period.

**Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or a state, county, municipality or locality counterpart thereof. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

**Subsidiary**, means any organization that, at the inception date of this **Policy**, is named in the Application Form and of which more than 50% of the outstanding securities or voting rights representing the present right to vote for election of directors is owned or controlled by the **Parent Organization** either directly or through one or more of its **Subsidiaries** or any entity of which more than 50% of the outstanding securities or voting rights representing the right to vote for election of directors was owned or controlled by the **Parent Organization** either directly or through one or more of its **Subsidiaries** prior to the inception date of this **Policy**.

**Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted, or allegedly committed or attempted, by the **Insureds** or any person for whose acts the **Insureds** are legally liable, which arises solely from the **Insureds** or any person for whose acts the **Insureds** are legally liable, performing **Insurance Services** or **Financial Services** including al- leged failure to perform **Insurance Services** or **Financial Services**.

For the purposes of these definitions, the singular includes the plural and the plural includes the singular, unless otherwise indicated.

Effective date of
this Endorsement: September 1, 2001

**FEDERAL INSURANCE COMPANY**

Endorsement No:   2

To be attached to and form part of
Policy Number:   70427262

Issued to:  CALIFORNIA CASUALTY MANAGEMENT CO.

---

### EMPLOYED LAWYERS PROFESSIONAL LIABILITY EXTENSION ENDORSEMENT

| NOTICE: | THIS POLICY FORM AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. |
|---|---|

1.   It is agreed that Section 26., Definitions, is amended by adding the following:

   **Employed Lawyer** means any person admitted to practice law who is, was or becomes a full-time, salaried employee of an **Insured Organization**.

2.   The definition of **Insured** is amended to include any **Employed Lawyer**.

3.   Section 4., Exclusions, is amended by adding the following:

   T.   based upon, arising from, or in consequence of any **Employed Lawyer's** service as a director, officer, trustee, member of any entity, or lawyer for anyone other than the **Insured Organization**, even if directed or requested to serve such other entity or client.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: September 26, 2001

By _Robert Hamburger_
       Authorized Representative

ICPL Policy
Form 17-02-2565 (Ed. 1-01)
2-14179 (NYFTZ)

Exhibit A-34

Effective date of
this Endorsement:  September 1, 2001

**FEDERAL INSURANCE COMPANY**

Endorsement No:    3

To be attached to and form part of
Policy Number:     70427282

Issued to:  CALIFORNIA CASUALTY MANAGEMENT CO.

---

### PREMIUM ENDORSEMENT

It is agreed that:

1.  The premium for this Policy for the period September 1, 2001 to July 1, 2002 is:

    Premium:  ($ 249,000)

2.  This premium is subject to change during the period in 1. above if amendments are added to this Policy at the request of the Parent Organization.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: September 26, 2001

By _Robert Hamburger_
      Authorized Representative

ICPL Policy
Form 17-02-2557 (Ed. 1-01)

Exhibit A-35

# Notice To Our Producers
## California Insurance Guarantee Association Assessments

The California Insurance Guarantee Association assesses insurers for funds to cover the claim liabilities of insolvent insurers. The Guarantee Law requires insurers to recoup the assessments paid to the association through a surcharge on premiums for insurance policies to which the law applies.

Policies effective January 1, 1995, and all corresponding transactions may reflect this surcharge. On return premiums and cancellations, the surcharge will be returned only if previously collected. The charge will be shown as a separate item on both policies and bills. It will be identified as "CIGA Surcharge". If applicable, this surcharge must be paid with the first premium installment. PLEASE NOTE: By law the surcharge is not considered premium, therefore, no commission is payable on this item.

If you have any questions or require additional information about the surcharge, please contact your local underwriter.

Form 99-10-0214 (Ed.4-95)

Exhibit A-36

California Casualty

NEW204 115587104    FILE COPY                                          0006
FRCO 3
*****
                                              HOMEOWNER POLICY
              RENEWAL DECLARATION * * EFFECTIVE 09/05/00

| Policy Number | Policy Period 12:01 A.M. standard Time at the insured location as stated herein- Effective    Expiration | Coverage is Provided By | Agency |
|---|---|---|---|
| 204 1155871 | 09/05/00 | 09/05/01 | CA CASUALTY INSURANCE CO | 150290000 |

| Addressee | Named Insured |
|---|---|
| HAROLD, N·JAMES & D·LEE 1160 GLEN AULIN CT CARMICHAEL, CA  95608 | HAROLD, N·JAMES & D·LEE 1160 GLEN AULIN CT CARMICHAEL, CA                    95608 |

THE PREMISES COVERED BY THIS POLICY IS LOCATED
    1160 GLEN AULIN CT CARMICHAEL, CA 95608·

RATING INFORMATION— AUTOMATIC VALUE UP AT RENEWAL, FRAME, PRIMARY RESIDENCE,
    PROTECTION CLASS 3, TERRITORY 55, $250 SECTION I LOSS DEDUCTIBLE, 1 FAMILY,
    PREMIUM GROUP 322, OUTSIDE CITY LIMITS·

COVERAGE AT THE ABOVE DESCRIBED LOCATION IS PROVIDED ONLY WHERE A LIMIT OF
LIABILITY IS SHOWN OR A PREMIUM IS STATED

| SECTION I COVERAGE | LIMIT OF LIABILITY | PREMIUMS |
|---|---|---|
| A· DWELLING | $325,000 | $1,544·00 |
| B· OTHER STRUCTURES | $32,500 | |
| C· PERSONAL PROPERTY | $243,750 | INCLUDED |
| D· LOSS OF USE | $65,000 | |
| SECTION II COVERAGE | | |
| E· PERSONAL LIABILITY | $500,000 EACH OCCURRENCE | |
| F· MEDICAL PAY· TO OTHERS – | $2,000 EACH PERSON | $40·00 |
| TOTAL BASIC PREMIUM | | $1,584·00 |
| ADDITIONAL PREMIUMS | | |
| H070 LIABILITY EXTENDED TO PROPERTY DESCRIBED HEREIN | | $10·00 |
| H0314 DWELLING REPLACEMENT COST | | $1·00 |
| H061 PERSONAL ARTICLES FLOATER | | $50·00 |
| TOTAL ADDITIONAL PREMIUMS | | $61·00 |
| SUB-TOTAL ANNUAL PREMIUM | | $1,645·00 |

POLICY PERIOD 12:01 AM    STANDARD TIME AT THE RESIDENCE PREMISES·

    MORTGAGEE #0393319800
        SUMITOMO BANK OF CALIFORNIA
        320 CALIFORNIA STREET 7TH FL·
        SAN FRANCISO, CA                    94104

                        CONTINUED ON NEXT PAGE

                    * FOR POLICY SERVICE/CLAIMS CONTACT *

                        FOR SERVICE· CALL 800-800-9410
                        FOR CLAIMS· CALL 800-800-9410·

UP-1144 (8/94) Billing information will be mailed under Separate Cover          Exhibit A-37

I, _Danny Kleha, underwriting analyst_
(Name)                    (Title)
certify under penalty of perjury that this is
a true and correct duplicate of the original
_DEC PAGE_____ as it existed on the date of
certification shown below. This is issued as
a duplicate and does not constitute additional
or contributing insurance.
Policy #204 1155871 Date of Cert. 6/28/02
Signature _Danny Kleha_ Date 6/28/02
San Mateo, California

Exhibit A-38

California Casualty

*NEW204 115587104    FILE COPY

FRCO                                                                                    0006

HOMEOWNER POLICY
RENEWAL DECLARATION * * EFFECTIVE 09/05/00

| Policy Number | Policy Period 12:01 A.M. standard Time at the insured location as stated herein: Effective    Expiration | Coverage is Provided By | Agency |
|---|---|---|---|
| 204 1155871 | 09/05/00    09/05/01 | CA CASUALTY INSURANCE CO | 150290000 |

| Addressee | Named Insured |
|---|---|
| | HAROLD N JAMES & D LEE |
| | 1160 GLEN AULIN CT |
| | CARMICHAEL CA |
| | 95608 |

FORMS AND ENDORSEMENTS - UP-426 05/95, HO300CA 05/95, HO996 06/84, HO-966 05/95,
   HO-290 05/95, HO-216 07/82, HO-70 07/90, HO-90 07/84, HO-314 05/95,
   HO-61 04/88, HO-322 07/90.


THIS POLICY DOES NOT INCLUDE BUILDING CODE UPGRADE COVERAGE.


THIS POLICY DOES NOT PROVIDE EARTHQUAKE COVERAGE

                                                                            07/12/00
                                                                            DATE

DESCRIPTION OF ADDITIONAL COVERAGES

NON-SMOKER DISCOUNT

LIABILITY EXTENDED TO PREMISES AS LISTED BELOW
   NUMBER OF FAMILIES IS 1. MEDICAL PAYMENTS DO NOT APPLY. TERRITORY IS 03.
   1836 BEVERLY WAY, SACRAMENTO, CA 95818

WORKERS' COMPENSATION
   COVERAGE FOR OCCASIONAL SERVANT.

PREMISES ALARM OR FIRE PROTECTION SYSTEM DISCOUNT
   COVERAGE APPLIES. TYPE 2 PROTECTIVE DEVICES.
   SMOKE ALARM & BURGLAR ALARM


                        CONTINUED ON NEXT PAGE



                                                                Exhibit A-39

UP-1144 (8/94) Billing information will be mailed under separate cover

California Casualty

*NEW204 115587104 FILE COPY 0006
FRCO

HOMEOWNER POLICY
RENEWAL DECLARATION * * EFFECTIVE 09/05/00

| Policy Number | Policy Period 12:01 A.M. standard Time at the Insured Location as stated herein: Effective | Expiration | Coverage is Provided By | Agency |
|---|---|---|---|---|
| 204 1155871 | 09/05/00 | 09/05/01 | CA CASUALTY INSURANCE CO | 150290000 |

Addressee

Named Insured
HAROLD, N.JAMES & D.LEE
1160 GLEN AULIN CT
CARMICHAEL, CA 95608

DESCRIPTION OF ADDITIONAL COVERAGES

PERSONAL PROPERTY REPLACEMENT COST

DWELLING REPLACEMENT COST

FURS-SCHEDULED COVERAGE-DESCRIPTION ON FILE
AMOUNT OF LIABILITY IS $ 12500, TERRITORY IS 03.
SEE SCHEDULE

(Name) (Title)
c... under penalty of perjury that this is a true and correct duplicate of the original as it existed on the date of ______ certification shown below. This is issued as a duplicate and does not constitute additional or contributing insurance.
Policy # ______ Date of Cert. ______
Signature ______ Date ______
San Mateo, California

---S T A T E M E N T O F A C C O U N T--- 2041155871 0403
HAROLD, N.JAMES & D.LEE

TOTAL AMOUNT................. $1,645.00

THANK YOU FOR LETTING US SERVE YOU

UP-1144 (8/94) Billing information will be mailed under Separate Cover

Exhibit A-40

I, *Danny Kiehn,* *underwriting analyst*
     (Name)                    (Title)
certify under penalty of perjury that this is
a true and correct duplicate of the original
*Homeowners Policy* as it existed on the date of
certification shown below.  This is issued as
a duplicate and does not constitute additional
or contributing insurance.

