1  STROOCK & STROOCK & LAVAN LLP
   MICHAEL F. PERLIS (State Bar No. 095992)
2  EMAIL: MPERLIS@STROOCK.COM
   ALLAN S. COHEN (State Bar No. 115532)
3  EMAIL: ACOHEN@STROOCK.COM
   RICHARD R. JOHNSON (State Bar No. 198117)
4  EMAIL: RJOHNSON@STROOCK.COM
   2029 Century Park East, Suite 1600
5  Los Angeles, CA  90067-3086
   Telephone:  310-556-5800
6  Facsimile:   310-556-5959
   lacalendar@stroock.com
7

8  Attorneys for Defendant
     FEDERAL INSURANCE COMPANY
9

              **UNITED STATES DISTRICT COURT**
10
              **NORTHERN DISTRICT OF CALIFORNIA**
11
              **SAN FRANCISCO DIVISION**
12

13  CALIFORNIA CASUALTY INSURANCE          )   Case No. CV 08-2701 VRW
    COMPANY,                               )
14                                         )   [Assigned to the Honorable Vaughn R. Walker]
                                           )
15           Plaintiff,                    )
                                           )   **NOTICE OF MOTION AND MOTION OF**
16      vs.                                )   **FEDERAL INSURANCE COMPANY FOR**
                                           )   **SUMMARY JUDGMENT OR, IN THE**
17  FEDERAL INSURANCE COMPANY,             )   **ALTERNATIVE, SUMMARY**
    DOES 1-10, ROES 1-10, AND MOES 1-10,   )   **ADJUDICATION; MEMORANDUM OF**
18  inclusive,                             )   **POINTS AND AUTHORITIES IN**
                                           )   **SUPPORT THEREOF**
19           Defendants.                   )
                                           )   **[F.R.C.P. 56(b)]**
20                                         )
                                           )   Date:      December 11, 2008
21                                         )   Time:      2:30 p.m.
                                           )   Ctrm:      6
22                                         )
                                           )   [Declaration of Jeffrey Gunchick and Request
23                                         )   for Judicial Notice filed; and [Proposed] Order
                                           )   lodged concurrently]
24                                         )
25  _____)

                    **PART 1 OF 4**
26

27

28
_____

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2    **PLEASE TAKE NOTICE** that on December 11, 2008, at 2:30 p.m., or as soon thereafter

3    as the Court may hear this matter in Courtroom 6 of the United States District Court for the

4    Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San

5    Francisco, California, 94102, defendant Federal Insurance Company ("Federal") will and hereby

6    does move this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an Order

7    granting summary judgment in favor of Federal against plaintiff California Casualty Insurance

8    Company ("California Casualty") as to both the breach of contract claim and the bad faith breach

9    of contract claim asserted against Federal in California Casualty's Complaint.

10    The Motion is made pursuant to Federal Rule of Civil Procedure 56(b), on the grounds that

11    California Casualty can raise no triable issue of material fact demonstrating that there is coverage

12    due under the policy issued by Federal.  Therefore, Federal is entitled to summary adjudication as

13    to all claims, as a matter of law.  In the alternative, should the Court be disinclined to grant

14    summary judgment on California Casualty's claims in their entirety, Federal seeks summary

15    adjudication:  (a) as to the applicability of various Policy exclusions to particular portions of the

16    settlement sum paid by California Casualty to resolve the underlying litigation; and (b) to the effect

17    that California Casualty's "bad faith" claim is precluded by the "genuine dispute" doctrine.

18    This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of

19    Points and Authorities, the concurrently filed Declaration of Jeffrey Gunchick, the Request for

20    Judicial Notice, the pleadings and records on file in this action, and any oral argument and

21    documentary evidence as may be presented at the time of the hearing on this Motion.

22    Dated: August 21, 2008                    Respectfully submitted,

23                                              STROOCK & STROOCK & LAVAN LLP
                                               MICHAEL F. PERLIS
24                                             ALLAN S. COHEN
                                               RICHARD R. JOHNSON

25

26                                             By:_____/s/ Michael F. Perlis_____
                                                          Michael F. Perlis
27                                             Attorneys for Defendant
28                                                 FEDERAL INSURANCE COMPANY

- 1 -

NOTICE OF MOTION AND MOTION OF DEFENDANT FEDERAL INSURANCE COMPANY FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
(Case No. 08-CV-2701-VRW)

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

II.   STATEMENT OF ISSUES TO BE DECIDED ................................................................3

III.  UNDISPUTED FACTS............................................................................................4

      A.    The Policy At Issue .........................................................................................4

      B.    The Underlying Matter .....................................................................................5

      C.    California Casualty's Settlement And Demand..................................................8

      D.    The Instant Litigation .......................................................................................9

IV.   ARGUMENT ...........................................................................................................9

      A.    Standards Of Review ........................................................................................9

      B.    The Undisputed Evidence Demonstrates That Most Of The Loss Incurred By California Casualty Is Precluded By The Policy's Exclusions Such That The Amount Of Covered Loss Falls Short Of The $2 Million Deductible. ...................10

            1.    The Portion Of The $2.5 Million Settlement Sum Paid In Consideration For The $256,000 In Breach Of Contract Damages Is Precluded By The Policy's Benefits Due Exclusion And The Ill-Gotten Gains Doctrine...................................................................................12

            2.    The Portion Of The $2.5 Million Settlement Sum Paid In Consideration For $744,700 In Negligent-Selection Damages And For $777,543 In Nuisance Damages Is Precluded By: (a) The Pollution Exclusion; (b) The Property Damage Exclusion; And (c) The Bodily Injury And Mental Or Emotional Distress Exclusion. ...............13

                  a)    Negligence And Nuisance Damages Attributable To Mold Are Precluded From Coverage By The Pollution Exclusion.............13

                  b)    Negligence And Nuisance Damages Attributable To Property Damage Are Precluded From Coverage. ...........................................15

                  c)    Negligence And Nuisance Damages Attributable To Bodily Injury and Mental or Emotional Distress Are Precluded From Coverage. .........................................................................................16

            3.    The Portion Of the $2.5 Million Settlement Sum Paid In Consideration For $146,090.73 In Concealment Damages And For $225,450 In Bad Faith Damages As Well As For Brandt Fees Is Barred From Coverage By The Fraud Exclusion And Section 533 Of The California Insurance Code.....................................................................18

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

- i -

NOTICE OF MOTION AND MOTION OF DEFENDANT FEDERAL INSURANCE COMPANY FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
(Case No. 08-CV-2701-VRW)

1                                                                                               Page

2

3                4.      In the Alternative, If The Court Is Disinclined to Find That the Total
                        Amount of Covered Loss Falls Beneath the Deductible, Federal
                        Requests Summary Adjudication As to the Applicability of Each of
4                       the Exclusions to the Respective Portions of the Settlement Sum. ...............21

5                5.      Also In the Alternative, If The Court Is Disinclined to Find That the
                        Total Amount of Covered Loss Falls Beneath the Deductible, Federal
6                       Requests Summary Adjudication To the Effect That California
                        Casualty's Claim for "Bad Faith" Is Precluded, As a Matter of Law,
7                       by the "Genuine Dispute" Doctrine................................................................21

8       V.      CONCLUSION ......................................................................................................22

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION OF DEFENDANT FEDERAL INSURANCE COMPANY FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
(Case No. 08-CV-2701-VRW))

1

## TABLE OF AUTHORITIES

2

Page

3
**CASES**

4
Allstate Insurance Co. v. Hansten,
    765 F. Supp. 614 (N.D. Cal. 1991)...................................................................................19

5

6
American Insurance Co. v. North American Co. for Property & Casualty Insurance,
    697 F.2d 79 (2nd Cir. 1982) ....................................................................................11, 18

7
Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ....................................................................................................9

8

9
Bank of the West v. Superior Court,
    2 Cal. 4th 1254, 10 Cal. Rptr. 2d 538, 833 P.2d 545 (1992)....................................12

10
Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Insurance Co.,
    5 Cal. 4th 854 (1993)..................................................................................................10

11

12
Berkeley Lawn Bowling Club v. City of Berkeley,
    42 Cal. App. 3d 280 (1974) ........................................................................................19

13
Brewer v. Simpson,
    53 Cal. 2d 567, 589 (1960) ........................................................................................19

14

15
Brandt v. Superior Court,
    37 Cal. 3d 813 (1985) ..........................................................................................passim

16
Buss v. Super. Ct.,
    16 Cal. 4th 35 (1997)..................................................................................................17

17

18
CalFarm Insurance Co. v. Krusiewicz,
    131 Cal. App. 4th 273 (2005) ....................................................................................22

19
Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ....................................................................................................9

20

21
Century Surety Co. v. Polisso,
    139 Cal. App. 4th 922 (2006) ....................................................................................22

22
Chateau Chamberay Homeowners Associate v. Associate International Insurance Co.,
    90 Cal. App. 4th 335 (2001)................................................................................19, 22

