1
STROOCK & STROOCK & LAVAN LLP
MICHAEL F. PERLIS (State Bar No. 095992)
2
EMAIL: MPERLIS@STROOCK.COM
ALLAN S. COHEN (State Bar No. 115532)
3
EMAIL: ACOHEN@STROOCK.COM
RICHARD R. JOHNSON (State Bar No. 198117)
4
EMAIL: RJOHNSON@STROOCK.COM
2029 Century Park East, Suite 1600
5
Los Angeles, CA  90067-3086
Telephone:  310-556-5800
6
Facsimile:  310-556-5959
lacalendar@stroock.com
7

8
Attorneys for Defendant
  FEDERAL INSURANCE COMPANY
9

10
## UNITED STATES DISTRICT COURT

11
## NORTHERN DISTRICT OF CALIFORNIA

12
## SAN FRANCISCO DIVISION

| | |
|---|---|
| 13  CALIFORNIA CASUALTY INSURANCE COMPANY, | Case No. CV 08-2701 VRW |
| 14 | |
| 15          Plaintiff, | [Assigned to the Honorable Vaughn R. Walker] |
| 16      vs. | **NOTICE OF MOTION AND MOTION OF FEDERAL INSURANCE COMPANY FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 17  FEDERAL INSURANCE COMPANY, DOES 1-10, ROES 1-10, AND MOES 1-10, | |
| 18  inclusive, | |
| 19          Defendants. | |
| 20 | **[F.R.C.P. 56(b)]** |
| 21 | Date:      December 11, 2008 Time:      2:30 p.m. Ctrm:      6 |
| 22 | |
| 23 | [Declaration of Jeffrey Gunchick and Request for Judicial Notice filed; and [Proposed] Order lodged concurrently] |
| 24 | |

25

# PART 2 OF 4

26

27

28

NOTICE OF MOTION AND MOTION OF DEFENDANT FEDERAL INSURANCE COMPANY FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

(Case No. 08-CV-2701-VRW)

# EXHIBIT 1

1  **LAW OFFICES OF DAVID C. WERNER**
   David C. Werner [SBN: 67993]
2  Bryan Quilo [SBN: 213708]
   23422 Mill Creek Drive, Suite 110
3  Laguna Hills, California 92653
   Telephone: (949) 460-9280
4  Facsimile: (949) 460-9286

5

6  Attorneys for Plaintiff: CALIFORNIA CASUALTY
   INSURANCE COMPANY

7

8                  SUPERIOR COURT OF CALIFORNIA

9                     COUNTY OF SAN MATEO

10

11  CALIFORNIA CASUALTY          )   CASE NO: **CIV 4 7 2 4 5 2**
    INSURANCE COMPANY            )
12                               )   HONORABLE:
                  Plaintiffs,    )
13    v.                         )   DEPT:
                                 )
14  FEDERAL INSURANCE COMPANY,   )
    DOES 1-10, ROES 1-10, AND MOES 1- )   Complaint Filed:
15  10, inclusive                )
                                 )
16                               )
                  Defendants.    )
17  _____  )

18

19                              **I**
                  **IDENTIFICATION OF PARTIES AND CONTRACTS**

20      1.      The true names and capacities of Does 1-10, Roes 1-10 and Moes 1-10 are unknown to

21  this plaintiff and plaintiff therefore sues said Does, Roes and Moes by this fictitious designation.

22  Wherever the term "Federal Insurance Company" or defendant is used herein, it is meant to include

23  each of these fictitiously named defendants.  The true names and capacities of said Does, Roes and

24  Moes will be set forth when the same are known and leave of court will be sought as necessary to set

25  forth the true names and capacities when ascertained.

26  ///

27  ///

28

Law Offices
Of
David C. Werner

EXHIBIT 1 PAGE 26

FILED
SAN MATEO COUNTY

APR 3 0 2008

Clerk of the Superior Court
By _____
    DEPUTY CLERK

DCW1

2.    Federal Insurance Company (hereinafter "Federal") is an insurance company that conducts insurance business in the State of California. At all times pertinent herein, Federal Insurance entered into an insurance contract (which is hereinafter set forth as **Exhibit "A"**) providing certain coverages to California Casualty Insurance Company. California Casualty Insurance Company is informed and believes that Federal Insurance does business throughout the State of California and is subject to the jurisdiction of this Court. Specifically, the aforementioned contract (**Exhibit "A"**) was entered into between Federal Insurance and California Casualty Insurance Company at California Casualty Insurance Company's home office in San Mateo, California.

3.    California Casualty Insurance Company (hereinafter "California Casualty") is an insurance company conducting insurance business and providing insurance services in the State of California with a home office in San Mateo, California. At all times relevant herein, the Federal policy, **Exhibit "A"**, was entered into between Federal and California Casualty at the California Casualty home office in San Mateo, California. As set forth hereinafter, California Casualty provides personal lines of insurance including homeowner's coverage. The subject of this lawsuit involves California Casualty's homeowners policy number 204 1155871, (Attached hereto as **Exhibit "B"**) issued to insureds Mr. & Mrs. Harold, providing insurance coverage to their residence.

4.    At all times relevant herein and specifically beginning in September of 2001, Federal Insurance Company issued to California Casualty a policy of insurance providing California Casualty with coverage as specified in the policy. The policy is attached hereto, and marked **Exhibit "A"**, and incorporated herein by this reference. **Exhibit "A"** not only contains the contract of insurance, but also the several endorsements that are applicable to the matters set forth herein. The policy was issued in September of 2001. At all relevant times herein said policy, as set forth in **Exhibit "A"**, was entered into between California Casualty and Federal at the home office of California Casualty, which is in San Mateo, California.

Law Offices
Of
David C. Werner

2

COMPLAINT

EXHIBIT   1   PAGE  27

## II

## ALLEGATIONS OF FACT, COMMENTS TO ALL CAUSES OF ACTION

5.     On or about the month of November in the year 2000, Mr. & Mrs. James Harold were insured under a policy of homeowners insurance, policy number 204 1155871, issued by California Casualty.  Said policy is set forth in **Exhibit "B"** and is incorporated herein by this reference.  On or about said date, the Harolds reported a claim under the aforementioned policy.  The claim alleged, amongst other matters, that a water leak had occurred in one of the pipes servicing the Harolds' home.  The water leak had caused damage to the home and had resulted in the need for the filing of a claim by the Harolds under California Casualty's homeowner's policy, (**Exhibit "B"** to this action).

6.     California Casualty accepted and acknowledged the claim of the Harolds and undertook to perform certain "insurance services" (as that term is defined in **Exhibit "A"**) and adjustment services for the handling of the claim. Specifically, California Casualty assigned adjusters, as well as experts, and later attorneys, to investigate the cause and nature of the claim as well as to assist the Harolds in adjusting the claim and to provide insurance benefits under California Casualty's homeowner's policy to the Harolds.

7.     During the course of the adjustment of the loss, during the course of providing "Insurance Services" as that term is used in **Exhibit "A"**, both the Harolds and California Casualty Insurance Company discovered that extensive water damage had been done to the Harolds' property, and in addition, that mold had developed in the home.  California Casualty Insurance Company proceeded to retain necessary experts, as did the Harolds, in an attempt to remediate the water damage as well as the mold in the home.  Although extensive efforts were undertaken, the parties continued to have difficulties in remediating the loss during the years 2000, and 2001 into 2002.

