1   STROOCK & STROOCK & LAVAN LLP
    MICHAEL F. PERLIS (State Bar No. 095992)
2   EMAIL: MPERLIS@STROOCK.COM
    ALLAN S. COHEN (State Bar No. 115532)
3   EMAIL: ACOHEN@STROOCK.COM
    RICHARD R. JOHNSON (State Bar No. 198117)
4   EMAIL: RJOHNSON@STROOCK.COM
    2029 Century Park East, Suite 1600
5   Los Angeles, CA  90067-3086
    Telephone:  310-556-5800
6   Facsimile:   310-556-5959
    lacalendar@stroock.com
7

8   Attorneys for Defendant
      FEDERAL INSURANCE COMPANY
9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                       SAN FRANCISCO DIVISION

13  CALIFORNIA CASUALTY INSURANCE      )   Case No. CV 08-2701 VRW
    COMPANY,                           )
14                                     )   [Assigned to the Honorable Vaughn R. Walker]
                                       )
15              Plaintiff,             )
                                       )   **NOTICE OF MOTION AND MOTION OF**
16         vs.                         )   **FEDERAL INSURANCE COMPANY FOR**
                                       )   **SUMMARY JUDGMENT OR, IN THE**
17  FEDERAL INSURANCE COMPANY,         )   **ALTERNATIVE, SUMMARY**
    DOES 1-10, ROES 1-10, AND MOES 1-10, )  **ADJUDICATION; MEMORANDUM OF**
18  inclusive,                         )   **POINTS AND AUTHORITIES IN**
                                       )   **SUPPORT THEREOF**
19              Defendants.            )
                                       )   **[F.R.C.P. 56(b)]**
20                                     )
                                       )   Date:      December 11, 2008
21                                     )   Time:      2:30 p.m.
                                       )   Ctrm:      6
22                                     )
                                       )   [Declaration of Jeffrey Gunchick and Request
23                                     )   for Judicial Notice filed; and [Proposed] Order
                                       )   lodged concurrently]
24                                     )
25                                     )

                              **PART 3 OF 4**
26

27

28

# EXHIBIT B

EXHIBIT \_\_\_1\_\_\_ PAGE 59

I, *Danny Kleha, underwriting analyst*

     **(Name)**           **(Title)**

certify under penalty of perjury that this is
a true and correct duplicate of the original
_DEC PAGE_ as it existed on the date of
certification shown below. This is issued as
a duplicate and does not constitute additional
or contributing insurance.

Policy #204 1155871 Date of Cert. 6/28/02
Signature _____ Date 6/28/02
San Mateo, California

EXHIBIT 1 PAGE 60

California Casualty

*NEW204 115587104    FILE COPY                                           0006
FRCO 3
*****                                        HOMEOWNER POLICY
         RENEWAL DECLARATION * * EFFECTIVE 09/05/00

| Policy Number | Policy Period 12:01 A.M. standard Time at the insured location as stated herein. Effective Expiration | Coverage is Provided By | Agency |
|---|---|---|---|
| 204 1155871 | 09/05/00  09/05/01 | CA CASUALTY INSURANCE CO | 150290000 |

Addressee                                    Named Insured

HAROLD, N JAMES & D LEE                      HAROLD, N JAMES & D LEE
1160 GLEN AULIN CT                           1160 GLEN AULIN CT
CARMICHAEL, CA  95608                        CARMICHAEL, CA        95608

THE PREMISES COVERED BY THIS POLICY IS LOCATED
   1160 GLEN AULIN CT CARMICHAEL, CA 95608

RATING INFORMATION- AUTOMATIC VALUE UP AT RENEWAL, FRAME, PRIMARY RESIDENCE,
   PROTECTION CLASS 3, TERRITORY 55, $250 SECTION I LOSS DEDUCTIBLE, 1 FAMILY,
   PREMIUM GROUP 372, OUTSIDE CITY LIMITS.

COVERAGE AT THE ABOVE DESCRIBED LOCATION IS PROVIDED ONLY WHERE A LIMIT OF
LIABILITY IS SHOWN OR A PREMIUM IS STATED.
SECTION I COVERAGE                        LIMIT OF LIABILITY        PREMIUMS
  A. DWELLING                                 $325,000             $1,544.00
  B. OTHER STRUCTURES                         $32,500
  C. PERSONAL PROPERTY                        $243,750             INCLUDED
  D. LOSS OF USE                              $65,000
SECTION II COVERAGE
  E. PERSONAL LIABILITY                    $500,000 EACH OCCURRENCE
  F. MEDICAL PAY TO OTHERS                 $2,000 EACH PERSON          $40.00
                    TOTAL BASIC PREMIUM - - - - - - - - - -      $1,584.00
ADDITIONAL PREMIUMS
  H070 LIABILITY EXTENDED TO PROPERTY DESCRIBED HEREIN              $10.00
  H0314 DWELLING REPLACEMENT COST                                   $1.00
  H061 PERSONAL ARTICLES FLOATER                                    $50.00
                    TOTAL ADDITIONAL PREMIUMS - - - - - - - -       $61.00
                    SUB-TOTAL ANNUAL PREMIUM - - - - - - - -     $1,645.00
POLICY PERIOD 12:01 AM.    STANDARD TIME AT THE RESIDENCE PREMISES.


     MORTGAGEE #0397319800
        SUMITOMO BANK OF CALIFORNIA
        320 CALIFORNIA STREET 7TH FL.
        SAN FRANCISO, CA        94104



                         CONTINUED ON NEXT PAGE


                                * FOR POLICY SERVICE/CLAIMS CONTACT *


                              FOR SERVICE: CALL 800-800-9410
                              FOR CLAIMS: CALL 800-800-9410


UP-114< (8/94) Billing Information will be mailed under Separate Cover.

California Casualty

*NEW204 115587104    FILE COPY                                                    0006
FRCO
                                                    HOMEOWNER POLICY
        RENEWAL DECLARATION * * EFFECTIVE 09/05/00

| Policy Number | Policy Period 12:01 A.M. standard Time at the Insured location as stated herein. Effective          Expiration | Coverage is Provided By | Agency |
|---|---|---|---|
| 204 1155871 | 09/05/00    09/05/01 | CA CASUALTY INSURANCE CO | 150290000 |

Addressee                              Named Insured

                                    HAROLD. N JAMES & D LEE
                                    1160 GLEN AULIN CT
                                    CARMICHAEL, CA                95608

FORMS AND ENDORSEMENTS - UP-426 05/95, H03DOCA 05/95, H0996 06/84, HO-966 05/95,
   HO-290 05/95, HO-216 07/82, HO-70 07/90, HO-90 07/84, HO-314 05/95,
   HO-61 04/88, HO-322 07/90

   THIS POLICY DOES NOT INCLUDE BUILDING CODE UPGRADE COVERAGE.

   THIS POLICY DOES NOT PROVIDE EARTHQUAKE COVERAGE
                                                                        07/12/00
                                                                        DATE

   DESCRIPTION OF ADDITIONAL COVERAGES

   NON-SMOKER DISCOUNT

   LIABILITY EXTENDED TO PREMISES AS LISTED BELOW
   NUMBER OF FAMILIES IS 1.  MEDICAL PAYMENTS DO NOT APPLY. TERRITORY IS 03.
   1836 BEVERLY WAY, SACRAMENTO, CA 95818

   WORKERS' COMPENSATION
   COVERAGE FOR OCCASIONAL SERVANT.

   PREMISES ALARM OR FIRE PROTECTION SYSTEM DISCOUNT
   COVERAGE APPLIES.  TYPE 2 PROTECTIVE DEVICES.
   SMOKE ALARM & BURGLAR ALARM

                              CONTINUED ON NEXT PAGE

UP-1144 (8/94) Billing information will be mailed under Separate Cover

EXHIBIT 1 PAGE 62

California Casualty

*NEW204 115587104 FILE COPY 0006
FRCO

HOMEOWNER POLICY
RENEWAL DECLARATION * * EFFECTIVE 09/05/00

| Policy Number | Policy Period 12:01 A.M. standard Time at the Insured Location as stated herein Effective | Expiration | Coverage is Provided By | Agency |
| --- | --- | --- | --- | --- |
| 204 1155871 | 09/05/00 | 09/05/01 | CA CASUALTY INSURANCE CO | 150290000 |

| Addressee | Named Insured |
| --- | --- |
| | HAROLD, N. JAMES & D. LEE<br>1160 GLEN AULIN CT<br>CARMICHAEL, CA 95608 |

DESCRIPTION OF ADDITIONAL COVERAGES

PERSONAL PROPERTY REPLACEMENT COST

DWELLING REPLACEMENT COST

FURS-SCHEDULED COVERAGE-DESCRIPTION ON FILE
AMOUNT OF LIABILITY IS $ 12500, TERRITORY IS 03.
SEE SCHEDULE

(Name) (Title)
certify under penalty of perjury that this is a true and correct duplicate of the original as it existed on the date of certification shown below. This is issued as a duplicate and does not constitute additional or contributing insurance.
Policy # ______ Date of Cert. ______
Signature ______ Date ______
San Mateo, California

---STATEMENT OF ACCOUNT--- 2041155871 0403
HAROLD, N. JAMES & D. LEE

TOTAL AMOUNT.................. $1,645.00

THANK YOU FOR LETTING US SERVE YOU

UP-1144 (8/94) Billing Information will be Mailed Under Separate Cover

EXHIBIT 1 PAGE 63

I, _Danny Kiehn, underwriting analyst_
(Name)                    (Title)
certify under penalty of perjury that this is
a true and correct duplicate of the original
_Homeowners Policy_ as it existed on the date of
certification shown below.    This is issued as
a duplicate and does not constitute additional
or contributing insurance.
Policy # 204 1155871 Date of Cert. 6/28/02
Signature _____ Date 6/28/02
San Mateo, California

EXHIBIT 1 PAGE 64



YOUR PLAIN LANGUAGE

HOMEOWNERS
POLICY

FROM CALIFORNIA CASUALTY

UP-426 (5/95)

EXHIBIT 1 PAGE 65

HOMEOWNERS POLICY

California Casualty Insurance Co.
California Casualty Indemnity Exchange
California Casualty & Fire Insurance Company

## HOME OFFICES: SAN MATEO, CALIFORNIA

### YOUR HOMEOWNERS POLICY
### QUICK REFERENCE

**DECLARATIONS PAGE**

Your Name
Location of Your Residence
Coverages Applicable to Your Policy
Amounts of Insurance in Your Policy
Your Deductible

Beginning
On Page

AGREEMENT ....................................1

DEFINITIONS ....................................1

SECTION I
YOUR
PROPERTY

LOSS DEDUCTIBLE ........................3

COVERAGES ....................................3
  Coverage A - Dwelling ...................3
  Coverage B - Other Structures ......4
  Coverage C - Personal Property ...4
  Coverage D - Loss of Use .............6
ADDITIONAL COVERAGES ............7
  Debris Removal .............................7
  Reasonable Repairs .....................8
  Trees, Shrubs and Plants ..............8
  Fire Department Service Charge ...8
  Property Removed ........................9
  Credit Card, Fund Transfer Card ...9
  Collapse ......................................10
  Lost Luggage ...............................11
  Loss Assessment .........................11
  Glass or Safety Glazing Material .11

PERILS INSURED AGAINST ......... 12
  Coverage A - Dwelling .................12
  Coverage B - Other Structures ....12
  Coverage C - Personal Property .13

UP-426 (5/95)

EXHIBIT 1 PAGE 66

EXCLUSIONS ...................16

CONDITIONS .............................19
   Insurable Interest ......................19
   Duties After Loss .....................19
   Loss Settlement ........................20
   Loss to a Pair or Set..................22
   Glass Replacement ...................22
   Appraisal..................................22
   Other Insurance .........................23
   Suit Against Us ..........................23
   Our Option ...............................23
   Loss Payment ..........................23
   Abandonment of Property ..........23
   Mortgage Clause.......................23
   No Benefit to Bailee ...................24
   Nuclear Hazard Clause...............24
   Volcanic Eruption Period .............25

**SECTION II
YOUR
LIABILITY**

COVERAGES...............................25
   Coverage E - Personal Liability...25
   Coverage F - Medical Payments 25

EXCLUSIONS ............................26

ADDITIONAL COVERAGES ..........31
   Claim Expenses ......................31
   First Aid Expenses ...................31
   Damage to Property of Others.....32
   Loss Assessment........................32

CONDITIONS .............................33
   Limit of Liability ...........................33
   Severability of Insurance .............33
   Duties After Loss ........................33
   Duties of an Injured Person .........34
   Payment of Claim .......................34
   Suit Against Us ..........................34
   Bankruptcy of an Insured.............35
   Other Insurance ...........................35

**SECTION I
and
SECTION II**

CONDITIONS .............................35
   Policy Period .............................35
   Concealment or Fraud .................35
   Liberalization Clause....................35
   Waiver or Change of Policy .........35
   Cancellation ...............................36
   Non-Renewal .............................37
   Assignment. ...............................37
   Subrogation ...............................37

   Death .........................................37
   Conformity to Statute ..................37

PARTICIPATING AND RECIPROCAL
PROVISIONS ...............................38

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Copyright, Insurance Services Office, Inc., 1989, 1990, 1994

EXHIBIT 1 PAGE 67

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **"Bodily injury"** means bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom.

