1    STROOCK & STROOCK & LAVAN LLP
     MICHAEL F. PERLIS (State Bar No. 095992)
2    EMAIL: MPERLIS@STROOCK.COM
     ALLAN S. COHEN (State Bar No. 115532)
3    ACOHEN@STROOCK.COM
     RICHARD R. JOHNSON (State Bar No. 198117)
4    EMAIL: RJOHNSON@STROOCK.COM
     2029 Century Park East
5    Los Angeles, CA 90067-3086
     Telephone: 310-556-5800
6    Facsimile: 310-556-5959
     lacalendar@stroock.com
7

8    Attorneys for Defendant
     FEDERAL INSURANCE COMPANY
9

10             **UNITED STATES DISTRICT COURT**

11           **NORTHERN DISTRICT OF CALIFORNIA**

12              **SAN FRANCISCO DIVISION**

13

| | |
|---|---|
| CALIFORNIA CASUALTY INSURANCE COMPANY, | Case No. CV 08-2701 VRW |
| Plaintiff, | [Assigned to the Honorable Vaughn R. Walker] |
| vs. | **DECLARATION OF JEFFREY GUNCHICK IN SUPPORT OF DEFENDANT FEDERAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |
| FEDERAL INSURANCE COMPANY, DOES 1-10, ROES 1-10, AND MOES 1-10, inclusive | |
| Defendant. | Date: December 11, 2008<br>Time: 2:30 p.m.<br>Ctrm: 6 |
| | [Notice of Motion and Motion for Summary Judgment; Memorandum in Support of Motion; Request for Judicial Notice filed; and [Proposed] Order lodged concurrently] |

**PART 2 OF 2**

LA 51076419

DECLARATION OF JEFFREY GUNCHICK IN SUPPORT DEFENDANT FEDERAL INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT

## 3905A. Items of Noneconomic Damages

The following are the specific items of noneconomic damages claimed by ~~D. Lee Harold~~

1. ~~Past and present emotional and mental distress and anxiety.~~

2. ~~Future emotional and mental distress and anxiety.~~

3. ~~Past, present, and future interference with use and enjoyment of property.~~

EXHIBIT 1 PAGE 53

### 3928. Unusually Susceptible Plaintiff

---

You must decide the full amount of money that will reasonably and fairly compensate James Harold for all damages caused by the wrongful conduct of California Casualty and Westmont Construction, Inc., even if James Harold was more susceptible to injury than a normally healthy person would have been, and even if a normally healthy person would not have suffered similar injury.

EXHIBIT 1 PAGE 54

## 5000. Duties of the Judge and Jury

Members of the jury, you have now heard all the evidence and the closing arguments of the attorneys. It is my duty to instruct you on the law that applies to this case. You must follow these instructions as well as those that I previously gave you. You will have a copy of my instructions with you when you go to the jury room to deliberate. I have provided each of you with your own copy of the instructions.

You must decide what the facts are. You must consider all the evidence and then decide what you think happened. You must decide the facts based on the evidence admitted in this trial. Do not do any research on your own or as a group. Do not use dictionaries, the Internet, or other reference materials. Do not investigate the case or conduct any experiments. Do not contact anyone to assist you, such as a family accountant, doctor, or lawyer. Do not visit or view the scene of any event involved in this case. If you happen to pass by the scene, do not stop or investigate. All jurors must see or hear the same evidence at the same time. You must not let bias, sympathy, prejudice, or public opinion influence your decision.

I will now tell you the law that you must follow to reach your verdict. You must follow the law exactly as I give it to you, even if you disagree with it. If the attorneys have said anything different about what the law means, you must follow what I say.

In reaching your verdict, do not guess what I think your verdict should be from something I may have said or done.

Pay careful attention to all the instructions that I give you. All the instructions are important because together they state the law that you will use in this case. You must consider all of the instructions together.

EXHIBIT ___1___ PAGE 55

After you have decided what the facts are, you may find that some instructions do not apply. In that case, follow the instructions that do apply and use them together with the facts to reach your verdict.

If I repeat any ideas or rules of law during my instructions, that does not mean that these ideas or rules are more important than the others are. In addition, the order in which the instructions are given does not make any difference.

