STROOCK & STROOCK & LAVAN LLP
MICHAEL F. PERLIS (State Bar No. 095992)
EMAIL: MPERLIS@STROOCK.COM
ALLAN S. COHEN (State Bar No. 115532)
ACOHEN@STROOCK.COM
RICHARD R. JOHNSON (State Bar No. 198117)
EMAIL: RJOHNSON@STROOCK.COM
2029 Century Park East
Los Angeles, CA  90067-3086
Telephone:  310-556-5800
Facsimile:  310-556-5959
lacalendar@stroock.com

Attorneys for Defendant
  FEDERAL INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| CALIFORNIA CASUALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> FEDERAL INSURANCE COMPANY, DOES 1-10, ROES 1-10, AND MOES 1-10, inclusive <br><br> Defendant. | Case No. CV 08-2701 VRW <br><br> [Assigned to the Honorable Vaughn R. Walker] <br><br> **FEDERAL INSURANCE COMPANY'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** <br><br> Date:      December 11, 2008 <br> Time:      2:30 p.m. <br> Ctrm:      6 <br><br> [Notice of Motion and Motion for Summary Judgment; Memorandum in Support of Motion; Declaration of Jeffrey Gunchick filed; and [Proposed] Order lodged concurrently] |

1    Pursuant to Rule 201 of the Federal Rules of Evidence, Defendant Federal

2   Insurance Company hereby requests that the Court take judicial notice of the

3   following documents described below:[1]

4       1.    The special verdict lodged on May 1, 2006 in the lawsuit captioned,

5   James Harold, et al. v. California Casualty Insurance Company, et al., Cal. Super.

6   Ct., Case No. 02AS04291, a copy of which is attached hereto as Exhibit 1.

7       2.    A letter dated January 19, 2001 from William W. Anderson of Anderson

8   Environmental Consulting Group to Bernard Sequeira of Westmont Construction

9   (the "Anderson Mold Report") that was a trial exhibit in the above-captioned lawsuit,

10  a copy of which is attached hereto as Exhibit 2.

11

12

13  Dated: August 21, 2008         Respectfully Submitted,

14                                 STROOCK & STROOCK & LAVAN LLP
                                   MICHAEL F. PERLIS
15                                 ALLAN S. COHEN
                                   RICHARD R. JOHNSON

16

17                                 By:    _____
                                              /s/ Michael F. Perlis
18                                            Michael F. Perlis

19                                 Attorneys for Defendant
                                   FEDERAL INSURANCE COMPANY
20

21

22

23

24

25

26

27

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

---

[1]  This Court may take judicial notice of documents filed and orders or decisions
entered in federal or state court.  See, e.g., Doran v. Eckold, 409 F.3d 958, 962, fn. 1
(8th Cir. 2005) (judicially noticing documents considered by District Court at
summary judgment stage but not admitted at trial); Holder v. Holder, 305 F.3d 854,
866 (9th Cir. 2002) (judicially noticing California Court of Appeal's opinion, the
briefs filed in that proceeding, and the briefs filed in the trial court).

FEDERAL'S REQUEST FOR JUDICIAL NOTICE FILED IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

LA 51077569                                          (Case No. 08-CV-2701-VRW)

# EXHIBIT 1

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SACRAMENTO

FILED

MAY 1 - 2006

By _____
Deputy Clerk

JAMES HAROLD and D. LEE HAROLD,
individuals,
      Plaintiff(s),

vs.

CALIFORNIA CASUALTY INSURANCE
COMPANY, WESTMONT
CONSTRUCTION, INC.,
      Defendant(s).

Case Number: 02AS04291

Department: 31

SPECIAL VERDICT

We, the Jury in the above-entitled action, find the following special verdict on

the questions submitted to us:

## NEGLIGENCE

**Negligence - Westmont**

Question No. 1:    Do you find that Westmont Construction, Inc.,

("Westmont") was negligent?

|  | Yes | No |
|---|---|---|
| Answer: | X | ___ |

If you answered "yes" to Question 1, please proceed to Question 2. If you

answered "no" to Question 1, please proceed to Question 10.