Policy # 204 115587 Date of Cert. 6/28/02
Signature _____ Date 6/28/02
San Mateo, California



YOUR PLAIN LANGUAGE

HOMEOWNERS
POLICY

UP-426 (5/95)

HOMEOWNERS POLICY

California Casualty Insurance Co.
California Casualty Indemnity Exchange
California Casualty & Fire Insurance Company

**HOME OFFICES: SAN MATEO, CALIFORNIA**

**YOUR HOMEOWNERS POLICY
QUICK REFERENCE**

DECLARATIONS PAGE

Your Name
Location of Your Residence
Coverages Applicable to Your Policy
Amounts of Insurance in Your Policy
Your Deductible

Beginning
On Page

AGREEMENT .................................... 1

DEFINITIONS .................................... 1

SECTION I
YOUR
PROPERTY

LOSS DEDUCTIBLE ........................ 3

COVERAGES ................................... 3
  Coverage A - Dwelling ................... 3
  Coverage B - Other Structures ...... 4
  Coverage C - Personal Property ... 4
  Coverage D - Loss of Use ............. 6
ADDITIONAL COVERAGES ........... 7
  Debris Removal ............................ 7
  Reasonable Repairs ..................... 8
  Trees, Shrubs and Plants ............. 8
  Fire Department Service Charge ...8
  Property Removed ......................... 9
  Credit Card, Fund Transfer Card ...9
  Collapse ....................................... 10
  Lost Luggage ............................... 11
  Loss Assessment ......................... 11
  Glass or Safety Glazing Material . 11

PERILS INSURED AGAINST ......... 12
  Coverage A - Dwelling ................. 12
  Coverage B - Other Structures .... 12
  Coverage C - Personal Property . 13

UP-426 (5/95)

Exhibit A-43

EXCLUSIONS ....... ................16

CONDITIONS .................................19
   Insurable Interest ....................... 19
   Duties After Loss .........................19
   Loss Settlement ..........................20
   Loss to a Pair or Set....................22
   Glass Replacement ................... 22
   Appraisal .....................................22
   Other Insurance ...........................23
   Suit Against Us ...........................23
   Our Option ................................. 23
   Loss Payment .............................23
   Abandonment of Property ...........23
   Mortgage Clause..........................23
   No Benefit to Bailee.................... 24
   Nuclear Hazard Clause................24
   Volcanic Eruption Period .............25

**SECTION II YOUR LIABILITY**

COVERAGES .................................25
   Coverage E - Personal Liability ...25
   Coverage F - Medical Payments  25

EXCLUSIONS ...............................26

ADDITIONAL COVERAGES ...........31
   Claim Expenses ...........................31
   First Aid Expenses.......................31
   Damage to Property of Others.....32
   Loss Assessment.........................32

CONDITIONS .................................33
   Limit of Liability ...........................33
   Severability of Insurance .............33
   Duties After Loss .........................33
   Duties of an Injured Person .........34
   Payment of Claim ........................34
   Suit Against Us ...........................34
   Bankruptcy of an Insured.............35
   Other Insurance ...........................35

**SECTION I and SECTION II**

CONDITIONS .................................35
   Policy Period ...............................35
   Concealment or Fraud .................35
   Liberalization Clause....................35
   Waiver or Change of Policy .........35
   Cancellation ................................36
   Non-Renewal ...............................37
   Assignment. ................................37
   Subrogation ................................37

   Death .........................................37
   Conformity to Statute .................37

PARTICIPATING AND RECIPROCAL PROVISIONS .................................38

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Copyright, Insurance Services Office, Inc., 1989, 1990, 1994

UP-426 (5/95)

UP-426 (5/95)

Exhibit A-44

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1.  **"Bodily injury"** means bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom.

2.  **"Business"** means any full-time or part-time trade, profession, occupation or activity, engaged in for monetary or other compensation. This definition includes the providing of home day care services to a person other than an insured. Mutual exchange of home day care services or the providing of home day care services by an **insured** to a relative of an **insured** is not considered a **business**.

3.  **"Insured"** means you and the following residents of your household:

    a.  Your relatives;

    b.  Any other person under the age of 21 who is in the care of any person named above.

    Under Section II, **"insured"** also means:

    c.  With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. A person or organization using or having custody of these animals or watercraft in the course of any **business** or without permission of the owner is not an **insured**;

    d.  With respect to any vehicle to which this policy applies:

    (1)  ...n ...erson while engaged in your employment or the employment of any person included in 3.a or 3.b.; or

    (2)  Any other person using the vehicle on an **insured location** with your permission.

4.  **"Insured location"** means:

    a.  The **residence premises**;

    b.  The part of any other premises, other structures and grounds used by you as a residence and:

    (1)  Which is shown in the Declarations; or

    (2)  Which is acquired by you during the policy period for your use as a residence;

    c.  Any premises used by you in connection with the premises included in 4.a. or 4.b. above;

    d.  Any part of a premises not owned by an **insured** and where an **insured** is temporarily residing;

    e.  Vacant land, other than farm land, owned by or rented to an **insured**;

    f.  Land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

    g.  Individual or family cemetery plots or burial vaults of an **insured**;

    h.  Any part of a premises occasionally rented to an **insured** for other than **business** purposes.

5.  **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

    a.  **Bodily injury**; or

    b.  **Property damage**.

6.  **"Property damage"** means physical injury to or destruction of tangible property, including loss of use of this property.

7.  **"Residence employee"** means an employee of an

1          UP-426 (5/95)

2          UP-426 (5/95)

**insured** who performs du____ connection with the maintenance or use of the re____ence premises, including household or domestic services, or who performs duties elsewhere of a similar nature not in connection with the **business** of an **insured**.

8. **"Residence premises"** means:

   a. The one or two family dwelling, other structures, and grounds; or

   b. That part of any other building:

   where you reside and which is shown as the **"residence premises"** in the Declarations.

---

### SECTION I - LOSS DEDUCTIBLE

---

In case of loss under Section I of this policy, we cover only that part of the loss over the deductible stated in the Declarations. The deductible does not apply to Coverage D - Loss of Use.

---

### SECTION I - COVERAGES

---

### COVERAGE A - Dwelling

We cover:

1. The dwelling on the **residence premises** shown in the Declarations used principally as a private residence, including structures attached to the dwelling;

2. Materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**; and

3. Wall-to-wall carpeting fastened to the dwelling.

This coverage does not apply to land, including land on which the dwelling is located.

### COVERAGE B - Other Structures

We cover other structures on the **residence premises**, separated from the dwelling by clear space. This coverage includes:

1. Structures connected to the dwelling by only a fence, utility line, or similar connection;

2. Wall-to-wall carpeting fastened to the structure; and

3. Fences, driveways, and walks on the **residence premises**.

We do not cover other structures:

1. Used in whole or in part for **business** purposes; or

2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

This coverage does not apply to land, including land on which other structures are located.

### COVERAGE C - Personal Property

We cover personal property owned or used by an **insured** while it is anywhere in the world. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied by an **insured**. In addition, we will cover at your request, personal property owned by a guest or a **residence employee**, while the property is in any residence occupied by an **insured**.

Our limit of liability for personal property usually situated at an **insured's** residence, other than the **residence premises**, is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each following numbered category is the total limit for each loss for all property in that numbered category.

1. $200 on money, bank notes, bullion, gold other than

Exhibit A-46

goldware, silver other than ⌐ vare, platinum, coins and medals.

2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps.

3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard motors.

4. $1000 on trailers not used with watercraft.

5. $1000 on grave markers.

6. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

7. $2500 for loss by theft of silverware and goldware.

   Silverware and goldware include:

   a. Platedware, flatware, holloware, tea sets, trays, trophies and the like;

   b. Other utilitarian items made of or including silver or gold.

8. $5000 for loss by theft of firearms.

9. $200 on property used at any time or in any manner for any **business** purpose except property subject to the Special Limit of Liability in 10. below.

10. $5,000 on computers and electronic data processing equipment, except that property used at any time or in any manner for the purpose of sales, repair, service, delivery or storage of computers or electronic data processing equipment is subject to the Special Limit of Liability in 9. above.

11. $10,000 on loss by theft of rugs, carpets, or other woven or knit floor coverings or wall hangings, subject to a limit of $2,500 on the theft of any one article.

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or any other insurance;

2. Animals, birds or fish;

3. Motor vehicles or all other motorized land con-

veyance ⌐ is includes:

a. Equipment and accessories;

b. Any device or instrument for the transmitting, recording, receiving or reproduction of sound or pictures which is operated by power from the electrical system of motor vehicles or other motorized land conveyances;

c. Accessories or antennas; or tapes, wires, records, discs or other media for use with any device or instrument described in paragraph b. above.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a. Used to service an **insured's** residence; or

b. Designed for assisting the handicapped.

4. Aircraft and parts;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an **insured**;

6. Property contained in an apartment regularly rented or held for rental to others by an **insured**;

7. Property rented or held for rental to others while away from the **residence premises**;

8. (a)   Books of account, drawings or other paper records; or

   (b)   Electronic data processing tapes, wires, records, discs or other software media;

   containing information or data used at any time or in any manner for any **business** purpose. But, we do cover the cost of blank or unexposed records or media.

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

**COVERAGE D - Loss of Use**

The limit of liability for Coverage D is the total limit for all the following coverages.

5          UP-426 (5/95)

6          UP-426 (5/95)

**Exhibit A-47**

1. If a loss covered under this ___ n makes that part of the **residence premises** where you reside uninhabitable, we cover:

   **Additional Living Expense**, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living;

   Payment shall be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the **residence premises** rented to others or held for rental by you uninhabitable, we cover:

   **Fair Rental Value**, meaning the fair rental value of that part of the **residence premises** rented to others or held for rental by you less any expenses that do not continue while the premises is uninhabitable.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the **residence premises** as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense or Fair Rental Value loss as provided under 1. and 2. above for a period not exceeding two weeks during which use is prohibited.

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

---

**ADDITIONAL COVERAGES**

1. **Debris Removal**. We will pay your reasonable expense for the removal of:

   a. Debris of covered property if a Peril Insured Against causes the loss; or

   b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property

cont___ l in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense for the removal of fallen trees from the **residence premises** if:

   a. Coverage is not afforded under Additional Coverage 3. Trees, Shrubs and Other Plants for the peril causing the loss; or

   b. The tree is not covered by this policy;

provided the tree damages covered property and a Peril Insured Against under Coverage C causes the tree to fall. Our limit of liability for this coverage will not be more than $500 in the aggregate for any one loss.