23

24
City of Laguna Beach v. Mead Reinsurance Corporation,
    226 Cal. App. 3d 822 (1990) ......................................................................................11

25
Clemmer v. Hartford Insurance Co.,
    22 Cal. 3d 865 (1978)..................................................................................................19

26

27
Combs v. State Fire & Casualty Co.,
    143 Cal. App. 4th 1338 (2006) ..................................................................................19

28

NOTICE OF MOTION AND MOTION OF DEFENDANT FEDERAL INSURANCE COMPANY FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
(Case No. 08-CV-2701-VRW))

Page

Continental Casualty Co. v. City of Richmond, et al.,
    763 F.2d 1076 (9th Cir. 1985) ............................................................ 14

Dalrymple v. United Services Automobile Association,
    40 Cal. App. 4th 497 (1995) ............................................................... 22

Downey Venture v. LMI Ins. Co.,
    66 Cal. App. 4th 478 (1998) ............................................................... 19

Duke v. Hoch,
    468 F.2d 973 (5th Cir. 1972) .............................................................. 11

Dykstra v. Foremost Insurance Co.,
    14 Cal. App. 4th 361 (1993) ............................................................... 19

Empl. Insurance of Wausau v. Musick, & Garrett,
    871 F. Supp. 381 (S.D. Cal. 1994) ...................................................... 19

Foster-Gardner, Inc. v. National Union Fire Insurance Co.,
    18 Cal. 4th 857 (1998) ........................................................................ 10

Freedom Trust v. Chubb Group of Insurance Companies,
    38 F. Supp. 2d 1170 (C.D. Cal. 1999) ................................................ 19

General ACC, Fire & Life Assur. Corp. v. Clark,
    34 F.2d 833 (9th Cir. 1929) ................................................................ 11

Gin v. Pennsylvania Life Insurance Co.,
    134 Cal. App. 4th 939 (2005) ............................................................. 10

Havstad v. Fidelity National Title Insurance Co.,
    58 Cal. App. 4th 654 (1997) ............................................................... 10

Jaffe v. Cranford Insurance Co.,
    168 Cal. App. 3d 930 (1985) .............................................................. 12

James Harold, et al. v. California Casualty Insurance Company, et al.,
    Cal. Super. Ct., Case No. 02AS04291 ........................................... passim

Love v. Fire Insurance Exch.,
    221 Cal. App. 3d 1136 (1990) ............................................................ 10

Morris v. Paul Revere Life Insurance Co.,
    109 Cal. App. 4th 966 (2003) ............................................................. 22

Olson v. Federal Insurance Co.,
    219 Cal. App. 3d 252, 268 Cal. Rptr. 90 (2d Dist. 1990) .................. 16

Palermo v. Fireman's Fund Insurance Co.,
    42 Mass. App. Ct. 283, 676 N.E.2d 1158 (1997) .............................. 11

NOTICE OF MOTION AND MOTION OF DEFENDANT FEDERAL INSURANCE COMPANY FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
(Case No. 08-CV-2701-VRW))

Page

Sawyer v. Bank of America,
        83 Cal. App. 3d 135 (1978) ......................................................................... 19

St. Paul Fire & Marine Insurance Co. v. Village of Franklin Park,
        523 F.3d 754 (7th Cir. 2008) ...................................................................... 12

St. Paul Fire & Marine Insurance Co. v. Weiner,
        606 F.2d 864 (9th Cir. 1979) ...................................................................... 19

Stanford Ranch, Inc. v. Maryland Casualty Co.,
        89 F.3d 618 (9th Cir. 1996) ........................................................................... 9

Stonewall Insurance Co. v. City of Palos Verdes Estates,
        46 Cal. App. 4th 1810 (1996) .................................................................... 11

Zieman Manufacturing Co. v. St. Paul Fire & Marine Insurance Co.,
        724 F.2d 1343 (9th Cir. 1983) .................................................................... 19


**STATUTES**

California Insurance Code
        Section 533 ......................................................................................... passim

Federal Rule of Civil Procedure 56(c) ................................................................. 9


**OTHER AUTHORITIES**

California Practice Guide: Insurance Litigation (The Rutter Group 2001)
        ¶ 7:250, p. 1354 ......................................................................................... 22

Health & Safety Code §§ 26200-26203; Section 1, Stats. 2001, c. 550 (A.B.284)
(Cal. 2001) ......................................................................................................... 13

NOTICE OF MOTION AND MOTION OF DEFENDANT FEDERAL INSURANCE COMPANY FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
(Case No. 08-CV-2701-VRW))

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

The undisputed evidence demonstrates that no proceeds are due to California Casualty Insurance Company ("California Casualty") under Policy Number 70427262 (the "Policy"), issued to California Casualty by Federal Insurance Company ("Federal").  California Casualty cannot raise any genuine issue of material fact demonstrating that the amount of covered Loss incurred in defense and settlement of the underlying lawsuit exceeds the Policy's $2 million deductible.

California Casualty seeks coverage under the Policy for sums it incurred in the defense and resolution of the underlying lawsuit captioned, <u>James Harold, et al. v. California Casualty Insurance Company, et al.</u>, Cal. Super. Ct., Case No. 02AS04291 (the "<u>Harold</u> action") (the "Claim"), in which the jury found California Casualty to be liable for breach of contract, "bad faith," negligence, nuisance, and concealment.  After the jury had rendered a special verdict against California Casualty (the "Special Verdict") and assessed total damages in the amount of $2,493,658.90 (including *Brandt* fees[1]), California Casualty settled the <u>Harold</u> action for $2.5 million – an amount which constitutes a virtual admission of the accuracy of the jury's findings, in as much as it exceeds by over $6,000 the total jury verdict.  California Casualty then demanded approximately $4 million (settlement amount plus defense costs) from Federal.

Federal properly declined to pay this amount because the lion's share of the loss incurred by California Casualty is not covered under the Policy, by virtue of the Policy's Benefits Due Exclusion, Pollution Exclusion, Property Damage, Destruction and Loss of Use Exclusion, Bodily Injury and Mental or Emotional Distress Exclusion, and Fraud Exclusion (collectively, the "Exclusions").  These Exclusions preclude coverage for the portion of the settlement that was paid in consideration of damages resulting from California Casualty's:  (1) breach of contract, (2) negligence and nuisance (to the extent that the negligence and nuisance resulted in mold, property damage, destruction and loss of use of property, and bodily injury and emotional or

---

[1]  In <u>Brandt v. Superior Court</u>, 37 Cal. 3d 813 (1985), the Supreme Court held that when an insured sues an insurer for bad faith, the insured may recover attorneys fees incurred to recover policy benefits the insurer has wrongfully withheld.  These fees typically are known as "*Brandt* fees."

- 1 -

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1    mental distress), and (3) intentional concealment.  After the Exclusions have been applied to the

2    total Claim amount, the amount of covered loss, if any, falls far below the required $2 million

3    deductible set forth in the Policy.[2]

4          Because California Casualty has not met the deductible, as is demonstrated by the

5    undisputed evidence, no proceeds are due under the Policy.  Accordingly, Federal cannot be in

6    breach of the Policy or the auxiliary implied covenant of good faith and fair dealing.  Thus, Federal

7    is entitled to summary judgment as to California Casualty's breach of contract claim and "bad

8    faith" claim against Federal.

9          Alternatively, in the event that the Court is not inclined to grant Federal's Motion for

10   Summary Judgment as to all of California Casualty's claims in their entirety, Federal requests that

11   the Court grant Summary Adjudication as to the following issues:

12         (1)    The $256,000 portion of the $2.5 million settlement sum paid in consideration for

13   the $256,000 in breach-of-contract damages awarded by the jury is precluded from coverage by the

14   Policy's Benefits Due Exclusion and/or the ill-gotten gains doctrine;

15         (2)    The $1,522,243 portion of the $2.5 million settlement sum paid in consideration for

16   $744,700 in negligent-selection damages and for $777,543 in nuisance damages awarded by the

17   jury is precluded by the Policy's Pollution Exclusion;

18         (3)    The $597,243 portion of the $2.5 million settlement sum paid in consideration for

19   the economic damages portion of the negligent-selection and nuisance damages awarded by the

20   jury is precluded by the Policy's Property Exclusion;

21         (4)    The $925,000 portion of the $2.5 million settlement sum paid in consideration for

22   the non-economic damages portion of the negligent-selection and nuisance damages awarded by

23   the jury is precluded by the Policy's Bodily Injury and Mental or Emotional Distress Exclusion;

24

25

26   [2]  In Federal's view, the entire **Claim**, both as to **Defense Costs** and as to the settlement sum, is
     barred by the Pollution Exclusion.  However, even if one were to take the view that the Pollution
27   Exclusion does not sweep so broadly, the Claim would nevertheless be barred by other exclusions,
     including the benefits-due, property damage/loss of use, and bodily injury/emotional distress, and
28   fraud exclusions.