///

Thereafter, in the year 2002, while the Federal policy, (**Exhibit "A"**), was in full force and effect, the Harolds retained counsel to represent them with regard to their claim for damages, breach of contract, bad faith breach of contract, and other related and associated torts which they claimed to have against California Casualty Insurance Company. The retention of said law firm, as well as the claim for damages as a result of the handling of the claim by California Casualty Insurance Company, arose from California Casualty's alleged mishandling of its "insurance services" to the Harolds. A claim was made against California Casualty Insurance Company for damages beyond the limits of coverage provided by the California Casualty Insurance Company policy, **Exhibit "B"**. Such claim was made within the reporting period and within the policy period of the Federal policy, and certainly prior to July 2002.

Attached hereto and incorporated herein by this reference is the trial brief of the Harolds' attorneys. Said trial brief is incorporated herein by this reference, as **Exhibit "C"**, for the allegations it makes and the assertions it makes with regard to the identification of the claim being made against California Casualty.

8.    A lawsuit was filed by the Harolds against California Casualty. A true and correct copy of which is attached hereto as **Exhibit "D"** and incorporated herein by this reference.

California Casualty retained the law firm of Hayes, Davis, Ellingson, McLay & Scott, LLP to represent its interest and to defend the complaint against California Casualty.

California Casualty incurred necessary attorneys' fees, court costs, investigative cost, expert fees, and other associated cost with regard to the defense of said action. Said attorneys' fees and costs are fully covered under the Federal policy, (**Exhibit "A"**).

9.    The case of *Harold v. California Casualty* went to trial in the Sacramento Superior Court on or about February 21, 2006. Although a jury verdict was rendered, the parties proceeded to mediation. At the time of the mediation, the matter settled. At the time of the mediation the verdict

1    was not yet reduced to a judgment, and in fact, no judgment was entered.  The parties settled the

2    entire action.  At the time of the settlement, the demands and claims of the Harolds were extensive

3    and went beyond the allegations found in the trial.  In addition to a claim that there had been damages

4    to the Harolds' home (which exceeded California Casualty's policy limits,) there was an allegation of

5    a breach of good faith and fair dealing; fraud based on concealment; failure to hire a proper contractor

6

7    with a specific risk of harm; nuisance; and attorneys fees under the case of *Brandt v. Superior Court*

8    in the amount of $343,875.43.  In addition, there were statutory costs which were demanded in the

9    amount of $75,000.00, and an additional $50,000.00 in cost associated with the trial of the case by the

10   Harolds.  The Harolds' full and complete demand at the time of the mediation was $3,023,658.80.  In

11   addition, the Harolds were seeking in the mediation, and as a part of their claim, to obtain punitive

12

13   damages against California Casualty with an exposure claimed to be 10 million dollars.

14        California Casualty informed Federal Insurance of these matters, and indeed a representative

15   from Federal Insurance attended the mediation and gave specific permission to resolve the case up to

16   an amount that exceeded the actual settlement amount.  The matter settled for 2.5 million dollars.

17        At the point in time that the matter settled, California Casualty paid settlement amount to settle

18

19   all claims of the Harolds.  Said payment was undifferentiated between any particular cause of action

20   or claim.  The settlement was for any and all claims in excess of the amount already paid to the

21   Harolds under the policy, including general and economic damages, as well as for any claim for bad

22   faith, attorney fees, and costs incurred by the Harolds in the handling of the their claim.

23        California Casualty's payment was, therefore, as the result of its provision of "insurance

24   services" as that term in defined and used in the Federal policy, which is attached hereto marked as

25   **Exhibit "A"**, and incorporated herein by this reference.

26

27        10.    As a part of the Federal coverage, California Casualty is entitled to receive

28   reimbursement for the full amount of all monies expended by California Casualty in the defense of the

1  action, including attorneys' fees, as well as the court costs and any other associated costs, such as

2  expert witness costs. California Casualty has expended in excess of 1.5 million dollars for these

3  items. The full and complete amount will be set forth at time of trial.

4      The full and complete damages that California Casualty therefore seeks by this action is the

5  amount paid in settlement and the 1.5 million dollars plus that was expended by way of costs, attorney

6

7  fees, and other miscellaneous items associated with the defense of the action.

8                           **III**
                    **FIRST CAUSE OF ACTION:**
9                     **BREACH OF CONTRACT**

10     11.    California Casualty incorporates by references fully set forth herein 1 through 10.

11     12.    California Casualty at all times relevant herein was fully insured by the Federal policy

12  for wrongful acts as that term is defined in the Federal policy, **Exhibit "A"**. The policy required that

13  a claim be made during the policy period, and that the claim be based upon a wrongful act that is

14

15  identified in the policy. Both such conditions were/are satisfied.

16     As set forth in the factual allegations herein, California Casualty did in fact receive a claim for

17  "wrongful acts" (as that term is defined in the Federal policy) from the Harolds regarding handling of

18  their claim by California Casualty Insurance Company under their California Casualty's homeowners

19

20  insurance policy number 204 1155871, attached hereto and marked (**Exhibit "B"**) above.

21     California Casualty reported the claim (as that term is defined in the Federal policy) to Federal

22  in a timely fashion. The claim did occur during the Federal policy period and California Casualty did

23  provide a timely notice to Federal.

24     13.    California Casualty fully and completely cooperated with Federal, providing them with

25  whatever information they desired. California Casualty provided not only notice of the claim but full

26  access to California Casualty's file. Communications ensued between California Casualty and

27

28  Federal's designated representative throughout the pendency of the claim.

Law Offices
Of
David C. Werner

EXHIBIT 1 PAGE 31

COMPLAINT

14.    California Casualty has performed all conditions precedent on its part that it is required to perform in order to perfect the claim under the policy.  California Casualty has in fact performed all such conditions precedent, and there is no excuse or basis in reason for Federal to withhold benefits due under its policy.

15.    Federal Insurance has breached its policy with California Casualty.  Specifically, California Casualty, in settling the claim of the Harolds, has fully complied with all of the terms and conditions of the Federal policy to properly present a claim.  In addition, California Casualty has submitted to Federal a full and complete itemized list of all expenses, attorneys' fees, and other associated cost for which it is making claim.  The amount submitted is in excess of 1.5 Million dollars.  The true and correct amount as well as the total amount will be set forth at time of trial in this action.

Despite the fact that California Casualty has fully complied with all of the provisions and terms of the policy, Federal has refused to honor its obligations under the contract and has breached the contract by refusing to pay any sums that are due to California Casualty under the terms and conditions of the policy.

16.    Wherefore, after considering the deductible, there is presently now due and owing a sum in excess of 2 Million dollars.  California Casualty is damaged in that amount in that it is being denied the benefits of the policy, and is being denied what is rightfully due under the policy due to the breach of contract by Federal.

17.    In addition to the amount due under the policy, California Casualty also submits that the amount due is a sum certain, and therefore requests interest at the legal rate 10% and/or as the court deems just and proper at the time of this action.  California Casualty alleges that interest began at the date of the settlement, which was July 2006.  There is now due and payable from Federal interest in excess of $440,000.00, which is increasing on a daily basis.