2. **"Business"** means any full-time or part-time trade, profession, occupation or activity, engaged in for monetary or other compensation. This definition includes the providing of home day care services to a person other than an insured. Mutual exchange of home day care services or the providing of home day care services by an **insured** to a relative of an **insured** is not considered a **business**.

3. **"Insured"** means you and the following residents of your household:

   a. Your relatives;

   b. Any other person under the age of 21 who is in the care of any person named above.

   Under Section II, **"insured"** also means:

   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. A person or organization using or having custody of these animals or watercraft in the course of any **business** or without permission of the owner is not an **insured**;

   d. With respect to any vehicle to which this policy applies:

   (1) An  person while engaged in your employment or the employment of any person included in 3.a or 3.b.; or

   (2) Any other person using the vehicle on an **insured location** with your permission.

4. **"Insured location"** means:

   a. The **residence premises**;

   b. The part of any other premises, other structures and grounds used by you as a residence and:

   (1) Which is shown in the Declarations; or

   (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with the premises included in 4.a. or 4.b. above;

   d. Any part of a premises not owned by an **insured** and where an **insured** is temporarily residing;

   e. Vacant land, other than farm land, owned by or rented to an **insured**;

   f. Land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

   g. Individual or family cemetery plots or burial vaults of an **insured**;

   h. Any part of a premises occasionally rented to an insured for other than **business** purposes.

5. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. **Bodily injury**; or

   b. **Property damage.**

6. **"Property damage"** means physical injury to or destruction of tangible property, including loss of use of this property.

7. **"Residence employee"** means an employee of an

1        UP-426 (5/95)                    2        UP-426 (5/95)

EXHIBIT 1 PAGE 68

insured who performs duties in connection with the maintenance or use of the residence premises, including household or domestic services, or who performs duties elsewhere of a similar nature not in connection with the business of an insured.

8.   "Residence premises" means:

a.   The one or two family dwelling, other structures, and grounds; or

b.   That part of any other building:

where you reside and which is shown as the "residence premises" in the Declarations.

---

### SECTION I - LOSS DEDUCTIBLE

---

In case of loss under Section I of this policy, we cover only that part of the loss over the deductible stated in the Declarations. The deductible does not apply to Coverage D - Loss of Use.

---

### SECTION I - COVERAGES

---

### COVERAGE A - Dwelling

We cover:

1.   The dwelling on the residence premises shown in the Declarations used principally as a private residence, including structures attached to the dwelling;

2.   Materials and supplies located on or adjacent to the residence premises for use in the construction, alteration or repair of the dwelling or other structures on the residence premises; and

3.   Wall-to-wall carpeting fastened to the dwelling.

This coverage does not apply to land, including land on which the dwelling is located.

---

### COVERAGE B - Other Structures

We cover other structures on the residence premises, separated from the dwelling by clear space. This coverage includes:

1.   Structures connected to the dwelling by only a fence, utility line, or similar connection;

2.   Wall-to-wall carpeting fastened to the structure; and

3.   Fences, driveways, and walks on the residence premises.

We do not cover other structures:

1.   Used in whole or in part for business purposes; or

2.   Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

This coverage does not apply to land, including land on which other structures are located.

---

### COVERAGE C - Personal Property

We cover personal property owned or used by an insured while it is anywhere in the world. At your request, we will cover personal property owned by others while the property is on the part of the residence premises occupied by an insured. In addition, we will cover at your request, personal property owned by a guest or a residence employee, while the property is in any residence occupied by an insured.

Our limit of liability for personal property usually situated at an insured's residence, other than the residence premises, is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after you begin to move the property there.

Special Limits of Liability. These limits do not increase the Coverage C limit of liability. The special limit for each following numbered category is the total limit for each loss for all property in that numbered category.

1.   $200 on money, bank notes, bullion, gold other than



EXHIBIT ___1___ PAGE __69__

goldware, silver other than silverware, platinum, coins and medals.

2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps.

3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard motors.

4. $1000 on trailers not used with watercraft.

5. $1000 on grave markers.

6. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

7. $2500 for loss by theft of silverware and goldware.

   Silverware and goldware include:

   a. Platedware, flatware, hollowware, tea sets, trays, trophies and the like;

   b. Other utilitarian items made of or including silver or gold.

8. $5000 for loss by theft of firearms.

9. $200 on property used at any time or in any manner for any **business** purpose except property subject to the Special Limit of Liability in 10. below.

10. $5,000 on computers and electronic data processing equipment, except that property used at any time or in any manner for the purpose of sales, repair, service, delivery or storage of computers or electronic data processing equipment is subject to the Special Limit of Liability in 9. above.

11. $10,000 on loss by theft of rugs, carpets, or other woven or knit floor coverings or wall hangings, subject to a limit of $2,500 on the theft of any one article.

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or any other insurance;

2. Animals, birds or fish;

3. Motor vehicles or all other motorized land con-

veyances this includes:

a. Equipment and accessories;

b. Any device or instrument for the transmitting, recording, receiving or reproduction of sound or pictures which is operated by power from the electrical system of motor vehicles or other motorized land conveyances;

c. Accessories or antennas; or tapes, wires, records, discs or other media for use with any device or instrument described in paragraph b. above.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a. Used to service an **insured's** residence; or

b. Designed for assisting the handicapped.

4. Aircraft and parts;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an **insured;**

6. Property contained in an apartment regularly rented or held for rental to others by an **insured;**

7. Property rented or held for rental to others while away from the **residence premises;**

8. (a)    Books of account, drawings or other paper records; or

   (b)    Electronic data processing tapes, wires, records, discs or other software media;

   containing information or data used at any time or in any manner for any **business** purpose. But, we do cover the cost of blank or unexposed records or media.

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

---

**COVERAGE D - Loss of Use**

The limit of liability for Coverage D is the total limit for all the following coverages.

5                    UP-426 (5/95)

6                    UP-426 (5/95)

EXHIBIT  1  PAGE  70

1. If a loss covered under this section makes that part of the **residence premises** where you reside uninhabitable, we cover:

   **Additional Living Expense**, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living;

   Payment shall be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the **residence premises** rented to others or held for rental by you uninhabitable, we cover:

   **Fair Rental Value**, meaning the fair rental value of that part of the **residence premises** rented to others or held for rental by you less any expenses that do not continue while the premises is uninhabitable.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the **residence premises** as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense or Fair Rental Value loss as provided under 1. and 2. above for a period not exceeding two weeks during which use is prohibited.

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

## ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

   a. Debris of covered property if a Peril Insured Against causes the loss; or

   b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense for the removal of fallen trees from the **residence premises** if:

a. Coverage is not afforded under Additional Coverage 3. Trees, Shrubs and Other Plants for the peril causing the loss; or

b. The tree is not covered by this policy;

provided the tree damages covered property and a Peril Insured Against under Coverage C causes the tree to fall. Our limit of liability for this coverage will not be more than $500 in the aggregate for any one loss.

2. **Reasonable Repairs.** We will pay the reasonable cost incurred by you for necessary repairs made solely to protect covered property from further damage provided coverage is first afforded for the peril that has caused the loss which is then apparent. We will not pay for repairs of damage caused by an excluded or non-covered peril. We will not pay for repairs made as a preventative measure prior to an actual loss by a covered peril. This coverage does not increase the limit of liability applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns on the **residence premises**, for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism or malicious mischief or Theft. The limit of liability for this coverage shall not exceed 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants and lawns nor more than $500 for any one tree, shrub or plant. We do not cover property grown for **business** purposes.

This coverage is additional insurance.

4. **Fire Department Service Charge** (Does not apply in Arizona). We will pay up to $250 for your liability assumed by contract or agreement for fire department

EXHIBIT 1 PAGE 7

charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response This coverage is additional insurance. No deductible applies to this coverage.

5.   **Property Removed.** Covered property while being removed from a premises endangered by a Peril Insured Against and for not more than 30 days while removed is covered for direct loss from any cause. This coverage does not change the limit of liability applying to the property being removed.

6.   **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

     We will pay up to $1000 for:

     a.   The legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards issued to or registered in an **insured's** name;

     b.   Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an **insured's** name;

     c.   Loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

     d.   Loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

     We do not cover use by a resident of your household, a person who has been entrusted with the credit card or fund transfer card or any person if an **insured** has not complied with all terms and conditions under which the credit card or fund transfer card is issued.

     We do not cover loss arising out of **business** pursuits or dishonesty of an **insured**.

     All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

     No deductible applies to this coverage.

Defense.

     a.   We may make any investigation and settle any claim or suit that we decide is appropriate.

          Our obligation to defend any claim or suit ends when the amount we pay for the loss equals our limit of liability.

     b.   If a suit is brought against an **insured** for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

     c.   We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7.   **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

     a.   Perils Insured Against in Coverage C - Personal Property. These perils apply to covered building and personal property for loss insured by this Additional Coverage, 7. Collapse;

     b.   Hidden decay;

     c.   Hidden insect or vermin damage;

     d.   Weight of contents, equipment, animals or people;

     e.   Weight of rain which collects on a roof; or

     f.   Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

     Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b, c, d, e and f unless the loss is a direct result of the collapse of a building.

     Collapse does not include settling, cracking, shrinking, bulging or expansion.

     This coverage does not increase the limit of liability

9            UP-426 (5/95)

10            UP-426 (5/95)

EXHIBIT 1 PAGE 12

applying to the damaged covered property.

8. **Lost Luggage.** We cover lost luggage and personal property while in the care, custody or control of a commercial passenger carrier. We will pay up to $500 for any one incident subject to the policy deductible. A claim must be submitted to the commercial passenger carrier within 30 days of loss, and this coverage shall be excess over any insurance provided by the carrier. This extension of coverage does not apply to loss of money, checks or money orders.

9. **Loss Assessment.** We will pay up to $1000 for your share of any loss assessment charged during the policy period against all unit owners by a corporation or association of property owners. This only applies when the assessment is made as a result of each direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under Coverage C - Personal Property, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises.**

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

10. **Glass or Safety Glazing Material.**

We cover:

a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

This coverage does not include loss on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

Loss for damage to glass will be settled on the basis of replacement with safety glazing material when required by ordinance or law.

This coverage does not increase the limit of liability

---

---

## SECTION I - PERILS INSURED AGAINST

---

**COVERAGE A - DWELLING and**

**COVERAGE B - OTHER STRUCTURES**

We insure for direct physical loss to the property described in Coverages A and B except damage caused by:

1. Collapse, other than as provided in Additional Coverage 7;

2. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

   a. Maintain heat in the building; or

   b. Shut off the water supply and drain the system and appliances of water;

3. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

   a. Fence, pavement, patio or swimming pool;

   b. Foundation, retaining wall or bulkhead;

   c. Pier, wharf or dock;

4. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied;

5. Vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

6. Continuous or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from with-

---

EXHIBIT 1 PAGE 73

in a household appliance;

7. Any of the following:

   a. Wear and tear, marring, deterioration;

   b. Inherent vice, latent defect, mechanical break-down;

   c. Rust, mold, wet or dry rot;

   d. Smog, smoke from agricultural smudging or industrial operations;

   e. Settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

   f. Birds, vermin, rodents, insects or domestic animals;

   g. Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

     Pollutant means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

     If any of these cause water damage not otherwise excluded from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

8. Losses excluded under Section I - Exclusions.

Under items 1. through 7., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

## COVERAGE C - PERSONAL PROPERTY

We insure for direct physical loss to property described in Coverage C caused by a peril listed below unless the loss

is excluded in Section I - Exclusions.

1. **Fire or lightning.**

2. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief.**

   This peril does not include loss to property on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

9. **Theft,** including attempted theft and loss of property from a known location when it is likely that the property has been stolen.

   This peril does not include loss caused by theft:

   a. Committed by:

     (1) An **insured;**

     (2) A tenant of the **residence premises;** or

     (3) An employee of a tenant or a resident of a

13     UP-426 (5/95)         14     UP-426 (5/95)



tenant's household.

b. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

c. While the **residence premises** is rented to other than an **insured**, of;

    (1)   money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

    (2)   securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

    (3)   jewelry, watches, furs, precious and semi-precious stones.

This peril does not include loss caused by theft that occurs away from the **residence premises** of:

a. Property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

b. Watercraft, including its furnishings, equipment and outboard motors; or

c. Trailers and campers.

10. **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

a. To the appliance from which the water or steam escaped;

b. Caused by or resulting from freezing; or

c. On the **residence premises** caused by accidental discharge or overflow which occurs off the **residence premises.**

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is unoccupied, unless you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.** This peril does not include loss to a tube, transistor or similar electronic component.