EXHIBIT  1  PAGE 56

## 5002. Evidence

Sworn testimony, documents, or anything else may be admitted into evidence. You must decide what the facts are in this case from the evidence you have seen or heard during the trial. You may not consider as evidence anything that you saw or heard when court was not in session, even something done or said by one of the parties, attorneys, or witnesses.

What the attorneys say during the trial is not evidence. In their opening statements and closing arguments, the attorneys talk to you about the law and the evidence. What the lawyers say may help you understand the law and the evidence, but their statements and arguments are not evidence.

The attorneys' questions are not evidence. Only the witnesses' answers are evidence. You should not think that something is true just because an attorney's question suggested that it was true.

Each side had the right to object to evidence offered by the other side. If I sustained an objection to a question, you must ignore the question. If the witness did not answer, you must not guess what he or she might have said or why I sustained the objection. If the witness already answered, you must ignore the answer.

EXHIBIT 1 PAGE 57

## 5003. Witnesses

A witness is a person who has knowledge related to this case. You will have to decide whether you believe each witness and how important each witness's testimony is to the case. You may believe all, part, or none of a witness's testimony.

In deciding whether to believe a witness's testimony, you may consider, among other factors, the following:

(a)    How well did the witness see, hear, or otherwise sense what he or she described in court?

(b)    How well did the witness remember and describe what happened?

(c)    How did the witness look, act, and speak while testifying?

(d)    Did the witness have any reason to say something that was not true? Did the witness show any bias or prejudice? Did the witness have a personal relationship with any of the parties involved in the case? Does the witness have a personal stake in how this case is decided?

(e)    What was the witness's attitude toward this case or about giving testimony?

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

EXHIBIT ___1___ PAGE 58

However, if you decide that a witness deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

Do not make any decision simply because there were more witnesses on one side than on the other. If you believe it is true, the testimony of a single witness is enough to prove a fact.

You must not be biased against any witness because of his or her race, sex, religion, occupation, sexual orientation, or national origin.

EXHIBIT __1__ PAGE 59

### 5009. Predeliberation Instructions

---

When you go to the jury room, the first thing you should do is choose a presiding juror. The presiding juror should see to it that your discussions are orderly and that everyone has a fair chance to be heard.

It is your duty to talk with one another in the jury room and to consider the views of all the jurors. Each of you must decide the case for yourself, but only after you have considered the evidence with the other members of the jury. Feel free to change your mind if you are convinced that your position should be different. You should all try to agree. But do not give up your honest beliefs just because the others think differently.

Please do not state your opinions too strongly at the beginning of your deliberations. Also, do not immediately announce how you plan to vote. Keep an open mind so that you and your fellow jurors can easily share ideas about the case.

You should use your common sense, but do not use or consider any special training or unique personal experience that any of you have in matters involved in this case. Such training or experience is not a part of the evidence received in this case.

Sometimes jurors disagree or have questions about the evidence or about what the witnesses said in their testimony. If that happens, you may ask to have testimony read back to you or ask to see any exhibits admitted into evidence that have not already been provided to you. Also, jurors may need further explanation about the laws that apply to the case. If this happens during your discussions, write down your questions and give them to the clerk or bailiff. I will do my best to answer them. When you write me a note, do not tell me how you voted on an issue until I ask for this information in open court.

EXHIBIT 1 PAGE 60

At least nine jurors must agree on each verdict and on each question that you are asked to answer. However, the same jurors do not have to agree on each verdict or each question. Any nine jurors are sufficient. As soon as you have agreed upon a verdict and answered all the questions as instructed, the presiding juror must date and sign the form(s) and notify the clerk or the bailiff.

Your decision must be based on your personal evaluation of the evidence presented in the case. Each of you may be asked in open court how you voted on each question.

While I know you would not do this, I am required to advise you that you must not base your decision on chance, such as a flip of a coin. If you decide to award damages, you may not agree in advance to simply add up the amounts each juror thinks is right and then make the average your verdict.

You may take breaks, but do not discuss this case with anyone, including each other, until all of you are back in the jury room.

EXHIBIT __1__ PAGE 61

## 5010. Taking Notes During the Trial

If you have taken notes during the trial you may take your notebooks with you into the jury room.

You may use your notes only to help you remember what happened during the trial. Your independent recollection of the evidence should govern your verdict. You should not allow yourself to be influenced by the notes of other jurors if those notes differ from what you remember.