///

///

EXHIBIT 1 PAGE 2

EXHIBIT F    EXHIBIT G    EXHIBIT    EXHIBIT    EXHIBIT

**Question No. 2:**    Do you find that Westmont's negligence was a substantial factor in causing harm to the Harolds?

|  | Yes | No |
|---|---|---|
| Answer: | X | |

If you answered "yes" to Question 2, please proceed to Question 3. If you answered "no" to Question 2, please proceed to Question 10.

**Failure to Hire Qualified Contractor/Special Risk - California Casualty**

**Question No. 3:**    Do you find that California Casualty hired Westmont to repair the Harolds' residence?

|  | Yes | No |
|---|---|---|
| Answer: | X | |

If you answered "yes" to Question 3 please proceed to Question 4. If you answered "no" to Question 3, please proceed to Question 10.

**Question No. 4:**    Do you find that California Casualty failed to exercise reasonable care to employ a qualified contractor when it chose to hire Westmont to perform repairs at the Harolds' residence.

|  | Yes | No |
|---|---|---|
| Answer: | X | ~~✗~~ |

If you answered "yes" to Question 4 please proceed to Question 5. If you answered "no" to Question 4, please proceed to Question 6.

2

EXHIBIT  1  PAGE  3

EXHIBIT  G    EXHIBIT  G    EXHIBIT  G    EXHIBIT  G

Question No. 5:    Do you find that California Casually's hiring of Westmont was a substantial factor in causing physical harm to person or property?

|  | Yes | No |
|---|---|---|
| Answer: | X | |

Please proceed to Question 6.

Question No. 6:    Do you find that the work was likely to involve a special risk of harm to person or property?

|  | Yes | No |
|---|---|---|
| Answer: | X | |

If you answered "yes" to Question 6 please proceed to Question 7. If you answered "no" to Question 6 please proceed to Question 10.

Question No. 7:    Do you find that California Casually knew or should have known that the work was likely to involve this risk?

|  | Yes | No |
|---|---|---|
| Answer: | X | |

If you answered "yes" to Question 7 please proceed to Question 8. If you answered "no" to Question 7, please proceed to Question 10.

Question No. 8:    Do you find that Westmont failed to use reasonable care to take specific safety measures appropriate to the danger to avoid the risk?

|  | Yes | No |
|---|---|---|
| Answer: | X | |

If you answered "yes" to Question 8 please proceed to Question 9. If you

3

EXHIBIT  )  PAGE  4

answered "no" to Question 8, please proceed to Question 10.

    **Question No. 9:**    Do you find that Westmont's failure was a cause of harm to the Harolds?

|  | Yes | No |
|---|---|---|
| Answer: | X | |

Please proceed to Question 10.

## BREACH OF CONTRACT

    **Question No. 10:**    Do you find that California Casualty breached the insurance contract with the Harolds?

|  | Yes | No |
|---|---|---|
| Answer: | X | |

Proceed to Question No. 11.

## BREACH OF THE OBLIGATION OF GOOD FAITH & FAIR DEALING

    **Question No. 11:**    Do you find that California Casualty breached the obligation of good faith and fair dealing by unreasonably failing to pay, or delaying payment, of policy benefits?

|  | Yes | No |
|---|---|---|
| Answer: | X | |

Please proceed to Question No. 12.

///

EXHIBIT ___1___ PAGE ___5___

**Question No. 15:** Did Westmont create a condition that was harmful to health, or was an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property?

|  | Yes | No |
|---|---|---|
| Answer: | X | |

If you answered "yes" to Question 15 please proceed to Question 16. If you answered "no" to Question 15 please proceed to Question 21.

**Question No. 16:** Do you find that this condition interfered with the Harolds' use and enjoyment of the land?

|  | Yes | No |
|---|---|---|
| Answer: | X | |

If you answered "yes" to Question 16, please proceed to Question 17. If you answered "no" to Question 16, please proceed to Question 21.

**Question No. 17:** Do you find that the Harolds consented to Westmont's conduct?

|  | Yes | No |
|---|---|---|
| Answer: | | X |

If you answered "yes" to Question 17, please proceed to Question 21. If you answered "no" to Question 17, please proceed to Question 18.