2. **Reasonable Repairs.** We will pay the reasonable cost incurred by you for necessary repairs made solely to protect covered property from further damage provided coverage is first afforded for the peril that has caused the loss which is then apparent. We will not pay for repairs of damage caused by an excluded or non-covered peril. We will not pay for repairs made as a preventative measure prior to an actual loss by a covered peril. This coverage does not increase the limit of liability applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns on the **residence premises**, for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism or malicious mischief or Theft. The limit of liability for this coverage shall not exceed 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants and lawns nor more than $500 for any one tree, shrub or plant. We do not cover property grown for **business** purposes.

This coverage is additional insurance.

4. **Fire Department Service Charge** (Does not apply in Arizona). We will pay up to $250 for your liability assumed by contract or agreement for fire department

charges incurred when the ... partment is called to save or protect covered prop... f a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** Covered property while being removed from a premises endangered by a Peril Insured Against and for not more than 30 days while removed is covered for direct loss from any cause. This coverage does not change the limit of liability applying to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

   We will pay up to $1000 for:

   a. The legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards issued to or registered in an **insured's** name;

   b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an **insured's** name;

   c. Loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

   d. Loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

   We do not cover use by a resident of your household, a person who has been entrusted with the credit card or fund transfer card or any person if an **insured** has not complied with all terms and conditions under which the credit card or fund transfer card is issued.

   We do not cover loss arising out of **business** pursuits or dishonesty of an **insured**.

   All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

   No deductible applies to this coverage.

Defense.

   a. We may make any investigation and settle any claim or suit that we decide is appropriate.

   Our obligation to defend any claim or suit ends when the amount we pay for the loss equals our limit of liability.

   b. If a suit is brought against an **insured** for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

   c. We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

   a. Perils Insured Against in Coverage C - Personal Property. These perils apply to covered building and personal property for loss insured by this Additional Coverage. 7. Collapse;

   b. Hidden decay;

   c. Hidden insect or vermin damage;

   d. Weight of contents, equipment, animals or people;

   e. Weight of rain which collects on a roof; or

   f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b, c, d, e and f unless the loss is a direct result of the collapse of a building.

   Collapse does not include settling, cracking, shrinking, bulging or expansion.

   This coverage does not increase the limit of liability

9      UP-426 (5/95)          10      UP-426 (5/95)

applying to the damaged cov...roperty.

8. **Lost Luggage.** We cover lost luggage and personal property while in the care, custody or control of a commercial passenger carrier. We will pay up to $500 for any one incident subject to the policy deductible. A claim must be submitted to the commercial passenger carrier within 30 days of loss, and this coverage shall be excess over any insurance provided by the carrier. This extension of coverage does not apply to loss of money, checks or money orders.

9. **Loss Assessment.** We will pay up to $1000 for your share of any loss assessment charged during the policy period against all unit owners by a corporation or association of property owners. This only applies when the assessment is made as a result of each direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under Coverage C - Personal Property, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises.**

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

10. **Glass or Safety Glazing Material.**

We cover:

a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

This coverage does not include loss on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

Loss for damage to glass will be settled on the basis of replacement with safety glazing material when required by ordinance or law.

This coverage does not increase the limit of liability

that appl... the damaged property.

---

## SECTION I - PERILS INSURED AGAINST

---

**COVERAGE A - DWELLING and**

**COVERAGE B - OTHER STRUCTURES**

We insure for direct physical loss to the property described in Coverages A and B except damage caused by:

1. Collapse, other than as provided in Additional Coverage 7;

2. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water;

3. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

a. Fence, pavement, patio or swimming pool;

b. Foundation, retaining wall or bulkhead;

c. Pier, wharf or dock;

4. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied;

5. Vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

6. Continuous or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from with-

1   In *Tomaselli v. TransAmerica Insurance Co.* (1994) 25 Cal. App. 4th 1766, 1770, the court said:

2   "The failure to pay benefits owed under a policy is both a breach of contract, entitling the
    insured to contractual damages, and a potentially tortious breach of the implied covenant
3   of good faith. However, both sets of obligations, in contract and in tort, spring from and
    depend on the existence of the contractual duty to pay."
4

5   Emphasis added.

6   **B.    California Casualty Breached Its Covenant of Good Faith and Fair Dealing.**

7       A cause of action for breach of the implied covenant requires a showing that the plaintiff

8   suffered a loss covered under the policy and that the insurer unreasonably failed to pay for the loss or

9   unreasonably delayed payment, causing harm to the plaintiff. CACI 2331. An insurer can also be liable

10  for breach of the implied covenant if it unreasonably fails to properly investigate a loss and delays

11  payment of the insurance benefits, causing harm to plaintiff. CACI 2332. Finally, an action for breach

12  of the implied covenant is also warranted where an insurer fails to inform the plaintiff of his or her rights

13  under the policy, causing damage to the plaintiff. CACI 2333. Plaintiffs assert that California Casualty

14  violated the breach of the implied covenant in each of these ways.

15      **1.    California Casualty Unreasonably Failed to Investigate the Harolds' Loss**

16      The implied covenant of good faith and fair dealing requires that the insurer conduct a prompt

17  and adequate investigation. *KPFF v. California Union Ins. Co.*, 56 Cal. App. 4th 963, 973 (1997);

18  *Brown v. Guarantee Ins. Co.*, 155 Cal. App. 2d 679, 689 (1957); Ins. Code § 790.03(h)(3), (11). An

19  insurance company is required "to make a diligent effort to ascertain the facts upon which only an

20  intelligent and good-faith judgment may be predicated." *Brown*, 155 Cal. App. 2d at 686. If an insurer

21  fails to exhaust the sources of information open to it to ascertain the facts, then it has not done all that is

22  possible to secure the knowledge upon which a good-faith judgment may be exercised and it may be

23  held liable for bad faith. *Id.* An insurer may be liable for breach of the covenant of good faith and fair

24  dealing not only if the insurer fails to conduct a sufficient investigation, but also if it engages in

25  wrongful conduct in the course of its investigation. *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 578

26  (1973).

12

1      The obligation to investigate is governed by a rule of reasonableness. *Egan v. Mutual of Omaha*

2  *Ins. Co.*, 24 Cal.3d 809, 819 (1979), *cert. denied*, 440 U.S. 912 (1980). CCIC not only handled the

3  Harolds' water claim unreasonably but it acted in a despicable manner by placing its interests above

4  those of its insured. California Casualty acted unreasonably by taking seven days from the Harolds' first

5  notification to California Casualty to examine the water loss. Moulton knew that mold can begin within

6  days, but despite this knowledge did not take action within a reasonable time. Even when Moulton

7  appeared on December 5, 2000, to examine the home and promised the Harolds that California Casualty

8  would take charge of fixing the problem, he did not attempt to make contact with a repair company until

9  he sent a fax at 7:00 P.M. on December 6, 2000, to Westmont Construction Company. Moulton

10  suspected mold on his first visit yet failed to hire a certified industrial hygienist. California Casualty's

11  failure to investigate promptly was an unfair claims practice in violation of Ins. Code §790.03(h)(2).

12      California Casualty also failed to reasonably investigate the Harolds' claim when it hired

13  Westmont, a company with no training or experience with mold. Moulton candidly admitted in

14  deposition that he knew Westmont was not a mold remediation company and that he didn't consider

15  Westmont's work to be mold remediation. Moulton's handling of the mold damage conformed to

16  California Casualty's corporate practice of not hiring a CIH to investigate water loss damage when mold

17  was suspected or confirmed. California Casualty has admitted that prior to the Harolds' claim,

18  California Casualty had not previously hired or paid for a CIH to investigate mold in an insured home in

19  Northern California. California Casualty's failure to hire a CIH to investigate and develop a remediation

20  protocol, when mold related to the Harolds' loss was discovered or even suspected, was unreasonable

21  conduct. California Casualty's practice of not hiring competent contractors to investigate and make

22  needed repairs of water damage claims when mold was suspected was a violation of Ins. Code

23  §790.03(h)(3).

24      By the end of December, Westmont confirmed there was mold. By January, Westmont and

25  California Casualty knew the mold was toxic when they received the Anderson report. This information

26  was concealed from the Harolds. Despite this knowledge, California Casualty still did not hire a CIH or

<center>13</center>

Exhibit A-102

1  a company knowledgeable in mold remediation. This failure to act reasonably was a violation of custom

2  and practice and below the standard of care.

3      During the third phase of this loss, Trudy Howell, another California Casualty insurance adjuster,

4  hired a geotechnical engineer, Timothy Williams. for the stated purpose of evaluating drainage

5  conditions at the Harolds' lot. Instead of being retained by California Casualty to conduct a fair and

6  thorough inspection, however, Williams will testify that he was told by Ms. Howell to look for "other

7  sources of water intrusion." Ms. Howell's intentions were clear; to attempt to develop facts that could

8  be used as a basis to claim that the mold existing in the Harolds' home in the spring and summer of 2002

9  came from a source other than the loss, or that the facts otherwise existed that could be used as a basis to

10  blame the Harolds for the failure of the house to clear, or to deny coverage.   These actions violate

11  California Casualty's duty to conduct a prompt, fair, reasonable and adequate investigation of the

12  Harolds' claim. *Eagan v. Mutual of Omaha Ins. Co.* 24 Cal.3d 809, 819 – 820 (1979).

13      California Casualty's unreasonable failure to properly investigate the Harold's claim was a

14  breach of the covenant of good faith and fair dealing. was in violation of fair claims practices, and

15  exposed the Harolds to mold and ultimately created mold contamination of the entire Harold home and

16  all of their possessions.  Mr. Harold also suffered adverse health consequences from his exposure to the

17  mold.

18      **2.     California Casualty Unreasonably Failed to Inform the Harold's of Their Rights**
           **and Obligations Under the Policy**

19

20      When an insurer receives notice of a claim, the implied covenant of good faith and fair dealing

21  requires that the insurer reasonably advise and promptly inform the insured of the insured's rights and

22  obligations under the policy. *Davis v. Blue Cross of Northern California*, 25 Cal.3d 418, 428 (1979).

23  An insurer must take affirmative steps to insure that the insured is informed of the remedial rights under

24  the policy. *Sarchett v. Blue Cross of California*, 43 Cal.3d 1, 14-15 (1987). In violation of the implied

25  covenant, California Casualty failed to inform the Harolds of their rights under the policy.

26  //

Plaintiffs James Harold's and D. Lee Harolds' Trial Brief

Exhibit A-103

1   In conformity with its practice of placing its interests above its insureds, California Casualty told

2   the Harolds that they were entitled to move into a one bedroom apartment while repairs were

3   effectuated. California Casualty failed to tell the Harolds they were entitled to comparable living

4   quarters, which would have costs three to four times as much as a one bedroom apartment. This is a

5   violation of the custom and practice in the insurance industry and 10 C.C.R. §2695.4(a).