NOTICE OF MOTION AND MOTION OF DEFENDANT FEDERAL INSURANCE COMPANY FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

(Case No. 08-CV-2701-VRW))

(5)     The $146,090.47 portion of the $2.5 million settlement sum paid in consideration for $146,090.47 in concealment damages awarded by the jury is barred from coverage by the Fraud Exclusion and/or Section 533 of the California Insurance Code;

(6)     The $225,450 portion of the $2.5 million settlement sum paid in consideration for $225,450 in bad faith damages awarded by the jury is barred from coverage by the Fraud Exclusion and/or Section 533 of the California Insurance Code;

(7)     The $343,875.43 portion of the $2.5 million settlement sum paid in consideration for $343,875.43 in *Brandt* fees recoverable in the underlying action is barred from coverage by the Fraud Exclusion and/or Section 533 of the California Insurance Code;

(8)     The $6,341.10 by which the $2.5 million settlement sum exceeded the $2,493,658.90 potentially recoverable in the underlying action is precluded from coverage by the Policy's Benefits Due Exclusion and/or the ill-gotten gains doctrine, because it must have been paid in consideration for pre-judgment interest potentially awardable on the $256,000 in breach-of-contract damages awarded by the jury for policy benefits wrongly withheld by California Casualty from its insureds; and

(9)     California Casualty's claim for "bad faith" is precluded, as a matter of law, by the "genuine dispute" doctrine.

## II.     STATEMENT OF ISSUES TO BE DECIDED

<u>Summary Judgment</u>:  Whether Federal is entitled to summary judgment in its favor because the undisputed evidence demonstrates that the amount of covered Loss does not exceed the Policy's deductible.

<u>Summary Adjudication (in the Alternative)</u>:  (1) Whether certain portions of the $2.5 million settlement sum paid by California Casualty to resolve the underlying litigation are precluded from coverage by certain Policy exclusions and/or public policies such as California Insurance Code Section 533 and the ill-gotten gains doctrine; and (2) Whether California Casualty's claim for "bad faith" is precluded, as a matter of law, by the "genuine dispute" doctrine.

### III.    UNDISPUTED FACTS

**A.    The Policy At Issue**

Federal issued to California Casualty Policy Number 70427262 for the **Policy Period**, September 1, 2001 to July 1, 2002.  (Underline See Policy [Complaint, Ex. 1, Ex. A thereto].)  The Policy, subject to its $2,000,000 deductible, applicable exclusions, and other terms and conditions, provides coverage, up to its $5,000,000 limit of liability, for **Loss**[3] which the **Insureds** become legally obligated to pay as a result of a **Claim** first made against California Casualty during the **Policy Period** arising out of any **Wrongful Act** committed by the **Insureds** or any person for whose acts the **Insureds** are legally liable while performing or allegedly failing to perform **Insurance Services**.[4]  (Id.)

The Policy expressly excludes from coverage **Claims**:

(1)      for "damage to or destruction of any tangible property including loss of its use" (the "Property Damage Exclusion") (Policy [Ex. 1, Ex. A thereto], ¶ 4.f.);

(2)      "for bodily injury, mental or emotional distress, sickness, disease or death of any person" (unless such **Claim** is based "solely" on California Casualty's failure to provide **Insurance Services**) (the "Bodily Injury and Mental or Emotional Distress Exclusion") (Policy, [Ex. 1, Ex. A thereto], ¶ 4.g.);

(3)      "based upon, arising from, or in consequence of:  (i) the actual, alleged or threatened discharge, release, escape, dispersal or disposal of **Pollutants**[5] into or on real or personal property,

---

[3]  **Loss** is defined in the Policy as "the total amount which the **Insured** becomes legally obligated to pay as a result of each **Claim** or for all **Claims** in each **Policy Period** ….  If exercised, made against the **Insureds** for **Wrongful Acts** for which coverage applies, including but not limited to, compensatory damages, punitive or exemplary damages, multiplied damages, judgments, settlements and **Defense Costs**…"  (Complaint, Ex. 1, Ex. A thereto, Section 26 [Definitions], p. 11 of 12 (emphasis added).)  **Defense Costs** is defined as "part of **Loss** consisting of reasonable costs, charges, fees…and expenses…incurred in defending or investigating Claims…" (Policy [Ex. 1, Ex. A thereto], Section 26 [Definitions], p. 10 of 12.)

[4]  Words appearing in bold print are defined in the Policy.

[5]  The Policy defines **Pollutants** as: "any substance . . . exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by the United States Environmental Protection Agency ["EPA"] or a state, county, municipality or locality counterpart thereof . . . includ[ing], without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials [as well as] any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos
(footnote continued on next page)

NOTICE OF MOTION AND MOTION OF DEFENDANT FEDERAL INSURANCE COMPANY FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

(Case No. 08-CV-2701-VRW))

1   buildings, water, land or atmosphere . . . or (iii) the **Insured's** failure to provide **Insurance**

2   **Services**[6] . . . to a customer relating to" the same; (the "Pollution Exclusion") (Policy, [Ex. 1, Ex. A

3   thereto], ¶ 4.h.);

4         (4)    "for any amounts which constitute benefits, coverage, or amounts due or allegedly

5   due, including any amount which constitutes interest thereon, from the **Insureds** as (i.) an insurer

6   or reinsurer under any policy or contract or treaty of insurance, reinsurance, suretyship, annuity or

7   endowment[.]" (the "Benefits Due Exclusion") (Policy, [Ex. 1, Ex. A thereto], ¶ 4.p(i.)); or

8         (5)    "based upon, arising from, or in consequence of…any dishonest, deliberately

9   criminal or deliberately fraudulent act or omission…provided, however that this exclusion shall not

10   apply unless it is established in fact that such **Claim** was brought about or contributed to by any

11   deliberate conflicts of interest, dishonest, or deliberately criminal or deliberately fraudulent act or

12   omission…and provided this **Exclusion** shall not apply to a **Claim** for both fraud and bad faith in

13   the handling and adjusting of claims[.]" (the "Fraud Exclusion") (Policy, [Ex. 1, Ex. A thereto], ¶

14   4.b.)

15   **B.**     **The Underlying Matter**

16         California Casualty issued a policy of homeowners insurance to Mr. and Mrs. James Harold

17   (the "Underlying Policy").  (<u>See</u> Complaint [Ex. 1], ¶5.)  The Harolds reported a claim under this

18   homeowners insurance policy for a water leak that occurred in one of the pipes in the Harolds'

19   home.  <u>Id.</u>  California Casualty hired a contractor, Westmont Construction, Inc. ("Westmont"), to

20   repair the water damage.  (<u>See</u> <u>Harold</u> Action First Amended Complaint ("Underlying Complaint")

21   [Ex. 1, Ex. D thereto], ¶ 8; Special Verdict [Request for Judicial Notice ("RJN"), Ex. 1], Answer

22   3.)

23

24   _____

(footnote continued from previous page)

25   or asbestos products and any noise."  (Policy [Ex. 1, Ex. A thereto], Section 26 [Definitions], p. 12 of 12.)

26   [6]  The Policy defines **Insurance Services** as "only those services rendered or required to be

27   rendered by or on behalf of the **Insureds** solely in the conduct of the **Insureds'** claim handling and adjusting; insurance risk management; safety engineering; inspection and loss control operations;

28   …" (Policy [Ex. 1, Ex. A thereto], Section 26 [Definitions], p. 11 of 12.)

NOTICE OF MOTION AND MOTION OF DEFENDANT FEDERAL INSURANCE COMPANY FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    During the course of Westmont's repairs, California Casualty obtained a report (the

2    "Anderson Mold Report"), on or about January 19, 2001, from Anderson Environmental

3    Consulting, a consultant hired by Westmont, which:  (1) revealed the presence of harmful mold,

4    fungi, and bacteria in the Harold home; (2) outlined the negative health effects of exposure to these

5    biological pollutants; and (3) recommended a detailed course of remediation.  (See Anderson Mold

6    Report [RJN, Ex. 2].)  The jury in the Harold action found that California Casualty intentionally

7    concealed the Anderson Mold Report from the Harolds, and that it did so with the intent to deceive.

8    (See Special Verdict [RJN, Ex. 1], Answer 32.)  Instead of undertaking the comprehensive

9    remediation efforts recommended in the Anderson Mold Report, California Casualty directed

10   Westmont (which California Casualty knew had no special expertise in mold remediation) to

11   perform only a superficial, cosmetic cleanup, which actually exacerbated the mold infestation,

12   causing toxic mold to be spread throughout the house.  (See Underlying Complaint, [Ex. 1, Ex. D

13   thereto], specifically ¶¶ 8-11, 27, 44-48; Harolds' Trial Brief, [Ex. 1, Ex. C thereto], specifically

14   pp. 4-8; Special Verdict [RJN, Ex. 1], Answers 4-8, 21-22.)