**IV**
## SECOND CAUSE OF ACTION:
## BAD FAITH BREACH OF CONTRACT

18.     California Casualty incorporates by references fully set forth herein 1 through 17.

19.     In every contract of insurance there is an implied duty of good faith and fair dealing. The duty of good faith and fair dealing requires that Federal not withhold unreasonably any sums that are due and owing to California Casualty.  In addition, Federal has a duty to California Casualty to give California Casualty's interest equal consideration as it gives to its own interest, and has a duty to make a proper investigation to determine any valid basis that will support California Casualty's claim. Federal also has a duty to investigate the claim of California Casualty fully and completely and is duty bound not to deny the claim for improper reasons or unreasonably.

20.     California Casualty submitted its claim to Federal in June of 2002.  Federal responded to California Casualty by citing to California Casualty provisions of the Federal policy that did not exist.  Federal submitted to California Casualty its analysis of California Casualty's claim based upon provisions that had been removed from the policy and were no longer a part of the policy.  Following this initial denial, California Casualty requested reconsideration, and Federal determined that its initial denial was improper and based upon improper policy language.

California Casualty kept Federal informed at all times and indeed Federal attended several settlement conferences and the mediations in which the Harolds' claim was eventually settled, and therefore was fully aware of the nature and extent of the claim.

Despite the fact that California Casualty provided full and complete information to Federal, Federal has chosen to deny California Casualty's claim on a frivolous basis unsupported in law, reason, logic, or the facts of the case.  Federal Insurance, for example, has decided to deny California Casualty's claim for benefits under the policy on the basis of the jury verdict that was rendered in the

Law Offices
Of
David C. Werner

8

EXHIBIT  1  PAGE 33

case of *Harold v. California Casualty,* even though no judgment resulted and the parties to that action settled. Federal also chooses to ignore the entire claim of the Harolds which included Brandt fees, costs, and punitive damages. Federal unreasonably, frivolously and without any basis in reason or logic, refuses to properly interpret its own policy and refuses to interpret the language of said policy in a proper and reasonable fashion as is required by the duty of good faith and fair dealing.

21.     As a result of its unreasonable behavior and its unreasonable refusal to acknowledge its own policy terms, Federal has in fact denied the existence of its own coverage and denied the existence of its own contract, acting in bad faith to deny California Casualty its rights under the policy. In addition, Federal has attempted to resolve the claim of California Casualty by offering the sum of $300,000.00 to resolve the claim, arguing that California Casualty is not entitled to the benefits due under the policy, and seeing the claim of California Casualty as a game of negotiations as opposed to the claim of an insured under the policy with rights and duties owing to the insured by the carrier.

22.     As a result of Federal's unreasonable and frivolous interpretation of its own policy, its denial of the existence of the coverages that it provided, its refusal to properly investigate the claim, its refusal to honor its duty to California Casualty to fully and completely investigate and honor the rights of California Casualty, and due to its failure to give equal consideration to the interest of California Casualty and to resolve this matter in a fashion that a reasonable carrier would act, California Casualty has been damaged by the breach of the implied covenant of good faith and fair dealing. The damages include the fact that California Casualty has been forced to retain counsel to represent it in seeking recovery of the benefits due. California Casualty has incurred attorney fees as a result of the bad faith of Federal, and is therefore seeking recovery of attorney fees that it is incurring and will incur, together with all costs associated with the prosecution of this action. It is the allegation of California Casualty that the attorney fees are necessary to obtain the benefits due under

EXHIBIT 1 PAGE 34

the policy, which are being denied in bad faith.

**WHEREFORE,** California Casualty prays as follows:

1. That the court declare the rights, duties, and obligations of the parties under the terms of the contract, and specifically the rights of California Casualty to receive benefits due.

2. For judgment against Federal for breach of contract in the amount to be shown at the time of trial, but not less than 2 Million dollars. That California Casualty be awarded the amounts that are due to it under the Federal policy as a result of the claim of the Harolds', including all moneys (subject to the Federal Policy's deductible) expended in settlement of the case, together with the attorneys fees and associated costs incurred by California Casualty in defending itself, which is a sum that is in excess of 1.5 Million dollars.

3. That California Casualty be awarded interest on the amount that is due to California Casualty under the terms of the Federal policy; (said interest being in excess of $440,000.00 at the time of the filing of this complaint.)

4. For attorneys fees based upon the bad faith denial by Federal and the need of California Casualty to retain counsel to pursue and seek recovery of what is due and owing to it under the terms of the Federal policy.

///
///
///
///

Law Offices
Of
David C. Werner

10

COMPLAINT

EXHIBIT 1 PAGE 35

5.     California Casualty finally prays for such other and further relief as the court deems just and proper in the premises.

DATED: April 29, 2008                    LAW OFFICES OF DAVID C. WERNER

By: _____
        DAVID C. WERNER
        BRYAN QUILO
        Attorneys for Plaintiff:
        CALIFORNIA CASUALTY INSURANCE
        COMPANY

Law Offices
Of
David C. Werner

11
COMPLAINT

EXHIBIT 1 PAGE 36

# EXHIBIT A

EXHIBIT __1__ PAGE 37



**ITEM 7.**   Extended Reporting Period:

    (A) Additional Premium:  75% of annual premium
    (B) Additional Period:     365 days

**ITEM 8.**   Pending or Prior Date:

    Insuring Clause 1.    **Insurance Services** Professional Liability;  September 1, 2001

    Insuring Clause 2.    **Financial Services** Professional Liability:  September 1, 2001

**ITEM 9.**   Endorsement(s) Effective at Inception:  1 - 3.

**IN WITNESS WHEREOF, THE COMPANY** issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

<table>
<tr><td>Henry A Aubich</td><td>Henry R Offene</td></tr>
<tr><td>Secretary</td><td>President</td></tr>
<tr><td></td><td>Robert Hamburger</td></tr>
<tr><td>September 26, 2001</td><td>Authorized Representative</td></tr>
<tr><td>Date</td><td></td></tr>
</table>

**CHUBB**  URGENT

To: Jef 1 Gunchick
Claims  213-833-52
From: Anne Matsan SFD/DF

Effective date of
this Endorsement: September 1, 2001

**FEDERAL INSURANCE COMPANY**

Endorsement No: 6

To be attached to and form part of
Policy Number:  70427262

Issued to:  CALIFORNIA CASUALTY MANAGEMENT COMPANY AND

CALIFORNIA CASUALTY INSURANCE COMPANY

---

### AMENDED DECLARATIONS - PARENT ORGANIZATION ENDORSEMENT

It is agreed that ITEM 1. of the Declarations, Parent Organization, is deleted in its entirety and replaced
with the following:

ITEM 1.    **Parent Organization**        (Name and Address):

California Casualty Management Company and
California Casualty Insurance Company
1900 Alameda de las Pulgas
San Mateo, CA  94402

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:                                    By  _Robert Hamberger_____
                                              Authorized Representative

RECEIVED
W20 SPECIALTY CLAIMS
2003 MAY 14 P 2: 14

ICPL Policy
Form 17-02-1636 (Ed. 10-98)

EXHIBIT 1 PAGE 39

*Effective date of*
this Endorsement: 9/1/01

**FEDERAL INSURANCE COMPANY**

Endorsement No:   5

To be attached to and form part of
Policy Number:      70427262

Issued to:   CALIFORNIA CASUALTY MANAGEMENT CO.