16. **Volcanic Eruption**, other than loss caused by earthquake, land shock waves or tremors.

---

## SECTION I - EXCLUSIONS

---

1.   We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

a. Ordinance or Law, meaning any ordinance or law:

    (1)   Requiring or regulating the construction, demolition, remodeling, renovation or repair of property including removal of any

15      UP-426 (5/95)

16      UP-426 (5/95)

EXHIBIT __1__ PAGE __75__

resulting debris. This exclusion a.(1) does not apply to the amount of coverage that may be provided for under Additional Coverage 10, Glass or Safety Glazing Material;

(2) The requirements of which result in a loss in value to property; or

(3) Requiring any **insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutant means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

b. **Earth Movement,** meaning any loss caused by, resulting from, contributed to or aggravated by earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss:

(1) By fire;

(2) By explosion other than the explosion of a volcano; or

(3) To glass or safety glazing material which is part of a building, storm door or storm window by breakage;

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

c. **Water Damage,** meaning any loss caused by, resulting from, contributed to or aggravated by:

(1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2) Water which backs up through sewers or drains; or

(3) Water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

d. **Power Interruption,** meaning the interruption of power or other utility service if the interruption takes place away from the **residence premises.** If a Peril Insured Against ensues on the **residence premises,** we will pay only for loss caused by the ensuing peril.

e. **Neglect,** meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss.

f. **War,** including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

g. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of Section I - Conditions.

h. **Intentional Loss,** meaning any loss arising out of any act committed:

(1) By or at the direction of an **insured**; and

(2) With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

a. **Weather conditions,** including rainfall. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

17      UP-426 (5/95)

18      UP-426 (5/95)

EXHIBIT 1    PAGE 16

b. **Acts or decisions**, in⬤⬤ ⬤g the failure to act or decide, of any person, group, ⬤⬤anization or governmental body;

c. **Faulty, inadequate or defective:**

   (1)   Planning, zoning, development, surveying, siting;

   (2)   Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   (3)   Materials used in repair, construction, renovation or remodeling; or

   (4)   Maintenance;

of part or all of any property whether on or off the **residence premises.**

## SECTION I—CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

  a.  To the **insured** for an amount greater than the **insured's** interest at the time of loss: or,

  b.  For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

  a.  Give immediate notice to us or our agent, and in case of theft also to the police. In case of loss under the Credit Card or Fund Transfer Card coverage, also notify the credit card or fund transfer card company;

  b.  Protect the property from further damage, make reasonable and necessary repairs required to protect the property, and keep an accurate record of repair expenditures;

  c.  Prepare an inventory of damaged personal property showing in detail, the quantity, description, actual cash value and amount of loss. Attach to the inventory all bills, receipts and related documents substantiate the figures in the inventory;

d. As often as we reasonably require:

   (1)   Exhibit the damaged property;

   (2)   Provide us with records and documents we request and permit us to make copies; and

   (3)   Submit to examination under oath and subscribe the same;

e. Submit to us within 60 days (90 days in Oregon) after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   (1)   The time and cause of loss;

   (2)   Interest of the **insured** and all others in the property involved and all encumbrances on the property;

   (3)   Other insurance which may cover the loss;

   (4)   Changes in title or occupancy of the property during the term of the policy;

   (5)   Specifications of any damaged building and detailed estimates for repair of the damage;

   (6)   An inventory of damaged personal property described in 2.c.;

   (7)   Receipts for additional living expenses incurred and records supporting the fair rental value loss; and

   (8)   Evidence or affidavit supporting a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

  a.  (1)   Personal property;

     (2)   Awnings, carpeting, domestic appliances, outdoor antennas, and outdoor equipment, whether or not attached to buildings; and

EXHIBIT 1 PAGE 11

(3)    Structures that are not buildings;

at actual cash value at the time of loss but not exceeding the amount necessary to repair or replace.

b.  Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1)    If at the time of loss the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately prior to the loss, we will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts:

(a)    The limit of liability under this policy applying to the building;

(b)    The replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or

(c)    The amount actually and necessarily spent to repair or replace the damaged building.

(2)    If at the time of loss the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately prior to the loss, we will pay the larger of the following amounts, but not exceeding the limit of liability under this policy applying to the building:

(a)    The actual cash value of that part of the building damaged; or

(b)    That proportion of the cost to repair or replace, without deduction for depreciation, of that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3)    In determining the amount of insurance

required to equal 80% of the full replacement cost of the building immediately prior to the loss, you shall disregard the value of excavations, foundations, piers and other supports which are below the undersurface of the lowest basement floor or, where there is no basement, which are below the surface of the ground inside the foundation walls, and underground flues, pipes, wiring and drains.

(4)    When the cost to repair or replace the damage is more than $1000 or more than 5% of the amount of insurance in this policy on the building, whichever is less, we will pay no more than the actual cash value of the damage until actual repair or replacement is completed.

(5)    You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.

4.  **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

a.  Repair or replace any part to restore the pair or set to its value before the loss; or

b.  Pay the difference between actual cash value of the property before and after the loss.

5.  **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6.  **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the

EXHIBIT  1   PAGE  78

amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

7.  **Other Insurance.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

8.  **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the date of loss or damage.

9.  **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the property damaged with equivalent property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days (30 days in Arizona, California, Kansas, Kentucky and Utah) after we receive your proof of loss and:

    a.  Reach agreement with you; or

    b.  There is an entry of a final judgement; or

    c.  There is a filing of an appraisal award with us.

11  **Abandonment of Property.** We need not accept any property abandoned by an **insured.**

12. **Mortgage Clause.**

    The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named the order of payment shall be the same as the order of precedence of the mortgages.

If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

a.  Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

b.  Pays any premium due under this policy on demand if you have neglected to pay the premium; and

c.  Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If the policy is cancelled or not renewed by us, the mortgagee shall be notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

a.  We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b.  At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**

    a.  "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

    b.  Loss caused by the **nuclear hazard** shall not be considered loss caused by fire, explosion, or

EXHIBIT 1 PAGE 79

smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section 1.

c. This policy does not apply under Section I to loss caused directly or indirectly by **nuclear hazard,** except that direct loss by fire resulting from the **nuclear hazard** is covered.

15. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

---

## SECTION II - LIABILITY COVERAGES

---

### COVERAGE E—Personal Liability

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. Provide a defense at our expense by counsel of our choice, even if the allegations are groundless, false or fraudulent. We may make any investigation and settle any claim or suit that we decide is appropriate.

   Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the **occurrence** equals our limit of liability.

---

### COVERAGE F—Medical Payments To Others

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury.** Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household other than **residence employees.** As to others, this coverage applies only:

1. To a person on the **insured location** with the permission of an **insured;** or

2. To a person off the **insured location,** if the **bodily injury:**

   a. Arises out of a condition in the **insured location** or the ways immediately adjoining;

   b. Is caused by the activities of an **insured;**

   c. Is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured;** or

   d. Is caused by an animal owned by or in the care of an **insured.**

---

## SECTION II - EXCLUSIONS

---

1. **Coverage E—Personal Liability and Coverage F—Medical Payments to Others** do not apply to **bodily injury** or **property damage:**

   a. Which is expected or intended by an **insured;**

   b. Arising out of the **business** pursuits of an **insured** including the rental or holding for rental of any part of any premises by an **insured.** This exclusion does not apply to:

      (1) Activities which are usual to non-**business** pursuits;

      (2) The rental or holding for rental of an **insured location:**

         (a) On an occasional basis if used only as a residence;

         (b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

         (c) In part, as an office, school, studio, or private garage;

   c. Arising out of the rendering or failing to render professional services;

   d. Arising out of any premises owned or rented to an

---

EXHIBIT 1 PAGE 80

insured which is not an □□□ured location;

e. Arising out of the:

   (1)   Ownership, maintenance, use, loading or unloading of motor vehicles or other motorized land conveyances, including any trailers, owned or operated by or rented or loaned to an **insured**;

   (2)   Entrustment by an **insured** of a motor vehicle or any other motorized land conveyance to any person.

   (3)   Vicarious parental liability imposed by statute for the actions of a child or minor using any conveyance excluded in paragraph (**1**) or (**2**) above.

This exclusion does not apply to:

   (1)   A trailer not towed by or carried on a motorized land conveyance;

   (2)   A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

      (a)   Not owned by an **insured**; or

      (b)   Owned by an **insured**, but only on an **insured location**;

   (3)   A motorized golf cart while used to play golf on a golf course;

   (4)   A motorized land conveyance designed for assisting the handicapped or for the maintenance of an **insured location** which is:

      (a)   Not designed for travel on public roads; and

      (b)   Not subject to motor vehicle registration;

f. Arising out of:

   (1)   The ownership, maintenance, use, loading or unloading of a watercraft described below;

   (2)   The entrustment by an **insured** of a watercraft described below to any person;

   (3)   Vicarious parental liability imposed by statute for the actions of a child or minor using any watercraft described below.

Watercraft:

      (i)   With inboard or inboard-outdrive motor power owned by an **Insured**;

      (ii)   With inboard or inboard-outdrive motor power of more than 50 horsepower rented to an **insured**;

      (iii)   That is a sailing vessel, with or without auxiliary power, 26 feet or more in length owned by or rented to an **insured**; or

      (iv)   Powered by one or more outboard motors with more than 25 total horsepower if the outboard motor is owned by an **insured**.

This exclusion does not apply while the watercraft is stored;

g. Arising out of:

   (1)   The ownership, maintenance, use, loading or unloading of an aircraft;

   (2)   The entrustment by an **insured** of an aircraft to any person;

   (3)   Vicarious parental liability imposed by statute for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

h. Caused directly or indirectly by war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

i. Arising out of the transmission of a communicable

EXHIBIT 1 PAGE 81

disease by an **insured**;

j.  Arising out of sexual molestation, physical or mental abuse;

k.  Arising out of or in any way connected with discrimination, harassment, abuse or wrongful termination on account of race, color, religion, sex, sexual orientation, age, marital state, national origin or in any way connected with a violation of any state or federal civil rights law.

Exclusions d, e, f, and g do not apply to **bodily injury** to any **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

2.  **Coverage E - Personal Liability**, does not apply to:

a.  Liability:

    (1)  For your share of any loss assessment charged against all members of an association of property owners;

    (2)  Under any other contract or agreement except those written contracts directly relating to the maintenance of the **insured location** not excluded in (1) above or elsewhere on this policy;

b.  **Property damage** to property owned by the **insured**;

c.  **Property damage** to property rented to, occupied or used by or in the care of the **insured**. This exclusion does not apply to **property damage** caused by fire, smoke or explosion;

d.  **Bodily injury** to any person eligible to receive any benefits:

    (1)  Required to be provided; or

    (2)  Voluntarily provided;

by the **insured** under any:

    (1)  Workers' or workmen's compensation law;

    (2)  Non-occupational disability law; or

    (3)  Occupational disease law;

e.  **Bodily injury** or **property damage** for which an **insured** under this policy:

    (1)  Is also an **insured** under a nuclear energy liability policy; or

    (2)  Would be an **insured** but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by:

    (1)  American Nuclear Insurers;

    (2)  Mutual Atomic Energy Liability Underwriters;

    (3)  Nuclear Insurance Association of Canada;

or any of their successors;

f.  **Bodily injury** to you and an **insured** within the meaning of part a. or b. of Definition 3 **"Insured"**; i. or

g.  Punitive or exemplary damages, regardless of any other provision of this policy.

3.  **Coverage F—Medical Payments to Others**, does not apply to **bodily injury**:

a.  To a residence employee if the **bodily injury**:

    (1)  Occurs off the **insured location**; and

    (2)  Does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b.  To any person eligible to receive any benefits:

    (1)  Required to be provided; or

    (2)  Voluntarily provided;

under any:

    (1)  Workers' or workmen's compensation law;

    (2)  Non-occupational disability law; or

    (3)  Occupational disease law;



c. From any:

    (1)   Nuclear reaction;

    (2)   Nuclear radiation; or

    (3)   Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

    (4)   Any consequence of any of these; or

d. To any person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

---

## SECTION II - ADDITIONAL COVERAGES

---

We cover the following in addition to the limits of liability:

1.   **Claim Expenses.** We pay:

    a. Expenses incurred by us and costs taxed against an **insured** in any suit we defend;

    b. Premiums on bonds required in a suit defended by us, but not for bond amounts greater than the limit of liability for Coverage E. We are not obligated to apply for or furnish any bond;

    c. Reasonable expenses incurred by an **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day for assisting us in the investigation or defense of any claim or suit;

    d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies;

    e. Prejudgment interest awarded against the **insured** on that part of the judgment we pay. If we make an offer to pay the applicable limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

2.   **First Aid Expenses.** We will pay expenses for first aid to others incurred by an **insured** for **bodily injury**

covered by this policy. We will not pay for first aid to you or an **insured.**

3.   **Damage to Property of Others.** We will pay on a replacement cost basis up to $500 per **occurrence** for **property damage** to property of others caused by an **insured.**

We will not pay for **property damage:**

    a. To the extent of any amount recoverable under Section I of this policy;

    b. Caused intentionally by an **insured** who is 13 years of age or older;

    c. To property owned by or rented to an **insured,** a tenant of an **insured** or a resident in your household; or

    d. Arising out of:

      (1)   **Business** pursuits;

      (2)   Any act or omission in connection with a premises owned, rented or controlled by an **insured**, other than the **insured location;** or

      (3)   The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

4.   **Loss Assessment.** We will pay up to $1000 for your share of any loss assessment charged during the policy period against all unit owners by a corporation or association of property owners, when the assessment is made as a result of:

    a. Each **occurrence** to which Section II of this policy would apply;

    b. Liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

      (1)   The director, officer or trustee is elected by the members of a corporation or association of property owners; and

      (2)   The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a

EXHIBIT 1 PAGE 83

corporation or as___ ___tion of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the resdence premises.