EXHIBIT 1 PAGE 62

## 5011. Reading Back of Trial Testimony in Jury Room

You may request in writing that trial testimony be read to you. I will have the court reporter read the testimony to you. You may request that all or a part of a witness's testimony be read.

Your request should be as specific as possible. It will be helpful if you can state:

1.    The name of the witness;

2.    The subject of the testimony you would like to have read; and

3.    The name of the attorney or attorneys asking the questions when the testimony was given.

The court reporter is not permitted to talk with you when she or he is reading the testimony you have requested.

While the court reporter is reading the testimony, you may not deliberate or discuss the case.

You may not ask the court reporter to read testimony that was not specifically mentioned in a written request. If your notes differ from the testimony, you must accept the court reporter's record as accurate.

EXHIBIT ___1___ PAGE 63

## 5012. Introduction to Special-Verdict Form

I will give you a verdict form with questions you must answer. I have already instructed you on the law that you are to use in answering these questions. You must follow my instructions and the form carefully. You must consider each question separately. Please answer the questions in the order they appear. After you answer a question, the form tells you what to do next. At least nine of you must agree on an answer before you can move on to the next question. However, the same nine or more people do not have to agree on each answer.

When you are finished filling out the form, your presiding juror must write the date and sign it at the bottom. Return the form to the bailiff when you have finished.

EXHIBIT 1 PAGE 64

B006691

# B006691

## Microsoft Word – 042006 FINAL SET – B.rtf
## 06/02/06   12:56 PM



EXHIBIT ___1___ PAGE 65

## ~~3121. Private Nuisance~~

James Harold and D. Lee Harold claim that California Casualty and Westmont Construction, Inc. ~~interfered with James Harold's and D. Lee Harold's use and enjoyment of their land.~~ To establish this claim, James Harold and D. Lee Harold must prove all of the following:

1.    That James Harold and D. Lee Harold owned and occupied the property;

2.    That California Casualty and Westmont Construction, Inc. ~~created a condition that was harmful to health or was an obstruction to the free use of property, so as~~ to interfere with the comfortable enjoyment of life or property;

3.    That this condition ~~interfered with~~ James Harold's and D. Lee Harold's ~~use or enjoyment of their land;~~

4.    That James Harold and D. Lee Harold did not consent to California Casualty's or Westmont Construction, Inc.'s conduct;

5.    That an ordinary person would be reasonably annoyed or disturbed by California Casualty's or Westmont Construction, Inc.'s conduct;

6.    That James Harold and D. Lee Harold were harmed;

7.    That California Casualty's or Westmont Construction, Inc.'s conduct was a substantial factor in causing James Harold's and D. Lee Harold's harm; and

8.    That the seriousness of the harm outweighs the public benefit of California Casualty's or Westmont Construction, Inc.'s conduct.

EXHIBIT 1 PAGE 66

## 2021a. Private Nuisance

James Harold and D. Lee Harold claim that California Casualty and Westmont Construction, Inc. interfered with James Harold's and D. Lee Harold's use and enjoyment of their land. To establish this claim, James Harold and D. Lee Harold must prove all of the following:

1. That James Harold and D. Lee Harold owned and occupied the property;

2. That California Casualty and Westmont Construction, Inc. created a condition that was harmful to health or was an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property;

3. That this condition interfered with James Harold's and D. Lee Harold's use or enjoyment of their land;

4. That James Harold and D. Lee Harold did not consent to California Casualty's or Westmont Construction, Inc.'s conduct;

5. That an ordinary person would be reasonably annoyed or disturbed by California Casualty's or Westmont Construction, Inc.'s conduct;

6. That James Harold and D. Lee Harold were harmed;

7. That California Casualty's or Westmont Construction, Inc.'s conduct was a substantial factor in causing James Harold's and D. Lee Harold's harm; and

8. That the seriousness of the harm outweighs the public benefit of California Casualty's or Westmont Construction, Inc.'s conduct.

EXHIBIT 1 PAGE 67

___.  **Identification of Party**

For purposes of these instructions, the term "California Casualty" includes both California

Casualty and California Casualty Management Company.