///

6

**EXHIBIT** 1 **PAGE** 6

**Question No. 12:** Do you find that California Casualty breached the obligation of good faith and fair dealing by failing to properly investigate the loss?

|  | Yes | No |
|---|---|---|
| Answer: |  | X |

Please proceed to Question No. 13.

**Question No. 13:** Do you find that California Casualty breached the obligation of good faith and fair dealing by failing to reasonably inform the Harolds of their rights and obligations under the insurance policy?

|  | Yes | No |
|---|---|---|
| Answer: | X |  |

Please proceed to Question No. 14.

**Question No. 14:** If you answered "yes" to either Question 11, Question 12, or Question 13, do you find that California Casualty's breach of the obligation of good faith and fair dealing was a substantial factor in causing harm to the Harolds?

|  | Yes | No |
|---|---|---|
| Answer: | X |  |

Please proceed to Question No. 15.

///

///

///

///

5

EXHIBIT 1 PAGE 1

Question No. 18:   Do you find that an ordinary person would have been reasonably annoyed or disturbed by Westmont's conduct?

Yes   No

Answer:   X   ____

If you answered "yes" to Question 18, please proceed to Question 19.  If you answered "no" to Question 18, please proceed to Question 21.

Question No. 19:   Do you find that Westmont's conduct was a substantial factor in causing harm to the Harolds?

Yes   No

Answer:   X   ____

If you answered "yes" to Question 19, please proceed to Question 20.  If you answered "no" to Question 19, please proceed to Question 21.

Question No. 20:   Do you find that the seriousness of the harm outweighed the public benefit?

Yes   No

Answer:   X   ____

Please proceed to Question 21.

///

///

///

7

EXHIBIT  1  PAGE  8

## NUISANCE – California Casualty

Question No. 21:   Did California Casualty, or its agents as defined in the jury instructions, create a condition that was harmful to health, or was an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property?

                                  Yes        No
       Answer:                     X

If you answered "yes" o Question 21 please proceed to Question 22.  If you answered "no" to Question 2', please proceed to Question 27.

Question No. 22:   Do you find that this condition interfered with the Harolds' use and enjoyment of the land?

                                  Yes        No
       Answer:                     X

If you answered "yes" to Question 22, please proceed to Question 23.  If you answered "no" to Question 22, please proceed to Question 27.

Question No. 23:   Do you find that the Harolds consented to California Casualty's conduct?

                                  Yes        No
       Answer:                                X

If you answered "yes' to Question 23, please proceed to Question 27.  If you answered "no" to Question 23, please proceed to Question 24.

8

EXHIBIT __1__ PAGE __9__

Question No. 24:  Do you find that an ordinary person would have been reasonably annoyed or disturbed by California Casualty's conduct?

                                      Yes      No

Answer:            X      _____

If you answered "yes" to Question 24, please proceed to Question 25. If you answered "no" to Question 24, please proceed to Question 27.

Question No. 25:  Do you find that California Casualty's conduct was a substantial factor in causing harm to the Harolds?

                                        Yes      No

Answer:            X      _____

If you answered "yes" to Question 25, please proceed to Question 26. If you answered "no" to Question 25, please proceed to Question 27.

Question No. 26:  Do you find that the seriousness of the harm outweighed the public benefit?

                                        Yes      No

Answer            X      _____

Please proceed to Question 27.

/ / /

/ / /

/ / /

9

EXHIBIT 1    PAGE 10

EXHIBIT G

CONCEALMENT - Westmont

Question No. 27:    Do you find that Westmont intentionally failed to disclose the Anderson Mold Report to the Harolds?

                                            Yes        No

              Answer:                      _____    ___X___

If you answered "yes" to Question 27, please proceed to Question 28. If you answered "no" to Question 27, please proceed to Question 31.

Question No. 28:    Do you find that Westmont intended to deceive the Harolds by concealing the Anderson Mold Report?

                                            Yes        No

              Answer:                      _____    _____

If you answered "yes" to Question 28, please proceed to Question 29. If you answered "no" to Question 28, please proceed to Question 31.