6   In violation of the implied covenant of good faith and fair dealing, California Casualty failed to

7   inform the Harolds that they were entitled to remain in control of the work on their home. Instead,

8   California Casualty unreasonably hired its own contractor, Westmont, and its own CIH, Carls, to

9   develop a remediation protocol without obtaining the Harolds' approval or taking into consideration

10  their wishes of using the CIH of their choosing. Also in violation of the implied covenant, California

11  Casualty failed to inform the Harolds of a third party report that disclosed property damage and health

12  risks.

13  California Casualty's failure to inform the Harolds of their rights under the policy was in direct

14  violation of the implied covenant of good faith and fair dealing.

15  **3.    California Casualty Unreasonably Failed to Pay for the Harolds' Loss and
        Unreasonably Delayed Payment to the Harolds**

16

17  The implied covenant of good faith and fair dealing includes a duty by the insurer not to

18  withhold or delay payments unnecessarily. See *Egan*, supra, 24 Cal.3d at 818-820. Implicit in the

19  insurer's obligation to not unreasonably withhold or delay payments is the notion that the insurer must

20  give at least as much consideration to the insured's interests as it gives its own. *Id.* For this reason, the

21  insurer's attitude and motives are substantial factors in determining reasonableness. See e.g., *Blake v.*

22  *Aetna Life Ins. Co.*, 99 Cal. App. 3d 901, 922 (1979); *Sprague v. Equifax, Inc.*, 166 Cal. App. 3d 1012,

23  1025 (1985).

24  No specific period of delay in providing benefits is reasonable or unreasonable per se. Rather,

25  the reasonableness of the delay is a *question of fact* that must be determined on a case by case basis in

26  light of the circumstances. See *Blake*, 99 Cal.App.3d at 922-924; see also *Fleming v. Safeco Ins. Co.*,

<center>15</center>

1    160 Cal.App.3d 31, 36-38 (1984). The reasonableness of an insurer's claims handling practices *only*

2    becomes a question of law when the evidence is undisputed and only one inference can be drawn from

3    the evidence. *Carlton v. St. Paul Mercury Ins. Co.*, 30 Cal. App. 4th 1450, 1456, 1459 (1994). Such is

4    not the case here.

5         The Harolds believe that California Casualty will argue that the "genuine dispute" doctrine will

6    preclude a finding of breach of the covenant of good faith and fair dealing. *Chateau Chamberay*

7    *Homeowners Assn. v. Associated Internat. Ins. Co.* 90 Cal.App.4th 335, 347. Throughout this case

8    California Casualty has been deceptively mischaracterizing the factual basis for the Harolds' cause of

9    action for bad faith by attempting to limit the breach to the question of whether the Harolds' residence

10   could have been remediated or had to be rebuilt. As the *Chateau Chamberay* court recognized,

11   however, the genuine dispute defense does not apply when the dispute arose because the insurance

12   company failed to conduct a thorough investigation. *Chateau Chamberay*, supra, pps. 348 – 349. In

13   other words, a breach of the covenant of good faith and fair dealing can be found even where the insurer

14   harbors actual doubts about the amounts of benefits which should be paid on a covered claim if a

15   reasonable investigation would have disclosed information making those doubts no longer tenable.

16   *Wilson v. 21st Century Insurance Company*, 06 D.D.O.S. 940.

17        In any event, as discussed above, the basis for the Harolds' cause of action for the breach of the

18   implied covenant of good faith and fair dealing is much broader. For example, California Casualty

19   unreasonably failed to pay benefits when it failed to hire a CIH once it knew that harmful mold was

20   present, and further failed to hire a qualified mold remediation contractor. Additionally, California

21   Casualty unreasonably failed to pay benefits due under the policy when it failed to obtain a mold

22   clearance test before canceling the Harolds' additional living expenses. Not only did California

23   Casualty cancel the living expenses, in addition it instructed the Harolds that they could return to their

24   home, absent confirmation that the toxic mold was remediated. There cannot be a "genuine dispute."

25        California Casualty also unreasonably delayed the payment of benefits. California Casualty

26   failed to hire a CIH at the onset of the claim and failed to hire a company with experience in mold

16

Exhibit A-105

1    remediation. The delay in hiring such persons damaged the Harolds' home, possessions and health. The

2    Harolds were not told that the home was tested for mold, they were not given the mold report, they were

3    not told that toxic mold was confirmed in their home, and they were not warned of the health risks of

4    being exposed to mold. California Casualty's wrongful conduct damaged the Harolds' home and their

5    possessions, exposed the Harolds to harmful toxins, and damaged Mr. Harold's health. Having caused

6    the damage through its wrongful conduct, California Casualty has ostensibly spent the Harolds' policy

7    limits to correct the harm it was responsible for causing. The policy limits were not spent on repairing

8    the damage caused by the water loss, they were spent trying to correct the damage caused by California

9    Casualty's tortious conduct. As such, California Casualty unreasonably delayed and denied benefits due

10   under the policy.

11   **B.    California Casualty Is Liable for Fraud.**

12          **1.    California Casualty Concealed Material Facts from the Harolds.**

13          The evidence produced at trial will show that California Casualty failed in its duty to inform and

14   warn the Plaintiffs about the presence of toxic mold in the property and the foreseeable risk of harm to

15   the Plaintiffs and their property from exposure to contaminants, mold and bacteria. Evidence will also

16   be presented at trial proving that that California Casualty concealed that the Harold's home was tested

17   for mold, that California Casualty concealed the results of the environmental sampling, and concealed

18   the true reason for asking the Plaintiffs to move out of the property (the discovery of harmful or toxic

19   mold). Finally, California Casualty concealed its attempt to clean up the mold through ordinary repair

20   methods, rather than using remediation, contrary to accepted standards.

21          California Casualty also concealed or suppressed from Plaintiffs information concerning the

22   presence of toxic mold and bacteria found during repairs even though California Casualty was aware of

23   the potential health risks associated with mold. For example, California Casualty knew that Westmont

24   had performed its repairs without the benefit of any containment fields. California Casualty knew that

25   some of the Harolds' possessions had not been moved out and were continuously exposed to the

26   uncontained remedial repairs by Westmont. California Casualty knew that these exposed possessions

17

Exhibit A-106

1  were not cleaned before the Harolds moved in. California Casualty knew that it was not proper to send

2  an insured back into a mold contaminated location without first testing to ensure that the mold had been

3  eradicated. Yet, neither California Casualty nor Westmont obtained a mold clearance before telling the

4  Harolds to move back into their home.

5        As a result of Defendants' concealment of the presence of toxic and pathogenic mold and their

6  intent to clean it up through ordinary repair methods, Plaintiffs and their property were exposed to toxic

7  mold and bacteria.

8    **2.    California Casualty Misrepresented Material Facts to the Harolds.**

9        California Casualty represented in its insurance policy that it would cover and indemnify the

10  Harolds for water loss. This representation was false because California Casualty did not intend to hire

11  a CIH to investigate or to pay for proper remediation by a qualified company. California Casualty hired

12  Westmont even though California Casualty suspected that mold existed in the Harolds' house on first

13  visit, and Moulton knew that Westmont was not a mold remediation contractor and in fact had no

14  experience or skill in mold remediation. The evidence will show that California Casualty knowingly

15  and falsely represented to the Harolds that Westmont would take care of the damage caused by the water

16  loss, even though Moulton knew that Westmont was not qualified to deal with mold. California Casualty

17  and Westmont falsely misrepresented to the Harolds that they had to move out of their home during the

18  repair period because of noise and dust when, in reality, the purpose for the move was the existence of

19  the harmful mold. Defendants made false representations as to the habitability and adequacy of the

20  repair to Plaintiffs' home knowing that the representations were false. Defendants knew of the potential

21  health risks associated with mold exposure. Yet, Defendants led Plaintiffs to believe that their house

22  had been repaired.

23    **3.    The Harolds Justifiably Relied on California Casualty's Misrepresentations and**
      **Were Harmed by California Casualty's Concealment**

24

25        Defendants may argue that the Harolds knew about the existence of mold in March 2001 and, as

26  such, the existence of mold was not concealed nor did the Harolds justifiably rely on any

18

Exhibit A-107

1   misrepresentations by California Casualty or Westmont. This argument fails because in March 2001 the

2   Harolds knew only of the existence of a small patch of mold on a kitchen wall that a painter was to fix.

3   Most importantly, they did not know that the subfloor of their home and the inside of the walls of their

4   house were contaminated with toxic mold, although this information was known to both California

5   Casualty and Westmont. The fact that the Harolds were completely unsophisticated about the hazards of

6   mold and the proper methods to remediate it is proven by the estimate on which the Defendants rely.

7   The estimate suggests priming and painting the small area of mold that was found. California Casualty

8   knew that the suggested repair was inappropriate, but did not share such information with the Harolds,

9   nor did California Casualty inform the Harolds at that time that toxic mold existed in the subfloor and in

10  the walls.

11          The fact that the Harolds knew of a small patch of mold in their home in March 2001 did not

12  make them aware that their home was infested with mold nor that their possessions and health were in

13  danger. Of course, California Casualty knew about the toxic mold and appreciated the health hazards.

14  California Casualty concealed its knowledge and misrepresented the fact and the Harolds' home,

15  possessions and health were damaged as a result.

16  **C.      California Casualty Is Liable to the Harolds for Intentional Infliction of Emotional Distress.**

17          Outrageous conduct is described in general terms as a "case…in which the recitation of the facts

18  to an average member of the community would arouse his resentment against the actor, and lead him to

19  exclaim, "Outrageous!"" Comment (d), Restatement of the Law, Second, Torts, § 46 (1965). California

20  Casualty's and Westmont's actions, in failing to disclose the presence of harmful toxic mold to the

21  Harolds, intentionally exposing the Harolds to adverse health consequences, failing to hire a CIH and an

22  experienced contractor to remediate the mold, failing to obtain a mold clearance test before returning the

23  Harolds' possessions to their still-contaminated home in May 2001, and cutting off their ALE payments

24  in an attempt to force them back into the uninhabitable house all constitute conduct that would certainly

25  cause any average member of the community to exclaim "Outrageous!"

26

Plaintiffs James Harold's and D. Lee Harolds' Trial Brief

Exhibit A-108

1    Reckless disregard has been characterized as acts performed with "little or no thought" to the

2    probable consequences of the conduct. *KOVR-TV v. Superior Court*, 31 Cal. App. 4th 1023, 1031-1032

3    (1995), citing *Miller v. National Broadcasting Co.*, 187 Cal. App. 3d 1463, 1487 (1986). California

4    Casualty and Westmont exhibited reckless disregard to the possibility that their conduct would result in

5    emotional distress to the Harolds.