15   The concealed and aggravated mold infestation resulted in:  (1) severe property damage to

16   the Harolds' dwelling which required it to be demolished and rebuilt; (2) substantial economic

17   damages (including both the costs of rebuilding the home, as well as rent, utilities, and storage and

18   maintenance costs incurred as a result of the Harolds' loss of use of their property); and (3) non-

19   economic damages including physical harm, pain and suffering, emotional and mental distress and

20   anxiety, and interference with the Harolds' use and enjoyment of their property.  (See Underlying

21   Complaint [Ex. 1, Ex. D thereto], specifically ¶¶ 17, 21, 22, 34, 35, 40, 49, 50, 59-61, 66-67, 78;

22   Harolds' Trial Brief [Ex. 1, Ex. C thereto], specifically pp. 22-23; Special Verdict [RJN, Ex. 1],

23   Answers 5, 21, 22, 34, 38, 41, 44.)  The Harolds also alleged that California Casualty

24   misrepresented the coverage available under its homeowners' insurance policy and failed to pay to

25   its insureds the full amount of benefits owed for the Harolds' temporary accommodations during

26   the course of Westmont's repair efforts.  (Underlying Complaint [Ex. 1, Ex. D thereto], ¶¶ 7, 16.)

27   Accordingly, the Harolds filed a complaint against California Casualty (and Westmont), in

28   which they asserted the following causes of action:  (1) breach of contract against California

NOTICE OF MOTION AND MOTION OF DEFENDANT FEDERAL INSURANCE COMPANY FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

(Case No. 08-CV-2701-VRW))

1  Casualty; (2) breach of the implied covenant of good faith against California Casualty;

2  (3) negligence against California Casualty; (4) negligence against Westmont; (5) intentional

3  infliction of emotional distress against California Casualty and Westmont; (6) fraud by

4  concealment against California Casualty and Westmont; (7) fraud by misrepresentation against

5  California Casualty and Westmont; (8) nuisance against California Casualty and Westmont; and

6  (9) unfair business practices against California Casualty.  (See Underlying Complaint [Ex. 1, Ex. D

7  thereto].)

8      On or about May 1, 2006, the jury returned a verdict against California Casualty in the

9  amount of $2,149,783.47, to which would later be added the Harolds' *Brandt* attorneys' fees in the

10  amount of $343,875.43, which would have resulted in a total judgment of $2,493,658.90.  (See

11  Complaint [Ex. 1], p. 5; Special Verdict [RJN, Ex. 1].)  The jury, as reflected in the Special

12  Verdict, found that California Casualty:

13      (1)    was negligent in retaining the unqualified Westmont, who was hired by California

14  Casualty to repair the Harolds' residence (See Special Verdict [RJN, Ex. 1], Answers 3-7);

15      (2)    had created a nuisance by allowing mold to be spread throughout the house (See

16  Special Verdict [RJN, Ex. 1], Answers 21-22);

17      (3)    deliberately concealed the Anderson Mold Report from the Harolds with the specific

18  intent to deceive them (See Special Verdict [RJN, Ex. 1], Answers 31-32);

19      (4)    breached its contractual obligations by failing to pay benefits due and owing under

20  its homeowners' policy (See Special Verdict [RJN, Ex. 1], Answer 10); and

21      (5)    breached the implied covenant of good faith and fair dealing  (See Special Verdict

22  [RJN, Ex. 1], Answers 11-14.)

23      Based upon these findings, the jury assessed damages against California Casualty in the

24  following amounts:

25      (1)    $256,000.00 for breach of contract (i.e., unpaid policy benefits) (Special Verdict

26  [RJN, Ex. 1], Answer 35);

27      (2)    $225,450.00 for "bad faith" (Special Verdict [RJN, Ex. 1], Answer 36);

28

NOTICE OF MOTION AND MOTION OF DEFENDANT FEDERAL INSURANCE COMPANY FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
(Case No. 08-CV-2701-VRW))

1    (3)    $744,700.00 for negligent retention of Westmont (including $494,700.00 in

2    economic damages [i.e., property damage and expenses attributable to loss of use of the property[7]]

3    and $250,000 in past non-economic damages [i.e., physical harm, pain and suffering, mental and

4    emotional distress, and interference with use and enjoyment of the property[8]]) (Special Verdict

5    [RJN, Ex. 1], Answer 38);

6    (4)    $777,543.00 for nuisance (including $102,543.00 in past and future economic

7    damages [i.e., property damage and expenses attributable to loss of use of the property] and

8    $675,000 in non-economic damages [i.e., physical harm, pain and suffering, mental and emotional

9    distress, and interference with use and enjoyment of the property]) (Special Verdict [RJN, Ex. 1],

10    Answer 41); and

11    (5)    $146,090.47 for concealment (Special Verdict [RJN, Ex. 1], Answer 44.)

12    **C.    California Casualty's Settlement And Demand**

13    After the jury had rendered the verdict against it, California Casualty, on or about July 6,

14    2006, finally settled the case with the Harolds for a $2.5 million settlement payment, which

15    exceeded, by over $6,000,[9] the total potential recovery of $2,493,658.90 (which is comprised of the

16    $2,149,783.47 jury verdict plus $343,875.43 in *Brandt* fees).  (See Complaint [Ex. 1], p. 5; April 9,

17    2008 demand letter [Decl., Ex. 2].)

18    In addition to the $2.5 million settlement, California Casualty also submitted to Federal for

19    reimbursement invoices totaling $1,297,936.97 for Defense Costs incurred through July 7, 2006.

20    (See July 6, 2007 letter from Federal to California Casualty [Decl., Ex. 3].)  Of the amount

21    ───────────────────
[7]    See Jury Instructions (Decl., Ex. 1), No. 3903, which indicates that the claimed "Economic
22    Damages" consist of: cost to rebuild Harolds' home to its pre-loss condition; cost of rent that they
have incurred since November 2002; cost of utilities, water, and garbage that they have incurred
23    since November 2002; cost of maintaining their pool at their house since November 2002; cost of
storage units rented by the Harolds since November 2002; and loss of benefits due the Harolds
24    under their homeowners' insurance policy with California Casualty.

[8]    See Jury Instructions (Decl., Ex. 1), No. 3905-3905A, which lists "Items of Non-economic
25    Damage" as past and present emotional and mental distress and anxiety; future emotional and
mental distress and anxiety; past physical harm, pain and suffering; past, present, and future
26    interference with the use and enjoyment of property; and past difficulty sleeping and loss of
appetite.

27    [9]    The additional $6,000 must represent pre-judgment interest on the $256,000 in benefits due to,
28    and wrongfully withheld from, the Harolds.  As such, it would not be covered under the Policy.

NOTICE OF MOTION AND MOTION OF DEFENDANT FEDERAL INSURANCE COMPANY FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
(Case No. 08-CV-2701-VRW))

1    requested for Defense Costs, Federal, after auditing the bills for reasonableness, agreed to credit

2    $1,184,035.26 toward exhaustion of the $2,000,000 deductible, leaving a deductible balance of

3    $815,964.74 yet to be satisfied by California Casualty.  (See id.)  While California Casualty alleges

4    in its Complaint that it actually incurred $1.5 million in Defense Costs (and stated in an April 9,

5    2008 letter that the total amount of Defense Costs incurred was $1,511,462 [Decl., Ex. 2]), it did

6    not submit invoices to Federal in that amount; nevertheless, even assuming arguendo that

7    California Casualty did incur $1.511 million in Defense Costs as it now claims, that still leaves a

8    deductible balance of approximately $489,000, which is not exhausted by the arguably covered

9    portions of the settlement sum.

10   **D.    The Instant Litigation**

11        When Federal rightfully declined to pay California Casualty's demand for over $4,000,000

12   (i.e., the $2.5 million settlement sum plus defense costs of approximately $1.5 million) (a demand

13   that did not even acknowledge the Policy's $2,000,000 deductible), this coverage litigation ensued.

14   California Casualty filed its complaint on April 30, 2008 in the Superior Court of California,

15   Country of San Mateo, in which it alleged breach of contract and bad faith breach on Federal's

16   part.  Federal removed the action to this Court on or about May 29, 2008, and filed its Answer.

## IV.    ARGUMENT

17

18   **A.    Standards of Review**

19        A party is entitled to summary judgment when "there is no genuine issue of material fact

20   and the party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A court grants

21   summary judgment in favor of a defendant when a plaintiff is unable sufficiently to establish an

22   essential element of his or her case when that party would bear the burden of proof at trial.  Celotex

23   Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Only disputes over material facts, i.e., those facts that

24   might ultimately affect the outcome of the lawsuit, will preclude summary judgment.  Anderson v.

25   Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

26        If a determination of whether coverage applies turns on the interpretation of an insurance

27   policy and not facts in dispute, the question for the court is purely one of law.  Cf. Stanford Ranch,

28   Inc. v. Maryland Cas. Co., 89 F.3d 618, 624 (9th Cir. 1996) (interpretation of insurance policy is a

1   question of law); <u>accord</u>, <u>Gin v. Pennsylvania Life Ins. Co.</u>, 134 Cal. App. 4th 939, 943 (2005).