---

IT IS UNDERSTOOD AND AGREED THAT ENDORSEMENT #1 FORM 17-02-2539 (ED. 06-01)
ADDITIONAL INSURED ORGANIZATION ENDORSEMENT IS HEREBY DELETED AND NO LONGER
FORMS PART OF THE POLICY.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: April 11, 2003                    By _Robert Hamburger_____
                                              Authorized Representative

EXHIBIT 1 PAGE 40



06/20/02   11:00

   05/11/02 12:39 PM    Subject: ICPL 7042-62-72 - California Casualty

I'm embarassed to admit that the portion of this e-mail below the * * *'s
has been in my 'draft' folder since last September! I guess it kind of got
swept aside in all the excitement a few weeks later re cancelling/not
cancelling your policy and I never completed my full review of your policy
form.

As I'm now preparing the renewal application, I have just noticed a major
problem with the captioned, as issued: the insurance companies aren't
covered! California Casualty Management Co. is named as the "Parent
Organization" and then is also listed in Endorsement #1, "Additional Insured
Organization Endorsement." The Additional Insured Organization Endorsement
should, instead, list the following entries:

California Casualty Indemnity Exchange
California Casualty Insurance Company
California Casualty & Fire Insurance Company
California Casualty General Insurance Company
California Casualty Compensation Insurance Company

OK Anna Mat
eff 9/1/d

I trust that issuance of this correction along with the items below will not
be a problem, however, as always, please contact me if you wish to discuss.

Lyn Martin
(650) 572-4447

*   *   *   *

The wording about lawyering "for" policyholders is the language that needs
to be changed in Paragraph 3 of the Employed Lawyers endorsement - - the
exclusion -- not in the definition of Insured person. (However, I now
notice that the definition requires that the employed lawyer be full-time
and salaried. We may from time-to-time employ lawyers on a part-time basis,
so the definition also needs to be amended.)

Need to
alk to
awl
on this

A.) We believe that the Employed Lawyers' endorsement needs to include the
following:

1.  It is agreed that Section 26, Definitions, is amended by adding the
following:

Employed Lawyer means any person admitted to practice law who is, was or
becomes an employee of an Insured Organization (eliminate requirement that
they be salaried and full-time).

2.  The definition of Insured is amended to include any Employed Lawyer.

3.  Section 4, Exclusions, is amended by adding the following:

    based upon , arising from, or in consequence of any Employed Lawyer's
    service as a director, officer, trustee, member of any entity, or lawyer for
    anyone other than the Insured Organization or an insured under a policy of
    insurance issued by the Insured Organization, even if directed or requested
    by the Insured Organization to serve such other entity or client. (bolded
    language added)

OK

B.) In order to attempt to be as broad as the prior policy (which Chubb
committed to doing), Chubb's definition of Insurance Services needs to be
amended to read as follows:

Insurance Services means only those services rendered or required to be

M
of. 7/1/01

EXHIBIT 1 PAGE 41

08/20/02   10:59   ☎



**CHUBB**

Effective date of
this Endorsement: September 1, 2001

**FEDERAL INSURANCE COMPANY**

Endorsement No:   1

To be attached to and form part of
Policy Number:   70427262

Issued to:  CALIFORNIA CASUALTY MANAGEMENT CO.

## ADDITIONAL INSURED ORGANIZATION ENDORSEMENT

It is agreed that:

1.   The Insured Organization shall include the following:

California Casualty Management Co.

2.   With respect to the Insured Organizations listed in 1. above, the Company shall not be liable to
make any payment for Loss in connection with any Claim based upon, arising out of, relating to, in
consequence of, or in any way involving:

a.   any litigation, arbitration, claims, demands, causes of action, equitable, legal or quasi-legal
proceedings, decrees or judgments (collectively referred to as litigation) occurring prior to or
pending as of September 1, 2001, of which the Insured has received notice or otherwise had
knowledge as of such date; or

b.   any subsequent litigation arising from, or based on substantially the same matters alleged in
the litigation included in a. above; or

c.   any Wrongful Act which gave rise to the prior or pending litigation included in a. above.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: September 28, 2001                    By  _Robert Hamburger_
                                                 Authorized Representative

RECEIVED
W/O SPECIALTY CLAIMS
2002 JUN 20  P 2:45

Post-It® Fax Note   7671   | Date 6/20/02 | pages ▶ 2 |
To  Jeff Gunchick           | From  Anne Matson |
Co./Dept.  Claims           | Co.  CB / SFO / DFI |
Phone #                     | Phone # 415-954-0404 |
Fax # 213-833-5200          | Fax # |

ICPL Policy
Form 17-02-2539 (L... 0-01)

EXHIBIT  1  PAGE  42


**Chubb Group of Insurance Companies**

15 Mountain View Road, Warren, New Jersey 07059

**DECLARATIONS
INSURANCE COMPANY
PROFESSIONAL LIABILITY POLICY**

**ITEM 1.** Parent Organization (Name and Address):

CALIFORNIA CASUALTY MANAGEMENT CO.

1900 Alameda De Las Pulgas
San Mateo, CAL 94402

Policy Number: 70427262 (DFI)

**FEDERAL INSURANCE COMPANY**

Incorporated under the laws of Indiana,
a stock insurance company, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN 46204-1927

---

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE COMPANY TO DEFEND THOSE INSURED UNDER THE POLICY. PLEASE READ CAREFULLY.**

**ITEM 2.** Limits of Liability:

| | | |
|---|---|---|
| (A) | Each Loss | $ 5,000,000 |
| (B) | Aggregate Limit of Liability Each Policy Period | $ 5,000,000 |

**NOTE:** THE LIMITS OF LIABILITY AND ANY DEDUCTIBLE AMOUNTS ARE REDUCED OR EXHAUSTED BY DEFENSE COSTS.

**ITEM 3.** Coverage Applicable:

Unless "Covered" is inserted opposite a specified Insuring Clause, such Insuring Clause and any other reference thereto in this Policy shall be deemed to be deleted in their entirety.

| | | |
|---|---|---|
| Insuring Clause 1. | Insurance Services Professional Liability: | Covered |
| Insuring Clause 2. | Financial Services Professional Liability: | Covered |

**ITEM 4.** Coinsurance Percent: 0%

**ITEM 5.** Deductible Amount:

| | | |
|---|---|---|
| Insuring Clause 1. | Insurance Services Professional Liability | $ 2,000,000 |
| Insuring Clause 2. | Financial Services Professional Liability | $ 2,000,000 |

**ITEM 6.** Policy Period:  from: 12:01 a.m. on September 1, 2001
to: 12:01 a.m. on July 1, 2002
Local time at the address shown in ITEM 1.



 EXHIBIT  PAGE 43 

In consideration of payment of the premium and subject to the Declarations, limitations, conditions, provisions and other terms of this Policy, the Company agrees as follows:

## Insuring Clause 1

**Insurance Services Professional Liability**

1. To pay on behalf of the **Insureds** for **Loss** which the **Insureds** shall become legally obligated to pay as a result of any **Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Reporting Period**, arising out of any **Wrongful Act** committed by the **Insureds** or any person for whose acts the **Insureds** are legally liable during or prior to the **Policy Period** while performing **Insurance Services** including the alleged failure to perform **Insurance Services**.