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Section II - Coverage E - Personal Liability Exclusion 2.a.(1) does not apply to this coverage.

## SECTION II - CONDITIONS

1. **Limit of Liability.** Regardless of the number of **insureds**, claims made or persons injured, our total liability under Coverage E stated in this policy for all damages resulting from any one **occurrence** shall not exceed the limit of liability for Coverage E stated in the Declarations.

   Our total liability under Coverage F for all medical expense payable for **bodily injury** to one person as the result of one accident shall not exceed the limit of liability for Coverage F stated in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one **occurrence**.

3. **Duties After Loss.** In case of an accident or occurrence, the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

   a. Give written notice to us or our agent as soon as practicable, which sets forth:

      (1)  The identity of the policy and **insured**;

      (2)  Reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

      (3)  Names and addresses of any claimants and witnesses;

b. Promptly forward to us every notice, demand, summon?, ?other process relating to the accident or **occurrence**;

c. At our request, assist in:

   (1)  Making settlement;

   (2)  The enforcement of any right of contribution or indemnity against any person or organization who may be liable to an **insured**;

   (3)  The conduct of suits and attend hearings and trials;

   (4)  Securing and giving evidence and obtaining the attendance of witnesses;

d. Under the coverage - Damage to Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and exhibit the damaged property, if within the **insured's** control;

e. The **insured** shall not, except at the **insured's** own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the **bodily injury**.

4. **Duties of an Injured Person—Coverage F—Medical Payments to Others.**

   The injured person or someone acting on behalf of the injured person shall:

   a. Give us written proof of claim, under oath if required, as soon as practicable;

   b. Execute authorization to allow us to obtain copies of medical reports and records; and

   c. The injured person shall submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim—Coverage F—Medical Payments to Others.** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

EXHIBIT 1 PAGE 84

No one shall have any right ... us as a party to any action against an **insured**. Fu... ...r, no action with respect to Coverage E shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** shall not relieve us of any of our obligations under this policy.

8. **Other Insurance—Coverage E - Personal Liability.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

---

### SECTION I AND II—CONDITIONS

1. **Policy Period.** The effective time of this policy is 12:01 A.M. standard time at the **residence premises** on the effective date shown in the Declarations. With our consent this policy may be renewed for successive policy periods if the renewal premium for rules and forms then in effect is paid and accepted before the end of the current policy period.

   This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II, which occurs during the policy period.

2. **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an **insured** has:

   a. Intentionally concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements;

   relating to this insurance.

3. **Liberalization Clause.** If we adopt any revision which would broaden the coverage under this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or

examin... shall not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect.

   b. We may cancel this policy only for the reasons stated below by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you or mailed to you at your mailing address shown in the Declarations.

   Proof of mailing shall be sufficient proof of notice.

   (1)  When you have not paid the premium, whether payable to us or to our agent or under any finance or credit plan, we may cancel at any time by notifying you at least 10 days (30 days in Idaho) before the date cancellation takes effect.

   (2)  When this policy has been in effect for less than 60 days (70 days in Nevada) and is not a renewal with us, we may cancel for any reason by notifying you at least 10 days (30 days in Idaho, Kansas, Missouri and Oregon) before the date cancellation takes effect.

   (3)  When this policy has been in effect for 60 days (70 days in Nevada) or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued. This can be done by notifying you at least 30 days before the date cancellation takes effect.

   (4)  When this policy is written for a period longer than one year, we may cancel for any reason at anniversary by notifying you at least 30 days (45 days in California) before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

EXHIBIT 1  PAGE 85

d. If the return premium not refunded with the notice of cancellation or en this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Non-Renewal.** We may elect not to renew this policy. We may do so by delivery to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days (45 days in California) before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an **insured** shall sign and deliver all related papers and cooperate with us in any reasonable manner.

   Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

   a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

   b. **Insured** also includes:

      (1) Any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises**; and

      (2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to Statute.** If the provisions of this policy are in conflict with the statutes of the state in which the **residence premises** is located, the provisions are amended to conform to such statutes.

37        UP-426 (5/95)

---

## PARTICIPATING AND RECIPROCAL PROVISIONS

If this policy is written in the California Casualty Indemnity Exchange the following provisions apply:

This policy is made and accepted in consideration of your premium payment to us. It is also in consideration of the power of attorney you signed as part of your application and the information you gave us on your application. Some of your statements actually become part of the policy which we call "The Declarations".

When you signed the power of attorney authority on your application, you authorized California Casualty Management Company to execute interinsurance policies between you and other subscribers through the California Casualty Indemnity Exchange.

This is a participating policy, and you will participate in the distribution of savings as fixed and determined by the Advisory Committee as provided by the Underwriters Agreement, which is made part of this policy, in its entirety. Such savings shall be forfeited on policies cancelled for nonpayment of premium.

*Thomas R. Brown*
Chairman of the Board

*Peter Feldberg*
President

*John H. Viosh*
Secretary—Treasurer

38        UP-426 (5/95)

EXHIBIT 1   PAGE 86



YOUR PLAIN LANGUAGE

THE ENDORSEMENTS

FROM 08/08/78 TO 08/08/79

Please see the Declarations Page to determine coverage.

The following endorsements are only applicable to this policy if they are listed by endorsement number and edition date on the most current Declarations page issued for this policy.

UP-450 (5/93)



California Casualty Insurance Co.
California Casualty Indemnity Exchange
California Casualty & Fire Insurance Company


**HOME OFFICE: SAN MATEO, CALIFORNIA**

EXHIBIT __1__ PAGE 88

## TABLE OF CONTENT

| | | |
|---|---|---|
| UP-12 | Premium Modification ................ | 1 |
| HO-32 | Unit-Owners Special Coverage ........ | 1 |
| HO-35 | Loss Assessment Coverage .......... | 3 |
| HO-40 | Other Structures Rented to Others ...... | 4 |
| HO-41 | Additional Interest ................... | 4 |
| HO-42 | Permittted Incidental Business Occupancy ...................... | 5 |
| HO-48 | Other Structures .................. | 7 |
| HO-61 | Personal Articles Floater ............ | 7 |
| HO-61C | Electronic and Computer Equipment ... | 11 |
| HO-65 | Coverage C - Increased Special Limit of Liability ................. | 14 |
| HO-70 | Additional Residence Premises ....... | 14 |
| HO-72 | Incidental Farming Personal Liability ........................ | 15 |
| HO-74 | Residence Premises, Three or Four Family ...................... | 15 |
| HO-80 | Theft Coverage .................. | 15 |
| HO-84 | Mine Subsidence ................. | 16 |
| HO-87 | Mine Sub., Other Structures .......... | 18 |
| HO-137 | Contract of Sale Clause ........... | 19 |
| HO-216 | Premises Alarm or Fire Protection System ..................... | 20 |
| HO-290 | Personal Property Replacement Cost ... | 20 |
| HO-312 | Increased Limits on Business Property ...................... | 21 |
| HO-313 | Incidental Motorized Land Conveyances ................... | 22 |
| HO-314 | Replacement or Repair Cost Protection, Coverage A ............... | 22 |
| HO-322 | Home Day Care Business ............ | 24 |
| HO-323 | Home Day Care Coverage .......... | 25 |
| HO-372 | Mortgagee Clause ............... | 27 |
| HO-377 | Inflation Protection ............... | 28 |
| 438BFU | Lender's Loss Payable ............. | 28 |
| HO-966 | Educators and School Employees Excess Liability ..................... | 31 |
| MH-200 | Mobile Home Policy - Homeowners Policy ...................... | 33 |
| MH-200DP | Mobile Home Policy - Dwelling Property Policy ................. | 34 |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Copyrighted, Insurance Services Office, Inc., 1984, 1985, 1987, 1990, 1994

---

### PREMIUM
### MODIFICATION ENDORSEMENT
### UP-12 (Ed. 6/84)

For a premium credit we acknowledge that the **residence premises** fulfills all of the following requirements;

The **residence premises** is:

(1) Located within 5 miles travel distance of a recognized fire department that will respond;

(2) Located within 1,000 feet of a public fire hydrant;

(3) Occupied by not more than two family units; and

(4) Not located in a severe brush or forest fire area.

All other provisions of this policy apply.

---

### UNIT-OWNERS
### Special Coverage
### Condominium Form Only
### HO-32 (Ed. 5/95)

For an additional premium the Perils Insured Against applying to Coverage A are amended as follows:

**Perils Insured Against**

We insure against risk of direct loss to property described in Coverage A, only if that loss is a physical loss to property; however, we do not insure loss:

1. Involving collapse, other than as provided in Additional Coverages - Collapse.

2. Caused by:

   a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the unit is vacant, unoccupied or being constructed unless you have used reasonable care to:

      (1) Maintain heat in the building; or

      (2) Shut off the water supply and drain the system and appliances of water;

   b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(1)                                            UP-450 (5/95)

EXHIBIT 1 PAGE 89

(1) Fence, pavement, patio or swimming pool;

(2) Foundation, retaining wall, or bulkhead;

(3) Pier, wharf or dock;

c. Theft in or to a unit under construction, or of materials and supplies for use in the construction until the unit is finished and occupied;

d. Vandalism and malicious mischief or breakage of glass and safety glazing materials if the unit has been vacant more than 30 consecutive days immediately before the loss. A unit being constructed is not considered vacant;

e. Constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

f. Any of the following:

(1) Wear and tear, marring, deterioration;

(2) Inherent vice, latent defect, mechanical breakdown;

(3) Smog, rust, mold, wet, or dry rot;

(4) Smoke from agricultural smudging or industrial operations;

(5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

Pollutant means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(6) Settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

(7) Birds, vermin, rodents, insects, or domestic animals.

If any of these cause water damage not otherwise excluded from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover the loss caused

by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

**3.** Excluded under Section I — Exclusions.

Under items 1. and 2. any ensuing loss to property described in Coverage A not excluded or excepted in this policy is covered.

**The following exclusions are added to Section I — Exclusions:**

We do not insure for loss to property described in Coverage A caused by any of the following. However, any ensuing loss to property described in Coverage A not excluded or excepted in this policy is covered.

a. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Section I — Exclusions, other than exclusions b. and c. below, to produce the loss;

b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

c. **Faulty, inadequate or defective:**

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property whether on or off the **residence premises.**

All other provisions of this policy apply.

---

**LOSS ASSESSMENT COVERAGE**
Condominium or Homeowners Forms only
**HO-35 (Ed. 6/84)**

---

**Increased Limit — Residence Premises**

For an additional premium, the limit of liability for Section I — Additional Coverage 9 and Section II — Additional Coverage 4, Loss Assessment, is increased to:

(2)          UP-450 (5/95)

(3)          UP-450 (5/95)

EXHIBIT 1 PAGE 90

* Increase in Limit of Liability    $

* Total Limit of Liability    $

* Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

## OTHER STRUCTURES RENTED TO OTHERS
### HO-40 (Ed. 4/85)

For an additional premium we cover the following structures on the **residence premises** rented or held for rental to any person not a tenant of the dwelling for use as private residence.

### SECTION I:

We insure for direct physical loss to these structures caused by the Perils Insured Against for the limit of liability stated below:

| Location of Structures* | Limit of Liability* |
|---|---|
| 1. | $ |
| 2. | $ |
| 3. | $ |

### SECTION II

Under Coverage E — Personal Liability and Coverage F — Medical Payments to Others, the structures listed above are included in the definition of the **insured location.**

With respect to the structures listed above, the first paragraph of Exclusion 1.b. under Section II Exclusions — Coverage E — Personal Liability and Coverage F — Medical Payments to Others, is deleted and replaced by the following:

b. Arising out of **business** pursuits of an **insured.**

* Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

## ADDITIONAL INTEREST
### Residence Premises
### HO-41 (Ed. 7/87)

### OPTION I:

Name and Address of Person or Organization *

Interest *

(4)                    UP-450 (5/95)

The definition of **ins**    d in this policy includes the person or organization named above with respect to:

### SECTION I

Coverage A — Dwelling and Coverage B — Other Structures; and

### SECTION II

Coverage E — Personal Liability and Coverage F — Medical Payments to Others but only with respect to the **residence premises.**

This coverage does not apply to **bodily injury** to any employee arising out of or in the course of the employee's employment by the person or organization.

* Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

### OPTION 2:

Name of Person*

The definition of **insured** in this policy includes the persons named above with respect to:

### SECTION I

Coverage C — Personal Property and Coverage D — Loss of Use; and

### SECTION II

Coverage E — Personal Liability and Coverage F — Medical Payments to Others.

* Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

## PERMITTED INCIDENTAL BUSINESS OCCUPANCY
### Residence Premises
### HO-42 (Ed. 5/95)

The following additional definition applies to coverage provided by this endorsement.

**"Permitted Incidental Business"** means the office, private school, studio or other business pursuit conducted solely on the **residence premises** and from which you derive no more than half of your income.

(5)                    UP-450 (5/95)

EXHIBIT 1 PAGE 91

## SECTION I — COVERAGE C

Special Limits of Liability Items 9. and 10. do not apply to the furnishings, supplies, and equipment of the **permitted incidental business.**

## SECTION II

Exclusion 1.b. of Coverage E — Personal Liability and Coverage F — Medical Payments to Others is deleted and replaced by the following:

b. (1) Arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured;**

This exclusion (b.1) does not apply to:

(a) Activities which are usual to non-**business** pursuits or to the necessary or incidental use of the premises to conduct the **permitted incidental business** operated by you.

(b) The rental or holding for rental of an **insured location:**

(i) On an occasional basis if used only as a residence;

(ii) In part for use only as a residence unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(iii) In part as an office, school, studio or private garage.

(2) Arising out of products sold or exchanged.

This insurance does not apply to **bodily injury** to:

a. Any employee of an **insured** arising out of the **permitted incidental business** use described above other than to a **residence employee** while engaged in the employee's employment by an **insured;** or

b. Any pupil arising out of corporal punishment administered by or at the direction of the **insured.**

## SECTION I AND II — CONDITIONS

The following additional condition applies to coverage provided by this endorsement:

The **residence premises** must be substantially unmodified to accommodate this **permitted incidental business.**

All other provisions of this policy apply.

(6)               UP-450 (5/95)

---

## OTHER STRUCTURES
### Increased Limits
### HO-48 (Ed. 4/84)

For an additional premium we cover the structures described below on the **residence premises** for the additional imit of liability shown. This is additional insurance for these structures.

**Description***               **Limit of Liability***

This endorsement does not affect the limit of liability that applies to all structures insured under Coverage B — Other Structures.

\* Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions for this policy apply.

---

## PERSONAL ARTICLES FLOATER
### HO-61 (Ed. 4/88)

### NEWLY ACQUIRED PROPERTY:

With respect to jewelry, furs, cameras and musical instruments, we cover newly acquired property of a class of property already insured for an amount not to exceed 25% of the amount of insurance for that class of property or $10,000, whichever is less; provided the **insured** reports this newly acquired property to us within 30 days of acquisition and pays the additional premium from the date acquired.

When Fine Arts are scheduled, we cover other objects of art acquired during the policy period for their actual cash value but no more than 25% of the amount of insurance for fine arts scheduled, provided the **insured** reports these objects to us within 90 days of acquisition and pays the additional premium from the date acquired.

### PERILS INSURED AGAINST

We insure against causes of direct physical loss to the property described except:

1. Wear and tear, gradual deterioration, insects, vermin or inherent vice;

(7)               UP-450 (5/95)


EXHIBIT 1 PAGE 92

2. War, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

3. Nuclear Hazard, to the extent set forth in the Nuclear Hazard Clause of Section I — Conditions.

4. If Fine Arts are covered:

   a. Damage caused by any repairing, restoration or retouching process;

   b. Breakage of art glass windows, glassware, statuary, marble, bric a brac, porcelains and similar fragile articles. We cover loss by breakage if caused by fire, lighting, aircraft, windstorn, malicious damage, theft, explosion, earthquake, flood or collision, derailment or overturn of conveyance.

   c. Loss to property on exhibition at fair grounds or premises of national or international expositions unless the premises are covered by this policy.

5. If either of the classes of property, Postage Stamps or Rare and Current Coin collections, are covered:

   a. Fading, creasing, denting, scratching, tearing, thinning, transfer of colors, inherent defect, dampness, extremes of temperature, gradual depreciation, or any damage from handling or being worked upon;

   b. Disappearance of individual stamps, coins, or other articles unless the item is described and scheduled with a specific amount of insurance, or if the item is mounted in a volume and the page to which it is attached is also lost;

   c. Loss to property in the custody of transportation companies; nor shipments by mail other than registered mail;

   d. Theft from any unattended automobile unless being shipped as registered mail;

   e. Loss to property which is not an actual part of a stamp or coin collection.

## TERRITORIAL LIMITS:

We cover the property described while it is anywhere in the world. However, Fine Arts are covered only while within the United States and Canada.

(8)    UP-450 (5/95)

## SPECIAL PROVISIONS:

1. Fine Arts: You agree that the covered property will be packed and unpacked by competent packers.

2. Golfer's Equipment includes your other clothing while contained in a locker when you are playing golf. We cover golf balls for loss by fire or burglary provided there are visible marks of forcible entry into the building, room or locker.

3. Postage Stamps includes due, envelope, official, revenue, match and medicine stamps, covers, locals, reprints, essays, proofs and other philatelic property, including their books, pages and mountings, owned by or in the custody or control of the **insured**.

4. Rare and Current Coins includes medals, paper money, bank notes, tokens of money and other numismatic property, including coin albums, containers, frames, cards and display cabinets in use with such collection, owned by or in custody or control of the **insured**.

## CONDITIONS:

1. Loss Clause: The amount of insurance under this endorsement shall not be reduced except for a total loss of a scheduled article. We will refund the unearned premium applicable to such article after the loss or you may apply it to the premium due for the replacement of the scheduled article.

2. Loss Settlement: Covered property losses are settled as follows:

   a. Fine Arts  -  We will pay the amount shown for each scheduled article which is agreed to be the value of the article.

   In case of loss to a pair or set, we agree to pay you the full amount of the set as shown in the schedule and you agree to surrender the remaining article or articles of the set to us.

   b. **POSTAGE STAMPS OR RARE AND CURRENT COIN COLLECTION - IN CASE OF LOSS TO ANY SCHEDULED ITEM, THE AMOUNT TO BE PAID WILL BE DETERMINED IN ACCORDANCE WITH PARAGRAPH 2.c. OTHER PROPERTY.**

   **WHEN COINS OR STAMPS ARE COVERED ON A BLANKET BASIS. WE SHALL PAY THE CASH MARKET VALUE AT THE TIME OF LOSS BUT NOT MORE THAN $1,000 ON ANY UNSCHEDULED**

(9)    UP-450 (5/95)

EXHIBIT 1 PAGE 93

COIN COLLECTION NOR MORE ᴛʜAN $250 FOR ANY ONE STAMP, COIN, OR INDIVIDUAL ARTICLE OR ANY ONE PAIR, STRIP, BLOCK, SERIES SHEET, COVER, FRAME OR CARD.

WE SHALL NOT PAY A GREATER PROPORTION OF ANY LOSS ON BLANKET PROPERTY THAN THE AMOUNT INSURED ON BLANKET PROPERTY BEARS TO THE CASH MARKET VALUE AT THE TIME OF LOSS.

c.  OTHER PROPERTY - THE VALUE OF THE PROP-ERTY INSURED IS NOT AGREED UPON BUT SHALL BE ASCERTAINED AT THE TIME OF LOSS OR DAMAGE. WE WILL NOT PAY MORE THAN THE LEAST OF THE FOLLOWING AMOUNTS:

(1)  THE ACTUAL CASH VALUE OF THE PROP-ERTY AT THE TIME OF LOSS OR DAMAGE;

(2)  THE AMOUNT FOR WHICH YOU COULD REAS-ONABLY BE EXPECTED TO HAVE THE PROP-ERTY REPAIRED TO ITS CONDITION IMMEDI-ATELY PRIOR TO THE LOSS;

(3)  THE AMOUNT FOR WHICH YOU COULD REAS-ONABLY BE EXPECTED TO REPLACE THE ARTICLE WITH ONE SUBSTANTIALLY IDENTICAL TO THE ARTICLE LOST OR DAM-AGED; OR

(4)  THE AMOUNT OF INSURANCE.

3.  PAIR, SET OR PARTS OTHER THAN FINE ARTS:

a.  LOSS TO A PAIR OR SET

IN CASE OF A LOSS TO A PAIR OR SET WE MAY ELECT TO:

(1)  REPAIR OR REPLACE ANY PART TO RESTORE THE PAIR OR SET TO ITS VALUE BEFORE THE LOSS; OR

(2)  PAY THE DIFFERENCE BETWEEN THE ACTU-AL CASH VALUE OF THE PROPERTY BEFORE AND AFTER THE LOSS.

b.  PARTS

IN CASE OF A LOSS TO ANY PART OF COVERED PROPERTY, CONSISTING OF SEVERAL PARTS WHEN COMPLETE, WE SHALL PAY FOR THE VALUE OF THE PART LOST OR DAMAGED.

(10)         UP–450 (5/95)

4.  Appraisal: If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire. The appraisers shall set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

All other provisions of this policy apply.

---

### PERSONAL ARTICLES FLOATER
### ELECTRONIC AND COMPUTER EQUIPMENT
### HO-61C (Ed. 7/90)

For an additional premium, we cover the classes of personal property indicated by an amount of insurance. This coverage is subject to the Definitions, Section I — Conditions, and Sections I and II — Conditions of the policy. The Section I deductible as shown on the declara-tions does not apply to this coverage.

| Class of Personal Property | Amount of Insurance* | Premium* |
|---|---|---|
| Computers and data processing equip-ment including peripheral hardware and software media and programs. | | |
| Electronic equipment used for the transmitting, recording, receiving or reproduction of sound or pictures. | | |

(11)         UP–450 (5/95)

EXHIBIT 1 PAGE 94

This does not include records, tapes, reel to reel, video tapes and all other media for use with covered equipment.

**THE AMOUNTS OF INSURANCE SHOWN IN THE SCHEDULE ARE LIMITED BY THE SPECIAL SETTLEMENT PROVISIONS IN THIS ENDORSEMENT.**

| Article* | Schedule Description* | Amount of Insurance |
|----------|----------------------|---------------------|

\* Entries may be left blank if shown elsewhere in this policy for this coverage.

## NEWLY ACQUIRED PROPERTY

We cover newly acquired property of a class of property already insured. The limit of insurance applying to such newly acquired property is 25% of the amount of insurance for that class of property.

When you acquire new property you must:

1. Report this property to us within 30 days; and

2. Pay the additional premium from the date acquired.

## PERILS INSURED AGAINST

We insure against causes of direct physical loss to the property described. We do not insure loss caused by any of the following:

1. Diminution of value caused by obsolescence due to introduction of new designs or models;

2. Wear and tear, gradual deterioration, marring, insects, vermin or inherent vice;

3. War, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure of use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

4. Nuclear hazard, to the extent set forth in the Nuclear Hazard Clause of Section I — Conditions.

5. Loss arising out of any act committed by or at the direction of any insured with the intent to cause a loss.

## PROPERTY NOT COVERED

We do not cover:

1. The cost of reproducing books of accounts, abstracts, drawings, indexes or other records created or complied by you; or

2. The cost of software, programs or operating systems which are not both protected by copyright law and commercially available.

We will cover the cost of tapes, drums, discs, cells or other magnetic recording or storage media for electronic data processing in unexposed or blank form.

## CONDITIONS

**Loss Clause:** The amount of insurance under this endorsement will not be reduced except for a total loss to a scheduled article. We will refund the unearned premium applicable to such an article after the loss. The refund will be pro rata.

## LOSS SETTLEMENT

### COVERED PROPERTY LOSSES ARE SETTLED AS FOLLOWS:

A. **Computers** - at replacement cost, meaning the amount necessary to repair or replace the property, subject to the Loss Settlement Option below. The total amount we pay for any one loss will not exceed the amount of insurance by more than 20%. We will not pay more than $500 for any unscheduled computer program or software.

B. **Electronic sound or video equipment** - at replacement cost at the time of the loss. The total amount we will pay for any one loss will not exceed the amount of insurance by more than 20%. Covered losses are settled subject to the Loss Settlement Option below.

## LOSS SETTLEMENT OPTION

We may repair or replace any covered property or any part of the property with merchandise of similar function and capability. The value of the property insured is not agreed upon, but will be ascertained at the time of damage or loss.

All other provisions of this policy apply.