EXHIBIT  1  PAGE  68

## 17. Plaintiffs' Exhibits 48a and 48b

Plaintiffs' exhibits 48a and 48b are documents that were received by Vernon Moulton from a mold seminar he attended, in which one of the presenters was American Technologies, Inc. These exhibits may be considered by you for the limited purpose of Mr. Moulton's knowledge regarding mold and remediation of mold. You may not consider these exhibits for any other purpose, including, but not limited to, the appropriate standards for mold remediation and/or mold investigation by any professional.

## 206. Evidence Admitted For Limited Purpose

During the trial, I explained to you that certain evidence was admitted for a limited purpose. You may consider that evidence only for the limited purpose that I described, and not for any other purpose.

EXHIBIT   1   PAGE   70

### 215. Exercise of a Communication Privilege

People have a legal right not to disclose what they told their doctor or attorney in confidence because the law considers this information privileged. People may exercise this privilege freely and without fear of penalty.

## 317. Interpretation – Construction of Contract as a Whole

In deciding what the words of a contract meant to the parties, you should consider the whole contract, not just isolated parts. You should use each part to help you interpret the others, so that all the parts make sense when taken together.

EXHIBIT  1  PAGE  72

## 405. Negligence – Plaintiffs' Contributory Negligence

California Casualty and/or Westmont Construction, Inc., claim that James Harold's and D. Lee Harold's harm was caused in whole or in part by James Harold's and D. Lee Harold's own negligence. To succeed on this claim, California Casualty and/or Westmont Construction, Inc. must prove both the following:

1.    That James Harold and D. Lee Harold were negligent; and

2.    That James Harold's and D. Lee Harold's negligence was a substantial factor in causing their harm.

If California Casualty and/or Westmont Construction, Inc. prove the above, James Harold's and D. Lee Harold's damages are reduced by your determination of the percentage of James Harold's and D. Lee Harold's responsibility. I will calculate the actual reduction.

## 406. Negligence – Apportionment of Responsibility

More than one person's fault may have been a substantial factor in causing James Harold's and D. Lee Harold's harm.  If so, you must decide how much responsibility each person has by determining, on a percentage basis, the extent to which his or her fault contributed to causing the harm.

EXHIBIT __1__ PAGE __74__

### 434. Alternative Causation

You may find that more than one of the defendants was negligent, but that the negligence of only one of them could have actually caused harm. If you cannot decide which defendant caused harm, you must conclude that each defendant is responsible for harm.

EXHIBIT ___1___ PAGE 75

### 2303. Insurance Policy Exclusion – Burden of Proof

California Casualty claims that James Harold's and D. Lee Harold's loss is not covered because it is specifically excluded under the policy. To succeed, California Casualty must prove that James Harold's and D. Lee Harold's loss [arises out of/is based on/occurred because of] [state exclusion under the policy]:

SECTION I – EXCLUSIONS

1.     We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

        c.     Water Damage, meaning any loss caused by, resulting from, contributed to or aggravated by:

            (3)     Water below the surface of the ground. Including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

        e.     Neglect, meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of a loss.

2.     We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

EXHIBIT 1 PAGE 76

c.    Faulty, inadequate or defective:

    (1)    Planning, zoning, development, surveying, siting;

    (2)    Design, specifications, workmanship, repair construction, renovations, remodeling, grading, compaction.

EXHIBIT ___ 1 ___ PAGE ___ 77

### 3930.  Mitigation of Damages (Modified)

---

If you decide California Casualty and Westmont Construction, Inc. are responsible for the harm, James Harold and D. Lee Harold are not entitled to recover damages for harm that California Casualty and/or Westmont Construction, Inc., proves James Harold and D. Lee Harold could have avoided with reasonable efforts or expenditures.

You should consider the reasonableness of James Harold's and D. Lee Harold's efforts in light of the circumstances facing then at the tine, including their ability to make the efforts or expenditures without undue risk or hardship.

If the Harolds had a choice of two courses, California Casualty and Westmont Construction, Inc., cannot complain that the Harolds chose one course rather than the other if both were reasonable.

EXHIBIT  1  PAGE  78

## 3924 No Punitive Damages

You must not include in your award any damages to punish or make an example of California Casualty and/or Westmont Construction, Inc. Such damages would be punitive damages, and they cannot be a part of your verdict. You must award only the damages that fairly compensate James Harold and D. Lee Harold for their loss.