Question No. 29:    Do you find that the Harolds reasonably relied on Westmont's deception?

                                            Yes        No

              Answer:                      _____    _____

If you answered "yes" to Question 29, please proceed to Question 30. If you answered "no" to Question 29, please proceed to Question 31.

///

///

10

EXHIBIT ___1___ PAGE ___11___

Question No. 30:   Was Westmont's concealment a substantial factor in causing harm to the Harolds?

|  | Yes | No |
|---|---|---|
| Answer: | | |

Please proceed to Question 31.

## CONCEALMENT – California Casualty

Question No. 31:   Do you find that California Casualty intentionally failed to disclose the Anderson Mold Report to the Harolds?

|  | Yes | No |
|---|---|---|
| Answer: | X | |

If you answered "yes" to Question 31, please proceed to Question 32. If you answered "no" to Question 31, please proceed to Question 35.

Question No. 32:   Do you find that California Casualty intended to deceive the Harolds by concealing the Anderson Mold Report?

|  | Yes | No |
|---|---|---|
| Answer: | X | |

If you answered "yes" to Question 32, please proceed to Question 33. If you answered "no" to Question 32, please proceed to Question 35.

///

///

///

11

EXHIBIT ___1___ PAGE ___12___

Question No. 33:   Do you find that the Harolds reasonably relied on California Casualty's deception?

                              Yes      No
          Answer:              X

If you answered "yes" to Question 33, please proceed to Question 34.  If you answered "no" to Question 33, please proceed to Question 35.

Question No. 34:   Was California Casualty's concealment a substantial factor in causing harm to the Harolds?

                              Yes      No
          Answer:              X

Please proceed to Question 35.

## DAMAGES

### Breach of Contract

Question No. 35:   If you answered "yes" to Question 10, what is the amount of the covered loss under the insurance contract that California Casualty failed to pay for the residence?  The maximum amount that can be awarded for breach of contract is $256,000 due to the existence of the credit of $251,000.

          Answer:          $ 256,000.⁰⁰

Regardless of how you answered Question 10 and Question 35, please proceed to Question 36.

///

12

EXHIBIT __1__ PAGE 13

EXHIBIT D      EXHIBIT C      EXHIBIT G      EXHIBIT F

### Breach of the obligation of good faith and fair dealing

**Question No. 36:** If you answered "yes" to Question 14, what are the damages for breach of the obligation of good faith and fair dealing?

Answer:

| | | | |
|---|---|---|---|
| A | Economic Damage for James and D. Lee Harold | $ | 75,450.00 |
| B | Past Non-Economic Damage for James Harold | $ | 75,000.00 |
| C | Future Non-Economic Damage for James Harold | $ | 0 |
| D | Past Non-Economic Damage for D. Lee Harold | $ | 75,000.00 |
| E | Future Non-Economic Damage for D. Lee Harold | $ | 0 |
| | Total: | $ | 225,450.00 |

Regardless of how you answered Question 14 and Question 36, please proceed to Question 37.

### Negligence - Westmont

**Question No. 37:** If you answered "yes" to Question 2, what are the damages for Westmont's negligence?

Answer:

| | | | |
|---|---|---|---|
| A | Economic Damage for James and D. Lee Harold | $ | 75,000.00 |
| B | Past Non-Economic Damage for James Harold | $ | 37,500.00 |
| C | Future Non-Economic Damage for James Harold | $ | 0 |
| D | Past Non-Economic Damage for D. Lee Harold | $ | 37,500.00 |
| E | Future Non-Economic Damage for D. Lee Harold | $ | 0 |
| | Total: | $ | 150,000.00 |

13

EXHIBIT 1 PAGE 14

Regardless of how you answered Question 2 and Question 37, please proceed to Question 38.

### Failure to Hire Qualified Contractor/Special Risk of Harm – California Casualty

**Question No. 38:**   If you answered "yes" to Question 5 or Question 9, what are the damages for California Casualty's failure to hire a qualified contractor, or for special risk of harm?