6    Emotional distress is measured by considering the facts of each case, as well as the intensity and

7    duration of the distress. Comment (j), Restatement of the Law, Second, Torts, § 46 (1965). Substantial

8    evidence exists to prove that the Harolds' emotional distress is severe. The Harolds need not show

9    purely physical symptoms of severe emotional distress. "The requisite emotional distress may consist of

10   any highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment, anger,

11   chagrin, disappointment or worry." *Crisci v. Security Ins. Co.*, 66 Cal.2d 425, 433 (1967). The

12   discovery that California Casualty concealed the presence of toxic mold, the fact that Westmont likewise

13   concealed the same information, the failure of California Casualty to hire a mold remediation contractor

14   the revelation that the Harolds had been exposed to toxic mold, the Harolds' inability to come in contact

15   with personal possessions and family treasures and their inability to live in the family home they built

16   together, are all the basis for their severe emotional distress. The Harolds suffered disappointment, fear,

17   sadness and sorrow as a result of California Casualty's and Westmont's actions.

18   Greater proof that mental suffering occurred is found in the Defendants' conduct designed to

19   bring it about than in physical injury that may or may not have resulted therefrom. *Golden v. Dungan*,

20   20 Cal. App. 3d 295, 308 (1971). Defendants engaged in a course of conduct which was intentional,

21   extreme and outrageous, and which was in wanton and reckless disregard of Plaintiffs' rights and

22   interests

23   **D.    California Casualty and Westmont Are Liable for Nuisance.**

24   Nuisance has been found in all manner of activity that causes interference with use and

25   enjoyment of property. See *Stevens v. Moon*, 54 Cal. App. 737 (1921) (damage to trees); *Sierra Screw*

26   *Prods. v. Azusa Greens Inc.*, 88 Cal.App.3d 358 (1979) (golf balls from golf courses); and *McIvor v.*

20

Exhibit A-109

1  *Mercer-Fraser Co.*, 7 Cal. App. 2d 247 (1946) (excavation causing loss of use of strip of land and fear

2  of collapse). A trier of fact may find that California Casualty interfered with the Harolds' use and

3  enjoyment of their property by permitting repairs without containment in a home known to California

4  Casualty to be contaminated with mold, or by exposing the Harolds' possessions to harmful and

5  damaging mold. In addition, Defendants failure to remediate the toxic mold contamination has rendered

6  the Harolds' home completely uninhabitable to this day, thus wholly interfering with their use and

7  enjoyment of their family home – in that they cannot live there without exposing themselves to serious

8  health hazards. Nuisance is defined as "anything which is injurious to health…so as to interfere with the

9  comfortable enjoyment of life or property." Civil Code § 3479. Defendants' conduct and the resulting

10  injury to the Harolds fits squarely within this definition.

11      All of these actions by Defendants constitute substantial and unreasonable interferences of the

12  Harolds' use and enjoyment of their home in every sense of Civil Code § 3479.

13  **E.    California Casualty Has Violated California's Unfair Competition Law.**

14      An unfair business practice is a practice that is "deceptive or sharp." *Klien v. Earth Elements*, 59

15  Cal.App.4th 965, 970 (1997). A fraudulent business practice under §17200, unlike the strict standards

16  for the separate fraud tort cause of action, only requires a showing that "members of the public are likely

17  to be deceived." *South Bay Chevrolet v. General Motors Acceptance Corporation*, 72 Cal. App. 4th 861,

18  888 (1999). The unlawful standard is self-explanatory. California Casualty's practices in this case were

19  clearly fraudulent.

20      In direct violation of Business and Professions Code Section 17200, Defendant California

21  Casualty had a fraudulent practice of misrepresenting its obligations, including it obligations to pay

22  actual cash value, to pay to repair or replace the premises, and to pay additional living expense benefits.

23  In addition, California Casualty had a fraudulent practice of not retaining CIHs and mold abatement

24  contractors in cases where mold appears as a consequence of a water damage claim.

25      It is California Casualty's business practice not to hire a CIH, even when suspected to be needed.

26  Moulton's handling of the Harolds' claim conformed to California Casualty's fraudulent corporate

Plaintiffs James Harold's and D. Lee Harolds' Trial Brief

Exhibit A-110

1    practice of not hiring a CIH to investigate water loss damage when mold was suspected or confirmed.

2    California Casualty has admitted that prior to the Harolds' claim, California Casualty had not previously

3    hired or paid for a CIH to investigate mold in an insured's home in Northern California.

4            California Casualty's corporate practices certainly rise to the level of "deceptive or sharp." In

5    addition, a jury could easily find that such practices are "likely to deceive" California Casualty's

6    insureds who reasonably believe that their claims will be handled in a manner to protect the insured's

7    interests. Finally, California Casualty's practices clearly constitute a fraudulent business practice.

8    **IV.    DAMAGES**

9            The Harolds are entitled to recover three types of damages in this case. First, damages for

10   breach of contract, which in a first party case is measured by the benefits due under the policy, together

11   with interest from the dates the benefits were due. The second type of damages are recovered pursuant

12   to the bad faith theories of liabilities, and these damages include both economic and noneconomic harm

13   incurred by the Harolds, in this case, the cost to repair the damage at the Harold home, and the Harolds'

14   emotional distress damages, respectively. The third type of damages are as of this writing available only

15   against the Westmont, i.e., punitive damages.

16           A.    Contractual Damages.

17           California Civil Code § 3300 states:

18           "For the breach of an obligation arising from contract, the measure of damages
             . . . is the amount which will compensate the party aggrieved for all the
19           detriment proximately caused thereby, or which in the ordinary course of things
             would be likely to result therefrom."
20

21           The Harolds understand that California Casualty contends that it has paid the Harolds all benefits

22   due under the insurance policy at issue. The Harolds will present evidence that the contract benefits

23   have not been paid them, and in fact that California Casualty owes them several hundred thousand

24   dollars in policy benefits, plus interest.

25   //

26   //

Plaintiffs James Harold's and D. Lee Harolds' Trial Brief

B.    Extracontractual damages.

As a result of the wrongful acts described herein, the Harolds will present proof at trial that their home cannot be successfully remediated as is.  The Harold home must be razed to the ground, scraped from the lot, and rebuilt from the ground up.  The Harolds will present evidence that the cost to repair their residence will exceed $800,000.  In addition to their cost of repair damages, the Harolds have incurred personal injury and emotional distress damages and loss of use damages.

Moreover, the Harolds will be entitled to fees and costs pursuant to *Brandt v. Superior Court*, 37 Cal.3d 813, 817 (1985), which states that if breach of the implied covenant of good faith and fair dealing is proved, reasonable and necessary attorney's fees incurred by the insured to recover policy benefits may be recoverable under the extracontractual measure of damages.

**IV    Conclusion**

Plaintiffs estimate that this case will take three to four weeks to try.

Respectfully submitted,

DATED:  February 6, 2006.


HINTON, ALPERT & SUMNER

By _____

PETER W. ALFERT

23

Exhibit A-112

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 1646 N. California Blvd., Suite #600, , Walnut Creek, California 94596. On February 6, 2006, I caused the within documents to be served:

**Plaintiffs James Harold's and D. Lee Harold's Trial Brief**

( )     by transmitting via facsimile the document(s) listed above to the fax number(s) set for below on this date before 5:00 p.m.

( )     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Walnut Creek, California, addressed as set forth below.

( x )     by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

( )     by placing a true copy thereon enclosed in a sealed envelope, at a station designated for collection and processing of envelopes and packages for overnight delivery as part of the ordinary business practices of Hinton, Alfert & Sumner described above, addressed as follows:

**SEE ATTACHED SERVICE LIST**

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the US Postal Service that same day in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on February 6, 2006, at Walnut Creek, California.

_Shari K. McMurry_
SHARI K. MCMURRY

Exhibit A-113

1

## SERVICE LIST
*Harold v. California Casualty Insurance Company, et al.*
2       Sacramento County Superior Court No. 02AS04291

3

4       <u>Attorneys for Defendant California Casualty Insurance Company</u>        <u>Attorneys for Defendant Westmont Construction, Inc.</u>

5       Robert S. McLay, Esq.            Ronald E. Enabnit, Esq.
6       HAYES, DAVIS, ELLINGTON, McLAY &       MATHENY, SEARS, LINKERT& LONG
        SCOTT, LLP                      3638 American River Drive
7       400 Capitol Mall                P. O. Box 13711
        Suite 900                       Sacramento, CA 95853-4711
8       Sacramento, CA 95814            Fax Number: (916) 978-3430
        Fax Number: (916) 449-8257
9

10      <u>Attorneys for Plaintiffs James Harold and D. Lee Harold</u>        <u>Attorneys for Plaintiffs James Harold and D. Lee Harold</u>

11      Michael J. Cochrane, Esq.        Karen H. Kahn, Esq.
        KING, KING & FISHLEDER          KAHN BROWN & POORE LLP
12      The 555 City Center Building     2200 Powell Street
        555 Twelfth Street, Suite 1440   Suite 745
13      Oakland, CA 94607-4046          Emeryville, CA 94608
        Fax Number: (510) 444-3401      Fax Number: (510) 923-6285
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit A-114

1   DANIEL A. KING, ESQ. (SBN 130150)
     KING, KING & FISHLEDER, A Professional Corporation
2   Lake Merritt Plaza, Suite 810
     1999 Harrison Street
3   Oakland, California 94612
     Telephone: (510) 874-4333
4   Facsimile: (510) 874-4399

5   KAREN H. KAHN, ESQ. (SBN 098404)
     LAW OFFICES OF KAREN KAHN
6   2100 Embarcadero, Suite 100
     Oakland, CA 94606
7   Telephone: (510) 532-9575
     Facsimile: (510) 535-2579

8   Attorneys for Plaintiffs
9   JAMES HAROLD and D. LEE HAROLD

ENDORSED
02 OCT 28 PM 2:06
LEGAL PROCESS #11

10
11             SUPERIOR COURT OF CALIFORNIA
12            CITY AND COUNTY OF SACRAMENTO
13

14   JAMES HAROLD and D. LEE HAROLD,    CASE NO. 02AS04291
     individuals
15

16             Plaintiffs,    FIRST AMENDED COMPLAINT

17     v.                 Jury Trial Demanded

18   CALIFORNIA CASUALTY INSURANCE
     COMPANY, WESTMONT CONSTRUCTION,
19   INC. and DOES 1 through 50
                       **BY FAX**
20             Defendants.

21

22       Plaintiffs JAMES HAROLD and D. LEE HAROLD ("Plaintiffs") complain of defendants

23   CALIFORNIA CASUALTY INSURANCE COMPANY ("California Casualty"), WESTMONT

24   CONSTRUCTION, INC. ("Westmont Construction"), and DOES 1 through 50, and allege as

25   follows.