2   Where the language of the policy is clear and explicit, it will govern.  <u>Foster-Gardner, Inc. v.</u>

3   <u>National Union Fire Ins. Co.</u>, 18 Cal. 4th 857, 868 (1998).  As is true with contract interpretation

4   issues generally, the unexpressed subjective understanding parties may have had is irrelevant and

5   therefore will not defeat a motion for summary judgment.  <u>See</u> <u>Havstad v. Fidelity Nat'l Title Ins.</u>

6   <u>Co.</u>, 58 Cal. App. 4th 654, 661 (1997) (insureds' "subjective expectations as to policy coverage are

7   irrelevant to … interpretation of the contract").  Moreover, as has been repeatedly held in

8   California, "Courts will not adopt a strained or absurd interpretation in order to create an ambiguity

9   where none exists."  <u>Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.</u>, 5 Cal. 4th 854,

10  867 (1993).

11        Because the undisputed material facts plainly demonstrate that there is no genuine issue of

12  material fact demonstrating that the claimed Loss falls within the scope of the Policy, Federal

13  cannot be in breach of the insurance contract nor in bad faith breach of the insurance contract.  <u>See</u>,

14  <u>e.g.</u>, <u>Love v. Fire Ins. Exch.</u>, 221 Cal. App. 3d 1136, 1151-1153 (1990), <em>review denied</em> (Cal. Sept.

15  13, 1990) ("[a]bsent this primary right [<em>i.e.</em>, to receive payment under the terms of the insurance

16  contract], the auxiliary implied covenant has nothing upon which to act as a supplement, and

17  should not be endowed with an existence independent of its contractual underpinnings").  The

18  Court, therefore, should grant the instant Motion, dismiss the action in its entirety and enter

19  judgment in Federal's favor.

20  **B.    The Undisputed Evidence Demonstrates That Most Of The Loss Incurred By**
    **California Casualty Is Precluded By The Policy's Exclusions Such That The Amount**
21  **Of Covered Loss Falls Short Of The $2 Million Deductible.**

22        It is undisputed that the Policy has a $2 million deductible.  California Casualty has failed

23  to exhaust this deductible, as will be discussed below, and thus California Casualty will be unable

24  to meet its burden of showing that its Claim falls within the Policy's coverage.  California case law

25  and the Special Verdict form, which may be used to allocate between insured and uninsured

26  liability,[10] reveals that the lion's share of the $2.49 million claim settled in consideration for

27  _____

28  [10]  Even where a "final judgment" is not rendered, a special verdict may be used to allocate a
    settlement sum between uncovered and covered claims, particularly where the settlement amount
    (footnote continued on next page)

- 10 -

1    California Casualty's payment of the $2.5 million settlement sum and related Defense Costs are not

2    covered under the Policy, by operation of:  (1) the Policy's Benefit's Due Exclusion (and ill-gotten

3    gains doctrine); (2) The Policy's Pollution Exclusion, Property Damage Exclusion, and Bodily

4    Injury and Mental or Emotional Distress Exclusion; and (3) the Policy's Fraud Exclusion and

5    Section 533 of the California Insurance Code.[11]   Additionally, no Defense Costs solely attributable

6    to the uncovered loss will be covered under the Policy.[12]   Because the amount of covered Loss

7    (including Defense Costs) falls short of the necessary deductible, California Casualty will be

8    unable to show that the Claim falls within coverage.

9    _____

10   (footnote continued from previous page)

11   exceeds the amount the jury verdict attributes to the liability.  See, e.g., Stonewall Ins. Co. v. City
     of Palos Verdes Estates, 46 Cal. App. 4th 1810, 1840-42 (1996) (using a special verdict form from
     the underlying litigation, which eventually settled, to allocate between insured and uninsured

12   liability and noting that the settlement amount, which exceeded the amount the jury attributed to
     negligence/nuisance, made the preclusive effect of the judgment even more apparent); see also City

13   of Laguna Beach v. Mead Reinsurance Corporation, 226 Cal. App. 3d 822, 831-832 (1990)
     (finding that jury's verdict with respect to insurer's inverse condemnation liability still stood, and

14   insured could not avoid its good faith obligation under its insurance contracts by entering into a
     peculiar settlement); American Ins. Co. v. North American Co. for Property & Cas. Ins., 697 F.2d

15   79 (2nd Cir. 1982) (finding that where jury had awarded $146,970 in compensatory damages and
     $750,000 of punitive damages against underlying defendant and where insurer settled with

16   defendant for  $500,000 such that most of the insurer's settlement had compensated defendant for
     punitive damages, reinsurer was not required to reimburse insurer where it assumed responsibility

17   for a layer of liability between $250,000 and $500,000 per damage award and did not cover
     punitive damages); see also General ACC, Fire & Life Assur. Corp. v. Clark, 34 F.2d 833 (9th Cir.

18   1929) (finding that it is clearly a violation of the intent of an insurance policy to allow the injured
     persons to collect from it a greater amount than the judgment as finally settled and determined in

19   the litigation between the insured and the injured third persons); cf. Palermo v. Fireman's Fund Ins.
     Co., 42 Mass. App. Ct. 283, 676 N.E.2d 1158 (1997) (finding that insurer bore burden of allocating

20   judgments between covered and noncovered claims, but noting that insurer could have asked for a
     special verdict in order to determine such allocation); accord Duke v. Hoch, 468 F.2d 973 (5th Cir.

21   1972) (finding that insurer should have requested a special verdict in order to allocate covered
     damages from noncovered damages).

22   [11] While the Special Verdict establishes certain facts for purposes of this litigation, Federal would
     still be entitled, in the absence of the Special Verdict, to base its invocation of all relevant

23   exclusions but the Fraud Exclusion on the allegations in the *Harold* Complaint, since only the
     Fraud Exclusion requires that the basis of an excluded **Claim** be "established in fact[.]"  Thus,

24   Federal would be able to rely solely on the Complaint to preclude coverage for the majority of the
     **Claim**.

25   [12]  While the Exclusions discussed in this Motion also preclude coverage for any **Defense Costs**

26   incurred in connection with an excluded **Claim** (since the exclusions apply to "any payment for
     **Loss** in connection with any **Claim**" and **Defense Costs** are defined as a part of **Loss**)**,** Federal

27   does not seek, in the instant Motion, to allocate **Defense Costs** between covered and non-covered
     **Loss**.  However, should this case proceed, Federal will seek a determination that certain **Defense**

28   **Costs** are also excluded by operation of the Exclusions discussed herein.

NOTICE OF MOTION AND MOTION OF DEFENDANT FEDERAL INSURANCE COMPANY FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

(Case No. 08-CV-2701-VRW))

1.    **The Portion Of The $2.5 Million Settlement Sum Paid In Consideration For The $256,000 In Breach Of Contract Damages Is Precluded By The Policy's Benefits Due Exclusion And The Ill-Gotten Gains Doctrine.**

It is undisputed that the Jury found that California Casualty failed to pay the Harolds $256,000 for their residence due under the Underlying Policy.  See Special Verdict, Answer 35. Accordingly, the portion of the $2.5 million settlement sum that was paid in lieu of the $256,000 in breach-of-contract damages is precluded by the Policy's Benefits Due Exclusion, which excludes coverage for **Loss** in connection with any **Claim** "for any amounts which constitute benefits, coverage or amounts due or allegedly due, including any amount which constitutes interest thereon, from the **Insureds** as  . . . an insurer . . . under any policy or contract . . . of insurance…"  See Policy, ¶ 4.p(i.).  This exclusion also precludes that portion of California Casualty's **Defense Costs** that was incurred in defending against the breach-of-contract claim.

Moreover, pursuant to the ill-gotten gains doctrine (which holds that an Insured's restitution or disgorgement of amounts wrongly obtained or withheld does not qualify as legally insurable loss), the $256,000.00 in benefits due are also uninsurable as a matter of law.  See, e.g., St. Paul Fire & Marine Ins. Co. v. Village of Franklin Park, 523 F. 3d 754 (7th Cir. 2008) (unpaid pension funds uninsurable); Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1266, 10 Cal. Rptr. 2d 538, 833 P. 2d 545 (1992); citing, Jaffe v. Cranford Ins. Co., 168 Cal. App. 3d 930, 934-935 (1985) (restitution of medical overpayments not insurable 'damages').

Thus, both the Policy's Benefits Due Exclusion and well-settled law preclude from coverage at least $256,000 of the Loss.

| ------ $1.51M Defense Costs ----- | ------$2.5M | Settlement  Sum ----------------<br>← $2M Deductible | ----<br>$256,000<br>Benefits Due<br>(not covered) |
|---|---|---|---|
| $0           ~$1.51M | **$2M** | | ~$3.76M  ~$4.01M |

/ / /

/ / /

/ / /

- 12 -

1

    **2.      The Portion Of The $2.5 Million Settlement Sum Paid In Consideration For $744,700 In Negligent-Selection Damages And For $777,543 In Nuisance Damages Is Precluded By: (a) The Pollution Exclusion; (b) The Property Damage Exclusion; And (c) The Bodily Injury And Mental Or Emotional Distress Exclusion.**

2

3

4        It is undisputed that the Jury found California Casualty liable for $744,700 in damages for

5    its negligent failure to hire a qualified contractor and for $777,543 in damages for the nuisance

6    caused by California Casualty.  See Special Verdict, Answers 38, 41.  Accordingly, because the

7    negligence and nuisance damages are attributed to the dispersion of mold, resulted in property

8    damage, and resulted in bodily injury or emotional or mental distress, any part of the Claim paid in

9    consideration of these damages is not covered under the Policy.