## Insuring Clause 2

**Financial Services Professional Liability**

2. To pay on behalf of the **Insureds** for **Loss** which the **Insureds** shall become legally obligated to pay as a result of any **Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Reporting Period**, arising out of any **Wrongful Act** committed by the **Insureds** or any person for whose acts the **Insureds** are legally liable during or prior to the **Policy Period** while performing **Financial Services** including the alleged failure to perform **Financial Services**.

## Extended Reporting Period

3. If this Policy is terminated or nonrenewed for any reason other than for nonpayment of premium, the **Parent Organization**, on behalf of the **Insureds** shall have the right, upon payment of the additional premium set forth in ITEM 7.(A) of the Declarations for this Policy, to an extension of the coverage granted by this Policy for the period set forth in ITEM 7.(B) of the Declarations for this Policy (Extended Reporting Period) following the effective date of termination or nonrenewal with respect to any **Claim** or **Claims** made during the Extended Reporting Period, but only for any **Wrongful Act** occurring prior to the effective date of termination or nonrenewal. This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due, is received by the Company within thirty (30) days following the effective date of termination or nonrenewal. Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding **Policy Period**.

   If the Extended Reporting Period is purchased, the entire premium noted in ITEM 7.(A) of the Declarations shall be deemed fully earned at the inception of the Extended Reporting Period.

## Exclusions

**Exclusions Applicable to Insuring Clauses 1 and 2**

4. The Company shall not be liable to make any payment for **Loss** in connection with any **Claim** made against the **Insureds**:

   a. based upon, arising from, or in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any **Insureds** prior to the Pending or Prior Date set forth in ITEM 8. of the Declarations, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

## Exclusions

**Exclusions Applicable to
Insuring Clauses 1 and 2
(continued)**

b.  based upon, arising from, or in consequence of deliberate conflicts of interest, any dishonest, deliberately criminal or deliberately fraudulent act or omission, gaining any profit or advantage to which one is not legally entitled, or deliberate non-compliance with any statute or related regulation on the part of the Insureds or any person for whose actions the Insureds are legally liable; provided, however, that this Exclusion shall not apply unless it is established in fact that such Claim was brought about or contributed to by any deliberate conflicts of interest, dishonest or deliberately criminal or deliberately fraudulent act or omission, gaining any profit or advantage to which one is not legally entitled or deliberate non-compliance with any statute or related regulation on the part of the Insureds or any person for whose actions the Insureds are legally liable and provided this Exclusion shall not apply to a Claim for both fraud and bad faith in the handling and adjusting of claims;

c.  based upon, arising from, or in consequence of:

    i.  any Wrongful Act or any fact, circumstance or situation that has been the subject of notice under any policy of insurance in effect prior to the inception date of this Policy; or

    ii. any other Wrongful Act, whenever occurring, which together with a Wrongful Act that has been the subject of such notice would constitute Interrelated Wrongful Acts;

d.  based upon, arising from, or in consequence of:

    i.  the insolvency, conservatorship, receivership, bankruptcy or liquidation of any banking firm; investment company; investment banker, broker or dealer in securities or commodities; insurance or reinsurance company; insurance or reinsurance agent, broker or intermediary; joint underwriting association; or other such organizations of a similar nature, or the failure to pay or suspension of payment by such entities in connection with Financial Services; or

    ii. the Financial Impairment of any Insured;

e.  based upon, arising from, or in consequence of any pension, profit sharing, health and welfare or other employee benefit plan or trust, including but not limited to any violation of the Employee Retirement Income Security Act of 1974, amendments thereto or similar provisions of any federal, state or local statutory law or common law, sponsored or established by the Insured Organization for the Insured Individuals;

f.  for defamation, discrimination, libel, slander, wrongful termination of employment, disparagement, sexual harassment, violation of rights of privacy, wrongful eviction or other violation of the rights of private occupancy, wrongful entry, false arrest, false imprisonment, malicious prosecution, assault, battery or damage to or destruction of any tangible property including loss of its use;

g.  for bodily injury, mental or emotional distress, sickness, disease, or death of any person; provided, however, this Exclusion shall not apply to a Claim based solely on the Insured's failure to provide Insurance Services;

h.  based upon, arising from, or in consequence of:

    i.  the actual, alleged or threatened discharge, release, escape, dispersal or disposal of Pollutants into or on real or personal property, buildings, water, land or atmosphere;

EXHIBIT 1 PAGE 45

## Exclusions

*Exclusions Applicable to*
*Insuring Clauses 1 and 2*
*(continued)*

ii. any direction or request that the **Insureds** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so; including but not limited to any **Claim** for any financial **Loss** to the **Insureds**, its security holders, its creditors or others based upon, arising from, or in consequence of the matters described in i. or ii. of this Exclusion; or

iii. the **Insured's** failure to provide **Insurance Services** or **Financial Services** to a customer relating to any of the matters described in i. or ii. of this Exclusion;

i. by, on behalf of, or at the behest of any **Insureds** against any other **Insureds**, or by, on behalf of, or at the behest of any business enterprise which is operated, managed or owned, directly or indirectly, in whole or in part by any **Insured**, provided, however, this Exclusion shall not apply:

i. where the claimant is an **Insured Individual** and was allegedly provided with or entitled to be provided with **Insurance Services** or **Financial Services** and is bringing such **Claim** solely in his capacity as a customer of the **Insured Organization**, and where such **Claim** is brought without the solicitation, assistance or participation of any other **Insureds**; or

ii. to a **Claim** brought or maintained by an **Insured Individual** for contribution or indemnity, if the **Claim** directly results from another **Claim** covered under this **Policy**;

j. by, on behalf of, or at the behest of any person or concern (including but not limited to any shareholder, bondholder, policyholder or debentureholder), their estate, heirs, legal representatives or assigns, with a legal or equitable interest in any stock, bond, debenture, or other form of security of the **Insureds**, or any other ownership interest, when such **Claim** is based upon, arises out of, or pertains to any interest in said security, provided, however, that this Exclusion shall not apply where the claimant is an **Insured Individual** and was provided with or was entitled to be provided with **Insurance Services** or **Financial Services** and is bringing such **Claim** solely in his capacity as a customer of the **Insured Organization**, and where such **Claim** is brought without the solicitation, assistance or participation of any other **Insureds**;

k. based upon, arising from, or in consequence of the underwriting of insurance, including any decisions involving the classification, selection, or renewal of risks as well as the rates and premiums charged to insure or reinsure risks;

l. for any express representations, warranties or guarantees, estimates of construction costs, or costs exceeding estimates made in connection with **Insurance Services** or **Financial Services**;

m. based upon, arising from, or in consequence of any **Insured's** service as a director, officer, trustee, employee, participant or member of any entity, pool or association other than the **Insured Organization**, even if directed or requested to serve such other entity;