EXHIBIT 1 PAGE 95

## COVERAGE C — INCREASED SPECIAL LIMITS OF LIABILITY
### HO-65 (Ed. 5/95)

For an additional premium, the Special Limits of Liability under Coverage C — Personal Property are increased as follows:

| | Increase in Limit of Liability* |
|---|---|
| 7. Silverware and goldware for loss by theft. | $ |
| 8. Firearms for loss by theft. | $ |

⁎ Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

## ADDITIONAL RESIDENCE PREMISES
### 1,2 3 or 4 Families
### HO-70 (Ed. 7/90)

**SECTION II**

For an additional premium under **Coverage E — Personal Liability and Coverage F — Medical Payments to Others**, the premises listed below are included in the definition of **insured location.**

With respect to the premises listed below, the first paragraph of Exclusion 1.b. under **Section II Exclusions — Coverage E — Personal Liability and Coverage F — Medical Payments to Others**, is deleted and replaced by the following:

b. Arising out of **business** pursuits of an **insured.**

Under Additional Coverage 4, Loss Assessment, we will pay up to $1,000 for your share of covered loss assessments arising out of the premises listed below.

| Location* | Number of Families* |
|---|---|
| | ☐ 1  ☐ 2  ☐ 3  ☐ 4 |

⁎ Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

(14)        UP-450 (5/95)

## INCIDENTAL FARMING PERSONAL LIABILITY
### HO-72 (Ed. 5/95)

For an additional premium, under **Coverage E — Personal Liability and Coverage F — Medical Payments to Others**, we will pay up to our limit of liability for **bodily injury or property damage** arising out of farming operations that are conducted on the **residence premises;** however, Coverage E and Coverage F do not apply to **bodily injury or property damage** arising out of products sold or exchanged.

All other provisions of this policy apply.

## RESIDENCE PREMISES THREE OR FOUR FAMILY DWELLING
### HO-74 (Ed. 7/87)

For an additional premium, the definition of **residence premises** is amended to include the three or four family dwelling described in the Declarations of this policy.

All other provisions of this policy apply.

## THEFT COVERAGE ENDORSEMENT
### HO-80 (Ed. 7/87)

**SECTION I — Perils Insured Against**

For an additional premium, the following peril is added:

**Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

This peril does not include loss caused by theft:

a. Committed by you or any resident of your household;

b. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

c. From that part of a **residence premises*** rented to other than you or any resident of your household.

This peril does not include loss caused by theft that occurs off the **residence premises*** of:

(15)        UP-450 (5/95)



a. Property while at any other res___ ___ce owned by, rented to, or occupied by you or any member of your family residing with you, except while you or that family member is temporarily living there. Covered property of a student while at a residence away from home is covered, if the student has been there at any time during the 45 days immediately before the loss;

b. Watercraft, and their furnishings, equipment and outboard motors; or

c. Trailers and campers.

\* When this endorsement is attached to a Dwelling Property Policy, the term "Described Location" is substituted for the term **"residence premises".**

All other provisions of this policy apply.

---

### MINE SUBSIDENCE COVERAGE ENDORSEMENT KENTUCKY HO-84KY (Ed. 5/95)

1. The following definitions apply to the insurance provided by this endorsement.

   a. **Mine subsidence** means the collapse of underground coal mines resulting in direct damage to a **structure**. It does not include loss caused by:

      (1) Earthquake or earth movement, landslide or volcanic eruption; or

      (2) Collapse of storm, water seepage, or sewer drains.

   b. **Structure(s)** means a dwelling, building or fixture permanently affixed to realty, but does **not** include land, trees, plants or crops.

2. For an additional premium, we insure by this endorsement for direct physical loss caused by **mine subsidence**, to **structures** located in Kentucky and insured under Coverge A or B of this policy.

   In the event of a covered loss under this endorsement, we will also pay for removal of debris of the **structures** damaged by **mine subsidence**. Payment for debris removal is limited to and included in the amount of coverage provided under the terms of this endorsement for the damaged property.

   This endorsement does not insure the cost of filling land.

3. The Earth Mov___ ___nt exclusion in this policy does not apply to loss caused by **mine subsidence**.

4. **Limit of Liability — Mine subsidence Coverage Endorsement.** Our total limit of liability under this endorsement for all damages is the least of the following amounts:

   a. The limit of liability for Coverage A stated in the Declarations; or

   b. $50,000.

   You may apply up to 10% of this limit to cover loss to **structures** covered under Coverage B.

5. The following amend the Loss Settlement condition of this policy with respect to Mine Subsidence Coverage:

   The provisions of this policy will determine the settlement of covered losses, provided, however, that regardless of any policy provision to the contrary:

   a. We will not pay more than the least of the following amounts for a covered loss to any **structure**:

      (1) $50,000; or

      (2) The limit applicable to the **structure** under the terms of item 4. of this endorsement, or

      (3) The amount available in the Mine Subsidence Insurance Fund to reimburse us.

   b. Our total limit of liability under this endorsement for a loss event, regardless of the number of **structures** affected, shall not exceed the lesser of the following amounts:

      (1) The Limit of Liability — Mine Subsidence Coverage Endorsement, shown in item 4. above or elsewhere in this policy; or

      (1) The amount available in the Mine Subsidence Insurance Fund to reimburse us.

6. The following deductible provision applies to loss covered under this endorsement:

   We will pay only that part of the loss which exceeds 2% of this endorsement's Limit of Liability, but in no event shall the deductible be less than $250 nor more than $500.

No other deductible in this policy applies to the coverage provided by this endorsement.

All other provisions of this policy apply.

(16)     UP-450 (5/95)                    (17)     UP-450 (5/95)



## MINE SUBSIDENCE COVERAGE
## OTHER STRUCTURES
## KENTUCKY
### HO-87KY (Ed. 5/95)

For an additional premium we cover the structure described below on the **residence premises** for the additional limit of liability shown. This is additional insurance for these structures.

Description*                    Limit of Liability*

1. The following definitions apply to the insurance provided by this endorsement:

   a. **Mine Subsidence** means the collapse of underground coal mines resulting in direct damage to a **structure**. It does not include loss caused by:

      (1) Earthquake or earth movement, landslide or volcanic eruption; or

      (2) Collapse of storm, water seepage, or sewer drains.

   b. **Structure(s)** means a dwelling, building or fixture permanently affixed to realty, but does **not** include land, trees, plants or crops.

2. For an additional premium, we insure by this endorsement for direct physical loss, caused by **mine subsidence**, to **structures** located in Kentucky and listed in the schedule above.

   In the event of a covered loss under this endorsement, we will also pay for removal of debris of the **structures** damaged by **mine subsidence**. Payment for debris removal is limited to and included in the amount of coverage provided under the terms of this endorsement for the damaged property.

   This endorsement does not insure the cost of filling land.

3. The Earth Movement exclusion in this policy does not apply to loss caused by **mine subsidence**.

4. The following amend the Loss Settlement condition of this policy with respect to Mine Subsidence Coverage.

   The provisions of this policy will determine the settlement of covered losses, provided, however, that regardless of any policy provision to the contrary we will not pay more than the least of the following amounts for a covered loss to any **structure:**

   (a) $50,000; or

   (b) The limit applicale to the **structure** as listed in the schedule above; or

   (c) The amount available in the Mine Subsidence Insurance Fund to reimburse us.

5. The following deductible provision applies to each **structure** for loss covered under this endorsement:

   We will pay only that part of the loss which exceeds 2% of the Limit of Liability applicable to the **structure**, but in no event shall the deductible be less than $250 nor more than $500.

   No other deductible in this policy applies to the coverage provided by this endorsement.

\* Entries may be left blank is shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

## CONTRACT OF SALE CLAUSE
### 137 (Ed. 9/83)

Effective Date*:
Policy Number*:
Insured's Name*:

We agree that*:

(the VENDOR) has an interest in the property described in the Declarations and covered by this policy for Coverages A and B, by virtue of Contract of Sale to (the VENDEE)*.

If loss is payable to a mortgagee, trustee or beneficiary under deed of trust, payment will be applied to such payee's interest first. Any balance, subject to the terms and conditions of this policy, will be payable to the Vendor and/or Vendee as outlined below. If there is no loss payee, any loss payment, subject to the terms and conditions of this policy, will be payable as follows:

FIRST:        To the Vendor, up to but not more than the unpaid balance, at the time of the loss, on the Contract of Sale.

SECOND:    Any balance to the Vendee.

NO EVENT WILL WE PAY MORE THAN THE APPLICABLE LIMIT OF LIABILITY, REGARDLESS OF THE NUMBER OF THE ABOVE PAYMENTS MADE OR INTERESTS INVOLVED. IF ANY LOSS COVERED BY THIS POLICY IS ALSO COVERED BY OTHER INSURANCE, WE WILL PAY ONLY THE PROPORTION OF THE LOSS THAT THE LIMIT OF LIABILITY THAT APPLIES UNDER THIS POLICY BEARS TO THE TOTAL AMOUNT OF INSURANCE COVERING SUCH LOSS.

(18)        UP-450 (5/95)                    (19)        UP-450 (5/95)

EXHIBIT 1 PAGE 98

## PREMISES ALARM OR FIRE PROTECTION SYSTEM
### HO-216 (Ed. 7/82)

For a premium credit, we acknowledge the installation of an alarm system or automatic sprinkler system approved by us on the **residence premsies.** You agree to maintain this system in working order and to notify us promptly of any change made to the system or if it is removed.

All other provisions of this policy apply.

## PERSONAL PROPERTY REPLACEMENT COST
### HO-290 (Ed. 5/95)

For an additional premium, under Section I — Conditions, Condition 3. Loss Settlement, the loss settlement provisions applicable to the property described in a.(1), (2), and (3) below are amended as follows:

a. (1) Personal property at replacement cost. This includes loss to property insured by a personal articles floater made part of this policy and subject to the other conditions of that floater.

(2) Awnings, carpeting, domestic appliances, outdoor equipment, whether or not attached to buildings, at replacement cost.

(3) Structures that are not buildings at actual cash value at the time of loss but not exceeding the amount to repair or replace.

### 1. PROPERTY NOT ELIGIBLE

Property listed below, whether separately insured on a personal articles floater or not, is not eligible for replacement cost settlement. Any loss shall be settled at actual cash value at the time of loss but not exceeding the amount necessary to repair or replace.

a. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

b. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to its value.

c. Articles not maintained in good or workable condition.

d. Articles that are outdated or obsolete and are stored or not being used.

(20)    UP-450 (5/95)

e. Postage stamps or rare coins and current coins covered on a blanket basis.

Good and workable condition means property currently in use or available for the purpose originally intended.

### 2. REPLACEMENT COST

a. We will pay no more than the smallest of the following amounts:

(1) Replacement cost at the time of loss without deduction for depreciation;

(2) The full cost of repair at the time of loss;

(3) The limit of liability applying to Coverage C;

(4) Any special limits of liability stated in this policy; or

(5) For loss to any item seperately described and specifically insured in this policy, the limit of liability that applies to the item.

b. When the replacement cost for the entire loss under this endorsement exceeds $500, we will pay no more than the actual cash value for the loss or damage until the actual repair or replacement is completed.

c. You may make a claim for loss on an actual cash value basis and then make claim within 180 days after the loss for any additional liability in accordance with this endorsement.

All other provisions of this policy apply.

## INCREASED LIMITS ON BUSINESS PROPERTY
### HO-312 (Ed. 7/85)

For an additional premium, the Coverage C — Personal Property Special Limit of Liability item 9. that applies to **business property** is increased to $2,500, but not more than $200 applies to:

a. **business** property in storage or held as sample or for sale or for delivery after sale; and

b. **business** property pertaining to a business actually conducted on the **residence premises.**

This endorsement does not increase the limit of liability for Coverage C — Personal Property.

All other provisions of this policy apply.

(21)    UP-450 (5/95)


EXHIBIT 1 PAGE 99

### INCIDENTAL MOTORIZED LAND CONVEYANCES
#### HO-313 (Ed. 5/95)

**SECTION II**

For an additional premium, Coverage E — Personal Liability and Coverage F — Medical Payments to Others apply to **bodily injury** or **property damage** arising out of:

1. The ownership, maintenance, use, loading or unloading of a motorized land conveyance;

2. The entrustment by an **insured** of a motorized land conveyance to any person; or

3. Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a motorized land conveyance.

However, coverage provided by this endorsement does not apply to a motorized bicycle, moped or motorized golf cart and does not apply to any other conveyance:

a. With a maximum attainable speed of more than 15 miles per hour;

b. Subject to motor vehicle registration;

c. While used to carry persons for a charge;

d. While used for **business** purposes other than farming;

e. While rented to others; or

f. While being operated in any prearranged or organized race, speed contest or other competition.

Section II exclusion 1.f. does not apply to conveyanances covered by this endorsement.