### 3. Insurance Payment

The basic measure of recovery for breach of insurance contract if such breach occurred is the ~~benefits due under the insurance policy, together~~ with interest thereon from the date the benefits were due.

EXHIBIT 1 PAGE 80

### 5. Liability for Negligent Selection of an Independent Contractor

---

James Harold and D. Lee Harold claim that ~~California casualty negligently selected Westmont Construction,~~ Inc. to perform work on the Harolds' home. To establish this claim, James Harold and D. Lee Harold ~~must prove by~~ a preponderance of the evidence ~~each of the following:~~

1. That California Casualty retained Westmont Construction, Inc. to perform repairs on the Harold home;

2. ~~California Casualty failed to exercise reasonable care to employ a qualified contractor when it chose to hire Westmont Construction, Inc. to perform repairs at the Harold home;~~

3. California Casualty's decision to hire Westmont Construction, Inc. was a substantial factor in causing ~~physical harm to a person or property;~~

4. That Westmont Construction, Inc. was negligent.

EXHIBIT 1 PAGE 81

## 10. Tort and Contract Damages – Improper Deductions

Plaintiffs have alleged causes of action against defendants for concealment, negligence, or nuisance. If you find that defendants are liable for any of these causes of action, when deciding on the amount of damages to award plaintiffs on those causes of action, you may not deduct the contractual benefits paid by California Casualty from the plaintiffs' damages.

### 3708. Peculiar – Risk Doctrine

James Harold and D. Lee Harold claim that even if Westmont Construction, Inc. was not an employee, California Casualty is responsible for Westmont Construction, Inc.'s conduct because the work involved a special risk of harm.

A special risk of harm is a recognizable danger that arises out of the nature of the work or the place where it is done and requires specific safety measures appropriate to the danger. A special risk of harm may also arise out of a planned but unsafe method of doing the work. A special risk of harm does not include a risk that is unusual, abnormal, or not related to the normal or expected risks associated with the work.

To establish this claim, James Harold and D. Lee Harold must prove each of the following:

1.    That California Casualty hired Westmont Construction, Inc. to perform repairs at the Harolds' home;

2.    That the work was likely to involve a special risk of harm to person or property;

3.    That California Casualty knew or should have known that the work was likely to involve this risk;

4.    That Westmont Construction, Inc. failed to use reasonable care to take specific safety measures appropriate to the danger to avoid this risk; and

5.    That Westmont Construction, Inc.'s failure was a cause of harm to James Harold and D. Lee Harold.

In deciding whether California Casualty should have known the risk, you should consider its knowledge and experience in the field of the work to be done.

**13. Scope of Coverage**

Notwithstanding the policy provisions, all of the mold at the Harold house was covered under the California Casualty insurance policy regardless of its source, with the exception of the adjoining master bathroom and hall bath, including the floor, subfloor, and framing above and below.

EXHIBIT ___1___ PAGE 85

## 14. Investigation Costs

The insurance company's costs of investigation of a claim cannot be deducted from the insured's policy limits.

EXHIBIT 1 PAGE 86

### 17. Plaintiffs' Exhibits 48a and 48b

Plaintiffs' exhibits 48a and 48b are documents that were received by Vernon Moulton from a mold seminar he attended, in which one of the presenters was American Technologies, Inc. These exhibits may be considered by you for the limited purpose of Mr. Moulton's knowledge regarding mold and remediation of mold. You may not consider these exhibits for any other purpose, including, but not limited to, the appropriate standards for mold remediation and/or mold investigation by any professional.

EXHIBIT 1 PAGE 87

## 16. Election to Repair; Damages

---

If California Casualty elected to repair the Harolds' home, it had a duty to repair the home regardless of the amount of the policy limits.

## 18. Credit Due

---

If you find that policy benefits are owing to the Harolds for the structure, California Casualty is entitled to a credit of $251,000.

EXHIBIT ___1___ PAGE ___89___

B006691

# B006691

**Microsoft Word – CCIC INST 042006.doc**
**06/02/06   12:56 PM**



EXHIBIT 1 PAGE 90

# CALIFORNIA FORMS OF JURY INSTRUCTIONS (MATTHEW BENDER)

## §23.38

## Nonrenewal

An insurer is not required to renew an insurance policy on the expiration of its term

unless the policy provides to the contrary.