Answer:

A   Economic Damage for James and D. Lee Harold      $ 494,700.00

B   Past Non-Economic Damage for James Harold      $ 125,000.00

C   Future Non-Economic Damage for James Harold      $ 0

D   Past Non-Economic Damage for D. Lee Harold      $ 125,000.00

E   Future Non-Economic Damage for D. Lee Harold      $ 0

Total:   $ 744,700.00

Are any of the damages listed in the answer to Question 38 the same damages that you have awarded in response to a different question?  Damages are considered the "same" if they were awarded for the same harm.

|  | Yes | No |
|---|---|---|
| Answer: | | X |

///
///
///

14

EXHIBIT 1   PAGE 15

If you answered "yes", identify the Answer(s) and the amount of any

duplicated damages included in your answer to Question No. 38:

Answer:

Answer No.:          _____

Duplication          $ _____

Regardless of how you answered Question 5, Question 9, and Question 38,

please proceed to Question 39.

Question No. 39: If you answered both Question No. 37 and Question No.

38, what is the apportionment of fault between Westmont and California Casualty?

Answer:

| | | | |
|---|---|---|---|
| A | Westmont | 17 | % |
| B | California Casualty | 83 | % |
| | Total: | 100% | |

Please proceed to Question 40.

///
///
///
///
///
///
///
///
///
///

15

EXHIBIT __1__ PAGE __16__

EXHIBIT D    EXHIBIT C    EXHIBIT G    EXHIBIT F

## Nuisance – Westmont

**Question No. 40:**  If you answered "yes" to Question 20, what are the damages for the nuisance caused by Westmont?

Answer:

| | | |
|---|---|---|
| A | Economic Damage for James and D. Lee Harold | $   ⊗ |
| B | Past Non-Economic Damage for James Harold | $ 2,500.00 |
| C | Future Non-Economic Damage for James Harold | $ ⊗ |
| D | Past Non-Economic Damage for D. Lee Harold | $ 2,500.00 |
| E | Future Non-Economic Damage for D. Lee Harold | $ ⊗ |
| | **Total:** | $ 5,000.00 |

Are any of the damages listed in the answer to Question 40 the same damages that you have awarded in response to a different question?  Damages are considered the "same" if they were awarded for the same harm.

| | Yes | No |
|---|---|---|
| Answer: | | X |

If you answered "yes" identify the Answer(s) and the amount of any duplicated damages included in your answer to Question No. 40:

Answer:

Answer No.: _____

Duplication $ _____

Regardless of how you answered Question 20 and Question 40, please proceed to Question 41.

///

16

EXHIBIT ___ PAGE 17

### Nuisance – California Casualty

**Question No. 41:**   If you answered "yes" to Question 28, what are the
damages for the nuisance caused by California Casualty?

Answer:

| | | |
|---|---|---|
| A | Economic Damage for James and D. Lee Harold | $ 102,543.00 |
| B | Past Non-Economic Damage for James Harold | $ 262,500.00 |
| C | Future Non-Economic Damage for James Harold | $ 75,000.00 |
| D | Past Non-Economic Damage for D. Lee Harold | $ 262,500.00 |
| E | Future Non-Economic Damage for D. Lee Harold | $ 75,000.00 |
| | Total: | $ 777,543.00 |

Are any of the damages listed in the answer to Question 41 the same
damages that you have awarded in response to a different question?  Damages
are considered the "same" if they were awarded for the same harm.

|  | Yes | No |
|---|---|---|
| Answer: | | X |

If you answered "yes", identify the Answer(s) and the amount of any
duplicated damages included in your answer to Question No. 41:

Answer:

Answer No.:  _____

Duplication    $ _____

Regardless of how you answered Question 28 and Question 41, please
proceed to Question 42.

17

EXHIBIT 1 PAGE 18

Question No. 42   If you answered both Question No. 40 and Question No. 41, what is the apportionment of fault between Westmont and California Casualty?