26
27
28

                       1

## GENERAL ALLEGATIONS

1. Plaintiffs purchased the homeowners insurance policy described below, and are the insureds and owners of the policy. They sue on behalf of themselves and on behalf of the general public for recovery of the sums and damages herein alleged.

2. California Casualty is and at all times mentioned was, a business organization of a form unknown to Plaintiffs. Plaintiffs are informed and believe, and thereupon allege, that California Casualty is a corporation authorized under the laws of the State of California to transact business in this state as an insurance company.

3. Westmont Construction is and at all times mentioned was, a business organization of a form unknown to Plaintiffs. Plaintiffs are informed and believe, and thereupon allege, that Westmont Construction is a corporation authorized under the laws of the State of California to transact business in this state.

4. Plaintiffs do not know the true names, capacities, and identities, whether corporate, partnership, individual or otherwise, of defendants sued herein as Does 1 through 50, inclusive, and for this reason sue such defendants by such fictitious names in accordance with Section 474 of the Code of Civil Procedure. Plaintiffs are informed and believe, and on that basis allege, that each of the fictitiously-named defendants is legally responsible for the events and actions referred to in this Complaint and wrongfully caused injury and damages to them, as alleged below. Plaintiffs will seek leave to amend this complaint to state these defendants' true names and capacities when they are ascertained.

5. California Casualty issued a homeowners insurance policy to Plaintiffs, policy number 204 1155871 05 03, which took effect on or about September 5, 2001 (the "Policy"). The Policy is presently in full force and effect, and was in full force and effect at all pertinent times mentioned herein. The Policy provides that California Casualty "will pay the reasonable cost incurred by you for necessary repairs" and assumes certain other obligations in the event of direct physical loss to Plaintiffs' property, including their home at 1160 Glen Aulin Court, Carmichael, California 95608 (the "Property"). A copy of the insurance policy provided to the Plaintiffs by California Casualty during the claims process is attached hereto as Exhibit A.

6.    In November 2000, a hot water pipe broke causing direct physical loss to the Property. Plaintiffs promptly reported a claim to California Casualty and otherwise performed all terms and conditions of the Policy which they were required to perform for obtaining payments of insurance benefits.

7.    California Casualty responded to the loss, agreeing that the damage caused by the break in the hot water pipe was covered under the Policy. California Casualty, however, failed to acknowledge its obligations pursuant to the terms of the Policy, including to indemnify Plaintiffs under the terms of the Policy. Instead, California Casualty misrepresented those obligations, including its obligations to pay actual cash value, to pay to repair or replace the premises and to pay additional living expense benefits.

8.    Despite its obligations under the Policy, including the obligation to reimburse Plaintiffs for the cost of repairs, California Casualty volunteered to protect the property from further damage and to repair the damage itself. California Casualty employed Westmont Construction to do this work and assumed the right and responsibility to direct and control work performed by Westmont Construction. Thereafter, California Casualty took control of Plaintiffs' property ostensibly to allow its contractor to perform this work.

9.    During the course of this work, California Casualty (including but not limited to Westmont Construction) learned that the property had become contaminated with toxic mold and bacteria as a result of the break in the hot water pipe. California Casualty (including but not limited to Westmont Construction) was aware that exposure to this type of mold and bacteria could cause serious health problems to Plaintiffs and others.

10.    Knowing that Plaintiffs were being exposed and would continue to be exposed to the toxic mold and bacteria, California Casualty (including but not limited to Westmont Construction) concealed from Plaintiffs the existence of the toxic mold and bacteria at the Property. California Casualty (including but not limited to Westmont Construction) also made misrepresentations in order to hide the existence of the toxic mold and bacteria.

11.    Without Plaintiffs' knowledge, California Casualty (including but not limited to Westmont Construction) attempted to remove visible mold and bacteria using industrial strength

Exhibit A-117

1  clorox and without using any containment to prevent the spread of mold and bacteria. California

2  Casualty (including but not limited to Westmont Construction) caused further damage, spreading

3  the mold and bacteria throughout the Property and onto Plaintiffs' personal property.

4      12.    In addition to the foregoing, California Casualty engaged in a practice of

5  misrepresenting to Plaintiffs the coverage available for Additional Living Expenses.

6      13.    Plaintiffs are informed and believe, and based thereon allege, that California

7  Casualty's conduct as alleged in paragraphs 8 through 12 are the result of the policies and

8  procedures of California Casualty for handling property insurance claims.

9

10                              **CAUSES OF ACTION**

11                              <u>First Cause of Action</u>
                    **(For Breach of Contract Against California Casualty)**

12

13      14.    Plaintiffs reallege and incorporate by this reference in this claim the allegations

14  contained in Paragraphs 1 through 13 of this Complaint.

15      15.    Plaintiffs duly performed each and every condition and obligation that they were

16  required to perform under the Policy.

17      16.    Defendant breached its contractual duties to Plaintiffs by failing to fulfill the

18  express obligations assumed by Defendant, including but not limited to its obligation to pay

19  insurance benefits under the Policy in a timely manner and their obligation to exercise

20  reasonable care in the handling of Plaintiffs' insurance claims. Also, Defendant breached its

21  contractual duties by intentionally misrepresenting and concealing information concerning its

22  obligations and Plaintiffs' rights under the Policy.

23      17.    As a direct and legal result of Defendant's breach of its obligations, Plaintiffs

24  have suffered and will continue to suffer damages, including but not limited to loss of insurance

25  benefits, interest on those benefits, attorneys' fees, adjusters' fees, medical costs, other financial

26  losses and incidental damages, out-of-pocket expenses, loss of use of the property, and physical

27  injuries, all to their damage in an amount well in excess of the jurisdiction of this Court to be

28  shown according to proof.

Law
ung & Fishleder
AB Plaza
Mason Street Suite 810

4

<div align="center">

**Second Cause of Action**
(For Breach Of Implied Covenant of Good Faith
And Fair Dealing Against California Casualty)

</div>

18.     Plaintiffs reallege and incorporate by reference in this claim the allegations contained in Paragraphs 1 through 17 of this Complaint.

19.     Defendant owed to Plaintiffs the duties of good faith and fair dealing implied by law in every contract of insurance.

20.     Defendant breached these duties by, among other things, unreasonably and wrongfully: (a) refusing to pay to Plaintiffs the benefits due under the Policy; (b) attempting to avoid payment of Plaintiffs' legitimate claims, (c) failing and refusing to properly investigate Plaintiffs' claims for benefits, and (d) intentionally misrepresenting and concealing information concerning its obligations under the Policy.

21.     As a direct and legal result of Defendant's actions, Plaintiffs have suffered and continue to suffer personal injuries, emotional and mental distress, anxiety, injuries to their nervous systems and persons, all of which have caused and continue to cause Plaintiffs mental harm, and physical injury and pain and suffering, in an amount well in excess of the jurisdiction of this Court to be shown according to proof.

22.     As a further direct and legal result of Defendant's actions, Plaintiffs have suffered and will continue to suffer other damages, including but not limited to the loss of benefits due under the Policy, loss of use of the property, interest on those insurance benefits, attorneys' fees, adjusters' fees, medical costs, other financial losses and incidental damages, and other consequential damages and out-of-pocket expenses, in an amount well in excess of the jurisdiction of this Court to be shown according to proof.

23.     The acts complained of in this Complaint were wilful, wanton, malicious, fraudulent and oppressive, and Defendant is guilty of oppression, fraud and malice. Further, all of the alleged acts were performed, authorized or ratified by one or more of Defendant's officers, directors, managing agents, or managerial employees, who acted with knowledge that said conduct would cause Plaintiffs harm. Defendant is therefore subject to the imposition of punitive and exemplary damages.

*Third Cause of Action*
(For Negligence Against Defendant California Casualty
and Does 1 through 10)

24.    Plaintiffs reallege and incorporate by reference in this claim the allegations contained in Paragraphs 1 through 23 of this Complaint.

25.    California Casualty and Does 1 through 10 undertook duties toward Plaintiffs to exercise reasonable care in the investigation, evaluation, and determination of Plaintiffs' claims for benefits under the Policy, including the duty to inform the Plaintiffs of their right to hire a contractor of their own choosing.  Defendants breached their duties of due care by failing to exercise ordinary and reasonable care in the investigation, evaluation, and determination of Plaintiffs' claim under the Policy and by failing to inform the Plaintiffs of their right to hire a contractor of their own choosing.

26.    By volunteering and undertaking the responsibility to protect the property from further damage and repair the damage, California Casualty and Does 1 through 10 also undertook duties toward Plaintiffs, including a duty to exercise reasonable care in the selection and supervision of any contractor it employed; to direct and control the repairs; to take special precautions to prevent peculiar, recognizable dangers arising out of the particular kind of work involved; to reasonably establish the scope of work to be performed so that it included all steps necessary to restore the Property to a habitable condition; and to disclose any known risks of harm to Plaintiffs.

27.    California Casualty and Does 1 through 10 also breached their duties of care by failing to exercise ordinary and reasonable care in the selection and supervision of Westmont Construction; failed to take special precautions to prevent the growth and spread of mold which was a foreseeable and likely danger when the repairs to the Property were undertaken; failed to adequately direct and control the contractor with respect to the work performed in order to restore the Property to a habitable condition; limited the scope and extent of repairs performed for, and consequently the amount of benefits paid to, the Plaintiffs by arranging to have the work performed by its own agent, Westmont Construction; and failed to disclose any known risks of harm to Plaintiffs.

1   28.   As a direct and legal result of those breaches of duty, Plaintiffs have suffered and

2   will continue to suffer damages, including but not limited to the loss of insurance benefits, loss

3   of use of the property, interest on those benefits, attorneys' fees, adjusters' fees, medical costs,

4   and other incidental damages, and other consequential damages and out-of-pocket expenses, all

5   to their damage in an amount in excess of the jurisdiction of this Court to be shown according to

6   proof.

7   29.   As a further direct and legal result of the actions of California Casualty and Does

8   1 through 10, Plaintiffs have suffered and continue to suffer personal injuries, emotional and

9   mental distress, anxiety, injuries to their nervous systems and persons, all of which have caused

10   and continue to cause Plaintiffs mental harm, and physical injury and pain and suffering, in an

11   amount well in excess of the jurisdiction of this Court to be shown according to proof.

12   30.   The acts complained of in this Complaint were wilful, wanton, malicious,

13   fraudulent and oppressive, and Defendants are guilty of oppression, fraud and malice. Further,

14   all of the alleged acts were performed, authorized or ratified by one or more of California

15   Casualty's officers, directors, managing agents, or managerial employees, who acted with

16   knowledge that said conduct would cause Plaintiffs harm. Defendants and each of them are

17   therefore subject to the imposition of punitive and exemplary damages.