10         **a)      Negligence And Nuisance Damages Attributable To Mold Are Precluded From Coverage By The Pollution Exclusion.**

11

12        Because the damages caused by California Casualty's negligent-selection and nuisance are

    attributable to the dispersal of mold throughout the Harold home, these damages would be

13

    precluded by the Policy's Pollution Exclusion, which precludes coverage for **Loss** in connection

14

    with any **Claim**:

15

        "based upon, arising from, or in consequence of (i.) the actual [or] alleged

16        discharge, release, escape, dispersal or disposal of **Pollutants** into or on real or personal property, buildings, water, land or atmosphere [,] ii. any direction or

17        request that the **Insureds** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants . . . [,] or . . . iii.  the **Insured's** failure to

18        provide **Insurance Services** . . . to a customer relating to any of the matters described in i. or ii."

19        Because Mold is identified by the EPA as a "biological pollutant," Mold would constitute a

20    "Pollutant" within the meaning of the Policy, which defines "Pollutant" as a "any substance . . .

21    exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous

22    substances issued by the ["EPA"]" or a state..."  See http://www.epa.gov /mold/moldresources.html

23    (and other EPA publications cited therein); see also "Historical and Statutory Notes" regarding

24    Health & Safety Code §§ 26200-26203; Section 1, Stats. 2001, c. 550 (A.B.284) (Cal. 2001)

25    (wherein the California Legislature found that "airborne particles emitted by fungus" are "indoor

26    air pollutants").  Thus, to the extent that nuisance and negligence damages are attributed to the

27    dispersal of mold or California Casualty's failure to properly investigate or remediate the mold,

28    such damages are not covered under the Policy.

- 13 -

NOTICE OF MOTION AND MOTION OF DEFENDANT FEDERAL INSURANCE COMPANY FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

(Case No. 08-CV-2701-VRW))

1    Accordingly, because it is undisputed that the Jury found California Casualty negligent in

2    hiring Westmont, a contractor with no experience in mold and who "failed to use reasonable care to

3    take specific safety measures appropriate to the danger to avoid the risk," and found California

4    Casualty's hiring of Westmont a substantial factor in causing the mold-related harm, the damages

5    attributed to California Casualty's negligent selection of Westmont cannot be covered under the

6    Policy, as they are precluded by the Pollution Exclusion.  See Special Verdict, Answers 3-9.

7    Similarly, because it is undisputed that the harmful condition and interference of life and land

8    (which the Jury found California Casualty caused) was caused by the dispersal of mold and

9    California Casualty's failure to properly investigate or remediate the mold, the nuisance damages

10    cannot be covered under the Policy, as they are also excluded by the Pollution Exclusion.  See

11    Special Verdict, Answers 21-22.

12    Since the Pollution Exclusion precludes coverage for any **Loss** in connection with any

13    **Claim** "based upon, arising from, or in consequence of" the dispersal of **Pollutants** and/or

14    California Casualty's failure to provide **Insurance Services** in connection therewith, and the Ninth

15    Circuit and California courts interpret the phrase, "based upon, arising from, or in consequence

16    of[,]" as very broadly excluding any **Claim** for which the subject matter of the exclusion is a but-

17    for cause, all **Defense Costs** and settlement amounts attributable to the causes of action for

18    nuisance and negligent retention, which based upon and arise from the dispersal of mold and

19    California Casualty's failure to deal with it, are excluded.  See Continental Casualty Co. v. City of

20    Richmond, et al., 763 F. 2d 1076, 1081 (9th Cir. 1985) (California law) ("arising from" given broad

21    definition; claims fell within exclusion for bodily injury since there would not have been any

22    claims, had there been no injuries).

23    Therefore, the Pollution Exclusion bars coverage for:  (1) that portion of the $2.5 million

24    settlement sum that represents damages attributable to the dispersal of mold throughout the Harold

25    home by California Casualty's negligently-selected contractor, Westmont, including the $777,543

26    in nuisance damages and the $744,700 in negligent-selection damages awarded by the jury (a total

27

28

- 14 -

NOTICE OF MOTION AND MOTION OF DEFENDANT FEDERAL INSURANCE COMPANY FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

of $1,522,243); and (2) that portion of **Defense Costs** incurred in defense of the nuisance and

negligence claims.[13]

| ---$1.51M Defense Costs --- | --- $2.5M | Settlement<br><br>← $2M<br>Deductible | Sum -----------------------<br><br>$1,522,243 excluded by<br>Pollution Exclusion | ----------<br>$256,000<br>Benefits<br>Due (not<br>covered) |
|---|---|---|---|---|
| $0        ~$1.51 M | | **$2 M** | ~$2.23 M | ~$3.76M    ~$4.01M |

**b)    Negligence And Nuisance Damages Attributed To Property Damage Are Precluded From Coverage.**

Not only is the portion of the settlement paid in consideration for the $1,522,243 in

damages resulting from California Casualty's negligence and nuisance precluded by the Pollution

Exclusion, but it is also precluded in part by the Property Damage Exclusion.  It is undisputed that

the Jury found that California Casualty's negligence caused physical harm to the Harolds' person

or property and found that California Casualty created a condition that interfered with the Harolds'

use and enjoyment of their property.  See Special Verdict, Answers 5-6, 21-22.  Accordingly, the

$494,700 in past and future economic negligence damages and the $102,543 in past and future

economic nuisance damages apportioned by the Special Verdict are precluded by the Property

Damage Exclusion, which excludes coverage for "damage to or destruction of any tangible

property including loss of its use[.]"  Specifically, the Property Damage Exclusion would preclude

coverage for that portion of the Harolds' economic and non-economic damages attributable to:

(1) the cost to rebuild their home to its pre-loss condition; (2) the cost of rent incurred since

November 2002; (3) the cost of utilities, water, and garbage collection incurred since November

2002; (4) the cost of maintaining their inaccessible pool since November 2002; (5) the cost of

storage units rented since November 2002; and (6) past, present, and future interference with their

use and enjoyment of their property.  See Jury Instructions, Nos. 3903, 3905-3905A noted in

footnotes 7-8.  Any portion of the nuisance and negligence damages not attributable to the

---

[13]  Alternatively, as set forth below, even assuming, arguendo, that the Pollution Exclusion did not
apply, the same $1,522,243 in negligent retention and nuisance damages (which consist of damages
for property damage, loss of use, bodily injury, and emotional distress) would nevertheless be
excluded from coverage by the property damage/loss of use and bodily injury/emotional distress
exclusions.

1  aforementioned, and thus, not precluded by the Property Damage Exclusion, would still be

2  precluded from coverage by (in addition to the Pollution Exclusion) the Bodily Injury and Mental

3  or Emotional Distress Exclusion, discussed below.

| ---$1.51M Defense Costs --- | --- $2.5M | Settlement ← $2M Deductible | Sum --------- $925,000 excluded by Bodily Injury Exclusion | ------------- $597,243 excluded by Property Damage Exclusion | ------------- $256,000 Benefits Due (not covered) |
|---|---|---|---|---|---|
| $0        ~$1.51M | | **$2 M**        ~$2.23M | | ~$3.12M      ~$3.76M | ~$4.01M |

        **c)**       **Negligence And Nuisance Damages Attributed to Bodily Injury and Mental or Emotional Distress Are Precluded From Coverage.**

10       As mentioned above, the portion of the settlement paid in consideration for the $1,522,243

11  in damages resulting from California Casualty's negligence and nuisance that is not precluded by

12  the Property Damage Exclusion is precluded by the Bodily Injury and Mental or Emotional

13  Distress Exclusion.  It is undisputed that the portion of the negligence and nuisance damages not

14  attributed to economic damages were attributed to non-economic damages.  <u>See</u> Special Verdict,

15  Answers 38, 41.   These noneconomic damages – damages attributable to the Harolds' physical

16  injuries and emotional distress – are precluded by the Bodily Injury and Mental or Emotional

17  Distress Exclusion, which excludes coverage for "bodily injury, mental or emotional distress,

18  sickness, disease."   Thus, together, the Bodily Injury and Mental or Emotional Distress Exclusion

19  and the Property Damage Exclusion preclude coverage under the Policy for the entire $1,522,243

20  in negligence and nuisance damages (which are also precluded by the Pollution Exclusion).