## Exclusions

*Exclusions Applicable to
Insuring Clauses 1 and 2
(continued)*

n.    based upon, arising from, or in consequence of the adequacy or inadequacy of any claim reserves of the Insured Organization or of any entity to which the Insureds provide Insurance Services or Financial Services;

o.    by, on behalf of, or at the behest of, any reinsurer of any contract, risk or program of the Insureds, provided, however, this Exclusion shall not apply to any Claim brought by a reinsurer while in the capacity of a customer or prospective customer of the Insured Organization, and where such Claim is brought without the solicitation, assistance or participation of any other Insureds;

p.    for any amounts which constitute benefits, coverage or amounts due or allegedly due, including any amount which constitutes interest thereon, from the Insureds as:

    i.    an insurer or reinsurer under any policy or contract or treaty of insurance, reinsurance, suretyship, annuity or endowment; or

    ii.    an administrator under any employee welfare benefit plan;

q.    based upon, arising from, or in consequence of the purchase, sale, participation, grant, commitment, restructure, termination, transfer, repossession or foreclosure of any loan, lease, mortgage or extension of credit, or any failure to do any of the foregoing, or the rendering of advice in connection with any loan, lease, mortgage or extension of credit;

r.    for any of the following activities:

    i.    the underwriting, securitizing, syndicating, promoting, or market making (as defined in Section 3(A)(38) of the Securities Exchange Act of 1934 as amended) of any debt or equity security or other evidence of indebted-ness, or any loan or other extension of credit, or any other similar invest-ment banking activity;

    ii.    the rendering of advice or recommendations regarding any actual, at- tempted or threatened merger, acquisition, divestiture, tender offer, proxy contest, leveraged buy-out, going private transaction, insolvency pro-ceeding, reorganization, capital restructuring, recapitalization, spin-offs, primary or secondary offerings of debt or equity securities or other evidence of indebtedness, dissolution or sale of all or substantially all of the assets or stock of a business entity or any effort to raise or furnish capital or financing for any enterprise or entity;

    iii.    the rendering of a fairness opinion regarding the valuation of any assets or business entity not held by the Insureds as trustee; or

    iv.    any acquisition or sale of securities by the Insureds for their own account,

    or any disclosure requirements in connection with any of the foregoing; or

s.    based upon, arising from, or in consequence of the liability of a party, other than the Insureds, assumed by the Insureds pursuant to contract, except liability for Loss that the Insureds would have had in the absence of such contract.

| | | |
|---|---|---|
| **Severability of Exclusions** | 5. | The Wrongful Act of any Insured Individual shall not be imputed to any other Insured Individual for the purposes of determining the applicability of the Exclusions in Section 4. |

| | | |
|---|---|---|
| **Aggregate Limit of Liability, Coinsurance Percents and Deductible Amounts** | 6. | All Loss arising out of the same Wrongful Act and all Interrelated Wrongful Acts of the Insureds shall be deemed one Loss, and such Loss shall be deemed to have originated in the earliest Policy Period in which a Claim is first made against the Insureds alleging any such Wrongful Act or Interrelated Wrongful Acts. |

The Company's maximum liability for each Loss, whether covered under Insuring Clause 1 or Insuring Clause 2 or both, shall be the Limit of Liability for each Loss set forth in ITEM 2.(A) of the Declarations. The Company's maximum aggregate liability for all Loss on account of all Claims first made during the same Policy Period, whether covered under Insuring Clause 1 or Insuring Clause 2 or both, shall be the Aggregate Limit of Liability for each Policy Period set forth in ITEM 2.(B) of the Declarations.

The Company's liability under Insuring Clause 1 or Insuring Clause 2 or both shall apply only to that part of each Loss which is excess of the applicable Deductible Amount set forth in ITEM 5. of the Declarations and such Deductible Amount shall be borne by the Insureds uninsured.

If a single Loss is covered in part under Insuring Clause 1 and in part under Insuring Clause 2, the maximum Deductible Amount applicable to the Loss shall be the larger of the two Deductible Amounts in ITEM 5.of the Declarations.

With respect to all Loss (excess of the Deductible Amount) originating in any one Policy Period, the Insureds shall bear uninsured that percent of all such Loss specified as the Coinsurance Percent in ITEM 4. of the Declarations, and the Company's liability hereunder shall apply only to the remaining percent of all such Loss.

In the event that more than one of the Insureds is included in the same Claim, the total amount of the available Aggregate Limit of Liability shall be apportioned in proportion to their respective Loss.

The Limit of Liability available during the Extended Reporting Period, if exercised, shall be the remaining portion, if any, of the Aggregate Limit of Liability provided by the immediately preceding Policy Period.

| | | |
|---|---|---|
| **Defense and Settlement** | 7. | Subject to this Section, it shall be the duty of the Insureds and not the duty of the Company to defend Claims made against the Insureds. |

The Insured shall have the sole obligation under this Policy to retain defense counsel, which shall be subject to the approval of the Company.

The Insured agrees not to settle any Claim, incur any Defense Costs or otherwise assume any contractual obligation or admit any liability with respect to any Claim without the Company's written consent, which shall not be unreasonably withheld. The Company shall not be liable for any settlement, Defense Costs, assumed obligation or admission of liability to which it has not consented.

| | | |
|---|---|---|
| **Defense and Settlement** *(continued)* | | The Company shall have the right and shall be given the opportunity to effectively associate with the Insureds in the investigation, defense and settlement, including but not limited to the negotiation of a settlement, of any Claim that appears reasonably likely to be covered in whole or in part by this Policy. |

The Insureds agree to provide the Company with all information, assistance and cooperation which the Company reasonably requests and agree that, in the event of a Claim, the Insureds will do nothing that may prejudice the Company's position or its potential or actual rights of recovery.

Defense Costs are part of and not in addition to the Limits of Liability set forth in ITEM 2. of the Declarations for this Policy, and the payment by the Company of Defense Costs reduces such Limits of Liability.

| | | |
|---|---|---|
| **Reporting and Notice** | 8. | The Insureds shall, as a condition precedent to exercising their rights under this Policy, give to the Company written notice as soon as practicable, but in no event later than ninety (90) days after the termination of the Policy Period, of any Claim made against the Insureds for a Wrongful Act. |

If any Insured becomes aware of circumstances which could give rise to a Claim and gives written notice of such circumstances to the Company during the Policy Period, then any Claims subsequently arising from such circumstances shall be considered to have been made during the Policy Period in which the circumstances were first reported to the Company.

The Insureds shall, as a condition precedent to exercising their rights under this Policy, give to the Company such information and cooperation as it may reasonably require, including but not limited to a description of the Claim or circumstances, the nature of the alleged Wrongful Act, the nature of the alleged or potential damage, the names of actual or potential claimants, and the manner in which the Insureds first became aware of the Claim or circumstances.

| | | |
|---|---|---|
| **Notice** | 9. | Notice to the Company under this Policy shall be given in writing addressed to: |

<u>Notice of Claim:</u>    <u>All Other Notices:</u>

Home Office Claims Department    Department of Financial Institutions
Chubb Group of Insurance Companies    Chubb Group of Insurance Companies
15 Mountain View Road    15 Mountain View Road
Warren, N.J. 07059    Warren, N.J. 07059

Such notice shall be effective on the date of receipt by the Company at such address.

| | | |
|---|---|---|
| **Estates and Legal Representatives** | 10. | Coverage shall extend to Claims for the Wrongful Acts of Insured Individuals made against the estates, heirs, legal representatives or assigns of Insured Individuals who are deceased or against the legal representatives or assigns of Insured Individuals who are incompetent, insolvent or bankrupt. |