With respect to conveyances covered by this endorsement, the definition of "**insured**" includes any person or organization legally responsible for the covered conveyance owned by an **insured** but does not include a person or organization using or having custody or possession of the conveyance without the permission of the owner.

All other provisions of this policy apply.

### REPLACEMENT OR REPAIR COST PROTECTION COVERAGE A — DWELLING
#### HO-314 (Ed. 5/95)

For an additional premium, we agree to amend the present coverage amounts indicated on the declarations page in accordance with the following provisions:

(22)    UP-450 (5/95)

---

If you have:

a. Allowed us to adjust the Coverage A limit and the premium in accordance with:

(1) The property evaluations we make; and

(2) Any increases in inflation; and

b. Notified us, within 90 days of the start of any additions or other physical changes that increase the value of the dwelling or other structure by $5,000 or more and pay any additional premium due for the increase in value; and

c. Elected to repair or replace any damaged dwelling or other structure after a covered loss;

We will;

a. Increase the Coverage A limit of liability up to 150% of the Coverage A limit to equal the current replacement cost of the dwelling if the amount of loss to the dwelling is more than the limit of liability indicated on the Declarations page.

b. Also increase the limit of liability for Coverage B by the same percentage applied to Coverage A. However, we will do this only if the Coverage A limit of liability is increased under paragraph a. above as a result of a Coverage A loss.

If you comply with the provisions of this endorsement and there is a loss to a building insured under Coverage A, Section I Conditions 3. Loss Settlement paragraph b. is deleted and replaced by paragraphs b., c. and d. as follows:

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation. We will pay no more than the smaller of the following amounts for equivalent construction and use of the same premises:

(1) The replacement cost of the building or any parts of it up to 150% of the Coverage A limit; or

(2) The amount actually and necessarily spent to repair or replace the building or any parts of it.

c. We will pay no more than the actual cash value of the damage until actual repair or replacement is completed.

(23)    UP-450 (5/95)



d. You may disregard the replacement cost settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.

All other provisions of this policy apply.

---

## HOME DAY CARE BUSINESS
### HO-322 (Ed. 7/90)

**When this endorsement is attached to a Homeowners, Renters, or Condominium Unit Owners Policy the following amendments apply:**

If an **insured** regularly provides home day care services to a person or persons other than **insureds** and receives monetary or other compensation for such services, that enterprise is a **business** pursuit. Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an **insured** to a relative of an **insured** is not considered a **business** pursuit.

With respect to home day care enterprise that is considered to be a **business** pursuit, this policy:

1. Does not provide **Section II — Liability Coverage** because **business** pursuits of an insured are excluded under exclusion 1.b. of **Section II — Exclusions;**

2. Does not provide **Section I — Coverage B** coverage where other structures are used in whole or in part for **business;**

3. Limits coverage for property used for a home day care enterprise because **Coverage C — Special Limits of Liability** items 9. and 10. impose limits on property used at any time or in any manner for any **business** purpose.

All other provisions of this policy apply.

**When this endorsement is attached to a Dwelling Property Policy the following amendments apply:**

If an insured regularly provides home day care services to a person or persons other than insureds and receives monetary or other compensation for such services, that enterprise is a business pursuit. Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day services by an insured to a relative of an insured is not considered a business pursuit

(24)          UP-450 (5/95)

---

**COVERAGE B — OTHER STRUCTURES —** This section is deleted and replaced by the following:

We cover other structures on the Described Location separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line or similar connection are considered to be other structures.

We do not cover other structures:

1. Used in whole or in part for commercial, manufacturing or farming purposes; or

2. Rented or held for rental to any person not a tenant of the dwelling, unless used soley as a private garage; or

3. Used in whole or in part for home day care business.

This coverage does not apply to land, including land on which other structures are located.

All other provisions of this policy apply.

---

## HOME DAY CARE COVERAGE ENDORSEMENT
### HO-323 (Ed. 5/95)

For an additional premium, we cover the home day care **business** described below, conducted by an **insured** on the **residence premises,** subject to the following:

**Description of Business\***

No. of persons receiving day care services: _____

Business conducted in (check which):

◻ The dwelling as described in the Declarations.

◻ An Other Structure (describe).

**SECTION I**

1. **Coverage B** does not apply to the Other Structure described above.

We cover the Other Structure described above for direct physical loss by a Peril Insured Against for not more than:

Limit of Liability $\*

2. **Coverage C — Personal Property —** Items 9. and 10. are deleted and replaced by the following:

9. $200 on property on the **residence premises** used at any time or in any manner for any **business** purpose, other than furnishings, supplies and equipment of the **business** described above.

The **Coverge C Limit of Liability** applies to property of the **business** described above.

(25)          UP-450 (5/95)

EXHIBIT 1 PAGE 101

## SECTION II

**Coverage E — Personal Liability** and **Coverage F — Medical Payments to Others** apply to **bodily injury** and **property damage** arising out of home day care services regularly provided by an **insured** and for which an **insured** receives monetary or other compensation. The **business** pursuits portion of **Section II Exclusion** 1.b. does not apply to the coverage provided under this endorsement.

However, the **bodily injury** and **property damage** coverage provided under this endorsement does **not** apply:

a. To **bodily injury** or **property damage** arising out of sexual molestation, corporal punishment or physical or mental abuse inflicted upon any person by or at the direction of an **insured**, an **insured's** employee or any other person involved in any capacity in the day care enterprise;

b. To **bodily injury** or **property damage** arising out of the maintenance, use, loading or unloading, or entrustment by the **insured** to any person, of:

(1) Draft or saddle animals or vehicles for use therewith;

(2) Aircraft;

(3) Motor vehicles or all other motorized land conveyances; or

(4) Watercraft;

owned or operated, or hired by or for the **insured** or employee or used by the **insured** for the purpose of instruction in the use thereof; or

c. To **bodily injury** to any employee of an **insured** arising out of the **business** use described above other than to a **residence employee** while engaged in the employee's employment by an **insured**.

With respect to the coverage provided by this endorsement, **Section II — Conditions** items 1. Limit of Liability and 2. Severability of Insurance are deleted and replaced by the following:

**1. Limit of Liability**

Aggregate Limit of Liability: Our total limit of liability in an annual policy period for the sum of damages payable under **Coverage E** and medical expense payable under **Coverage F** will not be more than the Annual Aggregate Limit of Liability shown below. This is the most we will pay regardless of the number of occurences, **insureds**, claims made or persons injured. Subject to the Annual Aggregate Limit of Liability shown below:

a. Our total liability under **Coverage E** for all damages payable for **bodily injury** or **property damage** caused by one **occurrence** will not be more than the Sub-Limit of Liability for **Coverage E** as shown below. This Sub-Limit of Liability does **not** increase the Annual Aggregate Limit of Liability.

b. Our total liability under **Coverage F** for all medical expense payable for **bodily injury** to one person as the result of one accident will not be more than the Sub-Limit of Liability for **Coverage F** as shown below. This Sub-Limit of Liability does **not** increase the Annual Aggregate Limit of Liability.

| Annual Aggregate Limit of Liability | |
|---|---|
| Coverge E and F combined | $300,000 |
| Coverage E — Sub-Limit of Liability | $100,000 |
| Coverage F — Sub-Limit of Liability | $  2,000 |

The limits described above apply regardless of any provision to the contrary contained in this policy, including the policy Declarations.

**2. Severability of Insurance.**

This insurance applies separately to each **insured** except with respect to the Limit of Liability. Therefore, this condition will **not** increase the **Coverage E** — Sub-Limit of Liability or the Annual Aggregate Limit of Liability regardless of the number of **insureds**.

\* Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

---

### MORTGAGEE CLAUSE
#### 372 (Ed. 11/50)

Subject to the terms, covenants and conditions set forth in this rider, loss (if any) under this policy, on buildings only, shall be payable to the Mortgagee(s), if named as payee(s) on the first page of this policy, as mortgagee(s) under any present or future mortgage upon the property described in and covered by this policy, as interest may appear, and in order of precedence of said mortgages.

1. The terms "mortgage," "mortgagee" and "mortgagor" wherever used in this rider shall be deemed to include deeds of trust and the respective parties thereto.

2. This insurance as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the described property, nor by the use of the premises for purposes more hazardous than are permitted by this policy.



2. This insurance as to the interest of t'   nortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the described property, nor by the use of the premises for purposes more hazardous than are permitted by this policy.

3. Any mortgagee who shall have or acquire knowledge that the premises are being used for purposes more hazardous than are permitted by this policy or that the premises have been vacant or unoccupied beyond the period permitted by this policy, shall forthwith notify this company thereof and shall cause the consent of the company thereto to be noted on this policy; and in the event of failure so to do, all rights of such mortgagee hereunder shall forthwith terminate.

4. In case the mortgagor or owner shall fail to pay any premium due or to become due under this policy, the mortgagee hereby covenants and agrees to pay the same on demand. The mortgagee also covenants and agrees to pay on demand the premium for any increased hazard for the term of the existence thereof.

5. This company shall not be liable to the mortgagee for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, under policies issued to, held by, or payable to the mortgagee, whether collectible or not.

6. The policy provisions relating to "Mortgagee interests and obligations" are specifically referred to and made a part of this rider.

### INFLATION PROTECTION
### HO-377 (Ed. 6/86)

We may increase the limit of liability applying to Coverage C — Personal Property and Coverage D — Loss of Use to reflect increases in costs of personal property values. Any such change will be made effective on the renewal date. Payment of the renewal premium will constitute your acceptance of the revised limits of liability.

All other provisions of this policy apply.

### LENDER'S LOSS PAYABLE ENDORSEMENT
### 438 BFUNDS (Ed. 5/42)

1. Loss or damage, if any, under this policy, shall be paid to the Payee named on the first page of this policy, its successors and assigns, hereinafter referred to as "the Lender," in whatever form or capacity its interests may

(28)            UP-450 (5/95)

appear and v   'her said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.

2. The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virture of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, including any and all riders now or hereafter attached thereto by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance or of any rider or endorsement attached hereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the Lender while exercising active control and management of the property.

3. In the event of failure of the insured to pay any premium or additional premium which shall be or become due under the terms of this policy or on account of any change in occupancy or increase in hazard not permitted by this policy, this Company agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after due date of such premium and it is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by this Company of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days following receipt of the Company's demand in writing therefor. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.

(29)            UP-450 (5/95)



4. Whenever this Company shall pay the Lender any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this company, at its option, may pay to the Lender the whole principal sum and interest and other indebtedness due or to become due from the insured, whether secured or unsecured, (with refund of all interest not accrued), and this Company, to the extent of such payment shall thereupon receive a full assigment and transfer, without recourse, of the debt and all rights and securities held as collateral thereto.

5. If there be any other insurance upon the within described property, this Company shall be liable under this policy as to the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance of similar character on said property under policies held by, payable to and expressly consented to by the Lender. Any Contribution Clause included in any Fallen Building Clause Waiver or any Extended Coverage Endorsement attached to this contract of insurance is hereby nullified, and also any Contribution Clause in any other endorsement or rider attached to this contract of insurance is hereby nullified except Contribution Clauses for the compliance with which the insured has received reduction in the rate charged or has received extension of the coverage to include hazards other than fire and compliance with such Contribution Clause is made a part of the consideration for insuring such other hazards. The Lender upon the payment to it of the full amount of its claim, will subrogate this Company (pro rata with all other insurers contribution to said payment) to all of the Lender's rights of contribution under said other insurance.

6. This Company reserves the right to cancel this policy at any time, as provided by its terms, but in such case this policy shall continue in force for the benefit of the Lender for ten (10) days after written notice of such cancellation is received by the Lender and shall then cease.

7. This policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration unless an acceptable policy in renewal thereof with loss thereunder payable to the Lender in accordance with the terms of this Lender's Loss Payable Endorsement, shall have been issued by some insurance company and accepted by the Lender.

8. Should legal title to and beneficial ownership of any of the property covered under this policy become vested in the Lender or its agents, insurance under this policy shall continue the term therof for the benefit of the Lender but, in such event, any privileges granted by this Lender's Loss Payable Endorsement which are not also granted the insured under the terms and conditions of this policy and/or under other riders or endorsements attached thereto shall not apply to the insurance hereunder as respects such property.

9. All notices herein provided to be given by the Company to the Lender in connection with this policy and this Lender's Loss Payable Endorsement shall be mailed to or delivered to the Lender at its office or branch described on the first page of the policy.

Approved:

    Board of Fire Underwriters of the Pacific,
    California Banker's Association,
    Committee on Insurance.