# CALIFORNIA FORMS OF JURY INSTRUCTIONS (MATTHEW BENDER)

## §23.130

### Right of Insurer to Limit Coverage

An insurer has the right to limit coverage in plain and understandable language, and an insurer is free to limit the character and extent of the risk that it undertakes to assume.

EXHIBIT  1  PAGE 92

**CALIFORNIA FORMS OF JURY INSTRUCTIONS (MATTHEW BENDER)**

**§23.161**

**Evidence Required**

A finding of unreasonableness and failure to deal in good faith cannot be based on speculation. There must be some evidence of wrongful conduct or some reasonable inference of wrongful conduct that can fairly be drawn from the evidence you have heard. The mere fact that you disbelieve California Casualty's witnesses is not enough.

EXHIBIT 1 PAGE 93

CALIFORNIA FORMS OF JURY INSTRUCTIONS (MATTHEW BENDER)

§23.162

**Denial Alone Not a Breach of the Implied Covenant**

The mere fact that California Casualty did not pay all of James Harold's and D. Lee Harold's claim does not mean that it acted in bad faith.  As long as California Casualty evaluated James Harold's and D. Lee Harold's claim objectively and fairly, denial of the claim is not, by itself, so unreasonable as to breach the implied covenant of good faith and fair dealing.

Negligence or mistake alone is not enough to hold an insurer liable for bad faith.

EXHIBIT 1 PAGE 94

## CALIFORNIA FORMS OF JURY INSTRUCTIONS (MATTHEW BENDER)

### §23.181

### Nature of Investigation Required

An insurer's investigation must be reasonable, honest and intelligent.  The insurer must learn the facts and circumstances on which the claim is based, including – to the extent that it can be determined – the nature and extent of any injuries or losses.

The insurer must inquire fully into any facts that might support the claim, as well as any facts on which it bases a denial of the claim.

EXHIBIT 1 PAGE 95

## CALIFORNIA FORMS OF JURY INSTRUCTIONS (MATTHEW BENDER)

### §23.250

### Actual Cash Value

California Casualty's policy states that in the event of a loss, California Casualty will pay the actual cash value of the property, but in no event more than the amount to repair or replace the property. "Actual cash value" means the fair market value of the property.

If you find that the loss is covered under the policy and that California Casualty is obligated to indemnity James and D. Lee Harold for the loss, then you are to calculate the amount of the loss according to the lesser of the fair market value of the property or the amount to repair or replace the property.

If you find that California Casualty elected to repair, disregard the second paragraph of this instruction.

EXHIBIT  1  PAGE  96

## SPECIAL JURY INSTRUCTION NO. 1

### Revised Special Instruction No. 1

If you find that there was a genuine dispute on a particular issue between Harold and

California Casualty, there cannot be a breach of the implied covenant on that issue.  The

genuine dispute doctrine may be applied where the insurer reasonably relies upon the

opinions of experts.


A genuine dispute does not exist when there is an inadequate or biased investigation.

EXHIBIT __1__ PAGE __97__

## CALIFORNIA FORMS OF JURY INSTRUCTIONS (MATTHEW BENDER)

### §23.180

### Duty to Investigate

The implied covenant of good faith and fair dealing requires that an insurer conduct a prompt and thorough investigation of claims by/against its insured.

## CALIFORNIA FORMS OF JURY INSTRUCTIONS (MATTHEW BENDER)

### §23.163

### Test for Breach of Duty

The test in determining whether there has been a violation of the covenant of good faith and fair dealing is whether California Casualty's conduct was unreasonable, taking into account all the circumstances known to it at the time that it acted.

Negligence or mistake alone is not enough to hold an insurer liable for bad faith.

EXHIBIT __1__ PAGE __99__

# EXHIBIT 2



# California Casualty Management Co.

1900-2000 Alameda de las Pulgas
San Mateo, CA 94403-1298
P.O. Box M
San Mateo, CA 94402-0080

(650) 574-4000

April 9, 2008

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

JEFFREY GUNCHICK

APR 15 2008

WESTERN ZONE OFFICE

2008 APR 15 AM 9: 24

Mr. Jeffrey Gunchick
CHUBB GROUP OF INSURANCE COMPANIES
Specialty Claims Department
P.O. Box 30850
Los Angeles, CA 90030-0850

Re:  Insured:      California Casualty Management Company
                   California Casualty Insurance Company
     Policy No.:    7042-72-62
     Your file No.: 013102000160
     Claimants:     James Harold and D. Lee Harold
     Company:       Federal Ins. Company

Dear Mr. Gunchick:

I am extremely dismayed and disappointed by your letter of July 6, 2007.