Answer:

| | | | |
|---|---|---|---|
| A | Westmont | 1 | % |
| B | California Casualty | 99 | % |
| | Total: | 100% | |

### Concealment – Westmont

Question No. 43   If you answered "yes" to Question 30, what are the damages for Westmont's concealment?

| | | | |
|---|---|---|---|
| A | Economic Damage for James and D. Lee Harold | $ | |
| B | Past Non-Economic Damage for James Harold | $ | |
| C | Future Non-Economic Damage for James Harold | $ | |
| D | Past Non-Economic Damage for D. Lee Harold | $ | |
| E | Future Non-Economic Damage for D. Lee Harold | $ | |
| | Total: | $ | |

Are any of the damages listed in the answer to Question 43 the same damages that you have awarded in response to a different question?  Damages are considered the "same" if they were awarded for the same harm.

| | Yes | No |
|---|---|---|
| Answer: | | |

///

18

EXHIBIT 1 PAGE 19

If you answered "yes", identify the Answer(s) and the amount of any
duplicated damages included in your answer to Question No. 43:

**Answer:**

Answe No.: _____

Duplic tion     $ _____

Regardless of how you answered Question 30 and Question 43, please
proceed to Question 44.

### Concealment – California Casualty

Question No. 44:    If you answered "yes" to Question 34, what are the
damages for California Casualty's concealment?

**Answer:**

| | | |
|---|---|---|
| A   Economic Damage for James and D. Lee Harold | $ | 133,090.73 |
| B   Past Non-Economic Damage for James Harold | $ | 6,500.00 |
| C   Future Non-Economic Damage for James Harold | $ | X |
| D   Past Non-Economic Damage for D. Lee Harold | $ | 6,500.00 |
| E   Future Non-Economic Damage for D. Lee Harold | $ | X |
| Total: | $ | 146,090.73 |

Are any of the damages listed in the answer to Question 44 the same
damages that you have awarded in response to a different question?  Damages
are considered the "same" if they were awarded for the same harm.

|  | Yes | No |
|---|---|---|
| Answer: | ___ | X |

19

EXHIBIT 1 PAGE 20

If you answered "yes", identify the Answer(s) and the amount of any

duplicated damages included in your answer to Question No. 44:

Answer:

Answer No.:  _____

Duplication    $ _____

Dated: _5-1-05_             _Cherise Gallgo_
                            Foreperson

20

EXHIBIT 1 PAGE 21

# EXHIBIT 2

06/19/2002 16:54 FAX 408 918 454                    ROPERS MAJESKI SJO                              ☑ 015/017
  06/19/2002  15:49   510-874   39                        KING KING &FIN  __DER                    PAGE 13/15

t By: WESTMONT CONSTRUCTION INC                916 482 4166;          Jan-25-0:  :05PM;          Page 4/7

 ## ANDERSON ENVIRONMENTAL CONSULTING GROUP
3550 WATT AVENUE, SUITE 140
SACRAMENTO, CALIFORNIA 95821

January 19, 2001

Mr. Bernard Sequeira
Westmont Construction
4731 El Camino Avenue
Carmichael, California 95608-4938

RE:   Testing of Mold for Suspected Indoor Air Contaminants
      1160 Glen Aulin Court, Carmichael, California

Dear Mr. Sequeira:

Attached is the laboratory report outlining the contents of the sample collected from the
laundry room subfloor at 1160 Glen Aulin Court in Carmichael, California on Thursday,
January 4, 2001. One sample of wet particle board flooring, with black mold, was
collected.

Laboratory analysis shows that both bacteria and fungi are present in the materials
collected from the laundry room floor. The concentrations of bacteria are below
industry standard levels described as "clean." The concentrations of fungi are above
industry standard levels described as "clean." For reference purposes, "clean" levels
(for purposes of duct cleaning/disinfecting) established by the University of California,
Davis, are 8,000 CFU/gram or less for bacteria, and 50,000 CFU/gram or less for fungi.
A CFU is a Colony Forming Unit, which is the basic unit for microbial measurement.

The sample was sent via FEDEX to Aigner-McLaughlin Associates in Portland, Oregon
for culturing to determine the presence of fungi and bacteria. These analyses are an
initial screening for total bacteria (no attempt is made to identify the individual types of
bacteria) and a screening for fungi, in which the different fungal types are identified.
The results are as follows:

    Sample 100401 – Bacteria in this sample measured 1,480 CFU/gram. Fungi in
this sample measured more than one million CFU/gram, and consisted of Penicilium
(80%) and Streptomyces (20%). No Thermoactinomyces, a form of fungus that
attaches to bacteria, was detected.