18

19   **Fourth Cause of Action**
   **(For Negligence Against Westmont Construction**
20   **and Does 11 through 25)**

21   31.   Plaintiffs reallege and incorporate by reference in this claim the allegations·

22   contained in Paragraphs 1 through 30 of this Complaint.

23   32.   Defendants, Westmont Construction and Does 11 through 25, also undertook

24   duties toward Plaintiffs, including the duty to exercise reasonable care in the repair of the

25   Property and to disclose and warn the Plaintiffs about any known risks of harm to Plaintiffs,

26   including the presence and effects on them of toxic mold.

27   33.   Defendants, Westmont Construction and Does 11 through 25, breached their

28   duties of due care by failing to exercise ordinary and reasonable care in repairing the Property

7

1  and by failing to disclose and warn the Plaintiffs about any known risks of harm to Plaintiffs,

2  including the presence and effects on them of toxic mold.

3       34.   As a direct and legal result of those breaches of duty, Plaintiffs have suffered and

4  will continue to suffer damages, including but not limited to the loss of insurance benefits, loss

5  of use of the property, interest on those benefits, attorneys' fees, adjusters' fees, medical costs,

6  and other incidental damages, and other consequential damages and out-of-pocket expenses, all

7  to their damage in an amount in excess of the jurisdiction of this Court to be shown according to

8  proof.

9       35.   As a further direct and legal result of the actions of Westmont Construction and

10  Does 1 through 25, Plaintiffs have suffered and continue to suffer personal injuries, emotional

11  and mental distress, anxiety, injuries to their nervous systems and persons, all of which have

12  caused and continue to cause Plaintiffs mental harm, and physical injury and pain and suffering,

13  in an amount well in excess of the jurisdiction of this Court to be shown according to proof.

14       36.   The acts complained of in this Complaint were wilful, wanton, malicious,

15  fraudulent and oppressive, and Defendants are guilty of oppression, fraud and malice.  Further,

16  all of the alleged acts were performed, authorized or ratified by one or more of Westmont

17  Construction's officers, directors, managing agents, or managerial employees, who acted with

18  knowledge that said conduct would cause Plaintiffs harm.  Defendants and each of them are

19  therefore subject to the imposition of punitive and exemplary damages.

20

21  **Fifth Cause of Action**
    **(For Intentional Infliction of Emotional Distress Against**

22      **California Casualty, Westmont and Does 1 through 25)**

23       37.   Plaintiffs reallege and incorporate by reference in this cause of action the

24  allegations contained in Paragraphs 1 through 36 of this Complaint.

25       38.   In doing the acts alleged above, Defendants engaged in a course of conduct which

26  was intentional, extreme and outrageous, and which was in wanton and reckless disregard of

27  Plaintiffs' rights and interests.

28

ng & Fishleder

Exhibit A-122

39.    As a direct and legal result of Defendants' conduct as alleged herein, Plaintiffs have suffered (and continue to suffer) damages, including but not limited to severe emotional distress, personal injuries, loss of income, loss of benefits due under the Policy, loss of use of the property, adjusters' fees, medical costs, and other consequential damages, all to their damage in an amount well in excess of the jurisdiction of this Court to be shown according to proof.

40.    As a further direct and legal result of Defendants' actions as alleged herein, Plaintiffs were humiliated, hurt and injured in their health, strength and activity, sustained injuries to their nervous systems and persons, all of which injuries have caused and continue to cause Plaintiffs severe emotional distress. As a result of these injuries, Plaintiffs have suffered damage in amount to be shown according to proof.

41.    The acts complained of in this Complaint were wilful, wanton, malicious, fraudulent and oppressive, and Defendants are guilty of oppression, fraud and malice. Further, all of the alleged acts were performed, authorized or ratified by one or more of Defendants' officers, directors, managing agents or managerial employees, who acted with knowledge that said conduct would cause Plaintiffs harm. Defendants and each of them are therefore subject to the imposition of punitive and exemplary damages.

**Sixth Cause of Action**
**(For Fraud By Concealment**
**Against Defendants California Casualty,**
**Westmont Construction and Does 1 through 25)**

42.    Plaintiffs reallege and incorporate by reference in this cause of action the allegations contained in Paragraphs 1 through 41 of this Complaint.

43.    In doing the acts alleged above, Defendants concealed or suppressed information concerning the presence of toxic mold and bacteria from Plaintiffs.

44.    While preparing the scope of damage to the Plaintiffs' home, Sue Nelson and Bernard Sequeira, the owners of Westmont Construction and Vern Moulton of California Casualty became aware of suspect mold growing as a result of the original water damage. Westmont Construction and California Casualty were aware of the potential health risks

1    associated with the mold.

2        45.    Ms. Nelson, Mr. Sequeira and Mr. Moulton concealed the presence of mold and

3    the potential health risks associated with the mold from Plaintiffs.  They had a duty to inform

4    and warn the Plaintiffs about the presence of mold in the Property and the foreseeable risk of

5    harm to the Plaintiffs from exposure to toxic mold and bacteria, but they concealed the presence

6    of mold with the intent to defraud Plaintiffs.

7        46.    Westmont Construction with the concurrence of California Casualty had the

8    property tested for mold by Anderson Environmental Consulting Group.  They had this testing

9    performed without the knowledge or consent of Plaintiffs.  The testing revealed in January 2001

10   that toxic mold was present in the house.  Anderson Environmental Consulting Group also

11   warned Westmont Construction that the particles produced by the mold were toxic and might

12   cause serious health problems to persons exposed to the mold.  Westmont Construction

13   immediately notified Vern Moulton of California Casualty about the results of the test and the

14   health risks associated with exposure to the mold.  California Casualty and Westmont

15   Construction had a duty to inform and warn the Plaintiffs that mold discovered in the Property

16   had been tested and that toxic mold was present in the Property.  They concealed the presence of

17   toxic mold and the foreseeable risk of harm to the Plaintiffs from exposure to toxic mold and

18   bacteria, with the intent to defraud Plaintiffs.

19       47.    Mr. Sequeira, with the concurrence of Vern Moulton, advised Plaintiffs that they

20   needed to move out of the Property due to work to be performed on the floors.  Mr. Sequeira and

21   Mr. Moulton concealed from Plaintiffs the true reason for asking the Plaintiffs to move out of the

22   Property, which was their discovery of the presence of toxic mold and the intent of California

23   Casualty and Westmont Construction to clean-up the mold contrary to expensive protocols

24   required for abating mold.  Defendants were under a duty to inform and warn the Plaintiffs that

25   they intended to clean up the mold through ordinary repair methods but, instead, they concealed

26   their intent to clean-up the mold contrary to expensive protocols required for abating mold, with

27   the intent to defraud Plaintiffs.

28

48.    Unaware of the toxic mold because of Westmount's and California Casualty's concealment of the presence of toxic mold and their intent to clean it up through ordinary repair methods, Plaintiffs continued to regularly enter their home in order to obtain supplies and for other reasons.  As a result, Plaintiffs unknowingly were exposing themselves to toxic mold and bacteria which could, foreseeably, cause injury to the Plaintiffs.  Plaintiffs would not have entered the Property if they had they known of the presence of toxic mold and bacteria which was intentionally concealed from them.  They also would have hired competent companies to abate the mold at their property, which would have decreased Plaintiffs' out-of-pocket expenses and time associated with abating the mold problem.

49.    As a direct and legal result of Defendants' conduct as alleged herein, Plaintiffs have suffered (and continue to suffer) damages, including but not limited to severe emotional distress, personal injuries, loss of income, loss of benefits due under the Policy, adjusters' fees, medical costs, and other consequential damages, all to their damage in an amount well in excess of the jurisdiction of this Court to be shown according to proof.

50.    As a further direct and legal result of Defendants' actions as alleged herein, Plaintiffs were humiliated, hurt and injured in their health, strength and activity, sustained injuries to their nervous systems and persons, all of which injuries have caused and continue to cause Plaintiffs severe emotional distress.  As a result of these injuries, Plaintiffs have suffered damage in amount to be shown according to proof.

51.    The acts complained of in this Complaint were wilful, wanton, malicious, fraudulent and oppressive, and Defendants are guilty of oppression, fraud and malice.  Further, all of the alleged acts were performed, authorized or ratified by one or more of Defendants' officers, directors, managing agents, or managerial employees, who acted with knowledge that said conduct would cause Plaintiffs harm.  Defendants and each of them are therefore subject to the imposition of punitive and exemplary damages.

Exhibit A-125

<center>Seventh Cause of Action</center>
<center>(For Fraud By Misrepresentation Against Defendants</center>
<center>California Casualty, Westmont Construction and Does 1 through 25)</center>

52.    Plaintiffs reallege and incorporate by reference in this cause of action the allegations contained in Paragraphs 1 through 51 of this Complaint.

53.    In doing the acts alleged above, Defendants made false representations as to the habitability of the Plaintiffs' Property.

54.    While preparing the scope of damage to the Plaintiffs' home, Sue Nelson and Bernard Sequeira, the owners of Westmont Construction and Vern Moulton of California Casualty became aware of suspect mold growing as a result of the original water damage. Westmount Construction and California Casualty were aware of the potential health risks associated with the mold.

55.    Ms. Nelson, Mr. Sequeira and Mr. Moulton made representations about the nature of repairs being performed at the property, indicating that the house continued to be habitable, knowing these representations were false because of the potential health risks associated with the presence of mold in the house. They misrepresented the habitability of the Property and the nature of repairs with the intent to defraud Plaintiffs.

56.    Westmont Construction with the concurrence of California Casualty had the property tested for mold by Anderson Environmental Consulting Group. The testing revealed in January 2001 that toxic mold was present in the house. Anderson Environmental Consulting Group also warned Westmont Construction that the particles produced by the mold were toxic and may cause serious health problems to persons exposed to the mold. Westmont Construction immediately notified Vern Moulton of California Casualty about the results of the test and the health risks associated with exposure to the mold.

57.    Mr. Sequeira, with the concurrence of Vern Moulton, misrepresented to Plaintiffs that they needed to move out of the Property due to work to be performed on the floors. Mr. Sequeira and Vern Moulton knew their representations about the reasons for asking Plaintiffs to move out of the Property were false because the true reason Mr. Sequeira and Vern Moulton wanted the Plaintiffs to move out of the Property was their discovery of the presence of

1 | toxic mold and the intent of California Casualty and Westmount Construction to clean-up the

2 | mold contrary to expensive protocols required for abating mold.

3 |        58.    Unaware of the falsity of Defendants' representations concerning the habitability

4 | of the Property, Plaintiffs continued to regularly enter their home in order to obtain supplies and

5 | for other reasons.  As a result, Plaintiffs unknowingly were exposing themselves to toxic mold

6 | and bacteria which could, foreseeably, cause injury to the Plaintiffs.