21       While the Bodily Injury and Mental or Emotional Distress Exclusion expressly does not

22  apply "to a **Claim** based <u>solely</u> on the **Insured's** failure to provide **Insurance Services**[,]" the

23  Harolds' claim is not based "solely" on California Casualty's "failure to provide **Insurance**

24  **Services**."[14]  Rather, the Underlying Complaint shows that the Harolds' claim was based in larger

26  [14]  Under California law, the Policy's use of the word "solely" has the effect of restricting coverage
27  to those Claims of which the subject of the word "solely" is the <u>only</u> basis, and there no other,
concurrent basis for the Claim.  <u>See</u>, <u>e.g.</u>, <u>Olson v. Federal Ins. Co.</u>, 219 Cal. App. 3d 252, 268 Cal.
28  Rptr. 90 (2d Dist. 1990) (no coverage unless Insured is sued "solely" in an insured capacity).

NOTICE OF MOTION AND MOTION OF DEFENDANT FEDERAL INSURANCE COMPANY FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
(Case No. 08-CV-2701-VRW))

1  part upon California Casualty's negligent performance of **Insurance Services**, as well as its

2  intentional concealment of the Anderson Mold Report.[15]  Accordingly, the portion of the $777,543

3  in nuisance damages and the $744,700 in negligent-selection damages attributable to physical

4  harm, and mental and emotional distress are precluded from coverage.

5          Thus, not only does the Pollution Exclusion preclude coverage for the portion of the

6  $2.5 million settlement sum paid in consideration for both nuisance and negligent-selection

7  damages, which amount to $1,522,243, but the Property Damage Exclusion and the Personal Injury

8  and Mental or Economic Distress Exclusion also preclude coverage for these damages as well.

9  Adding this precluded amount, $1,522,243, to the $256,000 in damages precluded by the Benefits

10  Due Exclusion leaves California Casualty's Loss, before adding Defense Costs, far below the

11  Policy's $2 million deductible.[16]

12          Even if California Casualty added the audited Defense Costs to the total Loss amount, it

13  would still fail to meet the deductible.  Under California law, an insurer is not liable for Defense

14  Costs solely allocable to claims not potentially covered.  See Buss v. Super. Ct., 16 Cal. 4th 35, 52-

15  53 (1997).  Thus, Defense Costs solely allocable to the Benefits Due Exclusion and the Pollution

16  Exclusion and/or the Property Damage and Personal Injury and Mental or Emotional Distress

17  Exclusions (arguably 28.9% of the settlement amount) would not be covered under the Policy.  Yet,

18  even if California Casualty were to add the entire $1,184,035.26 in audited Defense Costs to the

19  amount of covered Loss, California Casualty would still fail to meet the required deductible.[17]

20

21

22

---

23  [15]  The amounts attributable to physical harm, and mental and emotional distress are included
    within the $777,543.00 in nuisance damages and the $744,700.00 in negligent-selection damages
24  awarded by the jury, which are also precluded by the pollution exclusion.

25  [16]  Subtracting the damages attributed to Benefits Due and to Pollution, Bodily Injury, and Property
    Damage from the total settlement sum would leave California Casualty's Loss at $728,757, which
26  is $1,271,243 short of the required $2 million deductible (before taking into consideration Defense
    Costs).

27  [17]  The sum of the total audited but unallocated reimbursable Defense Costs ($1,184,035.26) and
    the $715,415.90 claim amount (before deducting the non-covered fraud-related damages) would
28  still leave California Casualty short of the required deductible (by about $100,548.84).

| ---$1.51M Defense Costs --- | --- $2.5M | Settlement<br><br>← $2M Deductible | Sum -------<br>$925,000 excluded by Bodily Injury Exclusion | -------------<br>$597,243 excluded by Property Damage Exclusion | -------------<br>$256,000 Benefits Due (not covered) |
|---|---|---|---|---|---|
| $0 | ~$1.51M | **$2 M** | ~$2.23M   ~$3.12M | ~$3.76M | ~$4.01M |

> **3.    The Portion Of the $2.5 Million Settlement Sum Paid In Consideration For $146,090.47 In Concealment Damages And For $225,450 In Bad Faith Damages As Well As For _Brandt_ Fees Is Barred From Coverage By The Fraud Exclusion And Section 533 Of The California Insurance Code.**

Furthermore, it is undisputed that the jury awarded $146,090.47 in concealment damages on the basis that California Casualty intentionally concealed the Anderson Mold Report with the intent to deceive the Harolds, which caused the Harolds to have reasonably relied on the concealment to their substantial detriment.  See Special Verdict, Answer 44.  Thus, California Casualty's deliberately fraudulent conduct was established in fact by the Jury.  Accordingly, because the Policy's Fraud Exclusion excludes coverage for "any dishonest, deliberately criminal or deliberately fraudulent act or omission," the portion of the settlement paid in lieu of the $146,090.47 in concealment damages is precluded from coverage.  See, e.g., American Ins. Co. v. North American Co. for Property & Cas. Ins., 697 F.2d 79 (2nd Cir. 1982) (finding that where jury had awarded $146,970 in compensatory damages and $750,000 of punitive damages against underlying defendant and where insurer settled with defendant for $500,000 such that most of the insurer's settlement had compensated defendant for punitive damages, reinsurer was not required to reimburse insurer where it assumed responsibility for a layer of liability between $250,000 and $500,000 per damage award and did not cover punitive damages).  Although the Fraud Exclusion expressly provides that it "shall not apply to a **Claim** for both fraud and bad faith in the handling and adjusting of claims", this carve-out is inapplicable to the instant case because the fraud committed by California Casualty was not in connection with the "handling and adjusting of claims[,]" which is just one prong of the Policy's definition of **Insurance Services**, but rather in connection with "inspection and loss control operations" and/or "salvage operations[,]" which are separate prongs of the Policy's definition of **Insurance Services**, and thus distinct from "claims handling and adjusting[.]"  See Policy, Section 26 [Definitions], p. 11 of 12.

NOTICE OF MOTION AND MOTION OF DEFENDANT FEDERAL INSURANCE COMPANY FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

(Case No. 08-CV-2701-VRW))

1    Furthermore, not only does the Fraud Exclusion bar coverage for the portion of the

2  settlement paid in consideration of the concealment damages, but California Insurance Code

3  Section 533 also bars coverage for California Casualty's fraudulent concealment.  Section 533

4  provides that an "insurer is not liable for a loss caused by the willful act of the insured."  See, e.g.,

5  Empl. Ins. of Wausau v. Musick, & Garrett, 871 F. Supp. 381, 386-387 (S.D. Cal. 1994) (fraud and

6  negligent misrepresentation, including securities fraud, uninsurable under Section 533), citing

7  Dykstra v. Foremost Ins. Co., 14 Cal. App. 4th 361, 366 (1993) (Section 533 precludes coverage

8  for negligent misrepresentation); St. Paul Fire & Marine Ins. Co. v. Weiner, 606 F. 2d 864, 870

9  (9th Cir. 1979) (insurer may not indemnify for fraud); Allstate Ins. Co. v. Hansten, 765 F. Supp.

10  614, 616 (N.D. Cal. 1991) ("[u]nder California law, no contractual agreement may indemnify

11  anyone from his own fraud").  In addition, coverage is not available for a settlement paid to avoid

12  the imposition of damages barred by Section 533.  See e.g., Zieman Mfg. Co. v. St. Paul Fire &

13  Marine Ins. Co., 724 F. 2d 1343 (9th Cir. 1983) (insurer need not consent to settlement within

14  policy limits to avoid imposition of uninsurable punitive damages).  Moreover, even if the Policy

15  did not include a fraud exclusion or even if it expressly permitted coverage for fraudulent acts and

16  omissions, California Casualty's concealment would still be barred from coverage because an

17  insurer cannot waive Section 533."  See Downey Venture v. LMI Ins. Co., 66 Cal. App. 4th 478,

18  502 (1998) (malicious prosecution settlement excluded by Section 533, even though policy

19  promised coverage for malicious prosecution).