EXHIBIT 1 PAGE 49

| | |
|---|---|
| **Spousal Liability** | 11. If a Claim against an Insured Person includes a claim against the lawful spouse of such Insured Person solely by reason of such spouse's status as a spouse or such spouse's ownership interest in property which the claimant seeks as recovery for an alleged Wrongful Act of such Insured Person, all loss which the spouse becomes legally obligated to pay on account of such Claim shall be treated as Loss which the Insured Person becomes legally obligated to pay on account of the Claim made against such Insured Person. All limitations, conditions, provisions and other terms of coverage applicable to the Insured Person's Loss shall also be applicable to the spousal loss. However, coverage shall not apply to the extent any claim alleges any Wrongful Act by the Insured Person's spouse. |
| **Other Insurance** | 12. If any Loss arising from any Claim made against any Insured is insured under any other valid policy(ies), prior or current, then this Policy shall cover such Loss, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such Loss is in excess of the amount of payment from such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided on this Policy. This Policy is primary of any reinsurance purchased by the Insured and the Company will not assert subrogation rights against the Insureds' reinsurers. |

### Changes in Exposure

| | |
|---|---|
| **Acquisition or Creation of Another Organization** | 13. If the Insured Organization, after the inception date of this Policy: |

   a.  acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a Subsidiary; or

   b.  acquires any organization by merger into or consolidation with the Insured Organization,

coverage shall apply to such organization under this Policy but only with respect to Wrongful Acts occurring after such acquisition or creation unless the Company agrees, after presentation of a complete application and all appropriate information, to provide coverage by endorsement for Wrongful Acts occurring prior to such acquisition or creation.

If the fair value of the assets of the acquired or created organization exceeds 10% of the total assets of the Insured Organization as reflected in the Parent Organization's most recent audited consolidated financial statements, or the value of the fiduciary assets under management by the acquired or created organization exceeds 10% of the total fiduciary assets under management of the Insured Organization as reflected in the Parent Organization's most recent audited consolidated financial statements, the Parent Organization shall give written notice of such acquisition or creation to the Company as soon as practicable together with such information as the Company may require and shall pay any reasonable additional premium required by the Company.

## Changes in Exposure
(continued)

*Acquisition of Parent Organization By Another Organization*

14. If:

   a. the **Parent Organization** merges into or consolidates with another organization; or

   b. another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organizations(s) or person(s) of more than 50% of the outstanding securities representing the present right to vote for the election of directors of the **Parent Organization**; or

   c. the **Insured Organization** completely ceases to actively engage in its primary business ("cessation"); or

   d. **Financial Impairment** of the **Insured Organization** occurs,

   coverage under this Policy shall continue until termination of this Policy, but only with respect to **Claims** for **Wrongful Acts** occurring by the **Insureds** prior to such merger, consolidation, acquisition, cessation or **Financial Impairment**. The **Parent Organization** shall give written notice of such merger, consolidation, acquisition, cessation or **Financial Impairment** to the Company as soon as practicable and shall provide such information as the Company may require. The full premium, including any installments due for the **Policy Period** shall be deemed fully earned immediately as of the effective date of any event outlined in a. through d. above.

*Cessation of Subsidiaries*

15. In the event an organization ceases to be a **Subsidiary** before or after the inception date of the Policy, coverage with respect to such **Subsidiary** and its **Insured Individuals** shall continue until termination of this Policy but only with respect to **Claims** for **Wrongful Acts** occurring prior to the date such organization ceased to be a **Subsidiary**.

## Representations and Application Form

16. It is agreed by the **Insureds** that the particulars and statements contained in the **Application Form** and the attachments and materials submitted with the **Application Form** (which shall be retained on file by the Company and shall be deemed attached hereto, as if physically attached hereto) are true and are the basis of the Policy and are to be considered as incorporated in and constituting a part of this Policy. It is further agreed by the **Insureds** that such particulars and statements are material to the decision to issue this Policy and that the Policy is issued in reliance upon the truth of such particulars and statements.

## Investigation and Settlement

17. The Company may make any investigation it deems necessary and may make any settlement of a **Claim** it deems expedient with the written consent of the **Parent Organization**, on behalf of the **Insureds**, which consent shall not be unreasonably withheld.

## Subrogation

18. In the event of any payment under this Policy, the Company shall be subrogated, to the extent of such payment, to all the **Insureds'** rights of recovery, and the **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit in the name of the **Insureds**.

**Action Against the Company**

19. No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or organization shall have any right under this Policy to join the Company as a party to any action against the Insureds to determine the Insureds' liability nor shall the Company be impleaded by the Insureds or their legal representatives.

**Bankruptcy or Insolvency**

20. Bankruptcy or insolvency of an Insured or the estate of an Insured Individual shall not relieve the Company of its obligations nor deprive the Company of its rights under this Policy.

**Authorization Clause**

21. By acceptance of this Policy, the Parent Organization agrees to act on behalf of all Insureds with respect to the giving and receiving of notice of Claim or termination, the payment of premiums and the receiving of any return premiums that may become due under this Policy, the negotiation, agreement to and acceptance of endorsements, and the giving or receiving of any notice provided for in this Policy, and the Insureds agree that the Parent Organization shall act on their behalf.

**Alteration or Assignment**

22. No change in, modification of, or assignment of interest under this Policy shall be effective except when made by a written endorsement to this Policy which is signed by a duly authorized representative of the Company.

**Termination of Policy**

23. This Policy shall terminate at the earliest of the following times:

a. ten (10) days after receipt by the Parent Organization of written notice from the Company of termination resulting from non-payment of premium;

b. upon receipt by the Company of written notice of termination from the Parent Organization;

c. upon expiration of the Policy Period as set forth in ITEM 6. of the Declarations of this Policy;

d. sixty (60) days after receipt by the Parent Organization of the Company's notice of nonrenewal. Such notice shall be in conformance with applicable state laws and regulations; or

e. at such other time as may be agreed upon by the Company and the Parent Organization.

The Company shall refund the pro rata unearned premium if the Policy is terminated.

**Valuation and Foreign Currency**

24. All premiums, limits, deductibles, Loss and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of Loss under this Policy is stated in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in The Wall Street Journal on the date the final judgment is entered, the amount of the settlement is agreed upon or the other element of Loss is due, respectively.

 EXHIBIT 1 PAGE 52

| | | |
|---|---|---|
| **Territory** | 25. | Coverage shall extend to Claims anywhere in the world. |

| | | |
|---|---|---|
| **Definitions** | 26. | When used in the Policy: |

**Claim** means:

a. a written demand for monetary damages;

b. a civil proceeding commenced by the service of a complaint or similar pleading;

c. a criminal proceeding commenced by the return of an indictment; or

d. a formal administrative or regulatory proceeding brought by or on behalf of policyholders or customers commenced by the filing of a notice of charges, formal investigative order or similar document,

brought by or on behalf of a customer of the Insured against any Insured for a Wrongful Act or Interrelated Wrongful Act, including any appeal therefrom.

A Claim shall be deemed to have been made against the Insureds on the date any Insured first received written demand for monetary damages, the date that the judicial or administrative proceeding is served upon any Insured in any state, provincial or federal court or administrative agency, or the date any Insured first received written notice regarding the filing of a notice of charges, formal investigative order or similar document from a state, provincial or federal regulatory agency.

**Defense Costs** means that part of Loss consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers of employees of the Insured Organization) incurred in defending or investigating Claims and the premium for appeal, attachment or similar bonds.

**Financial Impairment** means the status of the Insured Organization resulting from:

a. the appointment by any state, provincial or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the Insured Organization; or

b. the Insured Organization becoming a debtor in possession.