---

### OPTIONAL EDUCATORS AND SCHOOL EMPLOYEES EXCESS LIABILITY ENDORSEMENT
### HO-966 (Ed. 5/95)

**Business Pursuits -** (Including Liability for Corporal Punishment of Pupils)

**Coverage E — Personal Liability and Coverage F — Medical Payments to Others** is extended to include your business pursuits as described in 1.a. and 1.b. below, only if there is underlying, primary, collectible insurance coverage, subject to the following:

1. This insurance is excess coverage only. There must be other underlying, primary and collectible insurance, including, but not limited to, policies or programs of self-insurance purchased or established by or on behalf of your employer to insure against liability arising from activities of your employer or its employees, available to you for:

a. Your acts or omissions in connection with **business** pursuits within the course and scope of your employment as an educator or school employee while employed by an accredited public school or other accredited educational institution;

b. The maintenance, operation, use, loading or unloading of:

    (1) Draft or saddle animals;

    (2) Vehicles for use therewith;

EXHIBIT 1 PAGE 104

(3) Private passenger autos;

(4) Watercraft; or

(5) Aircraft;

not owned, operated or hired by or for you or your employer, except only when used by you for the purpose of instruction in the use thereof.

2. This insurance does **not** apply to:

a. Your acts or omissions in connection with **business** pursuits which are not directly related to your employment by an accredited public school or other accredited educational institution;

b. **Bodily Injury** to any of your employees while engaged in your employment; or to any obligation for which you or your employer may be held liable under any;

(1) Workers' or workmen's compensation law; or

(2) Non-occupational disability law; or

(3) Occupational disease law.

c. Any liability arising from occurences caused by you:

(1) While under the influence of intoxicants or narcotics; or

(2) As the result of any of your criminal acts.

3. Any other provisions of this policy notwithstanding:

a. **Bodily injury** to any pupil arising out of corporal punishment administered by you or at your direction shall not be deemed to be **bodily injury** caused intentionally by you or at your direction, except when caused as a result of or in connection with any of your criminal acts.

b. There is no premium charge for this endorsement. The coverage provided by this endorsement will be excess, not contributory, over any other insurance or program of self-insurance, except insurance specifically written to apply as excess over our limit of liability. This is true whether such policy is issued to you or extends to you as an employee or agent.

c. We will not pay nor grant any coverage for the benefit of any educational institution or affiliate.

4. The following definition applies:

Private passenger auto means an auto of the private passenger or station wagon type, excluding any school

(32)                UP-450 (5/95)

---

bus or school ...ry type vehicle designed for the transportation of students or other persons.

All other provisions of this policy apply.

---

### INFLATION COST ENDORSEMENT
### HO-996 (Ed. 6/84)

---

The limits of liability shown in the Declarations for Coverage A — Dwelling, Coverage B — Other Structures, Coverage C — Personal Property and Coverage D — Loss of Use shall be increased at the same rate as the increase in construction costs based upon reports of recognized agencies.

To determine the limits of liability on a particular date, the latest available index will be divided by the index as of the effective date of this endorsement and the resulting factor multiplied by the limits of liability for Coverage A, Coverage B, Coverage C and Coverage D separately.

If Coverage A limit is amended during the policy term, at your request, then the effective date of this endorsement is also amended to coincide with such change.

In no event will the limits of liability be reduced to less than those shown in the policy or most recent premium billing notice, whichever is greater. Payment of the renewal premium will constitute your acceptance of the revised limit of liability.

All other provisions of this policy apply.

---

### MOBILEHOME POLICY
### Homeowners Policy Only
### MH-200 (Ed. 7/90)

---

This insurance is subject to all applicable provisions of the Homeowners Policy except as revised in the following areas.

### DEFINITIONS

Definition 8. "**residence premises**" is deleted and replaced by the following:

8. "**Residence premises**" means the mobilehome and other structures located on land owned or leased by you where you reside and which is shown as the **residence premises** in the Declarations.

### SECTION I — COVERAGES

**Coverage A — Dwelling** — Paragraph 1. is deleted and replaced by the following:

(33)                UP-450 (5/95)

EXHIBIT 1 PAGE 105

1. The mobilehome on the **residence** ﹐ nises shown in the Declarations used principally as a private residence, including structures and utility tanks attached to the mobilehome and the following and similar type items installed on a permanent basis: floor coverings, appliances, dressers and cabinets.

### ADDITIONAL COVERAGES

The following paragraph is added to item 5. Property Removed:

If, at any time, the mobilehome is endangered by a Peril Insured Against and removal is necessary to avoid damage, we will pay the reasonable expense incurred by you, not to exceed $500, for the removal and return. No deductible applies to this expense.

### SECTION I — CONDITIONS

The following is added to item 4. Loss to a Pair or Set:

**4. Loss to a Pair, Set or Panels.**

  c. Pay, in any loss involving part or a series of pieces or panels, the reasonable cost of repairing or replacing the damaged part to match the remainder as closely as possible. However, we do not guarantee the availablity of replacements, nor in the event of damage to a part, will we be liable for the value of or to repair or replace the entire series of pieces or panels.

### SECTION — CONDITIONS

The following is added to item 12. Mortgage Clause:

**12. Mortgage Clause.** The word "mortgagee" includes trustee or lienholder.

All other provisons of this policy apply.

---

### MOBILEHOME POLICY
Dwelling Property Policy Only
MH-200DP (Ed. 7/90)

This insurance is subject to all applicable provisions of the Dwelling Property Policy except as revised in the following areas.

### DEFINITIONS

**Described Location** means the mobilehome and other structures located on land owned or leased by you where you reside and which is shown as the **Described Location** in the Declarations.

(34)                UP-450 (5/95)

### COVERAGES

**Coverage A — Dwelling —** Paragraph a. is deleted and replaced by the following:

  a. The mobilehome on the **Described Location** shown in the Declarations used principally as a private residence, including structures and utility tanks attached to the mobilehome and the following and similar type items installed on a permanent basis: floor coverings, appliances, dressers and cabinets.

### OTHER COVERAGES

The following paragraph is added to item 4. Property Removed:

If, at any time, the mobilehome is endangered by a Peril Insured Against and removal is necessary to avoid damage, we will pay the reasonable expense incurred by you, not to exceed $500, for the removal and return. No deductible applies to this expense.

### CONDITIONS

The following is added to item 6. Loss to a Pair or Set:

**6. Loss to a Pair, Set or Panels.**

  c. Pay, in any loss involving part or a series of pieces or panels, the reasonable cost of repairing or replacing the damaged part to match the remainder as closely as possible. However, we do not guarantee the availability of replacements, nor in the event of damage to a part, will we be liable for the value of or to repair or replace the entire series of pieces or panels.

### CONDITIONS

The following is added to item 15. Mortgage Clause:

**15. Mortgage Clause.** The word "mortgagee" includes trustee or lienholder.

All other provisions of this policy apply.

*Thomas R. Brown*
Chairman of the Board

*Peter Weldy*
President

*John G. Welsh*
Secretary - Treasurer

(35)                UP-450 (5/95)


EXHIBIT 1 PAGE 106

I, _Danny Kiehn_ , _underwriting analyst_
    (Name)            (Title)
certify under penalty of perjury that this is
a true and correct duplicate of the original
_endorsements_ as it existed on the date of
certification shown below.  This is issued as
a duplicate and does not constitute additional
or rewriting insurance.

Policy # _204 115581_ Date of Cert. _6/28/02_
Signature _Danny Kiehn_ Date _6/28/02_
San Mateo, California

AN ADDITION TO YOUR
ENDORSEMENT BOOKLET
FROM CALIFORNIA CASUALTY

**AMENDATORY ENDORSEMENT
CALIFORNIA**
HO-300-CA (Ed. 5/95)

SECTION I AND II - CONDITIONS - Items 5.b. (3) and 5.d. are deleted and replaced by the following:

**5. Cancellation.**

b.  We may cancel this policy only for the reasons stated below by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been:

(a)  Conviction of a crime having as one of its necessary elements an act increasing the hazards insured against; or

(b)  Discovery of fraud or material misrepresentation; or

(c)  Discovery of grossly negligent acts or omisssions substantially increasing any of the hazards insured against; or

(d)  Physical changes in the property insured against which result in the property becoming uninsurable.

This can be done by notifying you at least 30 days before the date cancellation takes effect.

d.  If, when we cancel this policy, the return premium is not refunded with the notice of cancellation, we will refund it within 25 days after the date cancellation takes effect. If, when you cancel this policy, the return premium is not refunded when this policy is returned to us, we will refund it within a reasonable time after cancellation takes effect.

1.              HO-300 CA (5/95)

EXHIBIT 1 PAGE 108

**WORKERS' COMPENSATION — ALIFORNIA ONLY**
Residence Employees
**HO-90 (Ed. 7/84)**

We agree, with respect to residence employees:

**Under Coverage I**

To pay when due all benefits required of an insured by the California Workers' Compensation Law; and

**Under Coverage II**

To pay on behalf of an **insured** all damages for which the insured is legally liable because of **bodily injury** sustained by a **residence employee.** The **bodily injury** must be caused by accident or disease and arise out of and in the course of employment by the **insured** while:

(a) In the United States of America, its territories or possessions, or Canada, or

(b) Temporarily elsewhere if the **residence employee** is a citizen or resident of the United States or Canada.

Coverage II does not apply to any suit brought in or any judgment rendered by any court outside the United States of America, its territories or possessions, or Canada, or to any action on such judgment.

**Who is Covered**

A residence employee is covered if during the 90 calendar days immediately before the date of injury the employee has:

(a) Actually been engaged in such employment by the **insured** for no less than 52 hours, and

(b) Earned no less than one hundred dollars ($100) in wages.

**Application of Coverage**

This insurance applies only to **bodily injury** which occurs during the policy period. If the **bodily injury** is a disease, it must be caused or aggravated by the conditions of the residence employee's employment by the **insured.**

**Policy Provisions**

This insurance is subject to all the provisions of this endorsement and the following provisions of this policy.

a. Under Section I and II — Conditions:

4. Waiver or Change of Policy Provisions.

5. Cancellation.

7. Assignment.

8. Subrogation.

b. Under Section II — Conditions:

3. Duties After Loss.

6. Suit Against Us.

c. Our agreement to defend the **insured** as provided under Coverage E — Personal Liability

d. Under Section II — Additional Coverages:

1. Claim Expenses.

2. First Aid Expenses.

e. The definition of "**bodily injury, "business,** "**insured"** and "**residence employee."**

**Additional Provisions Applicable to Coverage I**

The following provisions are applicable to Coverage I:

a. We shall be directly and primarily liable to any **residence employee** of an insured entitled to the benefits of the California Workers' Compensation Law.

b. As between the **residence employee** and us, notice to or knowledge of the **occurrence** of the injury on the part of an **insured** will be deemed notice or knowledge on our part.

c. The jurisdiction of an **insured** will, for the purpose of the law imposing liability for compensation, be our jurisdiction.

d. We will be subject to the orders, findings, decisions or awards rendered against an **insured,** under the provisions of the law imposing liability for compensation, subject to the provisions, conditions and limitations of this policy. This policy shall govern as between an **insured** and us as to payments by either in discharge of an **insured's** liability for compensation.

e. The **residence employee** has a first lien upon any amount which we owe you on account of this insurance. In case of your legal incapacity or inability to receive the money and pay it to the **residence employee,** we will pay it directly to the **residence employee.** Your obligation to the **residence employee** will be discharged to the extent of such payment.



EXHIBIT 1 PAGE 109

**Limits of Liab. . . . verage II**

Our total limit of liability will not exceed $100,000 for all damages because of **bodily injury:**

a. Sustained by one or more **residence employees** in any one accident; or

b. Caused by disease and sustained by a **residence employee.**

Our total limit of liability will not exceed $500,000 for all damages arising out of **bodily injury** by disease regardless of the number of **residence employees** who sustain **bodily injury** by disease.

**Other Insurance**

This insurance does not apply to any loss to which other valid and collectible Workers' Compensation or Employers' Liability Insurance applies.

**Conformity to Statute**

Terms of this insurance which are in conflict with the California Workers' Compensation Law are amended to conform to that law.

**Exclusions**

This policy does not apply:

a. To liability for additional compensation imposed on an **insured** under Sections **4553** and **4557,** Division IV, Labor Code of the State of California, because of the serious and willfull misconduct of an **insured,** or because of **bodily injury** to an employee under 16 years of age and illegally employed at the time of injury ;

b. To liability for **bodily injury** arising out of **business** pursuits of an **insured.**

c. Under Coverage II:

  1. To liability assumed by the **insured** under any contract or agreement.

  2. To **bodily injury** by disease unless a written claim is made or suit brought against the **insured** within 36 months after the end of the policy period.

4.        HO-300 CA (5/95)

EXHIBIT 1 PAGE 110

3. To any obligation under a workers' compensation, unemployment or disability benefits law or any similar law.

All other provisions of this policy apply.

I, Danny Kiehn, underwriting analyst (name) (title) certify to the best of my ability that this is a true and correct copy of the original endorsement of the policy of the policy as continued in so to said as contained there is issued as continued of

Policy # 204 H65871 Date of Cert. 4/28/02

Signature Danny Kiehn

San Mateo, California

Date 4/28/02

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Copyright Insurance Services Office, Inc., 1994

5.     HO-300 CA (5/95)