California Casualty is an insured under your policy. Prior to the July 2006 settlement California Casualty had certain contingent rights to be covered under your policy. At the time of the settlement of the lawsuit against it by its insureds, those "contingent" rights became actual. At that point in time, California Casualty was entitled to receive full reimbursement in the amount of the settlement, as well as the full amount of all expenses incurred, as specified in the policy.

California Casualty's rights were no longer contingent but actual.

Your letter of July 6, 2007 was presented to us nearly a year after the settlement was entered into. Despite the fact that we had indicated to you how and why the settlement was fully recoverable under your policy, you provided us five months later with a letter evoking an attitude that the <u>actual</u> rights of California Casualty are somehow subject to negotiations. Your letter displays a "catch me if you can" philosophy, which wrongfully denies recognition to California Casualty's actual rights under the policy. We are not seeking to negotiate with you. We are seeking to have our rights under the policy fully and fairly enforced. We seek only the compensation that was promised to us at the time of the initial contracting and at the time that we made payment of our premium. It is our contractual rights that are at issue here.

In response to your denial of coverage issued shortly after the verdict, we provided to you our explanation as to our contractual rights under your policy. Despite the fact that we provided that analysis to you, you have chosen in your letter of July 6, 2007 to ignore our explanation, and deny the claim based upon your own interpretation of the verdict.

I wish to point out to you that the verdict never became a final judgment. We are not, therefore, talking about the applicability of a verdict interpreting your policy. Rather, the sole basis for the claim has to do with the settlement that was achieved, with your consent, as confirmed in your letter of July 6, 2007. Under the terms of your policy, this full amount, together with the cost and expenses that were incurred by California Casualty, is a "loss" that is fully compensable under the policy.

Attorney in Fact and Manager                    EXHIBIT 2 PAGE 100

California Casualty Indemnity Exchange        California Casualty Insurance Co.        California Casualty & Fire Insurance Co.
        California Casualty General Insurance Co.            California Casualty Compensation Insurance Co.

Jeff Gunchick
April 9, 2008
Page 2

As you know from your attendance at the mediation before Judge Ramirez on July 6, 2006, California Casualty made the decision to settle before rulings on the post-trial motions and appeal. As a result, California Casualty settled around Westmont and reserved all of our rights against Chubb. Chubb, through you, gave California Casualty "permission" to settle, placing a "limit" on this permission of $2,700,000, though the propriety and basis for that limit remains unclear. California Casualty successfully negotiated settlement of this claim for $2,500,000. As of this date, we have incurred defense costs (including attorney fees, expert fees, costs, etc.) in the amount of $1,511,462.

The burden of proof that an exclusion applies falls squarely upon Chubb. I fail to understand how any of the contents of your letters demonstrate that you can sustain that burden of proof. How do you expect to demonstrate to a jury that any portion of the settlement was for any particular cause of action?

As indicated, I am extremely disheartened by your attitude and approach to the entire matter. We are, again, simply seeking enforcement of our rights to the policy and we do not intend to submit them to your version of "negotiations". We did not pay for nor bargain for "negotiations" in the face of an actual loss. Therefore, please be advised of the following: if the full amount of the settlement in addition to our costs and attorneys fees previously submitted is not fully and immediately paid to California Casualty we are prepared and will file a bad faith lawsuit against Federal Insurance Company. Said lawsuit will be filed no later then 10 days from Federal's receipt of this letter unless full compliance is made with this demand.