Most fungi produce toxic particles called mycotoxins which may cause flu-like and
cold symptoms, headaches, nosebleeds, dermatitis, and suppression of the immune
system. A suppressed immune system can make it easier for other opportunistic
infections and diseases to enter the body. Mycotoxins are generally nonvolatile, and
inhalation opportunity occurs only when accumulations of the fungus are physically
disturbed or agitated. The mycotoxins most widely recognized have been associated
with Aspergillus and Penicillium fungi.

EXHIBIT 2  PAGE 22

## EXHIBIT A

By: WESTMONT CONSTRUCTION INC            916 482 4166;        Jan-25-01  2:05PM;        Page 5/7

Westmont Construction
January 19, 2001
Page Two

Mycotoxins associated with Penicillium include the following:

Ochratoxin has been implicated in damage to the kidneys
and liver, and is suspected to impair the immune system
Ochratoxin is also a suspected carcinogen.

Citrinin is a nephrotoxin produced by Penicillium and
Aspergillus species. Renal damage, vasodilatation, and
bronchial constriction are some of the health effects
associated with the toxin.

Gliotoxin is an immunosuppressive toxin produced by
species of Alternaria, Penicillium, and Aspergillus.

Patulin is a mycotoxin produced by Penicillium, Aspergillus,
and other fungi. It is believed to cause hemorrhaging in the
brain and lungs and is usually associated with apple and
grape spoilage.

Penicillic Acid

Several patterns of illness can arise from exposure to allergens including allergic
reactions on the skin, in the nose, in the airways, or in the alveoli (branches of the
lungs). It is not known why some people are allergic to otherwise harmless pollens or
other airborne particles, but it is presumably due to differences in their immune
systems. These differences may be partly genetic since allergy-based conditions often
run in families. It has been estimated that about 20% of the U. S. population may have
a genetic predisposition toward allergies. Conditions which may be produced by
airborne allergens and contaminants include allergic rhinitis, asthma, and
hypersensitivity pneumonitis.

Allergic rhinitis is an acute condition which resolves readily when the source is
removed. It is characterized by the dilation and edema of nasal mucosa and mucus
secretion. Typical symptoms include sneezing, itching, red/itching eyes, and
obstruction of nasal passages. Asthma is a chronic condition which is characterized
by dilation of the breathing passages and reduced oxygen exchange in the lungs.
Symptoms include breathing difficulties, wheezing, and occasional skin irritations.
Fungi identified as causes of allergic rhinitis and asthmatic episodes include
Penicillium.

EXHIBIT 2 PAGE 23

06/19/2002 16:55 FAX 408 918 450'    ROPERS MAJESKI SJO    ☑017/017
06/19/2002 15:49    510-874' ̄ ̄.J9    KING KING &FISH. ̄.ER    PAGE 15/15

By: WESTMONT CONSTRUCTION IN ̄.    916 482 4188;    Jan-25-0' ̄ ̄05PM;    Page 6/7

Westmont Construction
January 19, 2001
Page Three

Hypersensitivity pneumonitis is characterized by an inflammatory reaction in the alveolar walls and peripheral bronchioles in the lungs. Symptoms include chills, fever, dry cough, shortness of breath and tightness in the chest. Fungi identified as causes of hypersensitivity pneumonitis include Penicillium.

Anderson Environmental Consulting Group (AEC) recommends replacement of all subfloor and wall surfaces that have been exposed to water leaks. Moisture testing performed by AEC found elevated moisture levels in the subflooring in the laundry room, the wall between the laundry room and the family room, and the subfloor in the family room. All wood framing should be thoroughly dried and painted with a fungicidal coating prior to reassembling the floor, cabinet, and wall components and installing new floor coverings.

If you have any questions, please call me.

Very truly yours,

ANDERSON ENVIRONMENTAL CONSULTING GROUP

William W. Anderson
President

EXHIBIT 2 PAGE 24