7 |        59.    Unaware of the falsity of the representations of Westmont and California

8 | Casualty concerning the nature of repairs at the Property and the intent of Westmont

9 | Construction and California Casualty to use ordinary repair methods to remediate the mold,

10 | Plaintiffs were deprived of their rights under the terms of the insurance policy to hire competent

11 | companies to abate the mold at their property, which would have decreased Plaintiffs'

12 | out-of-pocket expenses and time associated with abating the mold problem.

13 |        60.    Defendants misrepresented to the Plaintiffs that the Property was habitable, and

14 | that ordinary repairs were being made at the Property, with an intent to defraud the Plaintiffs and

15 | to induce them to forego further repairs, including expensive protocols for the remediation of

16 | toxic mold and bacteria.

17 |        59.    Plaintiffs were unaware of the falsity of the representations that their Property had

18 | been repaired and made habitable and Plaintiffs were also unaware of the concealed fact that

19 | toxic mold and bacteria were present in the house.  Plaintiffs were justified in relying upon the

20 | representations of Defendants who had superior knowledge about the status of repairs of the

21 | Property and whose attempts to remove the toxic mold prevented the Defendants from

22 | discovering it.  In reliance upon the Defendants' representations about the habitability of the

23 | Property and the nature of repairs being undertaken at the Property, Plaintiffs initially stayed in

24 | the house and thereafter continued to go into the house exposing themselves to toxic mold and

25 | suffering personal injuries.

26 |        60.    As a direct and legal result of Defendants' conduct as alleged herein, Plaintiffs

27 | have suffered (and continue to suffer) damages, including but not limited to severe emotional

28 | distress, personal injuries, loss of income, loss of benefits due under the Policy, adjusters' fees,

1  medical costs, and other consequential damages, all to their damage in an amount well in excess

2  of the jurisdiction of this Court to be shown according to proof.

3    61.    As a further direct and legal result of Defendants' actions as alleged herein,

4  Plaintiffs were humiliated, hurt and injured in their health, strength and activity, sustained

5  injuries to their nervous systems and persons, all of which injuries have caused and continue to

6  cause Plaintiffs severe emotional distress. As a result of these injuries, Plaintiffs have suffered

7  damage in amount to be shown according to proof.

8    62.    The acts complained of in this Complaint were wilful, wanton, malicious,

9  fraudulent and oppressive, and Defendants are guilty of oppression, fraud and malice. Further,

10  all of the alleged acts were performed, authorized or ratified by one or more of Defendants'

11  officers, directors, managing agents, or managerial employees, who acted with knowledge that

12  said conduct would cause Plaintiffs harm. Defendants and each of them are therefore subject to

13  the imposition of punitive and exemplary damages.

14

15  **Eighth Cause of Action**
   **(For Nuisance Against Defendants California Casualty,**

16  **Westmont Construction and Does 1 through 25)**

17    63.    Plaintiffs reallege and incorporate by reference in this cause of action the

18  allegations contained in Paragraphs 1 through 62 of this Complaint.

19    64.    Defendants interfered with Plaintiffs' private use and enjoyment of their interest

20  in the Property.

21    65.    The interference was substantial and unreasonable.

22    66.    As a direct and legal result of Defendants' conduct as alleged herein, Plaintiffs

23  have suffered (and continue to suffer) damages, including but not limited to severe emotional

24  distress, personal injuries, loss of income, loss of benefits due under the Policy, loss of use of the

25  property, adjusters' fees, medical costs, and other consequential damages, all to their damage in

26  an amount well in excess of the jurisdiction of this Court to be shown according to proof.

27    67.    As a further direct and legal result of Defendants' actions as alleged herein,

28  Plaintiffs were humiliated, hurt and injured in their health, strength and activity, sustained

1    injuries to their nervous systems and persons, all of which injuries have caused and continue to

2    cause Plaintiffs severe emotional distress.  As a result of these injuries, Plaintiffs have suffered

3    damage in amount to be shown according to proof.

4         68.    The acts complained of in this Complaint were wilful, wanton, malicious,

5    fraudulent and oppressive, and Defendants are guilty of oppression, fraud and malice.  Further,

6    all of the alleged acts were performed, authorized or ratified by one or more of Defendants'

7    officers, directors, managing agents, or managerial employees, who acted with knowledge that

8    said conduct would cause Plaintiffs harm.  Defendants and each of them are therefore subject to

9    the imposition of punitive and exemplary damages.

10

11                         **Ninth Cause of Action**
                     **(For Unfair Business Practices Against**
12          **Defendants California Casualty and Does 1 through 25)**

13        69.    Plaintiffs reallege and incorporate by reference in this cause of action the

14   allegations contained in Paragraphs 1 through 68 of this Complaint.

15        70.    California Casualty has committed acts of unfair competition, as defined by

16   Business and Professions Code section 17200, by engaging in the following practices.

17        71.    California Casualty had and continues to have an unfair, unlawful and fraudulent

18   practice of failing to acknowledge its obligations pursuant to the terms of property insurance

19   policies it issues, including its obligation to indemnify policyholders under the terms of the

20   policies.  Instead, California Casualty has an unfair, unlawful and fraudulent practice of

21   misrepresenting those obligations, including its obligations to pay actual cash value, to pay to

22   repair or replace the premises and to pay additional living expense benefits as described below.

23        72.    California Casualty had and continues to have an unfair, unlawful and fraudulent

24   practice of representing to policyholders that it will undertake to protect their property from

25   further damage and to repair the damage itself.  With respect to this practice, California Casualty

26   has the practice of repairing toxic mold damage without taking proper precautions to protect

27   policyholders from the risk of serious health problems and further damage to property, and

28   without disclosing to policyholders the risks associated with the toxic mold and by concealing

the existence of toxic mold from policyholders.

73.    California Casualty had and continues to have an unfair, unlawful and fraudulent practice of misrepresenting to policyholders coverage available for Additional Living Expenses.

74.    As a direct and legal result of the aforementioned acts, California Casualty has received and continues to receive ill-gotten gains. The court has extraordinarily broad power under section 17203 of the Business and Professions Code to fashion remedies which will prevent unlawful business practices from occurring in the future and to restore to those who have been injured any money or property, real or personal, and rights thereto, which have been acquired by means of the defendant's unlawful business acts or practices.

## Tenth Cause of Action
### (For Negligence Against Does 20 through 50)

75.    Plaintiffs reallege and incorporate by reference in this claim the allegations contained in Paragraphs 1 through 6 of this Complaint.

76.    Defendants undertook duties toward Plaintiffs to exercise reasonable care in the investigation, evaluation, and repair of the Property.

77.    Defendants breached their duties of due care by failing to exercise ordinary and reasonable care in the investigation, evaluation, and repair of the Property.

78.    As a direct and legal result of those breaches of duty, Plaintiffs have suffered and will continue to suffer damages, including but not limited to property damage and other incidental damages, and other consequential damages and out-of-pocket expenses, all to their damage in an amount in excess of the jurisdiction of this Court to be shown according to proof.

WHEREFORE, Plaintiffs prays for judgment as follows:

1.    For all benefits due under the Policy, together with interest thereon at the legal rate;

2.    For general damages for emotional distress, mental suffering and physical injury in an amount according to proof;

Exhibit A-130

3.    For consequential damages legally caused by Defendants' conduct in an amount according to proof;

4.    For attorneys' fees and other expenses incurred to obtain the benefits due under the Policy;

5.    For exemplary and punitive damages;

6.    For attorneys' fees and costs of suit herein incurred;

7.    For prejudgment interest;

8.    Pursuant to Business and Professions Code section 17203, and pursuant to the equitable powers of this Court, Plaintiffs pray that the defendants be preliminarily and permanently enjoined from the acts of unfair competition alleged above;

9.    Pursuant to Business and Professions Code section 17203, and pursuant to the equitable powers of this Court, Plaintiffs pray that defendants be ordered to restore to the public all funds acquired by means of any act or practice declared by this Court to be unlawful, unfair or fraudulent or to constitute unfair competition under Business and Professions Code section 17200 *et seq.*; and

10.   For such other and further relief as the Court may deem just and proper.

KING, KING & FISHLEDER,
A Professional Corporation

Dated:   October 28, 2002

By

Daniel A. King
Attorneys for Plaintiffs

F:\WPW\3344-1\P11.wpd

Exhibit A-131

Re:    HAROLD v. CALIFORNIA CASUALTY, et al.
Sacramento County Superior Court Case No. 02AS04291

## PROOF OF SERVICE
[Code Civ. Proc. §§ 1013(a)(3) & 1011]

I am a resident of the United States and employed in Sacramento County. I am over the age of eighteen years and not a party to the within entitled action. My business address is 3638 American River Drive, Sacramento, California.

On this date, I served:    **WESTMONT CONSTRUCTION, INC.'S BRIEF REGARDING JOINT AND SEVERAL LIABILITY ISSUES**

_____    **BY FAX:** by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

XXX    **BY MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California addressed as set forth below. I am readily familiar with my firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date of postage meter date is more than 1 day after date of deposit for mailing in affidavit.

_____    **BY OVERNIGHT MAIL:** by causing document(s) to be picked up by an overnight delivery service company for delivery to the address(es) on the next business day.

_____    **BY PERSONAL DELIVERY:** by causing personal delivery by **of the document(s) listed above to the person(s) at the addressee(s) set forth below.

| (Lead)Counsel for Plaintiffs: | Co-Counsel for Plaintiffs: |
|---|---|
| Peter W. Alfert, Esq.<br>HINTON, ALFERT & SUMNER<br>1646 N. California Blvd., Suite 600<br>Walnut Creek, CA 94596<br>(925) 932-3412 Fax | Karen H. Kahn, Esq.<br>KAHN, BROWN & POORE<br>2200 Powell Street, Suite 745<br>Emeryville, CA 94608<br>(510) 923-6285 Fax |
| Co-Counsel for Plaintiffs: | Counsel for Def./X-Comp/X-Def. CA Casualty: |
| Michael Cochrane, Esq.<br>KING, KING & FISHLEDER<br>555 Twelfth Street, Suite 1440<br>Oakland, CA 94607<br>(510) 444-3401 Fax | Stephen M. Hayes, Esq.<br>HAYES, DAVIS, ELLINGSON, ET AL.<br>203 Redwood Shores Parkway, Suite 480<br>Redwood Shores, CA 94065<br>(650) 637-8071 Fax |
|  | Robert McLay, Esq.<br>HAYES, DAVIS, ELLINGSON, ET AL.<br>400 Capitol Mall, 9th Floor<br>Sacramento, CA 95814<br>(916) 449-8257 Fax |

MATHENY SEARS LINEN & LONG LLP
POST OFFICE BOX 13711
SACRAMENTO, CALIFORNIA 95853-4711

Exhibit A-132

I declare under penalty of perjury, according to the laws of the State of California, that the foregoing is true and correct.

Executed on this __25TH__ day of May, 2006, at Sacramento, California

_Aline Perusse_