20    It is also undisputed that the Jury awarded the Harolds $225,450 in bad faith damages and

21  $343,875.43 in Brandt fees.  Given that the "bad faith" at issue here was an intentional tort[18],

22  ────────────

[18]  The tort of bad faith breach consists of action "extraneous to the contract, with the motive
23  intentionally to frustrate the obligee's enjoyment of contract rights."  Sawyer v. Bank of America,
83 Cal. App. 3d 135, 139 (1978) (referencing Brewer v. Simpson, 53 Cal. 2d 567, 589 (1960);
24  Berkeley Lawn Bowling Club v. City of Berkeley, 42 Cal. App. 3d 280, 286 (1974)) (emphasis
added); Chateau Chamberay Homeowners Assoc. v. Assoc. Int'l Ins. Co., 90 Cal. App. 4th 335,
25  346 (2001) (finding that bad faith requires "failure or refusal to discharge contractual
responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a
26  conscious and deliberate act, which unfairly frustrates the agreed common purposes and
disappoints the reasonable expectations of the other party thereby depriving that party of the
27  benefits of the agreement"); see also Freedom Trust v. Chubb Group of Ins. Companies, 38 F.
Supp. 2d 1170, 1172 –1173 (C.D. Cal. 1999) (finding that "there is no persuasive reason to
28  distinguish bad faith from other intentional torts" but noting that bad faith denial of insurance
(footnote continued on next page)

1  committed by California Casualty with the intent to deceive the Harolds (inasmuch as the jury

2  found such an intent to deceive in connection with the concealment of the Anderson Mold Report),

3  Section 533 also precludes coverage for the $225,450.00 in "bad faith" damages awarded by the

4  jury, and the $343,875.43 in California Casualty's *Brandt* fees (which are a form of compensatory

5  award for "bad faith"), because they are attributable to California Casualty's intentional tort.  See

6  Combs v. State Fire & Cas. Co., 143 Cal. App. 4th 1338, 1347 (2006) (noting that the "public

7  policy embodied in [S]ection 533 requires that the burden of paying such fees be borne by the

8  intentional wrongdoer and not by the wrongdoer's insurance carrier"); see also Brandt, 37 Cal. 3d

9  at 817 (finding that "[w]hen an insurer's tortuous conduct reasonably compels the insured to retain

10 an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a

11 tort action for that expense" because the attorney's fees are "damages proximately caused by the

12 tort).  Furthermore, not only would permitting the wrongdoer, California Casualty, to insure against

13 payment of *Brandt* fees undercut the public policy behind Section 533, but it would also permit

14 California Casualty "to avoid what may be a significant consequence of [its] wrongdoing."

15 Combs, 143 Cal. App. 4th at 1346.  Thus, because the *Brandt* fees here are a proximate cause of

16 California Casualty's intentional wrongdoing, they are uninsurable, as a matter of law.

| ------ $1.51M Defense Costs | -------------------- $715,415.90 excluded by the Exclusion & (concealment, bad *Brandt* fees) | -$2.5M Fraud § 533 faith & | ----Settlement Sum---- $1,522,243 excluded by Pollution Exclusion (or in alternative, Bodily Injury & Property Exclusions) | ---------- $256,000 Benefits Due (not covered) |
|---|---|---|---|---|
| $0          ~$1.51M | ~$1.52M | **$2M** | ~$2.2M          ~ $3.76M | ~$4.01M |

---

(footnote continued from previous page)

coverage is not inherently similar to fraud in that bad faith need not implicate false or misleading statements by the insurer).  Because there is no substantive difference between "intentional" and "willful," coverage for a bad faith act is, thus, precluded by Section 533.  See Clemmer v. Hartford Ins. Co., 22 Cal. 3d 865, 887(1978) (using "willful" and "intentional" interchangeably); Cal. Practice Guide: Insurance Litigation (The Rutter Group 2001) ¶ 7:250, p. 1354 (citing Clemmer for the proposition that "[t]here is presumably no substantive difference between a "wilful act" (as used in Ca Ins § 533) and an intentional injury…").

NOTICE OF MOTION AND MOTION OF DEFENDANT FEDERAL INSURANCE COMPANY FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**4.      In the Alternative, If The Court Is Disinclined To Find That the Total Amount Of Covered Loss Falls Beneath The Deductible, Federal Requests Summary Adjudication As To The Applicability of Each of the Exclusions to the Respective Portions Of The Settlement Sum.**

Because undisputed facts show that California Casualty's Claim is not covered under the Policy, summary judgment should be granted in favor of Federal on all claims in the Complaint. However, if the Court is disinclined to find that the total amount of covered Loss falls beneath the deductible, Federal requests Summary Adjudication as to the applicability of each of the exclusions to the respective portions of the settlement sum, as set forth in the following table.

| Damages Excluded | Basis for Exclusion | Amount Excluded |
|---|---|---|
| Benefits Due/Ill-Gotten Gains (S.V. p. 12, Ans. 35) | Benefits Due Exclusion (Policy, ¶ 4.p(i)) | $256,000, plus defense costs |
| Nuisance and Negligent-Selection Damages (S.V. p. 14, Ans. 38; p. 17, Ans. 40) | Pollution Exclusion (Policy, ¶ 4.h) | $1,522,243 ($777,543.00 in nuisance damages & $744,700.00 in negligent-selection damages), plus defense costs |
| Economic Damages Portion of Nuisance and Negligent-Selection Damages (S.V. p. 14, Ans. 38; p. 17, Ans. 40) | Property Damage Exclusion (Policy, ¶ 4.f) | $597,243 ($494,700 in economic damages from negligent-selection; $102,543 in economic damages from nuisance), plus defense costs |
| Non-Economic Damages Portion of Nuisance and Negligent-Selection Damages (S.V. p. 14, Ans. 38; p. 17, Ans. 40) | Bodily Injury and Mental or Emotional Distress Exclusion (Policy, ¶ 4.g) | $925,000 ($250,000 in non-economic damages from negligent-selection; $675,000 in non-economic damages from nuisance), plus defense costs |
| Concealment Damages (S.V., p. 19, Ans. 44) | Fraud Exclusion (Policy, ¶ 4.b) and Cal. Ins. Code § 533 | $146,090.47, plus defense costs |
| Bad Faith Damages (S.V., p. 13, Ans. 36) | Fraud Exclusion (Policy, ¶ 4.b) and Cal. Ins. Code § 533 | $255,450, plus defense costs |
| *Brandt* Fees (*See* S.V., p. 13, Ans. 36; Complaint, p. 5) | Fraud Exclusion (Policy, ¶ 4.b) and Cal. Ins. Code § 533 | $343,875.43, plus defense costs |

☐ These damages are also excluded by operation of the Pollution Exclusion.

**5.      Also In the Alternative, If The Court Is Disinclined To Find That The Total Amount of Covered Loss Falls Beneath The Deductible, Federal Requests Summary Adjudication To the Effect That California Casualty's Claim For "Bad Faith" Is Precluded, As A Matter Of Law, By The "Genuine Dispute" Doctrine.**

As set forth above, Federal's refusal to pay the full $4 million demanded by California Casualty is not unreasonable or without proper cause. Accordingly, California cannot establish a

- 21 -

1    bad faith claim.  <u>Century Surety Co. v. Polisso</u>, 139 Cal. App. 4th 922, 949 (2006) (finding that it

2    in order to establish bad faith, insured must show that benefits due under the policy were withheld

3    and the reason for withholding the benefits was unreasonable or without proper cause); <u>accord</u>

4    <u>Chateau Chamberay</u>, 90 Cal. App. 4th at 347.   Because California Casualty's claim is based upon

5    a genuine legal dispute as to the applicability of various Policy exclusions to various portions of the

6    $2.5 million settlement sum California Casualty paid to resolve the <u>Harold</u> action, Federal's denial

7    is not unreasonable as a matter of law.  <u>See id.</u> (noting that it is well-settled under California law

8    that a court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable

9    so long as there existed a genuine dispute as to the insurer's liability).  Rather, Federal's views as to

10   the applicability of these exclusions to the respective portions of settlement sum are well-supported

11   by the Special Verdict in the <u>Harold</u> action.  Moreover, even though payment of the Claim would

12   be in the best interests of California Casualty, Federal, "who owes no obligation to consider the

13   interests of its insured above its own," is not required to pay claims which it reasonably believes

14   are not covered under the Policy.  <u>See</u> <u>Morris v. Paul Revere Life Ins. Co</u>., 109 Cal. App. 4th 966,

15   973 (2003).

16        Therefore, California Casualty's claim for "bad faith" is precluded, as a matter of law, by

17   the "genuine dispute" doctrine.  <u>See</u>, <u>e.g.</u>, <u>Dalrymple v. United Services Auto. Ass'n</u>, 40 Cal. App.

18   4th 497, 523 (1995) (no bad faith liability as a matter of law where there was a genuine issue as to

19   coverage); <u>CalFarm Ins. Co. v. Krusiewicz</u>, 131 Cal. App. 4th 273, 286 (2005) (unsettled law as to

20   insurer's duty to indemnify insured contractor for certain repair costs made its denial of coverage

21   "objectively reasonable").  Accordingly, even if Federal is found to have incorrectly denied

22   benefits under the contract, at most, Federal will be liable only for damages flowing from the

23   breach of contract, <u>i.e.</u>, the policy benefits."  <u>See</u> <u>Morris</u>, 109 Cal. App. at 977.

24                          **V.    CONCLUSION**

25        For the reasons set forth above, Federal respectfully requests that the Court grant the

26   Motion for Summary Judgment in its entirety, or, in the alternative, that the Court grant Summary

27   / / /

28

1  Adjudication to the effect that certain portions of the settlement sum are precluded from coverage,

2  and that California Casualty's "bad faith" claim is precluded by the "genuine dispute" doctrine.

3

4  Dated:  August 21, 2008                STROOCK & STROOCK & LAVAN LLP
                                          MICHAEL F. PERLIS
5                                         ALLAN S. COHEN
                                          RICHARD R. JOHNSON

6

7                                         By:    _____/s/ Michael F. Perlis_____
                                                          Michael F. Perlis

8                                         Attorneys for Defendant
                                          FEDERAL INSURANCE COMPANY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 23 -