**Financial Services** means only those services performed or required to be performed by or on behalf of the Insureds for or on behalf of a customer of the Insureds, pursuant to an agreement between such customer and the Insureds for a fee, commission or other monetary consideration or other remuneration which inures to the benefit of the Insureds, provided, however, that Financial Services shall not include:

a. managed care; medical or health care services; real estate appraisal, development or management services; architectural or construction management services; the practice of law or the rendering of legal services;

b. services performed by any entity of which the Insureds shall have acquired ownership or control as security for a loan or other extension of credit; or

c. services included in the definition of Insurance Services.

EXHIBIT 1 PAGE 53

**Definitions**
(continued)

Insurance Services means only those services rendered or required to be rendered by or on behalf of the Insureds solely in the conduct of the Insureds' claims handling and adjusting; insurance risk management; safety engineering, inspection and loss control operations; personal injury rehabilitation operations; salvage operations; recovery subrogation services; premium financing operations; actuarial consulting services; or insurance pool management; provided, however, that Insurance Services shall not include:

a. managed care; medical or health care services; real estate appraisal, development or management services; architectural or construction management services; the practice of law or the rendering of legal services;

b. services performed by any entity of which the Insureds shall have acquired ownership or control as security for a loan or other extension of credit; or

c. services included in the definition of Financial Services.

Insured(s) means the Insured Organization and the Insured Individuals, or any one of them.

Insured Individuals means any past, present or future director, officer, trustee, (in the United States of America, or any equivalent executive position under applicable law in any country other than the United States of America) or employee of the Insured Organization in his/her capacity as such.

Insured Organization means the Parent Organization and any Subsidiary.

Interrelated Wrongful Acts means all causally connected Wrongful Acts.

Loss means the total amount which the Insured becomes legally obligated to pay as a result of each Claim or for all Claims in each Policy Period and the Extended Reporting period, if exercised, made against the Insureds for Wrongful Acts for which coverage applies, including, but not limited to, compensatory damages, punitive or exemplary damages multiplied damages, judgments, settlements, costs and Defense Costs.

For the purpose of resolving any dispute between the Company and the Insured regarding whether the punitive or exemplary damages or the multiplied portion of any multiplied damage award specified above are insurable under this Policy, the law of the jurisdiction most favorable to the insurability of those damages shall control, provided that such jurisdiction is where:

a. those damages were awarded or imposed;

b. any Wrongful Act occurred for which such damages were awarded or imposed;

c. any Insured Organization is incorporated or has its principal place of business; or

d. the Company is incorporated or has its principal place of business.

Loss does not include:

a. regular or overtime wages, salaries or fees of the directors, officers or employees of the Insured Organization;

**Definitions**
(continued)

b.    loss of the actual money, securities, property or other items of value in the custody or control of the Insureds; or diminution in value or damages resulting from the diminution in value of money, securities, property or any other items of value unless caused by a **Wrongful Act of the Insureds** in the execution or implementation of investment advice or investment decisions;

c.    fines or penalties imposed by law or any other matters or sanctions which may be deemed uninsurable under the law pursuant to which this Policy shall be interpreted;

d.    any amounts which constitute premiums; fees and charges; return or refund of premiums; commissions or taxes; or loss arising out of any commingling of funds; or

e.    principal, interest, or other moneys either paid, accrued or due as the result of any loan, lease or extension of credit.

**Parent Organization** means the entity that is named in ITEM 1. of the Declarations, as legally constituted at the inception date of this Policy.

**Policy Period** means the period of time specified in ITEM 6. of the Declarations, subject to prior termination in accordance with Section 23. Regardless of whether this period is less than, equal to or greater than one year, the Limits of Liability specified in ITEM 2. of the Declarations shall be the Company's maximum limit of liability under this Policy for the entire period.

**Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or a state, county, municipality or locality counterpart thereof. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

**Subsidiary**, means any organization that, at the inception date of this Policy, is named in the Application Form and of which more than 50% of the outstanding securities or voting rights representing the present right to vote for election of directors is owned or controlled by the **Parent Organization** either directly or through one or more of its **Subsidiaries** or any entity of which more than 50% of the outstanding securities or voting rights representing the right to vote for election of directors was owned or controlled by the **Parent Organization** either directly or through one or more of its **Subsidiaries** prior to the inception date of this Policy.

**Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted, or allegedly committed or attempted, by the **Insureds** or any person for whose acts the **Insureds** are legally liable, which arises solely from the **Insureds** or any person for whose acts the **Insureds** are legally liable, performing **Insurance Services** or **Financial Services** including al- leged failure to perform **Insurance Services** or **Financial Services.**

For the purposes of these definitions, the singular includes the plural and the plural includes the singular, unless otherwise indicated.

EXHIBIT 1 PAGE 55

Effective date of
this Endorsement: September 1, 2001

**FEDERAL INSURANCE COMPANY**

Endorsement No:    2

To be attached to and form part of
Policy Number:    70427262

Issued to:  CALIFORNIA CASUALTY MANAGEMENT CO.

---

### EMPLOYED LAWYERS PROFESSIONAL LIABILITY EXTENSION ENDORSEMENT

| NOTICE: | THIS POLICY FORM AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. |
|---|---|

1.   It is agreed that Section 26., Definitions, is amended by adding the following:

   **Employed Lawyer** means any person admitted to practice law who is, was or becomes a full-time, salaried employee of an **Insured Organization**.

2.   The definition of **Insured** is amended to include any **Employed Lawyer**.

3.   Section 4., Exclusions, is amended by adding the following:

   T.    based upon, arising from, or in consequence of any **Employed Lawyer's** service as a director, officer, trustee, member of any entity, or lawyer for anyone other than the **Insured Organization**, even if directed or requested to serve such other entity or client.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: September 26, 2001

By _Robert Hamburger_

Authorized Representative

ICPL Policy
Form 17-02-2585 (Ed. 1-01)
2-14179 (NYFTZ)

EXHIBIT  1  PAGE 56

Effective date of
this Endorsement: September 1, 2001

**FEDERAL INSURANCE COMPANY**

Endorsement No:   3

To be attached to and form part of
Policy Number:    70427262

Issued to:  CALIFORNIA CASUALTY MANAGEMENT CO.

---

### PREMIUM ENDORSEMENT

It is agreed that:

1.    The premium for this Policy for the period September 1, 2001 to July 1, 2002 is:

Premium:  ($ 249,000)

2.    This premium is subject to change during the period in 1. above if amendments are added to this Policy at the request of the Parent Organization.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: September 26, 2001                     By _____
                                                         Authorized Representative

ICPL Policy
Form 17-02-2557 (Ed. 1-01)

EXHIBIT  1  PAGE 57

# Notice To Our Producers
## California Insurance Guarantee Association Assessments

The California Insurance Guarantee Association assesses insurers for funds to cover the claim liabilities of insolvent insurers. The Guarantee Law requires insurers to recoup the assessments paid to the association through a surcharge on premiums for insurance policies to which the law applies.

Policies effective January 1, 1995, and all corresponding transactions may reflect this surcharge. On return premiums and cancellations, the surcharge will be returned only if previously collected. The charge will be shown as a separate item on both policies and bills. It will be identified as "CIGA Surcharge". If applicable, this surcharge must be paid with the first premium installment. PLEASE NOTE: By law the surcharge is not considered premium, therefore, no commission is payable on this item.

If you have any questions or require additional information about the surcharge, please contact your local underwriter.

EXHIBIT ___ PAGE 58