Sincerely,

California Casualty Management Company

Eva Kuhn, Home Office Examiner
ekuhn@aplus.com
1-800-841-4736, x 4727

cc:    Tom Richardson, Division Claims Director
       Law Offices of David C. Werner

EXHIBIT 2 PAGE 101

# EXHIBIT 3



# CHUBB GROUP OF INSURANCE COMPANIES

Specialty Claims Department

P.O. Box 30850, Los Angeles, CA 90030-0850
Phone: (213) 612-0880 • Facsimile: (213) 833-5200 • Facsimile: (213) 833-5201

*Guncheck*
*open*
*12/4/07*

July 6, 2007

**Via Fax at: (650) 294-8370**
**and Regular Mail**

Ms. Eva Kuhn
California Casualty Management Company
PO Box 42630
Phoenix, AZ 85080-2630

Re:    Insured:        California Casualty Management Company ("CCMC")
       Policy No.:      7042-72-62 (the "Policy")
       Our File No.:    013102000160
       Claimants:       James Harold and D. Lee Harold
       Company:         Federal Insurance Company ("Federal")

Dear Ms. Kuhn:

As you know form our prior discussions and e-mail correspondence, we have expressed our desire to verbally discuss a possible resolution of CCMC' request for reimbursement in connection with the Jury Verdict rendered in the Trial of the First Amended Complaint entitled <u>James Harold and D. Lee Harold vs. California Casualty Insurance Company, Westmont Corporation, Inc. and Does 1 through 50</u>, in the Superior Court of California, City and County of Sacramento (Case No. 02A04291). However, because you have requested a written response, we are providing you with this letter.

As a preliminary matter, as you already know, the Policy contained a $2,000,000 Deductible Amount, which must be satisfied by CCMC, uninsured and at its own risk.

Pursuant to its subrogation rights, Federal expects that any amounts recovered by CCMC against Westmont/Navigators will be applied to reduce the reimbursable amounts sought by CCMC for this mater under the Policy. In that vein, please keep me apprised of the results of the Mediation between CCMC and Westmont Construction/Navigators on 8/29/2007 before Judge Raul Ramirez.

With respect to legal bills, as stated in my e-mail to you, dated 1/23/2007, we determined that, after conducting our review of the legal bills for compliance with our litigation management guidelines, dated through 7/7/2006, in the total billed amount of $1,297,936.97, the total reimbursable amount for these invoices was $1,184,035.26. Federal will agree to credit this amount ($1,184,035.26) towards satisfaction of CCMC's $2,000,000 Deductible Amount under the Policy, leaving a balance of $815,964.74 to be satisfied by CCMC under the Policy.

EXHIBIT __3__ PAGE __102__

Ms. Eva Kuhn
Re: Insured: California Casualty Management Company ("CCMC")
Policy No.: 7042-7262
July 6, 2007
Page 2

In your letter, dated 2/20/2007, CCMC seeks recovery of $2,003,693.00, which amount represents the entire Jury Verdict of $2,149,783.47, less the Jury Verdict for Fraud (Concealment) in the amount of $146,090.47. We respectfully disagree with CCMC's position that the entire amount of the Jury Verdict ($2,149,783.47), less the Jury Verdict for Fraud in the amount of $146,090.47, is the equivalent amount of covered **Loss** under the Policy.

Rather, as you correctly summarized in your 2/20/2007 letter to me, for the reasons set forth in Federal's 6/14/2006 supplemental coverage letter, the contents of which are incorporated herein as if fully set out, it is Federal's position that the amount of covered **Loss** for this matter is equal to the amount of reimbursable **Defense Costs** ($1,184,035.26) plus the Jury Verdict's Bad Faith Award of $225,450, leaving a balance of $590,514.74 remaining on CCMC's $2,000,000 Deductible Amount under the Policy.

Nevertheless, in an effort to settle this matter amicably, Federal offers to pay CCMC the total settlement sum of $300,000, to resolve this matter in its entirety.

If you agree to this settlement sum of $300,000, please advise me in writing and we will promptly issue CCMC a check in that amount.

Very truly yours,

Jeffrey T. Qunchick, Esq.
D&O Claims Examiner

(California.Casualty-Harolds-Supplemental.ROR 07-06-2007) /vr

cc:　　Ms. Morrissa Wolbeck
　　　　Calco Insurance Brokers & Agents Inc.
　　　　1900 Alameda de las Pulgas
　　　　San Mateo, CA  94402-5900

EXHIBIT 3 PAGE 103

Ms. Eva Kuhn
Re: Insured: California Casualty Management Company ("CCMC")
Policy No.: 7042-7262
July 6, 2007
Page 3

bcc:    Mr. Paul A. Larson (SFO/DFI)

EXHIBIT 3 PAGE 104

3